UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

MALIBU MEDIA, LLC,

Plaintiff,

vs.

JOHN DOE,

Defendant.

CIVIL ACTION NO.  5-19-CV-00834-DAE

**DEFENDANT'S MOTION TO COMPEL AND FOR SANCTIONS**

Plaintiff Malibu Media, LLC ("Malibu") boasts of having filed "over 1,000" copyright infringement lawsuits. [Dkt 1, ¶ 6]. So one would expect Malibu would have no trouble producing basic discovery in this lawsuit. Yet Malibu has shown to be unwilling to produce documents and information fundamental to copyright lawsuits. Over three months after Doe served Malibu with sixteen interrogatories and fifty-four requests for production ("RFPs"), Malibu has produced no documents and only inadequate interrogatory responses. Indeed, Malibu has not met its basic discovery obligations even after several extensions, correspondence from Defendant John Doe's attorneys, and a long telephone conference.

For these reasons, Doe asks the Court under Fed. R. Civ. P. 37(a)(3)(B) and L.R. CV-7 and CV-26 for an order requiring Malibu to produce documents and interrogatory responses relevant to ownership of the asserted copyrights, alleged infringement, damages, affirmative defenses, and counterclaims. Doe also requests sanctions in at least in the amount of the fees and costs associated with this Motion under Fed. R. Civ. P. 37 and this Court's inherent powers.

**I.     Background.**

On April 9, 2020 Doe served first requests for production and interrogatories on basic

issues like copyright ownership, infringement and willfulness, damages and harm, market value of Malibu's works, prior enforcement, distribution of the copyrighted works, and financial interests in this litigation. [Morris Decl., Exs. A and B, Doe's First RFPs and Interrogatories]. Malibu requested two extensions to respond, both of which Doe granted. [*Id.* Exs. C and D].

On May 28, 2020, Malibu served its responses. [Morris Decl., Ex. E, Malibu's Responses to Defendant's First Set of Requests for Production ("Malibu's RFP Responses"); Ex. F, Malibu's Responses to Defendant's First Set of Interrogatories ("Malibu's Interrogatory Responses")]. Malibu's responses either refused to provide discovery or revealed little responsive information. While there are many examples of Malibu's discovery deficiencies, these four are exemplary. **First**, Malibu's RFPs refused to state whether Malibu was refusing to produce documents subject to an objection, contrary to Rule 34(b)(2)(c)'s requirements. [Morris Decl. Ex. E, throughout]. **Second**, in both Malibu's RFP and interrogatory responses, Malibu refused to provide any information related to market value, revenue or income, prior enforcement of its copyrights, or damages generally. [Morris Decl. Ex. E, at RFP Nos. 5-9, 12-14, 26; Ex. F, at Interrogatory Nos. 2, 4-6]. **Third**, it refused to provide underlying evidence relevant to its ownership of its asserted copyrights in this suit. [*Id.* Ex. E, at RFP No. 2; Ex. F, at Interrogatory No. 3]. **And fourth**, several of Malibu's interrogatory responses merely reference the conclusory allegations of its Complaint, including for its willfulness allegations. [*Id.* Ex. F, at Interrogatory Nos. 1, 2, 8].

Equally concerning are Malibu's claims of "consulting expert work product" or privilege over technical infringement-analysis documents from Malibu's consultants. [Morris Decl. Ex. E, at RFP Nos. 15, 17-19, 21-23, 28, 31-34, 36, 39-40, 46-47, and 54]. Malibu claims work product even though Malibu relied on the declarations of its consultants in Malibu's complaint and its motion to subpoena to Doe's internet service provider (ISPP. [*See id.*; *see also* Dkt. 1, Compl. ¶¶

18-15; Dkt. 5-1, P. Paige and T. Fieser Decls.]. And Malibu refuses to produce a privilege log for these communications because it believes some RPFs "so broad that a privilege log may not be formed." [Morris Decl. Ex. E, at RFP Nos. 15, 17-19, 21-23, 28, 31-34, 36, 39-40, 46-47, and 54].

Because of these issues, Doe's counsel sent Malibu's counsel a letter detailing the deficiencies in Malibu's discovery responses. [Morris Decl. Ex. G]. Shortly after, the parties conferred by phone. [Morris Decl. ¶ 10]. Malibu's counsel acknowledged some deficiencies and agreed to supplement Malibu's responses by July 2, 2020. [*Id*. ¶ 11]. But in the two weeks since, Malibu served no supplement. *Id*.

## II. Argument

### A. Doe has a right to the discovery Malibu refuses to provide.

Now well into the discovery period, Doe has no meaningful discovery from Malibu. True enough, Doe is contemporaneously filing a motion for partial summary judgment based largely on Malibu's admissions. Yet there are several reasons why the Court should compel Malibu to meet its discovery obligations.

**First**, even if the Court fully grants Doe's motion for partial summary judgment, the issue of damages on Doe's counterclaims remains. So Doe has a right to discovery on issues like Malibu's mental state, the extent of what it accessed from Doe's networks or computer systems, and its litigation methods. **Second**, if Doe prevails on summary judgment, Doe would be a prevailing party entitled to attorney's fees under the Copyright Act. So Doe needs discovery on issues like the reasonableness of Malibu's infringement claims, its refusal to settle, and similar issues. **Third**, if the Court denies Doe's summary judgment motion or continues the motion until discovery ends, Doe will need discovery from Malibu on all relevant issues in this case. Because only three months remain in discovery, Doe cannot wait any longer to seek Court intervention.

    **B. Malibu should provide interrogatory responses and produce documents regarding damages, revenues, licenses and alleged market value of the asserted copyrights and the underlying works (Interrogatory Nos. 2, 4-6; RFP Nos. 5-9, 11-14, 25, 26, 27).**

Doe, like any copyright defendant would, has asked Malibu for discovery about the value of its works. For example, Doe's interrogatory No. 4 asks:

> Separately for each of the Copyrights-in-Suit, describe the market value for the underlying work, including but not limited to any evidence of market value; sales and subscription revenue that is attributable to the work; requests to license the underlying work; and any licensing fees attributable to the work.

[Morris Decl. Ex. F]. Malibu produced just this: "Plaintiff avers that copyright infringement is a strict liability offense and statutory damages are available under the Copyright Act." As another example, in response to Interrogatory Nos. 5 and 6 about both (i) prior attempts to enforce the asserted copyrights and (ii) income generated from the copyrights, Malibu merely objects to these requests. *Id*. Malibu similarly refuses to provide any documents related to market value, income, revenues, distribution of those works, alleged harm or reputational loss, offers to purchase or license the asserted copyrights, and similar topics. [*See, e.g*, Morris Decl. Ex. E at RFP Nos. 5-9, 11-14, 25, 27].

The law shows Malibu cannot refuse to provide discovery simply because it seeks only statutory damages. The Copyright Act allows statutory damages "with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). To determine a statutory damages award, "courts have considered factors such as [*inter alia*] the value of the copyright [] and the losses sustained by the plaintiff…. A court may also consider 'the expenses saved and profits reaped by the infringer.'" *Epic Tech, LLC v. Lara*, 2017 U.S. Dist. LEXIS 196705, at *15 (S.D. Tex. Nov. 29, 2017) (quoting *Playboy Enters. v. Webbworld, Inc*., 968 F. Supp. 1171, 1176 (N.D. Tex. 1997)). Market value, losses, harm, and income are all relevant to Malibu's claims even under Malibu's premise.

Moreover, effect on potential market value, availability and distribution of Malibu's works and alleged harm relate to many of Doe's defenses and counterclaims. These include Doe's investigations into fair use, possible multiple recoveries (statutory rights), de minimis infringement, copyright misuse, failure to mitigate, estoppel, and abuse of process, among others, also hinge on this information. [*See* Dkt. 14]. The Court should compel Malibu to provide substantive information and relevant documents on these topics.

**C. Malibu should provide documents to support its infringement claims, including its method for determining who it sues. (RFP No. 31).**

In short, Malibu refuses to provide information on the basis for its infringement claim. For example:

> **Request for Production 31:** All documents that You claim evidence infringement by Doe or are otherwise related to Doe's alleged infringement.
>
> **Response:** The subpoena response providing John Doe's IP address and his ISP naming him and his address as the location from which the infringements originated. Plaintiff will provide a copy of this document.

[Morris Decl. Ex. E]. As Doe shows in the summary judgment motion, this response reflects Malibu's abuse of process by filing lawsuits based on IP addresses alone. Indeed, Malibu knows that while an IP address may link to a person who pays a bill for an ISP account, it does not necessarily identify the person who shares a work over BitTorrent. *See, e.g.*, *Malibu Media LLC v. Doe*, 2016 U.S. Dist. LEXIS 14798, at *18-19 (N.D. Ill. Feb. 8, 2016). ("[T]he IP address alone is not enough to impose liability on Doe. An IP address … does not identify the individual person who engaged in the transaction.") (internal citations omitted).

But if the Court denies or delays ruling on Doe's summary judgment motion on infringement, Doe has the right to discover the basis of Malibu's infringement case. Malibu cannot satisfy its obligation by providing one document associating Doe with an IP address. Malibu must

provide its evidence of infringement. Of course, if Malibu's responses are an admission that it has no evidence of infringement, it should dismiss its case or accrue additional sanctions.

  **D. Malibu should provide a substantive response on its willfulness allegations. (Interrogatory No. 8; RFP No. 23).**

Asked about its contention that infringement was willful, Malibu responds with a single sentence: "Plaintiff's factual and legal bases are contained within the Amended Complaint." [Morris Decl. Ex. E at Interrogatory 8]. Malibu's Complaint contains exactly one mention of willfulness: "Defendant's infringements were committed 'willfully' within the meaning of 17 U.S.C. § 504(c)(2)." [Dkt. 1 at 6]. The Court should compel Malibu to provide the basis for its willfulness claim.

  **E. Malibu should produce documents and supplement its interrogatory responses about its ownership of the asserted copyrights, licenses, and assignments (Interrogatory Nos. 3, 5, 6; RFP Nos. 2, 26, 27).**

Doe asked Malibu "[s]eparately for each of works underlying the Copyrights-in-Suit, state the basis for Your claim of ownership of the copyright in the work." [Ex. F at Interrogatory No. 3]. But Malibu answered only that "[p]laintiff's claim of ownership is based on the certificates of registration, which are being made available to Defendant." *Id*. And Malibu's response to Doe's request about corresponding ownership documents is likewise deficient: "The copyright registrations are proof of ownership. No other communications or documents exist responsive hereto." [Morris Decl. Ex. E at RFP No. 2].

Certified copies of copyright registration made within five years of publication and any later assignments may make out a prime facie showing of ownership. *Cross Keys Publ'g Co. v. LL Bar T Land & Cattle Co*., 887 F. Supp. 219, 221 (E.D. Mo. 1995). But the presumption of ownership is rebuttable, and a court may refuse to give it weight if, for example, there are "inconsistencies in the evidence." *See Sefton v. Webbworld, Inc., Civil Action* No. 3:00-CV-0042-

BC, 2001 U.S. Dist. LEXIS 10091, at *8 (N.D. Tex. July 16, 2001).  What is more, an author can change ownership if he assigns a copyright to a third party. 17 U.S.C. §201. So one could falsely apply for registration by submitting a work he does not own. The Copyright Office does not investigate each applicant to confirm ownership. Nor does the Office verify assignments or transfers.

Malibu's response provides no information about the author(s), it references no assignment papers or chain of title to Malibu, no "work made for hire" contract, and no documents of any kind vesting or transferring the enforcement right to Malibu. Yet while Malibu states that no such ownership documents "exist," it does not deny the existence of documents regarding sales, assignment, or licensing of the asserted copyrights. Instead, it refuses to produce them on relevancy grounds:

> **Request for Production 26:** All documents and communications regarding any sale, offer for sale, assignment, or licensing of the Copyrights-in-Suit.
>
> **Response:** Plaintiff objects on the basis that this request seeks information that is neither relevant nor likely to lead to the discovery of admissible information.

[Morris Decl. Ex. E; *see also id.* at RFP No. 27]. Malibu similarly refuses to answer Interrogatory No. 6, which asks about "licenses or any other agreements concerning the Copyrights-In-Suit." [Morris Decl. Ex. F]. These inconsistencies call into question Malibu's ownership of and right to enforce the asserted copyrights. Doe has a right to explore whether Malibu ever had proper ownership or, if so, whether it sold, licensed, or assigned its rights.

F. **Malibu should produce responses and documents relating to IPP and its supposed infringement investigation (Interrogatory Nos. 11-15; RFP Nos. 15, 17-19, 21-23, 28, 31-34, 36, 39-40, 46-47, and 54).**

Malibu bases its infringement claims on BitTorrent connections and downloads performed by its "consulting expert," IPP. [*See, e.g.*, Dkt. 1 (Complaint) ¶18 ("Plaintiff's consulting expert,

7

IPP International UG ("IPP") established a direct TCP/IP connection with the Defendant who was using the Subject IP Address as set forth on Exhibit A"). Malibu also used testimony from IPP to obtain the subpoena to Doe's ISP. [Dkt. 5-1]. That is why Doe has a right to examine the veracity of these analyses at least (i) for Doe's non-infringement defenses and counterclaim, (ii) Doe's abuse of process counterclaim and unclean hands defense, (iii) Doe's harmful access by computer counterclaim, and (iv) attorney's fees. [Dkt. 14].

These are some examples of Malibu's deficient responses to discovery about its infringement investigation:

> 13. Describe all times You, Your agents, Your representatives, or other affiliated party or person accessed or attempted to access any computer network, device, or system associated with IP address 70.121.72.191.[…]
>
> **Response** - Plaintiff does not have sufficient information in its possession, custody or control to answer this interrogatory. IPP recorded the infringement. Therefore, this request should be directed to IPP.
>
> 14. Describe in detail all factual basis for your contention that Defendant Doe "is a habitual and persistent BitTorrent user."
>
> **Response** – Defendant's IP address was captured downloading numerous Films over a period of extended time. This constitutes a habitual infringer. Defendant is the owner of the IP address. Evidence of this will be provided by IPP International UG.
>
> 15. Describe in detail all factual basis for your contention that "IPP connected, over a course of time, with Defendant who was using [IP address 70.121.72.191]. . . ."
>
> **Response** – IPP International, UG captured, recorded and verified the connection. They are in possession of the evidence establishing such.

[Morris Decl. Ex. E]. In each case, Malibu, without objection, states either that the request should go to IPP or that IPP will provide evidence at some undisclosed point in the future.

But Malibu cannot argue in good faith that it has zero knowledge of the actions of its hired consultants. Nor can Malibu argue in good faith that it has no information about IPPs investigations

8

in its possession or control, when IPP has done 1000s of copyright investigations at Malibu's instruction. [Dkt. 5-1, Fieser Decl. ¶ 7]. Moreover, when Defendant requested documents relating to IPP's analysis, Malibu objected that any documents relating to IPP are privileged. But Malibu cannot assert privilege because it presented IPPs declaration to this Court in its subpoena request. [Dkt. 5-1, Fieser Decl.] In short, Malibu cannot withhold information, documents, and communications related to declarations it submitted to the Court on the basis of work product.

What is more, Malibu contradicts itself by claiming that IPP is a third party from whom Doe must seek discovery separately.[1] For example, Doe requests "documents and communications relevant to [Malibu's] discovery and monitoring of online uses of the [asserted f]ilms." Malibu objected that "responsive documents are protected against disclosure …, and the request is so broad that a privilege log may not be formed…. And, all investigators were hired in anticipation of litigation." [Morris Decl., Ex. E at RFP No. 15]. In fact, Malibu repeats this objection and refusal even to produce a privilege log eighteen times for any RFP's involving IPP.

Finally, "[m]ore than the mere possibility of litigation must be evident for materials to be considered immune from discovery under the work-product doctrine." *Foret v. Transocean Offshore (USA), Inc.*, U.S. Dist. LEXIS 78756, at *14 (E.D. La. July 6, 2010) (internal citations omitted). But the two IPP affidavits that Malibu submitted to the Court are dated years before the

---

[1] During the party's June 24 conference, Malibu's counsel suggested that it may obtain *some* documents from IPP but that IPP was unavailable because of the pandemic. [Morris Decl. ¶ 10]. Malibu's counsel also claimed that documents were not available because Malibu is currently in a dispute with its former general counsel who is withholding documents from Malibu. *Id.* But Malibu never supplemented or elaborated on this issue. [*Id.* ¶ 11]

first alleged infringement.[2] Malibu's numerous inconsistencies are at the heart of Doe's abuse of process claims, among others.

Doe has a right to explore the veracity of Malibu's tools, methodology, and consultants. That is why the Court should compel Malibu to produce discovery on these issues.

## III.  CONCLUSION

Doe requests that the Court compel Malibu to produce documents responsive to Doe's RFP Nos. 2, 5-9, 11-14, 15, 17-19, 21-23, 25-28, 31-34, 36, 39-40, 46-47, and 54 and respond sufficiently to Doe's Interrogatory Nos. 2, 3, 4-6, 8, 11-15 under Fed. R. Civ. P. 37(a)(3)(B) and L.R. CV-7 and CV-26.  Due to the breadth and extremity of Malibu's violations, Doe also requests that the Court also impose sanctions under Fed. R. Civ. P. 37 and this Court's inherent powers at least in the amount of fees and costs associated with this motion.

Dated: July 17, 2020                                                                                       Respectfully,

/s/ JT Morris
JT Morris
Texas State Bar No. 24094444
Ramzi Khazen
Texas State Bar No. 24040855
JT Morris Law, PLLC
1105 Nueces Street, Suite B
Austin, Texas 78701
ramzi@jtmorris.law.com
jt@jtmorrislaw.com
Tel: 512-717-5275
Fax: 512-582-2948

Counsel for Defendant John Doe

---

[2] Malibu submitted the declaration of Tobias Fieser from IPP, which discusses the specific IP address on which Malibu sued Doe. [Dkt. 5-1]. Yet the date on Fieser's affidavit appears to be July 2015—two years before the first date of any alleged infringement. [Dkt. 1, Complaint Ex. B]. Malibu also submitted the declaration of Patrick Paige in which he testified about Plaintiff's methods and technology for finding alleged infringers [Dkt. 5-1]. But the date on Paige's declaration is August 19, 2016.

## CERTIFICATE OF CONFERENCE

I certify that counsel conferred in good faith by telephone on June 24, 2020 about resolving the issues raised in this motion, but to date, the issues have not been resolved as explained in the motion.

/s/ JT Morris
JT Morris

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2020 I electronically filed the foregoing documents with the Court using CM/ECF, and served on the same day all counsel of record via the CM/ECF notification system.

/s/ JT Morris
JT Morris