**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| MALIBU MEDIA, LLC, | |
| Plaintiff, | |
| vs. | CIVIL ACTION NO.  5-19-CV-00834-DAE |
| JOHN DOE, | |
| Defendant. | |

**<u>DEFENDANT JOHN DOE'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

## Table of Contents

Motion and memorandum in support…………………………………………………………1

I.      Introduction. ..................................................................................................... 1

II.     Procedural history. ............................................................................................ 1

III.    Legal standards ................................................................................................. 2

    A.    Summary judgment standard. ........................................................................ 2

    B.    Rule 8(b)(6) admissions. ............................................................................... 3

    C.    A court can grant summary judgment based on Rule 8(b)(6) admissions that show
          no genuine dispute over material facts.......................................................... 3

IV.     Because Malibu did not answer Doe's counterclaim allegations, Rule 8(b)(6)
        requires the Court to find that Malibu admits the allegations. ................................. 4

V.      The undisputed facts. ......................................................................................... 4

    A.    Malibu has misused the copyright law and litigation process. ........................... 4

    B.    Malibu's accessed Doe's network without his consent. ..................................... 6

    C.    Doe did not access or copy any of Malibu's claimed copyrights. ....................... 7

VI.     The Court should grant summary judgment on liability for Doe's two counterclaims
        seeking damages................................................................................................ 8

    A.    Because there is no genuine dispute over facts on Doe's counterclaim under the
          Tex. Civ. Prac. & Rem. Code § 143, the Court should grant summary judgment.
          ................................................................................................................... 8

        1.    The elements for liability under Tex. Civ. Prac. & Rem. Code § 143. ............ 8

        2.    There is no genuine dispute that Malibu accessed Doe's network without Doe's
              effective consent and intending to harm Doe. ................................................. 8

    B.    Because there is no genuine dispute over the facts on Doe's abuse of process
          counterclaim, the Court should grant summary judgment.................................. 9

        1.    Legal standard for abuse of process. .............................................................. 9

        2.    There is no genuine dispute that Malibu has made an improper or perverted use
              of legal process. ........................................................................................... 10

3.    There is no genuine dispute that Malibu maintains an ulterior purpose in abusing the legal process. ........................................................................................... 11

4.    There is no genuine dispute that Malibu's abuse of process has harmed and continues to harm Doe. .................................................................................. 12

VII.  The Court should enter a declaratory judgment on Doe's non-infringement counterclaim. ......................................................................................................... 12

A.    Elements of copyright infringement. ................................................................ 12

B.    There is no genuine dispute that Doe did not access any of Malibu's alleged copyright films. ................................................................................................. 13

C.    There is no genuine dispute that the digital media pieces Malibu monitored are not substantially similar to Malibu's alleged copyrighted films........................ 14

VIII. The Court should grant Doe summary judgment on Malibu's claim for copyright infringement. ........................................................................................................ 14

IX.   Granting Doe summary judgment before discovery ends is appropriate given Malibu's lack of effort............................................................................................ 15

X.    Conclusion .......................................................................................................... 15

Appendix 1-88………………………………………………………………..attached

Defendant John Doe moves under Fed. R. Civ. P. 56 for an order (1) granting Doe summary judgment on Doe's counterclaim for a declaratory judgment of non-infringement: (2) granting Doe summary judgment on Malibu's claim of copyright infringement; and (3) granting Doe summary judgment on Malibu's liability over Doe's counterclaims for abuse of process and harmful computer access, leaving only damages for trial.

## I.  Introduction.

Plaintiff Malibu Media, LLC ("Malibu") sued Defendant John Doe for copyright infringement despite knowing its methods for identifying infringers on the file-sharing platform BitTorrent are deeply flawed. And then after the Court denied Malibu's motion to dismiss Doe's counterclaims in April, Malibu chose not to answer Doe's counterclaims. This failure to answer effectively proves Doe's counterclaims because under Rule 8(b)(6) Malibu has now admitted Doe's allegations.

Simply put, the record is now complete enough to show there are no genuine disputes of material facts. For that reason, Doe is entitled to judgment on his counterclaims and Malibu's infringement claim. Malibu can offer no justification to delay summary judgment. Indeed, Malibu has requested no discovery from Doe in the nearly 7 months discovery has been open. And any last-minute discovery requests Malibu might serve on liability would be futile.

The facts, the law, and basic justice all dictate that it is time for Malibu's litigation abuse to stop. That is why the Court should grant Doe's motion for partial summary judgment.

## II.  Procedural history.

This is just one of dozens of copyright infringement lawsuits that Malibu filed in this District in 2019. [*See* Dkt. 6, Notice of Related Cases]. As in its other lawsuits, Malibu sued Doe for copyright infringement of pornographic films based only on an internet protocol (IP) address

(App. 1-11). Then Malibu asked to subpoena Doe's internet service provider (ISP) for Doe's name and address. (App. 12-62).

Upon receiving notice from his[1] ISP, Doe filed his answer denying Malibu's claims along with three counterclaims. (App. 63-86). First, Doe asks the Court to enter declaratory judgment of non-infringement. (App. 80-81). Second, Doe asks for relief based on abuse of process. (App. 81-83) And third, he asks for relief under Texas's civil remedy for harmful access by computer. (App. 83-84]).

In January, Malibu asked the Court to dismiss Doe's counterclaims under Rule 12(b)(6). [Dkt. 17]. But the Court denied Malibu's motion to dismiss on April 9, 2020. [Dkt. 28]. And in the three months since, Malibu has not answered Doe's counterclaims.

Nor has Malibu served Doe with any discovery requests even though discovery opened in January. (App. 88 ¶ 9; *see also* Dkt. 22 and 25). Indeed, Malibu has not asked to inspect Doe's computer. [*Id.*] To that end, it is no surprise that Malibu served no expert disclosures by the July 1 deadline. (App. 88 ¶ 10; *see also* Dkt. 30).

## III. Legal standards

### A. Summary judgment standard.

A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). In short, a genuine issue of material fact exists if a reasonable jury could find for the non-movant. *Crawford*

---

[1] For purposes of readability, this motion uses generic male pronouns to refer to Doe, without implying anything about Doe's actual gender.

*v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (citation omitted). In making this determination, a court views evidence in the light most favorable to the non-movant and draws all reasonable inferences in his favor. *Id.*

### B.  Rule 8(b)(6) admissions.

Fed. R. Civ. P. 8(b)(6) provides "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." On that basis, district courts in the Fifth Circuit have often applied this rule to find a party admitted an opponent's allegations after the party failed to answer a complaint or counterclaim. *E.g.*, *Moffitt v. Reverse Mortg. Funding, LLC*, Civil Action No. 5:18-cv-00935-OLG, 2019 U.S. Dist. LEXIS 149203, at *4-6 (W.D. Tex. June 10, 2019); *Starlight Bldg., Ltd. v. Bazemore*, No. 4:10-CV-259, 2017 U.S. Dist. LEXIS 211713, at *13-14 (E.D. Tex. Sep. 28, 2017); *Sapienza v. Trahan*, No. 6:16-CV-01701, 2019 U.S. Dist. LEXIS 44689, at *20-22 (W.D. La. Mar. 18, 2019).

### C.  A court can grant summary judgment based on Rule 8(b)(6) admissions that show no genuine dispute over material facts.

A party can use "materials in the record, including…admissions" to show a lack of any genuine dispute over a material fact on summary judgment. Fed. R. Civ. P. 56(c)(1)(A). This includes Rule 8(b)(6) admissions. That is why courts have granted summary judgment when Rule 8(b)(6) admissions showed a lack of disputed facts.

For example, in a recent decision from this District, the court granted summary judgment on a counterclaim based on Rule 8(b)(6) admissions after the plaintiff failed to respond to the counterclaim's key allegations. *Moffitt*, 2019 U.S. Dist. LEXIS 149203 at *6. And other courts have granted summary judgment based on Rule 8(b)(6) admissions. *E.g.*, *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253-55 (10th Cir. 2017) (affirming summary judgment where Rule 8(b)(6) admissions showed no genuine dispute of fact); *St. v. St.,* 2016 U.S. Dist. LEXIS 200980, at *5

(S.D. Miss. June 9, 2016) (granting summary judgment in large part on Rule 8(b)(6) admissions); *Pinelle v. Coastal Bldg. Maint., Inc.,* No. 09-22696-CIV-KING, 2010 U.S. Dist. LEXIS 151670, at *3-5 (S.D. Fla. Aug. 9, 2010). In effect, when a party fails to deny allegations and thus admits them under Rule 8(b)(6), there is "no further burden upon [the] [p]laintiff to prove its case factually." *Stewart v. Regent Asset Mgmt. Solutions*, No. 1:10-CV-2552-CC-JFk, 2011 U.S. Dist. LEXIS 50046, 2011 WL 1766018, at *1 (N.D. Ga. May 4, 2011) (quoting *Burlington N. R.R. Co. v. Huddleston*, 94 F.3d 1413, 1415 (10th Cir. 1996)).

**IV.  Because Malibu did not answer Doe's counterclaim allegations, Rule 8(b)(6) requires the Court to find that Malibu admits the allegations.**

After the Court denied Malibu's motion to dismiss Doe's counterclaims, Malibu had 14 days to answer those counterclaims. Fed. R. Civ. P. 12(a)(4)(A) (instructing that if a court denies a Rule 12 motion, "the responsive pleading must be served within 14 days after notice of the court's action.") The Court denied Malibu's motion over three months ago. Yet Malibu has not answered Doe's counterclaims. Thus, Rule 8(b)(6) requires the Court to find Malibu has admitted Doe's counterclaim allegations.

**V.  The undisputed facts.**

Malibu's allegations, declarations, and Rule 8(b)(6) admissions, along with Doe's declaration and judicial findings in similar cases, show the following undisputed facts.

**A.  Malibu has misused the copyright law and litigation process.**

Malibu produces and distributes pornographic films. (App. 8-9, App. 77 ¶ 9). Even though Malibu offers subscriptions to its films, it knows that free pornography pervades the internet, leaving its films with little market value. (App. 77 ¶¶ 98-99). So Malibu allows others to share its films, only to turn around and sue those sharers for copyright infringement. (*Id.*) Of course, Malibu's owner Collette Pelissier claims that Malibu's "intention in bringing these lawsuits is not

to cause financial hardship but instead to deter infringement and be compensated for the intentional theft of its videos." (App. 42 ¶ 19). But Malibu does not monitor and deter infringement using methods standard for the streaming media and movie industries. (App. 77 ¶ 100).

The chief way Malibu monitors copying is through IPP International UG ("IPP"). In 2011, Malibu hired IPP to act as its agent and monitor BitTorrent for sharing of Malibu's films. (App. 56 ¶ 6; App. 78 ¶¶ 101-105; App. 83 ¶ 131). Indeed, IPP has monitored BitTorrent for Malibu "thousands" of times. (App. 56 ¶¶ 6-7). To that end, Malibu instructs IPP to hide itself from other BitTorrent users and network owners. (App. 78 ¶ 104).

Malibu directs IPP to connect to BitTorrent users and download small pieces of data that Malibu contends correspond to parts of its copyrighted films. (App. 78 ¶ 102). Next, IPP uses this connection to identify an IP address associated with the piece of data sent over BitTorrent. (App. 58 ¶ 9; App. 78 ¶¶ 105-106). Then Malibu sues based on the IP address IPP identified. (App. 78 ¶ 105) This method is what led Malibu to sue on Doe's IP address. [App. 2-4; App. 58 ¶¶ 9-13).

But Malibu sued Doe knowing its method is flawed. (App. 70 ¶ 108). First, Malibu does not directly compare any pieces of BitTorrent data IPP received from an IP address with its full copyrighted films. (App. 80 ¶ 118). Second, Malibu admits that while an IP address might link to the person paying an internet bill, that IP address often does not link to the person who sends data over BitTorrent. (App. 79 ¶ 107). Indeed, many other courts have found that IP addresses alone cannot identify a specific person sharing files over BitTorrent. *E.g.*, *Cobbler Nevada, LLC v. Gonzales,* 901 F.3d 1142, 1145 (9th Cir. 2018*)*; *Malibu Media LLC v. Duncan,* No. 4:19-CV-02314, 2020 U.S. Dist. LEXIS 20905 at *5 (S.D. Tex. Feb. 4, 2020); *Malibu Media, LLC v. Peled*, No.: 2:18-cv-00141-KSH-CLW, 2020 U.S. Dist. LEXIS 28768, at *15-16 (D.N.J. Feb. 20, 2020); *Malibu Media, LLC v. Doe*, 2018 U.S. Dist. LEXIS 207655, 2018 WL 6446404 (N.D. Ill. Dec. 10,

2018).

Yet Malibu continues to file hundreds of lawsuits relying on this method—including dozens of lawsuits in this District in 2019—while seeking to unmask anonymous internet users. (App. 79 ¶ 110; *see also* Dkt. 6, Notice of Related Cases). Malibu uses its flawed method to monetize its copyrights, forcing internet users to choose between paying a settlement disproportionate to the value of Malibu's works, or risking embarrassment and reputation damage if linked by name to Malibu's allegations. (App. 79-80 ¶¶ 109, 112). This was Malibu's goal in suing Doe. (App. 81 ¶ 123).

What is more, Malibu asked the Court to unmask Doe using defective declarations. (App.38-59). First, Pelissier's declaration is undated. (App. 44). Second, the declaration from Malibu's consultant Patrick Paige discussing Malibu's infringement detection method is dated in 2016. (App. 55). This shows Paige's declaration is obsolete and not credible given the speed at which technology like BitTorrent develops. (*Id.*; App. 82 ¶ 127). And third, it appears the date on Malibu's declaration from its IPP representative is July 2015. (App. 59). But this is two years before the first date of alleged infringement. (App. 8-9, App. 82 ¶ 126]. Malibu submitted these declarations before making admissions under Rule 8(b)(6).

**B. Malibu's accessed Doe's network without his consent.**

Malibu describes how its IPP made a TCP/IP connection between its servers and some device using Doe's IP address. (App. 4 ¶ 18, App. 58 ¶ 13). In doing so, Malibu knowingly accessed Doe's network or system without his consent. (App. 83 ¶ 131, App. 88 ¶ 8). On top of this, Malibu directed IPP to access Doe's network to get information for Malibu's pattern of abusive and improper copyright litigation. (App. 83 ¶ 133). And Malibu accessed Doe's network despite knowing the strong likelihood that the subscriber associated with an IP address often is not

the person who accesses and distributes data over BitTorrent. (*Id.*)

**C. Doe did not access or copy any of Malibu's claimed copyrights.**

Between 2017 and 2019, Doe never used BitTorrent. (App. 87 ¶ 6). Nor did Doe install or maintain BitTorrent on any device he used between 2017 and 2019. (*Id.*) Nor did Doe view any of the films Malibu lists in its complaint. (App. 88 ¶ 7). And Doe never accessed, copied, stored, or distributed any of these films. (*Id.*)

By contrast, Malibu offers no convincing evidence of infringement. Malibu concedes that

> 9.    Plaintiff only knows Defendant by the IP Address he or she used to commit the complained of infringement (the "Subject IP Address"). The Subject IP Address is set forth on Exhibit A.

(App. 2, ¶ 9). Yet Malibu also concedes that IP addresses alone cannot identify a person or device using an IP address, and thus alone cannot show an infringer. (App. 79-80 ¶¶ 107-108, 117). Nor does Malibu deny denied Doe's statement that "Defendant did not infringe the copyrights identified in Plaintiff's Complaint." (*See* App 80 ¶ 116).

While Malibu claims IPP "downloaded…one or more pieces" of the copyrighted works from Doe's IP address (App. 4 ¶ 19-20), Malibu admits it never compared these pieces with the data composing the full copyrighted films. (App. 80 ¶ 118). Indeed, Malibu does not even identify what "pieces" of its works it believes Doe copied. (*See generally* App. 1-11, Malibu Complaint; App. 56-59, T. Fiser Decl.) And what is more, these data pieces cannot display or perform even a part of Malibu's films. (App. 78 ¶ 106).

So instead, Malibu relied on third-party data unassociated with Doe's IP address to "recreate" its work. [*Id.,* App. 81 ¶ 124). Malibu also asserts that it used unique hash values to identify the pieces of the digital media files that correspond to its films. (App. 3-4 ¶¶ 15-20; App. 58 ¶¶ 10-11). But Malibu offers no allegations or competent evidence that shows any audiovisual

material the hash value identifies. In the end, Malibu can offer no evidence that Doe was the person

they allege used BitTorrent to share Malibu's films.

## VI. The Court should grant summary judgment on liability for Doe's two counterclaims seeking damages.

Because the undisputed facts show Malibu accessed Doe's network without his consent,

the Court should grant Doe judgment on liability for his Texas harmful computer access claim.

Likewise, because the undisputed facts show Malibu misused legal process to extort payment from

Doe, the Court should grant Doe judgment on liability for his abuse of process claim.

### A. Because there is no genuine dispute over facts on Doe's counterclaim under the Tex. Civ. Prac. & Rem. Code § 143, the Court should grant summary judgment.

#### 1. The elements for liability under Tex. Civ. Prac. & Rem. Code § 143.

Tex. Civ. Prac. & Rem Code provides that "[a] person who is injured or whose property

has been injured as a result of a violation under Chapter 33, Penal Code, has a civil cause of action

if the conduct constituting the violation was committed knowingly or intentionally." In turn, Tex.

Penal Code 33.01 prohibits "knowingly access[ing] a computer, computer network, or computer

system without the effective consent of the owner." Tex. Pen. Code § 33.02(a). The statute also

includes a distinct violation for unauthorized access with the intent to harm. *Id.* § 33.02(b-1).

Above all, the law defines "access" broadly. "Access" includes, for example, "to approach,

instruct, communicate with. . . retrieve or intercept data from. . . or otherwise make use of any

resource of a computer, computer network, computer program, or computer system." Tex. Pen.

Code 33.01(1). The statute also defines "Computer," "computer network," and "computer system"

broadly. *Id.* § 33.01(4)-(5), (8).

#### 2. There is no genuine dispute that Malibu accessed Doe's network without Doe's effective consent and intending to harm Doe.

First, IPP is Malibu's agent. Indeed, Malibu instructs IPP to monitor for potential

8

infringements over BitTorrent and to connect to potential infringers. (App. 4 ¶ 18; App. 57 ¶¶ 6-7; App. 78 ¶ 102; App. 83 ¶ 131). That is why Malibu is liable for all of IPP's acts and omissions related to Doe's computer network and systems.

IPP connected its servers to Doe's computer network or computer system. (App. 4 ¶ 18, App. 58 ¶ 13). This connection is "access" under Tex. Penal Code § 33.01, because connecting necessarily means "approaching" and "communicating with" a network or system. Likewise, IPP's download of data from Doe's network or system was "retrieving" data. (App. 4 ¶¶ 19-21; App. 58 ¶¶ 9-13). This also meets the definition of "access" under the statute. Finally, Malibu, through IPP, accessed Doe's network without his effective consent. (App. 83 ¶ 131, App. 88 ¶ 8). These facts show Malibu violated Tex. Penal Code § 33.02(a)

In fact, Malibu also violated Tex. Penal Code § 33.02(b-1) because it accessed Doe's network or system intending to harm. (App. 83 ¶ 133). In particular, Malibu wanted to get IP address information to add another lawsuit to its campaign of coercing settlements despite knowing that an IP subscriber often is not the person who shares works over BitTorrent. (*Id.*)

Finally, Malibu can offer no evidence to show any genuine dispute over these facts. So the Court should grant Doe summary judgment on liability under Tex. Civ. Prac. & Rem. Code §143.

**B. Because there is no genuine dispute over the facts on Doe's abuse of process counterclaim, the Court should grant summary judgment.**

**1. Legal standard for abuse of process.**

Abuse of process is the malicious misuse or misapplication of process to accomplish an ulterior purpose. *Baubles & Beads v. Louis Vuitton, S.A*., 766 S.W.2d 377, 378 (Tex. App.–Texarkana 1989, no writ) (citations omitted). Put another way, abuse of process is when one "uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process."

9

*Hutchison v. Brookshire Bros., Ltd*., 205 F. Supp. 2d 629, 644 (E.D. Tex. 2002) (citing Restatement (Second) of Torts § 682) Three elements compose abuse of process: "(1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process; and (3) damage to the plaintiff as a result of such illegal act." *Id.*

### 2. There is no genuine dispute that Malibu has made an improper or perverted use of legal process.

Malibu identifies and sues potential infringers based on an IP address it identifies through "pieces" of digital data sent from that IP address. (App. 3-4 ¶¶ 13-22; App. 58 ¶¶ 9-13; App. 78 ¶¶ 102, 105-106). But Malibu cannot dispute that it knows this method is unreliable. First, Malibu admits that IP addresses correspond only to ISP accounts and cannot positively identify infringers. [Counterclaim ¶ 107]. Second, Malibu does not directly compare any pieces of BitTorrent data IPP received from an IP address with its full copyrighted films. (App. 80 ¶ 118). Indeed, these pieces are not large enough to identify whether a BitTorrent user has copied enough of a film to constitute copyright infringement. (*Id.* ¶ 106). So it is no surprise that courts have confirmed these methods to identify alleged infringers on BitTorrent are unreliable. *E.g.*, *Cobbler Nevada, LLC*, 901 F.3d at 1145 (9th *Duncan,* 2020 U.S. Dist. LEXIS 20905, 2020 WL 567105, at *5; *Peled*, 2020 U.S. Dist. LEXIS 28768 at *15-16; *Malibu Media, LLC v. Doe*, 2018 U.S. Dist. LEXIS 207655 (N.D. Ill. Dec. 10, 2018).

Despite knowing these flaws, Malibu has sued and continues to sue many people who never shared or interacted with Malibu or any of its content. (App. 79 ¶ 109; *see also* Dkt. 6, Notice of Related Cases). This includes Doe, as he shows in this motion. And on the rare occasion an infringer stands up to Malibu, Malibu has cut and run based on its "business decision." (App. 79

¶¶ 108) (citing *Malibu Media v. Tim McManus*, Case No. 2:17-cv-01321-WJM-M (D.N.J.)).

In short, Malibu files copyright lawsuits recklessly. This is an improper and perverse use of the legal process and copyright laws. Above all, Malibu sues wagering that defendants are likely to settle rather than spend time in court, pay legal bills, and suffer embarrassment proving their innocence. (*Id.* ¶ 109). This was Malibu's goal suing Doe. (App. 81 ¶ 123).

And Malibu extended its improper use of the legal process even more here, by asking the Court to unmask Doe using defective declarations. (App. 38-59). Because Malibu has not timely served any expert disclosure or taken any discovery, it presumably is relying on those defective declarations as the entire basis for its case. Malibu's use of these declarations to unmask and coerce Doe highlights how it has abused the legal process.

### 3. There is no genuine dispute that Malibu maintains an ulterior purpose in abusing the legal process.

The undisputed facts showing Malibu's abuse of process also show its ulterior motive. In sum, Malibu uses the legal process as tool for coercing settlements, without caring if it sues the right defendant. To that end, Malibu uses its copyrights to purposely provoke unwitting BitTorrent users to share Malibu's pornographic films. (App. 77-79 ¶¶ 99-109; App. 81 122-24). And it does this knowing its films have little market value. (App. 77 ¶¶ 98-99). That Malibu does not use industry standards to police its copyrights confirms this fact. (*Id.* ¶ 100).

This case follows Malibu's ulterior purpose to a tee. And in fact, Malibu's own conduct highlights its ulterior purpose. Despite discovery opening in January, Malibu has served no discovery requests. (App. 88 ¶ 9). It has not asked to inspect Doe's computer. (*Id.*) And it has served no expert disclosures, even though the deadline was July 1. (*Id.* ¶ 10). This inaction shows Malibu has no interest in anything but stringing this case out, hoping Doe gives up and settles rather than spend more resources defending Malibu's unjustified claim.

11

**4.   There is no genuine dispute that Malibu's abuse of process has harmed and continues to harm Doe.**

Malibu admits its abuse of process caused and continues to cause Doe to spend substantial time and money defending his good name. (App. 82 ¶ 129).  Likewise, Doe has suffered mental and physical anguish and harm to his professional activities. (*Id.*) Thus, Malibu's abuse of process harmed Doe. While the amount of damages Doe may cover should proceed to trial, these undisputed facts show Doe has the right to summary judgment on liability for his abuse of process claim.

## VII.   The Court should enter a declaratory judgment on Doe's non-infringement counterclaim.

### A.   Elements of copyright infringement.

Copyright infringement requires that a plaintiff prove it "(1) owns a valid copyright and (2) the defendant copied constituent elements of the plaintiff's work that are original." *Baisden v. I'm Ready Prods., Inc*., 693 F.3d 491, 499 (5th Cir. 2012). This "copying" element requires proof "(1) that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." *Peel & Co. v. Rug Mkt*., 238 F.3d 391, 394 (5th Cir. 2001). In turn, to "determine whether an instance of copying is legally actionable, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'" *Id.* at 395. And so summary judgment "is appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity of ideas and expression." *Id.*

**B. There is no genuine dispute that Doe did not access any of Malibu's alleged copyright films.[2]**

Malibu's alleges that Doe infringed its films because Malibu observed BitTorrent data corresponding to its films coming from an IP address associated with Doe's internet subscription. But this is lacking for three reasons. First, Doe never used BitTorrent during the period Malibu alleges. (App. 87 ¶ 6). Second, he did not knowingly install or maintain BitTorrent on any of his devices during the alleged infringement period. (*Id.*) And third, he never viewed or stored any of the films Malibu alleges. (App. 88 ¶ 7). These three facts alone show non-infringement. *See, e.g.*, *Malibu Media LLC v. Doe*, 2016 U.S. Dist. LEXIS 14798, at *21-22 (N.D. Ill. Feb. 8, 2016) (granting Doe defendant summary judgment on issue of infringement with no evidence that defendant used BitTorrent to access Malibu's films, installed BitTorrent on his device, or stored the films on his device).

On top of these facts, Malibu concedes non-infringement through its Rule 8(b)(6) admissions. (*E.g.,* App. 80 ¶¶ 116-19). And it must, because Malibu cannot offer any evidence to dispute Doe never used BitTorrent during the alleged infringement period or accessed Malibu's films. All Malibu has is (1) an IP address and (2) what it claims are "one or pieces" downloaded from BitTorrent that correspond to its films. [Dkt. 1, Compl. ¶ 19-20]. Indeed, Malibu fails to identify what "pieces" of its works it believes Doe copied. (*See generally* App. 1-11, Malibu Complaint;  App. 56-59, T. Fiser Decl.) These evidentiary failures cement why there is no genuine dispute that Doe did not access Malibu's alleged films.

For these reasons, the Court should render declaratory judgment of non-infringement.

---

[2] Doe is not addressing the element of ownership on summary judgment. But he maintains his denial on Malibu's claim to ownership in the alleged copyrights. (App. 66 ¶ 23).

**C. There is no genuine dispute that the digital media pieces Malibu monitored are not substantially similar to Malibu's alleged copyrighted films.**

Malibu admits it never compared the "pieces" of the digital media files it monitored over BitTorrent with the data composing the full copyrighted films. (App. 80 ¶ 118). And even if it did, these data pieces are too small to display or perform even a part of Malibu's films. (App. 78 ¶ 106). Indeed, the Fiser declaration Malibu filed in support of its subpoena motion to identify what constituent elements the BitTorrent user associated with Doe's IP address allegedly copied. (App. 56-59).

In contrast, Fiser merely concludes the digital movie file identified from a hash value was "substantially similar" to a Malibu's film. (App. 58 ¶ 11). But as another district court observed, this sort of conclusion is not enough to show what constituent elements of Malibu's films a defendant allegedly copied. *Malibu Media LLC v. Doe*, 2016 U.S. Dist. LEXIS 14798 at *24-25 (N.D. Ill. Feb. 8, 2016) (concluding "[e]ven if the hash value captured in the PCAP corresponds to portion of a digital file that is 'identical, strikingly similar or substantially similar to' Malibu's copyrighted work, there is nothing before the court that describes the audio/visual material that is represented by that hash value.") There is no genuine dispute over lack of substantial similarity. This is another reason the Court should grant summary judgment and issue a declaratory judgment of non-infringement.

**VIII. The Court should grant Doe summary judgment on Malibu's claim for copyright infringement.**

For the same reasons showing why the Court should grant Doe summary judgment on his non-infringement counterclaim, the Court should also grant Doe summary judgment on Malibu's sole claim for copyright infringement.

### IX.    Granting Doe summary judgment before discovery ends is appropriate given Malibu's lack of effort.

While discovery does not close until October, the circumstances show the Court need not wait until then to grant summary judgment. Malibu has shown no interest in seeking discovery. Nor did it meet its Rule 26(a)(2) expert disclosure deadline.

Even if Malibu started making last-minute discovery requests, particularly about infringement, they would be futile. Suppose Malibu requests a forensic examination of Doe's computer. Whatever the examination revealed, Malibu could not introduce necessary expert testimony about it because Malibu missed the expert disclosure deadline. Even more, Malibu's admissions emphasize the futility of any discovery requests it might make.

The bottom line is the record is now complete enough to show the material facts are settled and thus Doe is entitled to judgment as a matter of law on liability. Still, the above considerations of fairness and justice emphasize why summary judgment is appropriate, and perhaps even necessary, at this point in the case.

### X.  Conclusion

The record shows there is no genuine dispute of fact over Doe's three counterclaims or Malibu's sole claim. Malibu can no longer try to extend this case and its grip on Doe. The record, the law, and considerations of justice all make summary judgment appropriate here.

For these reasons, Doe asks that the Court (1) grant Doe summary judgment on Doe's request for a declaratory judgment of non-infringement and Malibu's claim of copyright infringement, and (2) grant Doe summary judgment on liability over Doe's counterclaims for abuse of process and harmful computer access, leaving only damages for trial.

Dated: July 17, 2020                              Respectfully,

                                                  /s/ JT Morris
                                                  JT Morris
                                                  Texas State Bar No. 24094444
                                                  jt@jtmorrislaw.com
                                                  Ramzi Khazen
                                                  Texas State Bar No. 24040855
                                                  ramzi@jtmorrislaw.com
                                                  JT Morris Law, PLLC
                                                  1105 Nueces Street, Suite B
                                                  Austin, Texas 78701
                                                  Tel: 512-717-5275
                                                  Fax: 512-582-2948

                                                  Attorneys for Defendant John Doe

<u>**CERTIFICATE OF SERVICE**</u>

Pursuant to the Federal Rule of Civil Procedure and the Local Rules, a true and correct copy of the foregoing was served on all counsel of record by E-File on July 17, 2020.


/s/  JT Morris

JT Morris

17