# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

MALIBU MEDIA, LLC,

Plaintiff,

vs.

JOHN DOE,

Defendant.

CIVIL ACTION NO.  5-19-CV-00834-DAE

## APPENDIX TO DEFENDANT JOHN DOE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1.  Malibu Media, LLC's Original Complaint…………………………………...App. 1-11

2.  Malibu Media LLC's Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference and Appendix…………………………………………….App. 12-62

    a.  Declaration of Collette Pelissier………………………………………….App. 38-44

    b.  Declaration of Patrick Paige…………………………………………...App. 45-55

    c.  Declaration of Tobias Fiser……………………………………………App. 56-59

3.  Defendant John Doe's Answer and Counterclaims…………………………App. 63-86

4.  Declaration of John Doe……………………………………………………App. 87-88

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

MALIBU MEDIA, LLC,          )
                                         )
        Plaintiff,          )   Civil Action Case No._____
                                         )
v.                                      )
                                       )
JOHN DOE infringer using     )
IP address 70.121.72.191,     )
                                       )
        Defendant.        )
_____)

## MALIBU MEDIA, LLC ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

     Plaintiff, Malibu Media, LLC, files this Original Complaint and sues Defendant John Doe using IP address 70.121.72.191, and alleges:

### Introduction

     1.     This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

     2.     Defendant is a persistent online infringer of Plaintiff's copyrights. Indeed, Defendant used the IP address as set forth on Exhibit A to illegally distribute each of the copyrighted movies set forth on Exhibit B.

     3.     Plaintiff is the registered owner of the copyrights set forth on Exhibit B (the "Copyrights-in-Suit").

### Jurisdiction And Venue

     4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).

ORIGINAL COMPLAINT

App. 001

5. Plaintiff used proven IP address geolocation technology which has consistently worked in similar cases to ensure that the Defendant's acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District, and therefore this Court has personal jurisdiction over the Defendant because (i) Defendant committed the tortious conduct alleged in this Complaint in this State, and (ii) Defendant resides in this State and/or (iii) Defendant has engaged in substantial and not isolated business activity in this State.

6. Based upon experience filing over 1,000 cases the geolocation technology used by Plaintiff has proven to be accurate to the District level in over 99% of the cases.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (ii) the Defendant resides (and therefore can be found) in this District and resides in this State; additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant or Defendant's agent resides or may be found in this District.

**Parties**

8. Plaintiff, Malibu Media, LLC, (d/b/a "X-Art.com") is a limited liability company organized and existing under the laws of the State of California and has its principal place of business located at 30700 Russell Ranch Road, Suite 250, Westlake Village, CA 91362.

9. Plaintiff only knows Defendant by the IP Address he or she used to commit the complained of infringement (the "Subject IP Address"). The Subject IP Address is set forth on Exhibit A.

10. The Internet Service Provider can identify the account holder of the Subject IP Address, an individual who may be the complained of infringer, or who may reasonably have

ORIGINAL COMPLAINT

information calculated to lead to the discovery of the Defendant.

## **Factual Background**

*I.*     *Defendant Used the BitTorrent File Distribution Network To Infringe Plaintiff's Copyrights*

11.     The BitTorrent file distribution network ("BitTorrent") is one of the most common peer-to-peer file sharing systems used for distributing large amounts of data, including, but not limited to, digital movie files.

12.     BitTorrent's popularity stems from the ability of users to directly interact with each other in order to distribute a large file without creating a heavy load on any individual source computer and/or network. The methodology of BitTorrent allows users to interact directly with each other, thus avoiding the need for intermediary host websites which are subject to DMCA take down notices and potential regulatory enforcement actions.

13.     In order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces.  Users then exchange these small pieces among each other instead of attempting to distribute a much larger digital file.

14.     After the infringer receives all of the pieces of a digital media file, the infringer's BitTorrent client software reassembles the pieces so that the file may be opened and utilized.

15.     Each piece of a BitTorrent file is assigned a unique cryptographic hash value.

16.     The cryptographic hash value of the piece ("piece hash") acts as that piece's unique digital fingerprint.  Every digital file has one single possible cryptographic hash value correlating to it.  The BitTorrent protocol utilizes cryptographic hash values to ensure each piece is properly routed amongst BitTorrent users as they engage in file sharing.

17.     The entirety of the digital media file also has a unique cryptographic hash value

3

ORIGINAL COMPLAINT

("file hash"), which acts as a digital fingerprint identifying the digital media file (e.g. a movie). Once infringers complete downloading all pieces which comprise a digital media file, the BitTorrent software uses the file hash to determine that the file is complete and accurate.

18.    Plaintiff's consulting expert, IPP International UG ("IPP") established a direct TCP/IP connection with the Defendant who was using the Subject IP Address as set forth on Exhibit A.

19.    IPP downloaded from Defendant one or more pieces of each of the digital media files, as identified by the file hashes listed on Exhibit A.

20.    Each digital media file as identified by the file hash listed on Exhibit A correlates to a copyrighted film owned by Plaintiff, as set forth on Exhibit B.

21.    A full copy of each digital media file was downloaded from the BitTorrent file distribution network, and it was confirmed through independent calculation that the file hash correlating to each file matched what is listed on Exhibit A. At no point was Plaintiff's copyrighted content uploaded to any other BitTorrent user.

22.    Each digital media file as identified by the file hash listed on Exhibit A has been verified to be a copy that is identical (or alternatively, strikingly similar or substantially similar) to Plaintiff's corresponding original work.

23.    Plaintiff owns the copyrights to the original works (the "Copyrights-in-Suit"). An overview of the Copyrights-in-Suit, including each hit date, date of first publication, effective date of registration as assigned by the United States Copyright Office, and registration number issued by the United States Copyright Office is set forth on Exhibit B.

24.    Defendant downloaded, copied, and distributed a complete copy of Plaintiff's works without authorization as enumerated on Exhibit A.

4

ORIGINAL COMPLAINT

25.     IPP connected, over a course of time, with Defendant who was using the Subject IP Address for each digital media file identified by the hash value as listed on Exhibit A.  The most recent TCP/IP connection between IPP and the Defendant using the Subject IP Address for each file hash value listed on Exhibit A is included within the column labeled Hit Date UTC.  UTC refers to Universal Time which is utilized for air traffic control as well as for computer forensic purposes.

26.     Plaintiff's evidence establishes that Defendant is a habitual and persistent BitTorrent user and copyright infringer.

## Miscellaneous

27.     All conditions precedent to bringing this action have occurred or been waived.

28.     Plaintiff has retained counsel and is obligated to pay said counsel a reasonable fee for their services.

## COUNT I
## Direct Infringement Against Defendant

29.     The allegations contained in paragraphs 1-28 are hereby re-alleged as if fully set forth herein.

30.     Plaintiff is the owner of the Copyrights-in-Suit, as outlined in Exhibit B, each of which covers an original work of authorship.

31.     By using BitTorrent, Defendant copied and distributed the constituent elements of each of the original works covered by the Copyrights-in-Suit.

32.     Plaintiff did not authorize, permit or consent to Defendant's distribution of its works.

33.     As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

(A)     Reproduce the works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

5

ORIGINAL COMPLAINT

App. 005

(B)     Redistribute copies of the works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C)     Perform the copyrighted works, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the works' images in any sequence and/or by making the sounds accompanying the works audible and transmitting said performance of the works, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publicly" perform); and

(D)     Display the copyrighted works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the works nonsequentially and transmitting said display of the works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display).

34.     Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

WHEREFORE, Plaintiff respectfully requests that the Court:

(A)     Permanently enjoin Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted works;

(B)     Order that Defendant delete and permanently remove the digital media files relating to Plaintiff's works from each of the computers under Defendant's possession, custody or control;

(C)     Order that Defendant delete and permanently remove the infringing copies of the works Defendant has on computers under Defendant's possession, custody or control;

(D)     Award Plaintiff statutory damages per infringed work pursuant to 17 U.S.C. § 504 (a) and (c);

(E)     Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. §

6

ORIGINAL COMPLAINT

505;

(F)     Award Plaintiff pre-judgment and post-judgment interest at the maximum legal rate; and

(G)     Grant Plaintiff any other and further relief this Court deems just and proper.

## <u>DEMAND FOR A JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

By: /s/ Paul S. Beik
Paul S. Beik
Texas Bar No. 24054444
BEIK LAW FIRM, PLLC
8100 Washington Ave., Suite 1000
Houston, TX 77007
T: 713-869-6975
F: 713-868-2262
E-mail: paul@beiklaw.com
**ATTORNEY FOR PLAINTIFF**

ORIGINAL COMPLAINT

**IPP International U.G. Declaration Exhibit A**
**File Hashes for IP Address 70.121.72.191**

**ISP:** Spectrum
**Physical Location:** Cedar Park, TX

| Hit Date UTC | File Hash | Title |
|---|---|---|
| 05/05/2019 07:59:08 | 1B2CFE6B8C36391FC2B1F53792A5D35DD87AF510 | Kaisa Slippery and Wet |
| 12/30/2018 14:34:28 | 7B75F1D13DEA537ABF60DA52AABD5912921142AD | XXX Threeway Games |
| 12/25/2018 18:28:33 | E0F5AE588A3EB396863483FB8FD6AF8B15C29723 | Cum In For An Orgy |
| 07/29/2018 10:33:31 | 98227DC95A345136FB9445BE90BBB26249126C99 | Threeway Strip Poker |
| 07/24/2018 03:28:17 | 643BB7988E08D4713FEEF47A46F77D4A315A9F6A | Moving Day Sex |
| 07/07/2018 14:13:48 | 0294BB72CCDC51CD5DCE35057907DAA15DA461A6 | Supermodel Sex |
| 07/06/2018 20:56:58 | 418612CDA063819CF12372355DCD2C2573FD0337 | Truth or Dare |
| 07/26/2017 23:07:35 | E3B203419FB0600C8FEDA0E9A4EECBB9E77576D8 | Want To Fuck My Wife |
| 07/26/2017 14:23:53 | 29F22087D08778A5F07FA7D88C9F1B70E27DA387 | A Fucking Hot Threesome |

**Total Statutory Claims Against Defendant: 9**

EXHIBIT A

**Copyrights-In-Suit for IP Address 70.121.72.191**

**ISP:** Spectrum
**Location:** Cedar Park, TX

| Title | Registration Number | Date of First Publication | Effective Date of Registration | Most Recent Hit UTC |
|-------|--------------------|--------------------------|-------------------------------|---------------------|
| Kaisa Slippery and Wet | PA0002173482 | 05/03/2019 | 05/13/2019 | 05/05/2019 |
| XXX Threeway Games | PA0002078584 | 06/30/2017 | 08/30/2017 | 12/30/2018 |
| Cum In For An Orgy | PA0002139295 | 08/11/2018 | 08/27/2018 | 12/25/2018 |
| Threeway Strip Poker | PA0002133715 | 07/27/2018 | 08/02/2018 | 07/29/2018 |
| Moving Day Sex | PA0002133713 | 07/21/2018 | 08/02/2018 | 07/24/2018 |
| Supermodel Sex | PA0001967075 | 09/02/2015 | 09/07/2015 | 07/07/2018 |
| Truth or Dare | PA0001846099 | 05/16/2013 | 06/30/2013 | 07/06/2018 |
| Want To Fuck My Wife | PA0002042072 | 02/10/2017 | 03/25/2017 | 07/26/2017 |
| A Fucking Hot Threesome | PA0001957700 | 08/07/2015 | 08/17/2015 | 07/26/2017 |

**Total Malibu Media, LLC Copyrights Infringed:  9**

EXHIBIT B

WTX40

App. 009

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| MALIBU MEDIA, LLC | JOHN DOE infringer using IP address 70.121.72.191 |

| (b)  County of Residence of First Listed Plaintiff   Los Angeles County | County of Residence of First Listed Defendant   Williamson |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c)  Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Paul S. Beik, Beik Law Firm, PLLC.<br>8100 Washington Avenue, Ste. 1000<br>Houston, TX. 77007 - Tel: (713) 869-6975 | |

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
       Plaintiff

☒ 3   Federal Question
       *(U.S. Government Not a Party)*

☐ 2   U.S. Government
       Defendant

☐ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☒ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding

☐ 2   Removed from State Court

☐ 3   Remanded from Appellate Court

☐ 4   Reinstated or Reopened

☐ 5   Transferred from Another District *(specify)*

☐ 6   Multidistrict Litigation - Transfer

☐ 8   Multidistrict Litigation - Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
17 U.S.C.§ 101

Brief description of cause:
Copyright Infringement

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
150000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| July 15, 2019 | /s/ Paul S. Beik |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

App. 010

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)    Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)    County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)    Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.    Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 5:19-cv-00834-DAE |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE infringer using | ) | |
| IP address 70.121.72.191, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE AND INCORPORATED MEMORANDUM OF LAW

[Remainder of page intentionally left blank]

App. 012

## <u>TABLE OF CONTENTS</u>

**Statement of the Nature and Stage of the Proceedings** ................................................... 1

**Statement of the Issues and Standard of Review** ........................................................ 1

**I.      INTRODUCTION** ................................................................................. 3

**II.     FACTS** ................................................................................................. 4

    A.   Online Copyright Infringement Through the BitTorrent Protocol is a Serious and Significant Threat to Plaintiff's Business .................................................... 4

    B.   Courts throughout the Country Have Expressly Found that Malibu Media Litigates in Good Faith ............................................................................... 6

    C.   Plaintiff Does Not Solicit Settlements Prior to Serving a Defendant and Always Consents to Allowing a John Doe Defendant to Proceed Anonymously .............. 7

    D.   The Infringer ..................................................................................... 8

**III.    ARGUMENT** ........................................................................................ 8

    A.   Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant ........................................................................... 8

    B.   Good Cause Exists to Grant the Motion ......................................................... 10

       1.   Plaintiff Has Alleged a Prima Facie Claim for Copyright Infringement .......... 10

         *a.  Plaintiff Sufficiently and Plausibly Connects Defendant To The Infringement*.... 13

       2.   Plaintiff Has Clearly Identified Specific Information It Seeks Through Discovery ....................................................................................... 14

       3.   No Alternative Means Exist to Obtain Defendant's True Identity .................. 14

       4.   Plaintiff Needs the Subpoenaed Information to Advance the Asserted Claims 17

       5.   Plaintiff's Interest in Knowing Defendant's True Identity Outweighs Defendant's Interest in Remaining Anonymous .............................................. 18

    C.   Plaintiff Used Geolocation Technology to Make a Prima Facie Case of Personal Jurisdiction ........................................................................................ 19

**IV.     CONCLUSION** .................................................................................... 20

App. 013

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arista Records, LLC v. Doe*, 604 F.3d 110, 115 (2d Cir. 2010)....................................9, 18

*Arista Records, L.L.C. v. Tschirhart*, No. SA-05-CA-372-OG, 2006 U.S. Dist. LEXIS 101688 at * 8 (W.D. Tex. May 24, 2006) ....................................................18

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)........................................................10

*Blakeslee v. Clinton Cnty*, 336 Fed. Appx. 248, 250 (3d Cir. 2009)................................10

*Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 572 (6th Cir. 2010)..........10

*Clear Skies Nev., LLC v. Doe*, No. 16-1511, 2016 U.S. Dist. LEXIS 36187 (E.D. La. Mar. 18, 2016)........................................................................................14

*Colle v. Brazos County, Tex.*, 981 F.2d 237, 243 n.20 (5th Cir. 1993)..............................10

*Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 452 (C.D. Cal. 2007)......................18

*Combat Zone Corp. v. Does*, No. 3:12-CV-3927-B, 2013 U.S. Dist. LEXIS 8522 (N.D. Tex. Jan. 22, 2013)..............................................................................2, 9

*Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998)....................................................9

*Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) ............................................10

*Deniece Design, LLC v. Braun*, 953 F. Supp. 2d 765, 769 (S.D. Tex. 2013) ...................13

*Digital Sins, Inc. v. John Does 1-245*, No. 11 CIV. 8170 CM, 2012 WL 1744838 (S.D.N.Y. May 15, 2012)...........................................................................19

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)..............................10

*Green v. Doe*, 260 Fed. Appx. 717, 719 (5th Cir. 2007)............................................10

*In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003)................................11

*K-Beech, Inc. v. Does 1-41*, 2012 U.S. Dist. LEXIS 31803 (S.D. Tex. Mar. 8, 2012).....19

*Krueger v. Doe*, 162 F.3d 1173 (10th Cir. 1998) ...................................................10

*Lennar Homes of Tex. Sales & Mktg. v. Perry Homes, LLC*, 117 F. Supp. 3d 913, 922 (S.D. Tex. 2015)....................................................................................12

*Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980)................................................10

*Malibu Media LLC v. Doe*, No. 12-1342, 2012 U.S. Dist. LEXIS 167001 (C.D. Ill. Nov. 26, 2012)..........................................................................................16

*Malibu Media v. John Doe*, 15-cv-3504 (E.D.N.Y August 23, 2016) ............................13

*Malibu Media, LLC v. Doe*, 2013 U.S. Dist. LEXIS 99332 (S.D.N.Y. July 16, 2013) ...11, 13

*Malibu Media, LLC v. Doe*, 2015 U.S. Dist. LEXIS 94054 (S.D.N.Y. July 20, 2015) ....16

*Malibu Media, LLC v. Doe,* Civil Action No. 12-cv-02598-REB-MEH, 2013 U.S. Dist. LEXIS 59277 (D. Colo. Feb. 12, 2013) ........................................................6

App. 014

*Malibu Media, LLC v. Doe*, Civil Action No. 15-8252 (FLW), 2016 U.S. Dist. LEXIS 92069 (D.N.J. July 14, 2016) ...................................................................................... 17

*Malibu Media, LLC v. Doe*, No. 1:12-CV-263, 2012 U.S. Dist. LEXIS 170987 (N.D. Ind. Dec. 3, 2012) ............................................................................................................... 18

*Malibu Media, LLC v. Doe*, No. 1:15-cv-00366 (E.D. Va. July 23, 2015) ...................... 13

*Malibu Media, LLC v. Doe*, No. 14-cv-00223-MJG, 2014 U.S. Dist. LEXIS 130914 (D. Md. Sep. 18, 2014) ....................................................................................................... 7

*Malibu Media, LLC v. Does,* 950 F. Supp. 2d 779, 788 (E.D. Pa. 2013) ........................... 6

*Malibu Media, LLC v. Harris*, No. 1:12-cv-1117-WTL-MJD, 2013 U.S. Dist. LEXIS 100350 (S.D. Ind. July 18, 2013) ................................................................................ 13

*Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 782 (E.D. Pa. 2013) ..................................................................................................................................... 12

*Malibu Media, LLC v. John Does 1-5*, 285 F.R.D. 273, 278 (S.D.N.Y. 2012) ................. 6

*Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP (M.D. Fla. July 6, 2012) ............................................................................................................................. 7

*Malibu Media, LLC v. Pelizzo*, 604 F. App'x 879, 881 (11th Cir. 2015) ......................... 10

*Montoya v. FedEx Ground Package System, Inc*., 614 F.3d 145, 148 (5th Cir. 2010) ..... 13

*Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) ........................................................ 10

*Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 104 (E.D. Pa. 2005) .................... 14

*Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011) .................................... 10

*Raw Films, Ltd. v. Does*, No. 11-7248, 2012 U.S. Dist. LEXIS 41645 (E.D. Pa. Mar. 23, 2012) ........................................................................................................................... 18

*Ryland Grp., Inc. v. Travelers Indem. Co.*, CIVIL NO. A-00-CA-233 JRN, 2000 U.S. Dist. LEXIS 21412 (W.D. Tex. Oct. 25, 2000) ......................................................... 13

*Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 492 (1st Cir. 2011) ................... 14

*Spectrum Creations, Inc. v. Catalina Lighting, Inc.*, CIVIL ACTION NO. SA-00-CA-875-FB, 2001 U.S. Dist. LEXIS 11861 (W.D. Tex. July 31, 2001) ............................. 12

*St. Louis Group, Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011) ............................................................................................................................. 9, 10, 17

*UMG Recordings, Inc. v. Grande Communs. Networks, LLC*, No. A-17-CA-365-LY, 2018 U.S. Dist. LEXIS 32275 at *17 (W.D. Tex. Feb. 28, 2018) ................................ 11

*United States v. Allen*, 625 F.3d 830, 841 (5th Cir. 2010) ............................................... 15

*United States v. Baker,* 538 F.3d 324, 326 (5th Cir. 2008) .............................................. 15

*United States v. Orisakwe,* 624 F. App'x 149, 152 (5th Cir. 2015) .................................. 15

*United States v. Richardson,* No. 4:11CR3116, 2012 U.S. Dist. LEXIS 454 (D. Neb. Jan. 3, 2012) ....................................................................................................................... 19

*United States v. Roetcisoender*, 792 F.3d 547, 549 (5th Cir. 2015) ................................ 15

App. 015

*United States v. Tillotson*, 2:08-CR-33, 2008 WL 5140773 (E.D. Tenn. Dec. 2, 2008) .. 19

*Voltage Pictures, LLC v. Doe,* Civil Action No. 13-cv-01121-WYD-MEH, 2013 U.S.
  Dist. LEXIS 111132 (D. Colo. Aug. 7, 2013) ............................................................. 16

*Well Go USA, Inc. v. Unknown Participants Participants in Filesharing Swarm
  Identified*, 2012 U.S. Dist. LEXIS 137272 (S.D. Tex. Sept. 24, 2012) ..................... 2, 9

*Young v. Transp. Deputy Sheriff I*, 340 Fed. Appx. 368 (9th Cir. 2009) ........................ 10

**Statutes**

17 U.S.C. § 410(c) ........................................................................................................... 11

17 U.S.C. §106 ................................................................................................................. 11

**Rules**

Fed. R. Civ. P. 26(d)(1) ................................................................................................ 3, 8

App. 016

## Statement of the Nature and Stage of the Proceedings

This is a copyright infringement action brought against a John Doe Defendant known to Plaintiff only by the Internet Protocol ("IP") address he/she used to complete the infringement of Plaintiff's works (the "Subject IP Address"). Defendant is a long-term copyright infringer and was recorded infringing Plaintiff's content through the BitTorrent protocol. Because Plaintiff knows Defendant only by the IP address used to complete infringement, Plaintiff seeks leave to serve a subpoena on the Internet Service Provider ("ISP") that administers that IP address, so that it may learn the ISP account subscriber's name and address, and complete investigation into whether the subscriber is the infringer, or whether the subscriber has information calculated to lead to the discovery of the infringer, so that a Defendant may be particularly named and served with an Amended Complaint in this action.

## Statement of the Issues and Standard of Review

<u>Issue 1</u>: Should Plaintiff be granted leave to serve a subpoena on Defendant's ISP so that it may identify a Defendant with particularity?

<u>Standard of Review</u>: Plaintiff must demonstrate that it has "good cause" to serve a subpoena prior to a Rule 26(f) conference. To satisfy this standard, a plaintiff need only (1) make a *prima facie* showing of a claim of copyright infringement; (2) submit a specific discovery request; (3) credibly allege an absence of alternative means to obtain the requested discovery; (4) sufficiently articulate a central need for the subpoenaed information; and (5) viably show that the defendant has a minimal expectation of privacy. *See Well Go USA, Inc. v. Unknown Participants Participants in Filesharing Swarm*

MOTION FOR LEAVE                                   1

*Identified*, 2012 U.S. Dist. LEXIS 137272, *3 (S.D. Tex. Sept. 24, 2012) (citing *Arista Records*, 604 F.3d at 114); *Combat Zone Corp. v. Does*, No. 3:12-CV-3927-B, 2013 U.S. Dist. LEXIS 8522, at *12 (N.D. Tex. Jan. 22, 2013) (same).

**MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 26(d)(1), and upon the attached: (1) Declaration of Colette Pelissier in support of this motion; (2) Declaration of Patrick Paige in support of this motion; and (3) Declaration of Tobias Fieser in support of this motion, Malibu Media, LLC ("Plaintiff"), respectfully moves for entry of an order granting it leave to serve a third party subpoena on Spectrum, prior to a Rule 26(f) conference (the "Motion"). A proposed order is attached for the Court's convenience.

## I.    INTRODUCTION

Plaintiff, Malibu Media, (d/b/a "X-art.com") operates a popular subscription-based website.[1]  Plaintiff creates its own content which is being infringed on a massive scale. The Subject  IP address has been habitually used to infringe Plaintiff's copyrighted works. Accordingly, Plaintiff seeks leave to serve limited, immediate discovery on the Subject IP Address's ISP, Spectrum ,so that Plaintiff may complete investigation that might lead to Defendant's true identity.  Plaintiff is suing Defendant for using the Internet, specifically the BitTorrent file distribution network, to commit direct copyright infringement.

Because Defendant used the Internet to commit this infringement, Plaintiff only knows Defendant by the IP address used to complete the infringement.  The Subject IP address is assigned by the ISP.  Accordingly, the ISP can use the Subject IP address to identify the subscriber to the ISP account to which the Subject IP address is assigned.[2]

---

[1] *See, e.g.*, Declaration of Colette Pelissier, Appendix pp. 2-8.
[2] *See, e.g.*, Declaration of Patrick Paige, attached hereto as Appendix pp. 9-19.

MOTION FOR LEAVE                                3

Indeed, ISPs maintain internal logs, which record the date, time, and customer identity for each IP address assignment made by that ISP. Significantly, ISPs may maintain these logs for only a short period of time.[3]

Plaintiff seeks leave of Court to serve a Rule 45 subpoena on the ISP that assigned the Subject IP address. This subpoena will demand the true name and address of the subscriber to that ISP account. Plaintiff will only use this information to investigate and prosecute the claims made in its Complaint. Without this information, Plaintiff cannot investigation to determine the natural person responsible for the infringing behavior, nor can Defendant pursue this lawsuit to protect its valuable copyrights.

## II. FACTS

### A. <u>Online Copyright Infringement Through the BitTorrent Protocol is a Serious and Significant Threat to Plaintiff's Business</u>

Colette Pelissier is the owner of Malibu Media. *See* Appendix p. 3 at ¶ 3. Ms. Pelissier developed the X-Art.com business plan in 2010 while still working full time as a realtor in the Los Angeles market. *Id*. at ¶ 4. X-Art.com was created to address the lack of artistically produced adult oriented content suitable for upscale women and couples. *Id*. Ms. Pelissier chose the name 'X-Art' to reflect her artistic aspirations, and began investing all of her available money and resources into the production of content – particularly erotic

---

[3] *See, e.g.*, Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf, stating: "Some [ISP] records are kept for weeks or months; others are stored very briefly before being purged."

MOTION FOR LEAVE                                    4

movies with high production value and a cinematic quality. *Id.* at ¶ 8. She knew that the adult content industry was in financial crisis, and the odds of success for a new adult website were low. *Id.*

Despite the odds, her vision has come to fruition. Currently X-Art.com has tens of thousands of paying subscribers, but Malibu Media is finding it hard to grow and maintain the memberships when so many of the movies are being distributed for free, without authorization, by users of the Bittorrent Network. *See generally id.* As X-Art's subscriber base has grown, production expenditures have also grown. *Id.* at ¶ 9. Plaintiff spends over two million dollars a year producing content, and millions more each year to run the business. *Id.* For the first several years of operation, X-Art did not have significant issues with piracy. *Id.* at ¶ 10. However, once Plaintiff's content became well known and highly desirable, X-Art movies started ranking as the most downloaded adult content on several of the most popular torrent websites. *Id.* Malibu Media invests significant resources into pursuing all types of anti-piracy enforcement, such as Digital Millennium Copyright Act ("DMCA") takedown notices and direct efforts aimed at infringing websites. *Id*. at ¶ 21. Malibu Media is even working with law enforcement to stop the piracy of its movies. *Id.* Despite sending thousands of DMCA notices per week, the infringement continues. *Id*. at ¶ 22. And, if one searches for "X-Art" on a torrent website, the site will reveal thousands of unauthorized torrents available for free. *Id.* Plaintiff Malibu Media has filed suit in this judicial district and in judicial districts across the country seeking to deter and stop the infringement.

Plaintiff won the first ever BitTorrent copyright infringement lawsuit to reach trial. *Malibu Media, LLC v. Does,* 950 F. Supp. 2d 779, 788 (E.D. Pa. 2013). In his Memorandum Report after the conclusion of the trial, the Honorable Judge Baylson made a number of significant findings. Importantly, Judge Baylson found "Malibu has satisfied its burden of proof with substantial evidence and deserves a large award." *Id.*

**B.** <u>Courts throughout the Country Have Expressly Found that Malibu Media Litigates in Good Faith</u>

Judge Baylson expressly emphasized that "Malibu is *not* what has been referred to in the media and legal publications, and in the internet blogosphere, as a 'copyright troll' . . . . Rather, Malibu is an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works." *Id.* (emphasis in original). The Honorable Judge Hegarty of the District of Colorado has also acknowledged Plaintiff's good faith and stated: "the Court has . . . witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement." *E.g.*, *Malibu Media, LLC v. Doe,* Civil Action No. 12-cv-02598-REB-MEH, 2013 U.S. Dist. LEXIS 59277, at *22 n.3 (D. Colo. Feb. 12, 2013).

Other courts have opined that the criticism often attributed to filers of BitTorrent lawsuits is unwarranted when directed at Plaintiff. "[N]one of the instances of improper litigation tactics that have been brought to our attention involve plaintiff or plaintiff's counsel. We are reluctant to prevent plaintiff from proceeding with its case based only on a 'guilt-by-association' rationale." *Malibu Media, LLC v. John Does 1-5,* 285 F.R.D. 273, 278 (S.D.N.Y. 2012). "[Defendant] has not presented any evidence that Malibu has

MOTION FOR LEAVE 6

engaged in harassing behavior for the Court to consider, nor has the Court observed bad faith behavior or the use of improper tactics on its part thus far." *Malibu Media, LLC v. Doe, 291 F.R.D. 191, 208 (N.D. Ill. 2013); Malibu Media, LLC v. John Does 1-9,* 8:12-cv-00669-SDM-AEP [CM/ECF 25] *7 (M.D. Fla. July 6, 2012) (same); *Malibu Media, LLC v. Doe,* No. 14-cv-00223-MJG, 2014 U.S. Dist. LEXIS 130914, at *3 (D. Md. Sep. 18, 2014) ("Malibu has complied with these procedures and this Court is unaware of *any* allegations of abuse.").

C.   <u>Plaintiff Does Not Solicit Settlements Prior to Serving a Defendant and Always Consents to Allowing a John Doe Defendant to Proceed Anonymously</u>

Plaintiff has filed this suit for the sole purpose of protecting and enforcing its copyrights.

> We do not seek to use the Court system to profit from the infringement, the way some people suggest. As previously stated, revenues from subscriptions to X-Art.com are by far and away the dominant driver of Malibu Media's business. We want the infringement to stop. The purpose of these lawsuits is to motivate people to pay for subscriptions by deterring infringement and seek some reasonable compensation for the massive amount of infringement of our copyrights.

Appendix p.7 at ¶ 25. Plaintiff has no intention of embarrassing a defendant because of the content of the works at issue and has instructed all of its counsel to always consent to allowing defendants to proceed anonymously through discovery. Further, Plaintiff does not extend settlement offers prior to serving a defendant with the complaint and in all of its individual suits against a defendant, has only settled prior to serving when the defendant has initiated the request. Should the Court wish to include language in its Order preventing Plaintiff from initiating settlements with Defendant and allowing Defendant to proceed

App. 023

anonymously, Plaintiff will not object.

    D.   <u>The Infringer</u>

The Subject IP address was used to infringe 9 of Plaintiff's copyrighted movies between 07/26/2017 and 05/05/2019. *See* Exhibit A to Complaint. By downloading each of these movies through the BitTorrent protocol, Defendant simultaneously distributes these movies to others, allowing other people to also steal Plaintiff's movies. *See* Complaint, at ¶¶ 11–25.

The length of time which Plaintiff's investigator recorded Defendant utilizing the BitTorrent protocol to download and distribute works on the Internet demonstrates that the Infringer was not a mere guest or passerby. It was someone with access to the Subject IP address for a long period of time, consistently. Therefore, in many cases the subscriber to the ISP account may himself/herself be the infringer; or, in other cases, the subscriber to the ISP account is reasonably calculated to have information leading to the discovery of the infringer's identity. In all cases, without the discovery of the contact information for the ISP subscriber no good faith investigation may be undertaken by Plaintiff, and there would be no way for Plaintiff to enforce its copyrights against the rampant infringement occurring on BitTorrent.

## III.   ARGUMENT

    A.   <u>Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant</u>

Except for circumstances not applicable here, a party may not propound discovery in advance of a Rule 26(f) conference absent court order. *See* Fed. R. Civ. P. 26(d)(1).

Since the identification of the infringer is "*indispensable* for the vindication of [a] plaintiff's copyright rights," courts readily authorize expedited discovery in online copyright infringement cases.  *Arista Records, LLC v. Doe*, 604 F.3d 110, 115 (2d Cir. 2010).  Indeed, this district has adopted the "good cause" standard for expedited discovery, which, in essence, is "akin to a broader and more flexible totality of the circumstances analysis."  *St. Louis Group, Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011). *See also id.* at 240 (citing several cases throughout the Fifth Circuit that have also adopted this good cause approach).

To satisfy this standard, a plaintiff need only (1) make a *prima facie* showing of a claim of copyright infringement; (2) submit a specific discovery request; (3) credibly allege an absence of alternative means to obtain the requested discovery; (4) sufficiently articulate a central need for the subpoenaed information; and (5) viably show that the defendant has a minimal expectation of privacy.  *See Well Go USA, Inc. v. Unknown Participants Participants in Filesharing Swarm Identified*, 2012 U.S. Dist. LEXIS 137272, *3 (S.D. Tex. Sept. 24, 2012) (citing *Arista Records*, 604 F.3d at 114); *Combat Zone Corp. v. Does*, No. 3:12-CV-3927-B, 2013 U.S. Dist. LEXIS 8522, at *12 (N.D. Tex. Jan. 22, 2013) (same).

Federal Circuit Courts have consistently approved of this procedure of using expedited discovery to identify anonymous defendants.  For example, the Second Circuit stated in *Davis v. Kelly* that "courts have rejected the dismissal of suits against unnamed defendants . . . identified only as 'John Doe's . . . until the plaintiff has had some opportunity for discovery to learn the identities." 160 F.3d 917, 921 (2d Cir. 1998); *see*

*Green v. Doe*, 260 Fed. Appx. 717, 719 (5th Cir. 2007) ("Although the use of a "John Doe" is disfavored, it serves the legitimate function of giving a plaintiff the opportunity to identify, through discovery, unknown defendants.") (citing *Colle v. Brazos County, Tex.*, 981 F.2d 237, 243 n.20 (5th Cir. 1993)). *See also*, *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011) ("A plaintiff who is unaware of the identity of the person who wronged her can . . . proceed against a 'John Doe' . . . when discovery is likely to reveal the identity of the correct defendant."). *Accord Blakeslee v. Clinton Cnty*, 336 Fed. Appx. 248, 250 (3d Cir. 2009) (same); *Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 572 (6th Cir. 2010) (same); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) (same); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) (same); *Young v. Transp. Deputy Sheriff I*, 340 Fed. Appx. 368 (9th Cir. 2009) (same); *Krueger v. Doe*, 162 F.3d 1173 (10th Cir. 1998) (same); *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) (same). Courts have "routinely" granted expedited discovery requests in infringement cases so long as the moving party can show good cause. *St. Louis Group, Inc.*, 275 F.R.D. at 241. Moreover, the Eleventh Circuit found that Malibu Media's lawsuits "properly served the purposes of the Copyright Act." *Malibu Media, LLC v. Pelizzo*, 604 F. App'x 879, 881 (11th Cir. 2015).

B.   Good Cause Exists to Grant the Motion

1.   *Plaintiff Has Alleged a Prima Facie Claim for Copyright Infringement*

To sufficiently state a *prima facie* claim of infringement, Plaintiff must merely plausibly allege: (1) ownership of a valid copyright and (2) unauthorized copying of original elements of the copyrighted work. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff's Complaint

App. 026

meets these requirements:

30. Plaintiff is the owner of the Copyrights-in-Suit, as outlined in Exhibit B, each of which covers an original work of authorship.

31. By using BitTorrent, Defendant copied and distributed the constituent elements of each of the original works covered by the Copyrights-in-Suit.

32. Plaintiff did not authorize, permit or consent to Defendant's distribution of its works.

Complaint at ¶¶ 30–32. *See* 17 U.S.C. §106; *UMG Recordings, Inc. v. Grande Communs. Networks, LLC*, No. A-17-CA-365-LY, 2018 U.S. Dist. LEXIS 32275 at *17 (W.D. Tex. Feb. 28, 2018) (finding that the Plaintiff "pled enough facts to make a plausible claim that [the Defendant's] subscribers are infringing on its copyrights and distributing copies of works to others through use of the BitTorrent protocol."); *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003), *cert. denied*, 124 S. Ct. 1069 (2004) ("Teenagers and young adults who have access to the Internet like to swap computer files containing popular music. If the music is copyrighted, such swapping, which involves making and transmitting a digital copy of the music, infringes copyright."); *Malibu Media, LLC v. Doe*, 2013 U.S. Dist. LEXIS 99332, at *15 (S.D.N.Y. July 16, 2013) ("Plaintiff has made a concrete, prima facie case of copyright infringement by alleging ownership of the registered copyright and alleging unlawful downloading, copying, and distribution of this work by specifying the type of technology used, the IP address from which the file was accessed and shared, and the date and time of the infringement.").

Since Plaintiff obtained copyrights for its works from the United States Register of Copyrights, *see* CM/ECF 1-2 (providing registration numbers), it establishes *prima facie* evidence that its works are copyrightable and validly copyrighted. *See* 17 U.S.C. § 410(c);

"Copyright certificates of registration 'constitute prima facie evidence of the validity of the copyright[s].'" *Spectrum Creations, Inc. v. Catalina Lighting, Inc.*, CIVIL ACTION NO. SA-00-CA-875-FB, 2001 U.S. Dist. LEXIS 11861, at *21 (W.D. Tex. July 31, 2001).[4] Further, Plaintiff's *prima facie* allegations of infringement are attested to by Plaintiff's investigator, IPP International UG employee, Tobias Fieser. *See* Declaration of Tobias Fieser in Support of Plaintiff's Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference ("Fieser Declaration"), at ¶¶ 9-14, attached hereto as Appendix pp. 22-23. And, each digital file, as identified by a unique cryptographic file hash value, has been verified to be a copy or contain copies of one of Plaintiff's copyrighted works.

Indeed, the infringement detection system Plaintiff uses to identify infringers has been tested and deemed valid. *See generally* Declaration of Patrick Paige Appendix pp.9-19. During the first ever BitTorrent copyright lawsuit to reach trial, Judge Baylson likewise concluded Plaintiff's technology was valid. *See Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 782 (E.D. Pa. 2013) ("I concluded that Malibu had expended considerable effort and expense to determine the IP addresses of the infringing parties, and the technology employed by its consultants—both of whom were located in Germany and who testified at the trial of June 10, 2013—was valid."). Recently, the Eastern District of

---

[4] "The effect of such a certificate is to place the **burden** of proof on the alleged infringer to disprove the validity of the copyright." *Lennar Homes of Tex. Sales & Mktg. v. Perry Homes, LLC*, 117 F. Supp. 3d 913, 922 (S.D. Tex. 2015). *See also Spectrum Creations, Inc. v. Catalina Lighting, Inc*. at *21 ("Once the plaintiff has shown a certificate of copyright registration, the burden of proof shifts to the defendant to show copyright invalidity.")

New York held an evidentiary hearing evaluating technology used by Plaintiff and found "[Plaintiff's expert] offered credible testimony regarding the methods … used on behalf of Malibu Media in identifying the Doe Defendant's IP address as an infringer of its copyrighted material. Accordingly, Plaintiff's allegations and evidence submitted in support thereof are sufficient at this juncture to establish a prima facie claim for copyright infringement against Defendant." *Malibu Media v. John Doe*, 15-cv-3504 (E.D.N.Y August 23, 2016).

a. *Plaintiff Sufficiently and Plausibly Connects Defendant To The Infringement*

Since plausibility is the standard, "proof is not required to properly plead a claim for copyright infringement," and Plaintiff does not need to establish with 100% certainty that the individual assigned the infringing IP address, is the infringer. *Malibu Media, LLC v. Harris,* No. 1:12-cv-1117-WTL-MJD, 2013 U.S. Dist. LEXIS 100350, at *7 (S.D. Ind. July 18, 2013). Plaintiff must only plead enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *see Deniece Design, LLC v. Braun*, 953 F. Supp. 2d 765, 769 (S.D. Tex. 2013) (citing *Montoya v. FedEx Ground Package System, Inc*., 614 F.3d 145, 148 (5th Cir. 2010)). "The copyright owner, therefore, need not prove knowledge or intent on the part of the defendant to establish liability for direct copyright infringement." *Ryland Grp., Inc. v. Travelers Indem. Co.*, CIVIL NO. A-00-CA-233 JRN, 2000 U.S. Dist. LEXIS 21412 at *36 (W.D. Tex. Oct. 25, 2000). Consequently, Plaintiff's well-pled allegations constitute "a concrete, *prima facie* case of copyright infringement." *Malibu Media, LLC v. Doe*, 2013 U.S. Dist. LEXIS

App. 029

99332, at *15 (S.D.N.Y. July 16, 2013); *see also, e.g.*, *Malibu Media, LLC v. Doe*, No. 1:15-cv-00366, CM/ECF 16 (E.D. Va. July 23, 2015) ("It is reasonable to draw the inference that the party responsible for downloading . . . was the party responsible for the internet connection. Malibu Media is not required to prove its case at the pleading stage").

2. *Plaintiff Has Clearly Identified Specific Information It Seeks Through Discovery*

Plaintiff seeks to discover from the ISP the true name and address of the subscriber to the ISP account that was assigned the Subject IP address during the period of recorded infringement. This is all specific information in the possession of the ISP that will enable Plaintiff to investigate the identity of the proper Defendant and serve process on the proper Defendant. This limited and specific request satisfies the second good cause factor because it only seeks that which is necessary to enable Plaintiff to effectuate service on a proper Defendant and proceed with this lawsuit. "Given the allegedly high level of BitTorrent activity associated with [defendant], the Court is persuaded that although it is possible that "the infringer might be someone other than the subscriber," that is not the most likely scenario." *Clear Skies Nev., LLC v. Doe*, No. 16-1511, 2016 U.S. Dist. LEXIS 36187, at *10-11 (E.D. La. Mar. 18, 2016).

3. *No Alternative Means Exist to Obtain Defendant's True Identity*

There are no publicly-available databases or "yellow pages" that can identify an individual by an IP address; Plaintiff knows Defendant only by the IP address he or she used to complete the infringement. The government, law enforcement officials, criminal and civil judges, and ISPs alike all acknowledge that subpoenaing an ISP is the only way

to identify an internet subscriber.  Congress has also so found, and has expressly created this system for copyright holders to subpoena ISPs in order to identify copyright infringers.[5]

People using the Internet are anonymous to the public, but the ISPs responsible for assigning any given IP address "know who an address is assigned to and how to get in contact with them."[6]  ISPs' records "are the **only available evidence** that allows us to investigate who committed crimes on the Internet.  They may be the **only way to learn, for example, that a certain Internet address was used by a particular human being** to engage in or facilitate a criminal offense."[7]

The Government—and law enforcement in particular—also acknowledges that issuing a subpoena to the responsible ISP is the only way to identify the subscriber of an IP address.  Plaintiff's forensics expert has affirmed that during the eleven years he spent investigating computer crimes, the government **_always_** had to obtain subscribers' identifying information from ISPs.  *See* Appendix p. 13 at ¶¶ 13–16.  And, every single case that Plaintiff has reviewed supports this conclusion.  *See, e.g.*, *United States v. Baker,* 538 F.3d 324, 326 (5th Cir. 2008) (subpoenaing an ISP to identify IP address subscriber); *United States v. Orisakwe,* 624 F. App'x 149, 152 (5th Cir. 2015) (same); *United States v.*

---

[5] Major record labels and film studios also enforce their copyrights against piracy in the federal court system in this way.  *See, e.g.*, *Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 492 (1st Cir. 2011) ("Shortly after peer-to-peer networks first appeared, plaintiffs acknowledged the threat they posed to their industry and initiated a broad campaign to address the illegal infringement of copyrighted materials."); *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 104 (E.D. Pa. 2005) ("With the aid of other technological developments, the internet also has afforded users with opportunities to infringe on the rights of owners of copyrighted works, including motion pictures.").

[6] *Beginner's Guide to Internet Protocol (IP) Addresses* at p. 4, available at https://www.icann.org/en/system/files/files/ip-addresses-beginners-guide-04mar11-en.pdf.; *American Registry for Internet Numbers Number Resource Policy Manual* at 4.2, available at https://www.arin.net/policy/nrpm.html#four2.

[7] Statement from Jason Weinstein, n.3, *supra*.

*Wyss*, 542 F. App'x 401, 403 (5th Cir. 2013) (same); *United States v. Allen*, 625 F.3d 830,

841 (5th Cir. 2010) (same); *United States v. Roetcisoender*, 792 F.3d 547, 549 (5th Cir.

2015) (same).   District courts across the country likewise recognize this, routinely

explaining "the Court can think of no other reasonable way of discovering the infringer

than by permitting Plaintiff discovery into the identity of Doe." *Voltage Pictures, LLC v.*

*Doe,* Civil Action No. 13-cv-01121-WYD-MEH, 2013 U.S. Dist. LEXIS 111132, at *9

(D. Colo. Aug. 7, 2013).  In fact, a court very recently reaffirmed this point in the context

of one of Plaintiff's cases, denying a motion to quash and explaining that "subpoenaing the

ISP . . . is the *only* means to obtain identifying information" *Malibu Media, LLC v. Doe,*

2015 U.S. Dist. LEXIS 94054, at *4 (S.D.N.Y. July 20, 2015).  *See also John Wiley &*

*Sons, Inc.,* 284 F.R.D. at 190 ("[Plaintiff] has explained that the use of the BitTorrent

software is 'largely anonymous' except insofar as it requires a user to broadcast the user's

IP address . . . . [Plaintiff] has established that it lacks the means to obtain the subscriber's

identifying information, other than by subpoena."); *Sony Music Ent., Inc.,* 326 F. Supp. 2d

at 566 (finding no other method to obtain information than by subpoena under similar

circumstances);  *Malibu Media LLC v. Doe,* No. 12-1342, 2012 U.S. Dist. LEXIS 167001,

at *4 (C.D. Ill. Nov. 26, 2012) ("Because of the very nature of internet infringement, it is

often the case that a plaintiff cannot identify an infringer in any way other than by IP

number. Given the substantial federal policy underlying copyright law, it would be a

travesty to let technology overtake the legal protection of that policy.").

     Prior to seeking leave to subpoena Spectrum, Plaintiff searched for the Subject IP

address on various web search tools, including basic search engines like

App. 032

http://www.google.com.  Plaintiff further conducted its own research on its ability to identify a Defendant by reviewing numerous sources of authority, most of which have been discussed above (*e.g.*, legislative reports, agency websites, informational technology guides, governing case law, etc.).  Plaintiff also discussed the issue at length with its computer forensics investigator—an individual who was tasked with the responsibility of investigating and identifying cybercriminals for over ten years.  *See generally* Declaration of Patrick Paige, Appendix pp. 9-19.  And, Plaintiff discussed these issues with at least two different ISPs.[8]  In short, there is no way to obtain the identity of an Internet subscriber except from investigation through the IP address subscriber's ISP.

### 4. *Plaintiff Needs the Subpoenaed Information to Advance the Asserted Claims*

Without learning the Defendant's true identity, Plaintiff will not be able to serve the Defendant with process and proceed with this case.  Plaintiff's important statutorily protected property rights are at issue in this suit and, therefore, the equities weigh heavily in favor of preserving Plaintiff's rights.  That is, "[w]ithout Defendant's identifying information, Plaintiff would be unable to enforce its rights over the named copyrighted works." *Malibu Media, LLC v. Doe*, Civil Action No. 15-8252 (FLW), 2016 U.S. Dist. LEXIS 92069, at *11 (D.N.J. July 14, 2016).  Indeed, as set forth above, Plaintiff has chosen to file suit only against the worst of the worst infringers – *i.e.* those that have repeatedly stolen Plaintiff's content over a long period of time.

---

[8] The ISPs with whom Plaintiff consulted confirmed their unique ability to identify their Internet subscribers, but neither were willing to provide an affidavit absent court order.  Should these communications be pertinent to the Court's analysis, Plaintiff can supply them upon request.

Because identifying Defendant by name is necessary for Plaintiff to advance the asserted claims, Plaintiff has established the fourth good cause factor. *See St. Louis Group, Inc.*, 275 F.R.D. at 241 (noting "some courts have allowed limited, expedited discovery when failing to do so would have substantially impacted the case from progressing on the court's docket).

5. *Plaintiff's Interest in Knowing Defendant's True Identity Outweighs Defendant's Interest in Remaining Anonymous*

Finally, Plaintiff satisfies the fifth good cause factor because Plaintiff has a strong, legitimate, and Constitutionally-protected interest in protecting its copyrights. Defendant, on the other hand, is a systematic copyright infringer—who may only be discovered through the subscriber to an IP address that is being used to infringe copyrights. As a matter of law, Internet subscribers do not have a legitimate expectation of privacy in allowing their wireless Internet connections to be used to anonymously and illegally distribute copyrighted content. *See, e.g. Arista Records, L.L.C. v. Tschirhart*, No. SA-05-CA-372-OG, 2006 U.S. Dist. LEXIS 101688 at * 8 (W.D. Tex. May 24, 2006) ("A user of a P2P file-sharing network has little or no expectation of privacy in the files he or she offers to others for downloading."); *Raw Films, Ltd. v. Does*, No. 11-7248, 2012 U.S. Dist. LEXIS 41645, at *15 (E.D. Pa. Mar. 23, 2012); *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 452 (C.D. Cal. 2007). Nor does Defendant or the subscriber to the Subject IP address have an expectation of privacy in his/her identifying information "because [that information] has already been exposed to a third party, the Internet Service Provider." *Malibu Media, LLC v. Doe*, No. 1:12-CV-263, 2012 U.S. Dist. LEXIS 170987, at *1 (N.D.

MOTION FOR LEAVE                                    18

Ind. Dec. 3, 2012). Defendant's desire to remain anonymous is necessarily outweighed by Plaintiff's legal rights, so too is the ISP subscriber's right to remain anonymous while investigation of this claim is ongoing. *See Arista Records, LLC*, 604 F.3d at 117, 124 ("[T]o the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected"); *John Wiley & Sons*, 284 F.R.D. at 191 ("ISP subscribers have a minimal expectation of privacy in the transmission or distribution of copyrighted material.").

C.    Plaintiff Used Geolocation Technology to Make a Prima Facie Case of Personal Jurisdiction

As set forth in Plaintiff's Complaint, "Plaintiff used proven IP address geolocation technology which has consistently worked in similar cases to ensure that the Defendant's acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District". *See* Complaint at ¶ 5. Specifically, Plaintiff used Maxmind® Premium's IP geolocation database to determine that Defendant properly resided in a location both within the state of Texas and this district.

Other courts have recognized that "[w]hile such publicly available IP locators are not 100% accurate, they have been accepted as making out a prima facie case of personal jurisdiction." *Digital Sins, Inc. v. John Does 1-245*, No. 11 CIV. 8170 CM, 2012 WL 1744838, at *4 (S.D.N.Y. May 15, 2012). *Cf. K-Beech, Inc. v. Does 1-41*, 2012 U.S. Dist. LEXIS 31803, *4 (S.D. Tex. Mar. 8, 2012) (accepting IP address methodology as a means to identify infringers, but denying joinder of defendants). From Plaintiff's experience, Maxmind's Geolocation database has consistently predicted the location of the Defendant

App. 035

99% of the time. Indeed, this exact geolocation technology has also been relied upon by federal law enforcement. *See United States v. Tillotson,* No. 2:08-CR-33, 2008 U.S. Dist. LEXIS 120701, at *5 (E.D. Tenn. Nov. 13, 2008) (E.D. Tenn. Dec. 2, 2008) (noting that Maxmind's database correctly identified the Defendant and is sufficient to establish probable cause); *United States v. Richardson,* No. 4:11CR3116, 2012 U.S. Dist. LEXIS 454, at *4 (D. Neb. Jan. 3, 2012*) (used by Homeland Security to identify the defendant).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant leave to Plaintiff to issue a Rule 45 subpoena to the ISP that assigned the Subject IP Address.

Respectfully submitted,


By: /s/ Paul S. Beik
Paul S. Beik
Texas Bar No. 24054444
BEIK LAW FIRM, PLLC
8100 Washington Ave., Suite 1000
Houston, TX 77007
T: 713-869-6975
F: 713-868-2262
E-mail: paul@beiklaw.com
**ATTORNEY FOR PLAINTIFF**


## CERTIFICATE OF CONFERENCE

I hereby certify that I was unable to confer with Defendant because he or she has not yet been identified by investigation following the release by the Internet Service Provider of the Subject IP address.

By: /s/*Paul S. Beik*

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No. 5:19-cv-00834-DAE |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE infringer using | ) | |
| IP address 70.121.72.191, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### APPENDIX TO PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO A RULE 26(f) CONFERENCE AND ITS ACCOMPANYING MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Rule CV-7, Malibu Media, LLC, in support of its Motion for Leave and its accompanying Memorandum of Points and Authorities, submits the following declarations:

Exhibit A: Declaration of Colette Pelissier ...................................................... 2

Exhibit B: Declaration of Patrick Paige ........................................................... 9

Exhibit C: Declaration of Tobias Fieser ......................................................... 20

Respectfully submitted,


By: /s/ Paul S. Beik
Paul S. Beik
Texas Bar No. 24054444
BEIK LAW FIRM, PLLC
8100 Washington Ave., Suite 1000
Houston, TX 77007
T: 713-869-6975
F: 713-868-2262
E-mail: paul@beiklaw.com
**ATTORNEY FOR PLAINTIFF**

APPENDIX

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No. 5:19-cv-00834-DAE |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE infringer using | ) | |
| IP address 70.121.72.191, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF COLETTE PELISSIER IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO A RULE 26(f) CONFERENCE

[Remainder of page intentionally left blank]

**Exhibit A**

## DECLARATION OF COLETTE PELISSIER IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE

### I, COLETTE PELISSIER, DO HEREBY DECLARE:

1. I am over the age of eighteen (18) and otherwise competent to make this declaration.

2. The facts stated in this declaration are based upon my personal knowledge and, if called upon to do so, I will testify that the facts stated herein are true and accurate.

3. I own Malibu Media d/b/a as X-Art.com.  No other person or entity has or can claim an ownership interest in the X-Art.com movie copyrights.

4. I developed the X-Art.com business plan in 2010 while still working full time as a realtor in the Los Angeles market.   X-Art.com was created to address the lack of artistically produced adult oriented content suitable for upscale women and couples.

5. I invested significant time, along with all of my available financial resources, into the production of content for the new X-Art.com website.  I knew that the adult content industry was in financial crisis, and the odds of success for a new adult website were low.

1

6. After a difficult start, and with much effort, I was able to perfect the X-Art genre thus propelling the X-Art.com website into one of the top websites of its kind worldwide.

7. X-Art.com customers can pay a monthly recurring subscription fee of $29.95, or an annual subscription fee of $99.95 to access our entire library of HD Video content.

8. Internet subscription sales are and have always been by far X-Art.com's primary source of revenue, however, recent additional revenue streams have been created through the licensing of X-Art content to Fortune 500 companies operating within the hospitality industry.

9. As X-Art's subscriber base has grown, our production expenditures have also grown.  We spend over two million dollars a year producing content, and millions more each year to run our business.

10. For the first several years of operation, X-Art did not have significant issues with piracy.  However, once our content became well known and highly desirable, X-Art movies started ranking as the most downloaded adult content on several of the most popular torrent websites.

11. Currently we have tens of thousands of paying subscribers, but we are finding it hard to grow and maintain our subscriber base as so many of our movies are distributed for free, without authorization, by users of the Bittorrent

2

Network.   X-Art must protect its copyrights in order to survive and for any hope for future revenue growth.

12. The only redress against Bittorrent based piracy is to initiate lawsuits against the Bittorrent users responsible for these unauthorized distributions.

13. These lawsuits must be filed as "John Doe" lawsuits because the identity of the infringer is initially unknown to us.   From my experience filing similar cases against other defendants throughout the country, once provided with the IP Address, plus the date and time of the detected and documented infringing activity, ISPs can use their subscriber logs to identify the name, address, email address and phone number of the applicable subscriber in control of that IP address at the stipulated date and time.

14. The proper forum for these lawsuits is determined by using Maxmind Premium Geolocation services.  Founded in 2002, Maxmind's website cites it as an industry-leading provider of geolocation databases[1].   It is also used by state and federal law enforcement in the prosecution of computer and cybercrimes.

15. Since January 2013, Malibu Media has used this geolocation procedure to determine the proper District for filing in 5,349 cases.    Out of these 5,349 total cases, 5,334 have accurately traced to the District Court in which the case was filed.   This translates to a 99.99% chance of proper personal jurisdiction and venue pursuant to the Maxmind Geolocation trace.

---

[1] www.maxmind.com



3

16. Over the past several years, Malibu Media has employed two experts to track and scan the infringement of its movies - Excipio GmbH ("Excipio") and IPP International U.G. ("IPP").

17. Investigators from both companies have testified in court and have attested to the reliability of the applicable forensic technology. Malibu Media has also independently tested each system to ensure the highest level of accuracy.

18. Each recorded infringement enumerated on Exhibit A to the Complaint in this lawsuit was documented by either IPP or Excipio. In many instances, infringing transactions were documented by both entities. Each Single Movie Hash on Exhibit A was fully downloaded and compared side by side to a control copy supplied to the applicable investigator by Malibu Media.

19. Malibu Media's intention in bringing these lawsuits is not to cause financial hardship but instead to deter infringement and be compensated for the intentional theft of its videos.

20. I have consistently instructed all attorneys representing Malibu Media in these lawsuits to seek and be open to exculpatory evidence and to be cautiously prudent when pursuing these claims. We do not pursue our claims against all Doe Defendants. For example, once receiving discovery, we may learn that a Defendant is on active duty in the military and we will dismiss that case. Also, we may learn a Defendant is possibly a coffee shop with open wireless, or some other circumstance that would prevent us from pursuing our claims. When

discovery indicates that pursuing the case will present for undue hardship for the Defendant, my instructions to my lawyers are to dismiss the case.

21. We invest significant resources into pursuing all types of anti-piracy enforcement, such as Digital Millennium Copyright Act ("DMCA") takedown notices and direct efforts aimed at infringing websites. We are even working with law enforcement to stop the piracy of our movies.

22. Despite sending thousands of DMCA notices per week, the infringement continues. And, if one searches for "X-Art" on a torrent website, the site will reveal thousands of unauthorized torrents available for free.

23. I have never authorized anyone to put our works on a torrent website.

24. I firmly believe that we must exercise our rights under the Copyright Act to prevent infringement. Otherwise, we face an immediate and serious risk. It is simply impossible to compete with free.

25. We do not seek to use the Court system to profit from the infringement like some have suggested. As previously stated, revenues from subscriptions to X-Art.com are by far and away the dominant driver of Malibu Media's business. We want the infringement to stop. The purpose of these lawsuits is to motivate people to pay for subscriptions by deterring infringement and seek some reasonable compensation for the massive amount of infringement of our copyrights.



5

26. It is my hope that by upholding the law, the courts will protect our ability to continue with our dream and allow all creative people the ability to make a living by distributing their work in this fast-paced digital age.

27. In conclusion, we want the courts to know that we are a small business and we need the law to be enforced to ensure our survival. It is getting more difficult for us every day and we hope that in the future there will be a better way to protect our copyrights.

28. Thank you in advance for your time and consideration of this matter, please do not hesitate to ask if we can clarify any further questions.

## **DECLARATION**

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

By: _____

COLETTE PELISSIER

6

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No. 5:19-cv-00834-DAE |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE infringer using | ) | |
| IP address 70.121.72.191, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF PATRICK PAIGE IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO A RULE 26(f) CONFERENCE

[Remainder of page intentionally left blank]

**Exhibit B**



Computer Forensics, LLC
1880 N. Congress Ave Suite 333
Boynton Beach, FL 33426
Main: 561.404.3074
www.ComputerForensicsLLC.com

## EXPERT REPORT REGARDING TESTING OF IPP INTERNATIONAL UG'S INFRINGEMENT DETECTION SYSTEM

Prepared By:       Patrick Paige, EnCE SCERS
                         Managing Member
                         Computer Forensics, LLC

1

## DECLARATION OF PATRICK PAIGE

**I, PATRICK PAIGE, DO HEREBY DECLARE:**

1.    I am over the age of eighteen (18) and otherwise competent to make this declaration. The facts stated in this declaration are based upon my personal knowledge.

2.    I was a police officer from 1989 until 2011 for the Palm Beach County Sherriff's Office. And, from 2000-2011, I was a detective in the Computer Crimes Unit. After leaving the Palm Beach County Sherriff's Office, I founded Computer Forensics, LLC, where I am currently employed.

3.    I have taken over 400 hours of courses designed to teach people how to conduct computer forensic examinations.

4.    Also, while working from 2003-2011 for Guidance Software, the makers of EnCase, I taught over 375 hours of courses in computer forensics ranging from beginner to advanced levels.

5.    As a computer crimes detective for the Palm Beach County Sheriff's Office, I have conducted forensic computer examinations for:

      (a)    Broward County Sheriff's Office (BSO);

      (b)    Federal Bureau of Investigation (FBI);

      (c)    U.S. Customs and Border Protection (CBP);

      (d)    Florida Department of Law Enforcement (FDLE);

      (e)    U.S. Secret Service;

      (f)    Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF); and

      (g)    Various municipalities in the jurisdiction of Palm Beach County.

2

App. 047

6. I have had students in my courses from various government branches, including: (a) sheriff's offices; (b) FBI agents; (c) ATF agents; (d) agents from the Central Intelligence Agency; and (e) individuals from other branches of government and the private sector.

7. I have received the following awards and commendations:

(a) 1991 – Deputy of the Year, awarded by the 100 Men's Club of Boca Raton & Rotary Club.

(b) 1997 – Deputy of the Month for June.

(c) 2001 – Detective of the Month for October.

(d) 2002 – Outstanding Law Enforcement Officer of the Year, awarded by the United States Justice Department for work in the *U.S. vs. Jerrold Levy* case.

(e) 2003 – U.S. Customs Service Unit Commendation Citation Award for computer forensic work in Operation Hamlet. Operation Hamlet was one of the largest rings in the history of U.S. Customs of individuals who were molesting their own children, and transmitting the images and video via the Internet.

(f) 2005 – Detective of the Month for December.

(g) 2006 – Letter of Commendation issued by the FBI for outstanding computer forensic work in the *U.S. vs. Frank Grasso* case.

(h) 2007 – Outstanding Law Enforcement Officer of the Year, awarded by the United States Justice Department for work in the *U.S. vs. Jimmy Oliver* case.

8. I have testified as a fact and expert witness on numerous occasions in the field of computer forensics in both trial-level and appellate proceedings before state, federal, and military courts in California, Florida, Indiana, New Jersey, New York, and Pennsylvania.

9. No court has ever refused to accept my testimony on the basis that I was not an expert in computer forensics. My skill set and my reputation are my most important assets in my current position with Computer Forensics, LLC.

3

10.     As part of my duties within the Computer Crimes Unit at the Palm Beach County Sheriff's Office, I investigated cases involving the use of the Internet, including cases involving peer-to-peer file sharing networks.  In this role, I also investigated Internet child pornography and computer crime cases.

11.     I was assigned to the Computer Crimes Unit that worked in conjunction with a private company called TLO Corp.

12.     When I worked with TLO Corp., I supervised the other detectives assigned to the unit, which consisted of six online investigators and two computer forensic examiners.

13.     In my experience, during the initial phase of Internet based investigations, the offender is only known to law enforcement by an IP address.

14.     The only entity able to correlate an IP address to a specific individual at a given date and time is the Internet Service Provider ("ISP").

15.     Once provided with the IP Address, plus the date and time of the detected and documented activity, ISP's can use their subscriber logs to identify the name, address, email address and phone number of the applicable subscriber in control of that IP address at the stipulated date and time.

16.     With regard to my experience investigating child pornography cases, I supervised police officers whose responsibility it was to establish a successful TCP/IP connection with persons who were sending pornographic images of children or other illegal content over the Internet using peer-to-peer file sharing programs.

17.     The offenders' IP addresses, as well as the dates and times of the illegal transmission were recorded.

4

18.     An officer would then request that the assistant state attorney subpoena the corresponding ISPs for the purpose of identifying the subscribers that were transmitting the illegal content.

19.     In these cases, the subscribers were not notified by the ISPs that their identity was being subpoenaed because they could have deleted the images and destroyed the data.

20.     After receiving the subscribers' identities, we would prepare a search warrant that would authorize us to enter the subscribers' dwelling and seize all of their computer devices.

21.     I was directly involved in approximately 200 search warrants either by way of managing the process or performing it personally while at the Computer Crimes Unit.

22.     From my experience, Plaintiff is likely to identify the infringer.  Indeed, during my time in the Computer Crimes Unit, I can recall only one instance in all the times that we executed a search warrant and seized computers, where we did not find the alleged illegal activity at the dwelling identified in the search warrant.

23.     In that one instance, the Wi-Fi connection was not password protected, and the offender was a neighbor behind the residence.

24.     I never came across a Wi-Fi hacker situation.

25.     In my opinion, a child pornographer has a greater incentive to hack someone's Wi-Fi connection than a BitTorrent user because transmission of child pornography is a very serious crime with heavy criminal penalties, and many offenders can face life sentences if convicted.

26.     The process used by law enforcement mirrors the process used by Malibu Media and IPP to correlate an IP address to an individual.

27.     In order to ascertain the identity of the infringer, just as with law enforcement, Malibu Media must subpoena the ISP to learn the subscriber's true identity.

28.     I tested IPP International U.G.'s ("IPP") infringement detection system.  The infringement detection system is named "Observer."  It is owned and used by IPP to identify individuals who are illegally downloading and distributing content via BitTorrent.  This technology and similar investigative methods are used by law enforcement officials when tracking individuals who transmit contraband files such as child pornography via the Internet.

29.     I tested IPP's infringement detection system for its accuracy in detecting and recording infringement via BitTorrent, ascertaining an infringing IP address[1], and identifying the "test" files being distributed on BitTorrent.

30.     To conduct this test, I first downloaded four public domain movies from the national archive.

31.     I then encoded text into each video. The purpose of this encoding was to ensure that when the file is located and download by IPP, it could be easily identified as the videos I personally encoded and seeded.

32.     I then setup and configured four computers, each of which was connected to the Internet and each computer was configured with its own unique static IP address.

33.     I then configured three computers with a Windows 7 operating system, and the fourth computer was a MacBook Pro configured with OS X El Capitan version 10.11.4.  I installed a different BitTorrent client[2] onto each computer system as listed below:

---

[1] An IP address is a numerical value assigned to a computer or device that transmits and receives data via the Internet.  When a computer user accesses the Internet, their Internet Service Provider assigns them a unique IP address for that session.  In order to identify a computer user who is downloading files via the Internet, one must be able to identify the IP address the user was using at that exact time and date of downloading.
[2] A BitTorrent client is software that enables the BitTorrent protocol to work.

6

App. 051

| Computer | Operating System | BitTorrent Client |
|---|---|---|
| Dell Laptop | Windows 7 | uTorrent Version 3.4.7 |
| Dell Laptop | Windows 7 | qBittorrent Version 3.3.4 |
| Dell Laptop | Windows 7 | Transmission  Version 2.84 |
| MacBook Pro Laptop | OS X El Capitan 10.11.4 | uTorrent  Version 1.8.7 |

34.     After installing the BitTorrent clients, I also installed Wireshark and WinDump onto each computer.  Wireshark and WinDump are programs that capture network traffic and create PCAP files.  PCAP stands for "packet capture."  PCAPs are akin to videotapes.  Indeed, a PCAP is like a video recording of all the incoming and outgoing transactions of a computer.   I have used Wireshark and WinDump software while in law enforcement to examine network traffic while investigating P2P cases.

35.     After installing Wireshark and WinDump onto each of the computers, I transferred the movie files that I created for the test to each of the four computers.

36.     I then used one of the BitTorrent clients on the test computers to make .torrent files.  I then seeded the four test movies.

37.     On June 3, 2016 the test was conducted.  Given only the torrent files, IPP was able to correctly identify all four static IP addresses for each of the test computers that were seeding the movies within minutes of starting the test.  Soon after the test, IPP sent me the PCAP files they recorded during the test for each one of my static IP addresses.

38.     I reviewed IPP's PCAPs vis-à-vis the PCAP log files created by each of my test computers, and determined that IPP's PCAPs match my PCAPs.  This could not have happened unless IPP's server was connected to the test computers because the transactions would not match.

39.     I also conducted an examination of IPP's PCAPs to determine if the detection software can accurately identify the BitTorrent clients I used during the test.  Using Wireshark

7

software I loaded IPP's PCAPs recorded on the day of the test. IPP's system was able to accurately record the names and version numbers of all four BitTorrent client's software I used on each of the test computers.

40.     When a BitTorrent client is installed onto a computer, the computer randomly selects a port number for its network communication. A port number is an integer ranging from 0 to 65535. The following is a chart listing the port number assigned to each of the test computers:

| Computer | BitTorrent Client | Port |
|---|---|---|
| Dell Laptop | uTorrent Version 3.4.7 | 51892 |
| Dell Laptop | qBittorrent Version 3.3.4 | 8999 |
| Dell Laptop | Transmission  Version 2.84 | 51413 |
| MacBook Pro Laptop | uTorrent  Version 1.8.7 | 10088 |

41.     Examination of IPP's PCAP revealed that the port numbers recorded by IPP's system matched the port numbers from the test computers used for BitTorrent communications. Accordingly, my analysis confirmed that IPP was able to accurately identify the port number assigned to each test computer's BitTorrent client.

42.     From this test, I concluded that IPP's infringement detection system worked, and had a subpoena been issued for my IP addresses, it would have revealed my identity. I also concluded that IPP's infringement detection system accurately identifies the BitTorrent clients as well as the BitTorrent client's port number.

43.     In the past, Malibu has also retained Excipio GmbH's ("Excipio") to track infringement of Malibu's copyrighted works. In June 2013, in anticipation of the Bellwether trial in the Eastern District of Pennsylvania, I conducted a test of Excipio's infringement detection system. After performing the test, I concluded that Excipio's infringement detection system works. Specifically, the system accurately records the IP address of a person using

8

BitTorrent to transmit data to Excipio's computer servers. Excipio's system operates nearly the same fashion as IPP's system.

44.     In addition to testing Malibu's investigators' systems, I have also conducted computer forensic examinations for Malibu in their copyright infringement cases throughout the country.

45.     Indeed, in my role as an expert for Plaintiff, I have examined countless computer hard drives for evidence of: (a) the use of BitTorrent; (b) infringement of the copyrighted "X-Art" works owned by Plaintiff; (c) spoliation of evidence; and (d) suppression of evidence. These examinations have revealed either: (1) evidence of copyright infringement of Malibu Media, LLC's works; or (2) evidence of suppression and spoliation. Sometimes I have found both. By way of illustration, below are examples where Malibu obtained a Defendant's hard drive and discovered evidence of its movies, spoliation, and/or defendants' failures to disclose all hard drives.

    a.  *Malibu Media, LLC v. Weaver*, No. 8:14-cv-01580-VMC-TBM (M.D. Fla. 2015): In *Weaver*, the Court ordered production of the hard drives, and my forensic examination revealed evidence which irrefutably demonstrated: (a) Defendant's BitTorrent use; (b) the prior existence of numerous X-Art titles; (c) the deletion of BitTorrent files and uninstallation of a BitTorrent client; and (d) the existence of other computer devices that have not been produced. Because of this examination, Malibu was able to successfully disprove Defendant's denial of infringement.

    b.  *Malibu Media, LLC v. Huseman*, No. 1:13-cv-02695-WYD-MEH (D. Colo. 2014): In the *Huseman* case, I discovered evidence of: (a) BitTorrent use; (b) the prior existence of numerous X-Art titles; (c) the deletion of BitTorrent files and uninstallation of a BitTorrent client; and (d) the existence of other computer devices that had not been produced to me for examination, one of which <u>*contained*</u> titles of Plaintiff's copyrighted works. Ultimately, the parties stipulated to a final judgment in favor of Malibu Media, LLC.

    c.  *Malibu Media, LLC v. John Doe*, No. 1:14-cv-10155-KBF (S.D.N.Y. 2015): My forensic examination revealed that defendant had over eleven different file destruction software programs on his hard drive – each with the capability of destroying substantial amounts of data. He used several of the software programs

9

App. 054

just days before turning it over for imaging and examination. I also detected that prior to defendant's use of the file destruction software, the defendant connected another undisclosed external storage device to his hard drive. This suggested that defendant was storing data which he wanted to retain prior to using the file destruction software programs on his hard drive. Ultimately, the defendant admitted to his infringement and apologized to Malibu.

d. *Malibu Media, LLC v. Tashiro*, No. 1:13-cv-00205-WTL-MJD (S.D. Ind. 2014): My examination revealed that defendants deleted thousands of BitTorrent files the night before producing the hard drives for imaging. My examination also revealed that defendants possessed and used other hard drives which were never disclosed or produced during discovery. Ultimately, the court imposed terminating sanctions against defendants for failure to disclose documents, spoliation, and perjury.

e. *Malibu Media, LLC v. John Doe*, No. 12-2078 (E.D. Pa. 2013): In this "Bellwether" case, my examination of defendant's hard drive revealed that he installed a Windows operating system three (3) days after being served with a subpoena for production of his computer device. This installation resulted in the complete destruction of all files contained within the hard drive prior to the Windows installation. After falsely testifying, Defendant admitted that he had downloaded Plaintiff's copyrighted works and had wiped his desktop computer (by installing a new Windows operating system) to conceal the infringements. In the end, the Court entered a substantial judgment in favor of Malibu.

46. I am paid on an hourly basis by Malibu Media, LLC, at the rate of $325.00 per hour for pre-trial investigative work, although the fee increases if I am required to testify at trial.

**FURTHER DECLARANT SAYETH NAUGHT.**

## DECLARATION

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on this 19th day of August, 2016.

By: _____

**PATRICK PAIGE**

10

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No. 5:19-cv-00834- |
| DAE | | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE infringer using | ) | |
| IP address 70.121.72.191, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DECLARATION OF TOBIAS FIESER IN SUPPORT OF PLAINTIFF'S MOTION FOR
LEAVE TO TAKE DISCOVERY PRIOR TO A RULE 26(f) CONFERENCE**

[Remainder of page intentionally left blank]

**Exhibit C**

**DECLARATION OF TOBIAS FIESER IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO A RULE 26(f) CONFERENCE**

**I, TOBIAS FIESER, HEREBY DECLARE:**

1.      My name is Tobias Fieser.

2.      I am over the age of 18 and am otherwise competent to make this declaration.

3.      This declaration is based on my personal knowledge and, if called upon to do so, I will testify that the facts stated herein are true and accurate.

4.      I am employed by IPP International UG ("IPP"), a company organized and existing under the laws of Germany, in its litigation support department.

5.      Among other things, IPP is in the business of providing forensic investigation services to copyright owners.

6.      IPP's system has been monitoring the BitTorrent file distribution network for the presence of Malibu Media's copyrighted works since 2011. IPP's forensic software identifies Internet Protocol ("IP") addresses that are being used by infringers to distribute Malibu Media's copyrighted works within the Bittorrent File Distribution Network.

7.      IPP tasked me with effectuating, analyzing, reviewing and attesting to the results of this investigation. I have previously provided the same support for Malibu Media in thousands of lawsuits across the United States, and I gave full and complete testimony about the workings of IPP's forensic scan during the "Bittorrent Bellwether Trial" (*Malibu Media v. John Does*, 12-cv-2078, (E.D. Pa.)).

8.      Infringement of Malibu Media's movies occurs within two formats. The first entails distribution of a specific single movie file correlating to a copyrighted Malibu Media movie. The second involves large scale distribution utilizing "Unauthorized Packs" (commonly referred to as 'siterips').

WTX40

1
Exhibit C

9.      Upon review of IPP's forensic activity logs, I determined that IPP's forensic servers connected to an electronic device using IP Address 70.121.72.191. Consequent to this connection, the IP Address used by Defendant of 70.121.72.191 was documented distributing to IPP's servers multiple pieces of Malibu Media's copyrighted movie titled Kaisa Slippery and Wet at exactly 5/5/2019 7:59:08 AM. This time is quoted in Universal Time which correlates to the assignment logs kept by US ISPs tracking which IP Address is assigned to which customer at a given point in time.

10.      A digital file can be identified by what is called a "Cryptographic Hash Value." This concept was developed by the United States National Security Agency. IPP's software determined that the file being distributed by Defendant using the IP Address of 70.121.72.191 at 5/5/2019 7:59:08 AM has a unique identifier of the Cryptographic Hash of 1B2CFE6B8C36391FC2B1F53792A5D35DD87AF510.

11.      A full copy of the digital file identified by the Hash of 1B2CFE6B8C36391FC2B1F53792A5D35DD87AF510 was downloaded by IPP's software, and I confirmed this file is a digital movie file. I further viewed this file and determined it was substantially similar to Malibu Media's copyrighted movie titled Kaisa Slippery and Wet.

12.      IPP's software is unable to distribute content; it is programmed to only allow it to download files from the Bittorrent Network. At no point did IPP distribute any part of Plaintiff's copyrighted movies at any time.

13.      It is theoretically possible to "spoof" an IP Address on the Internet. However, it is not possible to spoof an IP Address within the context of a TCP/IP connection. I verified that a TCP/IP connection was made between IPP's investigative servers and the electronic device using IP Address 70.121.72.191 and that multiple bits were conveyed over this connection.

2

WTX40                                   Exhibit C

Consequently, it is impossible that another party was "spoofing" the IP Address used by Defendant.

14.    IPP additionally confirmed through its ancillary worldwide BitTorrent surveillance program that IP address 70.121.72.191 is associated with significant long term BitTorrent use.

**FURTHER DECLARANT SAYETH NAUGHT.**

**<u>DECLARATION</u>**

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this _461_ day of _July_ , 201_5_.

**TOBIAS FIESER**

By: _____

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

MALIBU MEDIA, LLC,                          )
                                            )
      Plaintiff,                     )    Civil Case No. 5:19-cv-00834-DAE
                                            )
v.                                          )
                                            )
JOHN DOE infringer using                    )
IP address 70.121.72.191,                   )
                                            )
      Defendant.                     )
_____)

**ORDER ON MOTION FOR LEAVE TO SERVE**
**THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

**THIS CAUSE** came before the Court upon Plaintiff's Motion for Leave to Serve a

Third Party Subpoena Prior to a Rule 26(f) Conference (the "Motion"), and the Court being

duly advised in the premises does hereby:

**FIND, ORDER AND ADJUDGE:**

    1.    Plaintiff established that "good cause" exists for it to serve a third-party

subpoena on Spectrum (hereinafter the "ISP"). *See e.g. EElargo Holdings LLC v. Doe*,

No. 1:16-CV-0480, 2016 U.S. Dist. LEXIS 57641, at *5 (W.D. La. Apr. 28, 2016); *Dall.*

*Buyers Club, LLC v. Ripple*, No. H-14-3393, 2015 U.S. Dist. LEXIS 35613, at *1 (S.D.

Tex. Mar. 23, 2015); *Clear Skies Nev., LLC v. Doe*, No. 16-1511, 2016 U.S. Dist. LEXIS

36187, at *10 (E.D. La. Mar. 18, 2016).

    2.    Plaintiff may serve the ISP with a Rule 45 subpoena commanding the ISP to

provide Plaintiff with the true name and address of the subscriber to whom the ISP assigned

[PROPOSED] ORDER

App. 060

an IP address as set forth on Exhibit A to the Complaint. Plaintiff shall attach to any such subpoena a copy of this Order.

3.      Plaintiff may also serve a Rule 45 subpoena in the same manner as above on any service provider that is identified in response to a subpoena as a provider of Internet services the subscriber of the ISP account.

4.      If the ISP qualifies as a "cable operator," as defined by 47 U.S.C. § 522(5), which states:

> the term "cable operator" means any person or group of persons
>
> (A)   who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or
>
> (B)   who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system.

it shall comply with 47 U.S.C. § 551(c)(2)(B), which states:

> A cable operator may disclose such [personal identifying] information if the disclosure is . . . made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed.

by sending a copy of this Order to the Defendant.

5.      Plaintiff may only use the information disclosed in response to a Rule 45 subpoena served on the ISP for the purpose of protecting and enforcing Plaintiff's rights as set forth in its Complaint.

2

[PROPOSED] ORDER

It is so ORDERED.

_____          _____
Date                                     The Honorable David A. Ezra
                                         United States District Judge

App. 062

App. 063

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

MALIBU MEDIA, LLC,

          Plaintiff,

vs.

JOHN DOE,

          Defendant.

CIVIL ACTION NO.  5-19-CV-00834-DAE

**JURY TRIAL DEMANDED**

## DEFENDANT JOHN DOE'S ANSWER AND COUNTERCLAIMS

Except as otherwise expressly admitted, qualified, or otherwise, Defendant John Doe ("Defendant") denies each allegation in Plaintiff Malibu Media, LLC's ("Plaintiff's") Complaint.

To the extent that any response is required to the unnumbered preamble of the Complaint: Denied.

### Introduction

1. Paragraph 1 contains statements of law to which no response is required. To the extent a response is required, Defendant admits that Plaintiff purports to base this action on the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq*. Defendant denies the remainder of the allegations in Paragraph 1.

2. Denied.

3. Defendant admits that the United States Copyright Office's online database includes records of the registrations described in Exhibit B of the Complaint. Defendant denies the remaining allegations in Paragraph 3.

### Jurisdiction and Venue

4. Defendant admits that, at this time, the Court has subject matter jurisdiction. Defendant

1

denies that he[1] engaged in any conduct in violation of federal law and denies that it caused any damages to Plaintiff or that Plaintiff is otherwise entitled to relief.

5. Defendant does not dispute that this Court has personal jurisdiction over Defendant. Defendant denies that he engaged in any conduct in violation of Federal law and denies that he caused any damages to Plaintiff or that Plaintiff is otherwise entitled to relief. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 5 of the Complaint, and therefore denies the same.

6. Defendant admits that Plaintiff has filed over 1,000 cases. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 6 of the Complaint, and therefore denies the same.

7. Defendant admits that Defendant resides in this District and admits that venue is proper on that basis. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 7 of the Complaint, and therefore denies the same.

## Parties

8. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint, and therefore denies the same.

9. Defendant denies that he committed any alleged infringement. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 9 of the Complaint, and therefore denies the same.

10. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint, and therefore denies the same.

_____

[1] For purposes of readability, this answer and counterclaim uses generic male pronouns to refer to John Doe, without implying anything about John Doe's actual gender.

2

**Factual Background**

11. Defendant admits that the BitTorrent network may be used as a peer-to-peer digital file sharing network. Defendant denies that Defendant infringed Plaintiff's alleged copyrights. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint, and therefore denies the same.

12. Defendant admits that BitTorrent can allow users to interact with each other. Paragraph 12 contains statements of law to which no response is required. To the extent a response is required, Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 12 of the Complaint, and therefore denies the same.

13. Admitted.

14. Defendant admits that BitTorrent software may be used to assemble pieces of files. Defendant denies the remaining allegations of Paragraph 14.

15. Defendant admits that pieces of data may be assigned hash values in the BitTorrent protocol. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 15 of the Complaint, and therefore denies the same.

16. Defendant admits that pieces of data may be assigned hash values in the BitTorrent protocol. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 16 of the Complaint, and therefore denies the same.

17. Defendant admits that pieces of data may be assigned hash values in the BitTorrent protocol. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 17 of the Complaint, and therefore denies the same.

18. Defendant admits that IPP established a connection to a network with an external IP address associated with an internet service account held in Defendant's name, and did so without

3

Defendant's consent. Defendant specifically denies using the Subject IP Address to distribute or make available for distribution Plaintiff's alleged works. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 18 of the Complaint, and therefore denies the same.

19. Denied.

20. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint, and therefore denies the same.

21. Defendant denies that he made available for distribution or sharing, possessed, or controlled any digital media file or piece of it that Plaintiff alleges to have downloaded. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 21 of the Complaint, and therefore denies the same.

22. Defendant denies that he made available for distribution or sharing, possessed, or controlled any digital media file or piece of it that Plaintiff alleges to have downloaded. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 22 of the Complaint, and therefore denies the same.

23. Defendant admits that the United States Copyright Office's online database includes records of the registrations described in Exhibit B of the Complaint. Defendant denies the allegations of Paragraph 23 relating to "hit date[s]." Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 23 of the Complaint, and therefore denies the same.

24. Denied.

25. Denied.

26. Denied.

4

**Miscellaneous**

27. Paragraph 27 contains statements of law to which no response is required. To the extent a response is required, Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 27 of the Complaint, and therefore denies the same.

28. Defendant admits that Plaintiff has retained counsel. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 28 of the Complaint, and therefore denies the same.

## COUNT I

**Direct Infringement**

29. Defendant realleges and reincorporates herein its responses to each of the preceding paragraphs as though fully set forth herein.

30. Defendant admits that the United States Copyright Office's online database includes records of the registrations described in Exhibit B of the Complaint. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 30 of the Complaint, and therefore denies the same.

31. Denied.

32. Defendant denies possessing, distributing, or making available for distribution any of Plaintiff's alleged works, and on that basis, denies the remaining allegations of Paragraph 32.

33. Denied.

34. Denied.

**PRAYER FOR RELIEF**

35. To the extent that Plaintiff's Prayer for Relief requires a response, Defendant denies that Plaintiff is entitled to any of the relief for which it prays as to any cause of action, including

App. 067

but not limited to the allegations and prayers for relief in Paragraphs A-G of the Complaint.

## AFFIRMATIVE DEFENSES

36. Defendant alleges the following affirmative defenses and reserves the right to assert additional affirmative defenses as it conducts its factual investigation and discovery, and as is otherwise permissible.

### FIRST AFFIRMATIVE DEFENSE
### Failure to State a Claim

37. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

38. Plaintiff's Complaint admits that neither Plaintiff nor its agents downloaded a complete copy of any of the works listed in Exhibit A from Defendant, and Defendant failed to plead that any of the alleged pieces downloaded constitute original expressions or constituent elements, or that any of this data on its own could be used to display a copyrighted work and/or a portion thereof.

### SECOND AFFIRMATIVE DEFENSE
### Misuse of Copyright

39. The goal of copyright law is to promote the useful arts and sciences by providing exclusive rights for a set time.

40. Upon information and belief, Plaintiff's goal in filing this lawsuit and others like it is not a judgment on the merits. Instead, Plaintiff uses the Federal Court system to coerce settlements.

41. Plaintiff films, photographs, and video records sexual acts, and distributes those works on the internet. Upon information and belief, Plaintiff provides or has provided many of those recordings for free on pornography sharing websites, and encourages or is willfully blind to third-parties sharing and providing those same recordings on the internet. The contentions in this

6

paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

42. Plaintiff, despite encouraging sharing of its works, has by its own admission, sued 1000s of anonymous defendants for copyright infringement of its works.

43. Plaintiff does not enforce its alleged copyrights to protect the market for its works or to further the useful arts and sciences.

44. Rather, Plaintiff monetizes its alleged copyrights through coercive and needless litigation and by extracting settlements from that litigation disproportionate to the minimal value of Plaintiff's works.

45. On information and belief, Plaintiff also willingly or negligently fails to use methods accepted and used by the streaming media and movie industries to protect unauthorized access to, duplication of, and distribution of its content. Plaintiff does so to advance its intent to monetize its alleged copyrights through litigation instead of the commercial market. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

46. Plaintiff sues anonymous defendants intending to force them to choose between paying a settlement amount disproportionate to the value of Plaintiff's works, or risk the embarrassment to one's professional and personal reputation when their identity is made public along regarding alleged downloading and sharing of pornographic material.

47. Plaintiff filed this lawsuit to advance its coercive and improper enforcement efforts.

48. In addition, upon information and belief, either purposefully or through reckless disregard, Plaintiff's mass litigation strategy is likely to have resulted in duplicative recoveries. The contentions in this paragraph are likely to have evidentiary support after a reasonable

App. 069

opportunity for further investigation or discovery.

49. Through its coercive enforcement efforts, Plaintiff is trying to impermissibly expand the use of copyright for improper means.

50. As a result, Plaintiff should be enjoined from enforcing its copyrights in a coercive and improper manner, as it is doing here.

51. Equity also demands that Plaintiff not recover damages, fees, or costs in this case as a result of its copyright misuse.

### THIRD AFFIRMATIVE DEFENSE
### Unconstitutionally Excessive Damages

52. Plaintiff's claims are barred because they seek statutory damages that are unconstitutionally excessive and disproportionate to any actual damages that may have been sustained in violation of the Due Process Clause of the United States Constitution.

### FOURTH AFFIRMATIVE DEFENSE
### De Minimis

53. Plaintiff films, photographs, and video records sexual acts, and distributes those recordings on the internet.

54. Upon information and belief, Plaintiff provides or has provided many of those recordings for free on pornography sharing websites, and encourages or is willfully blind to third parties sharing those recordings on the internet.

55. Defendant has been accused in the Complaint of distributing pieces of nine different films, all of which could have been downloaded through x-art.com for a minimal amount of money.

56. Defendant is accused of providing small portions of data corresponding to the copyrighted works to Plaintiff's investigators. Upon information and belief, these pieces would

App. 070

not be large enough to play on a movie player, and cannot show that Defendant stored a copy of any of the works in Exhibit A.

57. These pieces contain minimal or no elements of creativity and no constituent parts of the original work that would constitute protectable elements. Plaintiff cannot prove any actual financial loss from the alleged infringement, and any such damage would be limited to a small fee for membership on Plaintiff's website.

58. These amounts are minimal and Plaintiff should take nothing as a result.

**FIFTH AFFIRMATIVE DEFENSE**
**<u>Failure to Mitigate Damages and Laches</u>**

59. Plaintiff has hired IPP International UG ("IPP") to provide evidence of BitTorrent activity that allegedly infringes on its copyrights.

60. IPP has provided Plaintiff with information that Plaintiff has used to bring many copyright infringement actions throughout the United States. IPP allegedly identified Defendant's IP Address as allegedly infringing some time ago.

61. Plaintiff took no steps to mitigate its damages.

62. Plaintiff failed to use the takedown processes provided by the Digital Millennium Copyright Act.

63. Upon information and belief, Plaintiff has failed to engage in available copyright "Alert Systems," or any other similar systems. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

64. Plaintiff alleges that Defendant first infringed no later than July 26, 2017, but Plaintiff waited until July 15, 2019 to file its Complaint, naming an IP address only, knowing Defendant could not be served without additional discovery.

65. Evidence relevant to Defendant's defenses has been lost or degraded. Plaintiff's failure

9

to timely enforce any alleged copyright have cause Defendant and the public to rely on Plaintiff's inaction or ineffectiveness to its detriment.

66. Having failed to mitigate its damages, Plaintiff is entitled to no relief.

### SIXTH AFFIRMATIVE DEFENSE
### No Infringement

67. Defendant has not engaged in or contributed to any infringement of the copyrights alleged.

### SEVENTH AFFIRMATIVE DEFENSE
### Failure to Join Indispensable Parties

68. Plaintiff has failed to join indispensable parties, namely other participants in the alleged BitTorrent networks from which its consultant is alleged to have downloaded the remainder of the whole copies of the works listed on Exhibit A to the Complaint other than the piece(s) allegedly received from Defendant.

### EIGHTH AFFIRMATIVE DEFENSE
### Statutory Rights and Limitations

69. The one-satisfaction rule operates to prevent double recovery, or the overcompensation of a plaintiff for a single injury. Plaintiff is barred from seeking statutory damages, costs, and/or attorneys' fees under 17 U.S.C. § 504, including to the extent Plaintiff has already recovered for alleged infringements in prior actions or settlements. In addition, if Plaintiff has had an award adjudicated for statutory damages against other alleged participants in transferring a particular film, Plaintiff's recovery should be limited to Defendant's portion of that statutory award.

70. Plaintiff's claims and request for statutory damages should also be barred because copyrights to its works were not properly or timely registered prior to or within three months of any alleged infringement.

71. Defendant pleads all of its rights, remedies, and defenses under the Copyright Act of

10

1976, as amended, 17 U.S.C. §§ 101 *et seq.*

### NINTH AFFIRMATIVE DEFENSE
#### No Willful Infringement

72.  Any alleged infringement by Defendant was innocent and not willful.

73.  Without admitting any infringement or other liability, Defendant was unaware and had no reason to believe that any of his acts constituted an infringement of any copyright. Plaintiff has failed to allege facts sufficient to show any specific intent by Defendant to infringe the works listed on Exhibit A to the Complaint.

### TENTH AFFIRMATIVE DEFENSE
#### Acquiescence

74. Plaintiff's claims are barred by the doctrine of acquiescence.

75. Plaintiff knew its films were being distributed and downloaded online via BitTorrent technology. On information and belief, Plaintiff encouraged the sharing and distribution of its films, or at the very least, did nothing to stop or deter it.

76. Plaintiff's claims are also barred to the extent that Plaintiff or its agents seeded the works or released them with improper purpose, such as to coerce settlements from the public.

### ELEVENTH AFFIRMATIVE DEFENSE
#### Estoppel

77.  Plaintiff's claims are barred by the doctrine of estoppel. Without admitting any infringement or other liability, Defendant alleges that Plaintiff knew the facts of any alleged file-sharing related to the alleged IP address identified in Plaintiff's Complaint.

78. Yet Plaintiff acted so that others believed that Plaintiff intended the continued availability of the copyrighted works on BitToreent. Any actions to download the work were induced by, and done in reliance on, Plaintiff's conduct.

79. This is compounded because Plaintiff, upon information and belief, allows for open

11

distribution of its films by third parties.

**TWELFTH AFFIRMATIVE DEFENSE**
**<u>Unclean Hands</u>**

80.  Plaintiff's claims are barred by the doctrine of unclean hands.

81. Plaintiff filed this case knowing that it had not downloaded pieces of sufficient size to be properly analyzed for evidence of copyright infringement from anyone using the external IP address alleged in Plaintiff's Complaint.  Plaintiff sought permission to conduct early discovery knowing that it had not downloaded pieces of sufficient size to be properly analyzed for evidence of copyright infringement from anyone using the external IP address. But Plaintiff failed to disclose this fact to the Court in an *ex parte* motion seeking to unmask Defendant's identity.

82. Plaintiff's submission of outdated or sham affidavits in support of its motion for to discover Defendant's identity also show its unclean hands.

83. Plaintiff submitted the affidavit of Tobias Fieser, in which Mr. Fieser purports to testify about the specific IP address upon which Plaintiff sued Defendant. [Dkt. 5-1]. Yet Mr. Fieser's affidavit is dated and signed July 2015—two years before the first date of any alleged infringement. [Dkt. 1, Complaint Ex. B].

84. Plaintiff also submitted the affidavit of Patrick Paige in which he testified about Plaintiff's methods and technology for finding alleged infringers [Dkt. 5-1]. Yet the Paige affidavit was signed on August 19, 2016. The Paige affidavit is outdated and thus not credible, especially given the speed at which technology develops.

85. Plaintiff has also conveyed that it is aware its methodology fails to stand up to scrutiny upon technical examination. For example, in *Malibu Media v. Tim McManus*, Case No. 2:17-cv-01321-WJM-MF, Plaintiff voluntarily asked the court to dismiss its claims after being served with detailed discovery requests regarding, for example, its methods and proof of its rights associated

12

with the copyrights in suit. The court ordered Plaintiff to show cause. Plaintiff's brief to the court stated, in part, "Plaintiff's decision is a business decision based on the examination of information provided by the Defendants. Defendants are savvy IT professionals with the knowledge and capability to hide infringing activity."

86. Yet, on information and belief, Plaintiff's accusations in that case were based on effectively the same methodology employed here. Defendant's "savvy" is not relevant to whether or not the methodology had merit, especially since Defendant would not have the opportunity to retroactively "hide" its alleged infringement after Plaintiff's analysis was complete. Rather, Defendant's savvy goes only to the ability of the Defendant to show evidence that Plaintiff's methodology was flawed. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery

87. In addition, on information and belief, Plaintiff knowingly or with willful blindness allowed these files to flow onto third party sites, to create a "honeypot" to initiate litigation and extract settlements, rather than with an expectation of profit in the marketplace or for any other legitimate use of their alleged copyrights. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery

### THIRTEENTH AFFIRMATIVE DEFENSE
### Intervening Causes

88. Without admitting that Plaintiff has sustained any injury or damages and without admitting any liability, Defendant alleges that the injuries complained of and the damages sought by Plaintiff in this Complaint and each such separate claim for relief asserted therein was the direct and proximate result of certain independent actions of third parties over whom Defendant had no control. Therefore, Defendant is not liable for any of the damage that may have resulted therefrom.

13

### FOURTEENTH AFFIRMATIVE DEFENSE
### <u>Fair Use</u>

89. Plaintiff is not entitled to relief according to the doctrine of fair use.

90. Plaintiff admits that, at most, the portion (if any) of the allegedly infringed work was minimal.

91. Neither a portion of Plaintiff's works or the works as a whole had meaningful actual or potential market value, given, *inter alia*, the wide availability of free, readily available, and interchangeable alternatives, in addition to the embarrassment and various known and unknown risks associated with purchasing materials in the nature of the asserted works from entities such as Plaintiff or visiting websites such x-art.com or others maintained by Plaintiff.

### <u>DEFENDANT'S COUNTERCLAIMS</u>

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendant and Counterclaim Plaintiff John Doe ("Defendant"), by and through his counsel, hereby asserts the following counterclaims against Plaintiff and Counterclaim Defendant Malibu Media, LLC, (d/b/a "X-Art.com") ("Plaintiff"). Defendant alleges the following based on personal knowledge, publicly available materials, and upon information and belief.

### <u>PARTIES</u>

92. Defendant is a John Doe Defendant[2] residing in this judicial district alleged in Plaintiff's Complaint to have infringed Plaintiff's copyrights using the IP address 70.121.72.191.

93. According to its Complaint, Plaintiff is a California limited liability company with a principal place of business at 30700 Russell Ranch Road, Suite 250, Westlake Village, CA 91362.

---

[2] The parties have stipulated that Defendant's identity will not be publicly disclosed in any filings until further order of the Court. [Dkt. 10].

14

## JURISDICTION AND VENUE

94. Personal jurisdiction and venue are proper within this District because, *inter alia*, Plaintiff has availed itself of this Court's jurisdiction by bringing this action and several other actions in this District.

95. Venue is proper in this district under 28 U.S.C. § 1391.

96. The Court has subject matter jurisdiction over Defendant's counterclaims under 28 U.S.C. §§ 1331, 1338(a), 1367, 2201, and 2202. The counterclaims are so related to the claims asserted by Plaintiff in this action that they form part of the same case or controversy under Article III of the U.S. Constitution, and arise out of common facts, transactions, and occurrences as provided under Rules 13 and 20 of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

97. Plaintiff produces pornographic videos. It purports to offer to sell subscriptions to view them.

98. For better or worse, it is widely known that free pornographic material is available on the internet, and seldom carries with it the risk of copyright enforcement.

99. On information and belief, Plaintiff is aware that its content has little to no market value to the public. Yet Plaintiff knowingly acts in a manner, directly or indirectly, to encourage, facilitate, or allow for the sharing of its pornographic works, which it then complains of in its thousands of lawsuits.

100. On information and belief, Plaintiff also willingly or negligently fails to use methods accepted and used by the streaming media and movie industries to protect unauthorized access to, duplication of, and distribution of its content. Plaintiff does so to advance its intent to monetize its alleged copyrights through litigation instead of the commercial market.

15

101. Plaintiff, through its experts, begins collecting data on sharing of copies of its works soon after it is published.

102. Plaintiff hires the consulting firm IPP to act on Plaintiff's behalf and connect to networks controlled and operated by members of the public, and access their private computer data. IPP, acting as Plaintiff's agent, is instructed to connect to BitTorrent users and download one or more pieces of data that Plaintiff posits are components of copies of its copyrighted pornographic works.

103. Plaintiff has no known or expected prior relationship with the members of the public with whom it hires IPP to connect to and download data.

104. IPP does not, at Plaintiff's instruction,  identify itself or Plaintiff when seeking access or accessing this computer data from the public. Rather, on information and belief, IPP actively seeks to avoid others learning of its identity on the BitTorrent network.

105. Plaintiff sues anonymous defendants using IP addresses supplied to it by IPP, on the presumption, for example, that the IP address identifies a person who supplied a piece of data that could be used to reconstruct a part of one of Plaintiff's works.

106. On information and belief, IPP purports to rely on 16 kilobyte pieces of data retrieved from a particular IP address, to support Plaintiff's claims of copyright infringement.  None of the pieces of data, by themselves is necessarily large enough or capable of being played on a movie player or displaying a portion of Plaintiff's pornographic works. On information and belief, IPP claims to base its analysis on the composition of these 16 kilobytes of data, and Plaintiff bases its claims about the full works almost entirely from large amounts of data supplied by third parties unassociated with the targeted IP address. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

107. Plaintiff is aware that IP addresses can be associated with a person who pays a bill for an account, but not necessarily a person who supplies specific transmission data. *See, e.g.*, *Malibu Media LLC v. Doe*, 2016 U.S. Dist. LEXIS 14798, at *18-19 (N.D. Ill. Feb. 8, 2016). In other words, Plaintiff knows that IP addresses alone cannot identify an infringer. Neither IPP nor Plaintiff, despite knowing that multiple individuals or machines can utilize the same IP address, attempt to identify the actual individual responsible for supplying the piece of data.

108. Plaintiff is aware that its methodology is flawed. For example, in *Malibu Media v. Tim McManus*, Case No. 2:17-cv-01321-WJM-MF, Plaintiff voluntarily asked the court to dismiss its claims after being served with detailed discovery requests regarding, for example, its methods and proof of its rights associated with the copyrights in suit. The court ordered Plaintiff to show cause. Plaintiff's brief to the court stated, in part, "Plaintiff's decision is a business decision based on the examination of information provided by the Defendants. Defendants are savvy IT professionals with the knowledge and capability to hide infringing activity."

109. Yet Plaintiff has filed thousands of lawsuits and sought to uncover the identity of hundreds of anonymous internet users based on this method. Many defendants have settled. Often, these defendants have settled not because they were liable, but rather because they wished to avoid public embarrassment and reputational harm, and to avoid incurring attorneys' fees defending against Plaintiff's unsound infringement claims.

110. There is a real likelihood that Plaintiff has already reached the statutory maximum for many of the copyrights that Plaintiff claims to have been infringed, and/or that Plaintiff has already recovered damages from third parties that supplied necessary data over the BitTorrent network to allegedly reconstruct the copy of the films at issue.

111. Upon information and belief, Plaintiff's goal in filing lawsuits for copyright

infringement of its pornographic works is not to protect any actual or potential market for its works, or seek a judgment on the merits. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery

112. Rather, Plaintiff monetizes its alleged copyrights by suing anonymous defendants intending to force them to choose between paying a settlement amount disproportionate to the minimal value of Plaintiff's works, or risk the embarrassment to one's professional and personal reputation when their identity is made public regarding alleged downloading and sharing of pornographic material.

113. Plaintiff filed this lawsuit to advance its coercive and improper enforcement efforts, as alleged in detail herein.

**COUNT ONE:**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

114. Defendant realleges and reincorporates herein its responses to each of the preceding paragraphs as though fully set forth herein.

115. There is an actual and ongoing controversy between Defendant and Plaintiff regarding Defendant's alleged infringement of Plaintiff's copyrights.

116. Defendant did not infringe the copyrights identified in Plaintiff's Complaint.

117. Internet service providers assign external IP addresses to end user's routers. These external IP addresses identify neither the user nor the computer connecting to the internet through the IP address.

118. On information and belief, Plaintiff has not compared the piece of information allegedly downloaded from the external IP address associated with Defendant's ISP account to the data that comprises the works listed in its Complaint. At most, Plaintiff allegedly used indirect methods involving assembly comprised chiefly of data sourced from numerous third party sources

18

to recreate its works. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery

119. A declaratory judgment that Defendant has not infringed Plaintiff's works is warranted and appropriate.

120. Moreover, a declaratory judgment of non-infringement will clarify going forward that Defendant is not an infringer of Plaintiff's pornographic material and clarify Defendant's rights as a purchaser or user of internet services.

## COUNT TWO:
## ABUSE OF PROCESS

121. Defendant realleges and reincorporates herein its responses to each of the preceding paragraphs as though fully set forth herein.

122. Plaintiff pleaded claims for copyright infringement despite knowing that an external IP address alone is insufficient to identify an infringer.

123. Plaintiff pleaded claims for statutory remedies despite knowing that those claims were likely unavailable. In filing its Complaint, Plaintiff sought to use and did use lawfully issued process for an ulterior or illegitimate purpose in an attempt to obtain a result not intended by law, including (i) to extract money from defendant/counterclaimant by leveraging the lawsuit as a form of disparagement and humiliation; and (ii) monetary damage relative to the expense of defending this frivolous action. Due to the volume of suits, Plaintiff is not unlikely to have collected more than allowed by statute.

124. On information and belief, Plaintiff has not compared the piece of information allegedly downloaded from the external IP address associated with Defendant's ISP account to the data that comprises the works listed in its Complaint. At most, Plaintiff used indirect methods involving assembly comprised almost entirely of data sourced from numerous third party sources

19

to recreate its works. Plaintiff failed fully to inform the Court of the limitations of its methods during its *ex parte* requests for early discovery. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery

125. Plaintiff waited almost two years from the latest date of first alleged infringement and forewent other methods of enforcement to file its Complaint with an IP address, knowing that crucial exonerating information regarding, for example, use of the IP address, or lack thereof, may be lost.

126. Plaintiff also submitted outdated or sham affidavits in support of its motion to discover Defendant's identity. Plaintiff submitted the affidavit of Tobias Fieser, in which Mr. Fieser purports to testify about the specific IP address upon which Plaintiff sued Defendant. [Dkt. 5-1]. Yet Mr. Fieser's affidavit is dated and signed July 2015—two years before the first date Plaintiff alleges that Defendant infringed Plaintiff's copyrights. [Dkt. 1, Complaint Ex. B]. This sham affidavit underscores Plaintiff's abuse of process.

127. Plaintiff also submitted the affidavit of Patrick Paige in which he testified about Plaintiff's methods and technology for finding alleged infringers [Dkt. 5-1]. Yet the Paige affidavit was signed on August 19, 2016. The Paige affidavit is outdated and thus not credible, especially given the speed at which technology develops.

128. Finally, Plaintiff has argued in at least one prior case that "savvy" IT professionals are capable of hiding proof of infringement in similar cases on an ongoing basis despite similar alleged evidence already presented. This reinforces that Plaintiff understands its methodology is flawed.

129. As a direct and proximate result of Plaintiff's conduct, Defendant has expended a significant amount of time and money in defending against these frivolous claims, and thereby

20

suffered physical and mental stress, harm to his professional activities, harm to his reputation, and other injuries, damages, or losses in an amount to be determined at trial.

## COUNT THREE:
## HARMFUL ACCESS BY COMPUTER, TEX. CIV. PRAC. & REM. CODE § 143

130. Defendant realleges and reincorporates herein its responses to each of the preceding paragraphs as though fully set forth herein.

131. Plaintiff's allegations and affidavits filed in this matter show that Plaintiff, either on its own or through its agent IPP and/or another agent, knowingly accessed a computer, computer network, or computer system owned by Defendant, without the effective consent of Defendant.

132. In so doing, Plaintiff sought to obtain a benefit or defraud or harm Defendant.

133. In accessing Defendant's network without his consent, Plaintiff sought to gain information to advance its pattern of abusive and improper copyright enforcement, so that it could coerce the network owner into a monetary settlement to Plaintiff's benefit. Plaintiff did so despite knowing there was a strong likelihood that the network owner was not the actual possessor or distributor of any portion of Plaintiff's pornographic works.

134. In accessing Defendant's network without his consent, Plaintiff failed to correct or prevented the discovery of a false impression of fact that it knew was likely to affect the judgment of the person from whom data was accessed.

135. On information and belief, IPP, as Plaintiff's agent and at Plaintiff's request, sought to mask or obscure its identity on the BitTorrent network after users and groups determined that they did not want to interact with Plaintiff or its agents, or allow them to access their data. In addition, to the extent Plaintiff, IPP, or any other of Plaintiff's agents seeded the BitTorrent network or other third party networks directly or indirectly with Plaintiff's allegedly copyrighted works, Plaintiff further created false impressions of legality, induced behavior deceptively, and

21

prevented Defendant and others from acquiring information likely to affect their judgment. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery

136. As a direct and proximate result of Plaintiff's conduct, Defendant suffered harm to his property, physical and mental stress, harm to his professional activities, harm to his reputation, and other injuries, damages, or losses in an amount to be determined at trial.

## JURY DEMAND

137. Defendant demands a jury on all issues triable by jury.

## PRAYER FOR RELIEF

For these reasons, Plaintiff prays for judgment against Defendant as follows:

A. Judgment denying Plaintiff any relief against Defendant and dismissing Plaintiff's claims with prejudice;

B. Judgment for Defendant/Counterclaim Plaintiff in all of his counterclaims;

C. A declaratory judgment that Defendant/Counterclaim Plaintiff is not liable for infringing Plaintiff's copyright;

D. Awarding Defendant all damages that Defendant has sustained as a consequence of Plaintiff's actions as alleged;

E. Attorneys' fees;

F. Costs and expenses; and

G. Such other and further relief as this Court may deem just and proper.

App. 084

Dated: December 19, 2019

Respectfully submitted,

/s/ JT Morris
JT Morris
Texas State Bar No. 24094444
jt@jtmorrislaw.com
Ramzi Khazen
Texas State Bar No. 24040855
ramzi@jtmorrislaw.com
JT Morris Law, PLLC
1105 Nueces Street, Suite B
Austin, Texas 78701
Tel: 512-717-5275
Fax: 512-582-2948

Attorneys for Defendant John Doe

App. 085

## **CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and the Local Rules, a true and correct copy of the foregoing was served on all counsel of record by E-File on December 19, 2019.

/s/ JT Morris

JT Morris

24

App. 086

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

MALIBU MEDIA, LLC,

      Plaintiff,

vs.

                              CIVIL ACTION NO. 5-19-CV-00834-DAE

JOHN DOE,

      Defendant.

## DECLARATION OF

I,          declare pursuant to 28 U.S.C. § 1746 that the following statements are true and correct based on my personal knowledge:

1. I am over the age of 18, have never been convicted of a felony, and I am of sound mind.

2. I have read and am familiar with Malibu Media's complaint filed in this case. I understand from the complaint that Malibu Media is claiming someone infringed copyrights they have in the pornographic films listed in Exhibit A and B of the complaint, by sharing those films using BitTorrent.

3. I understand from the complaint that Malibu Media claims the BitTorrent sharing of those films occurred between 2017 and 2019.

4. I understand that Malibu believes I am the infringer because I am the subscriber associated the internet account linked to IP address 70.121.72.191.

5. I am not the person who Malibu claims shared the films described in the complaint. Nor do I know any person who shared the films described in the complaint.

6. I never used BitTorrent or installed it on any of my electronic devices for sharing films or any other purpose between 2017 and 2019.

7. I never viewed any of the films listed in Malibu Media's complaint. I never stored, copied, accessed, or distributed any of those films.

8. At no time have I ever given Malibu Media or IPP International UG consent to connect to or interact with any network or computer system I maintain.

9. To date, Malibu Media has not served me with any discovery requests, asked to inspect any of my computers or other electronic devices, or asked to take my deposition.

10. Malibu Media also has not served me or my counsel with an expert report or other information identifying experts that might testify in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:

7/17/2020

2

App. 088