UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| Plaintiff, | ) Civil Action Case No.5:19-cv-00834-DAE |
| v. | ) |
| JOHN DOE, | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL
AND FOR SANCTIONS**

Plaintiff, Malibu Media, LLC, by and through undersigned counsel, responds to Defendant's Motion to Compel and states:

## I. INTRODUCTION

On April 9, 2020 Defendant propounded his Requests for Production and Interrogatories. On May 28, 2020, Plaintiff served its responses to Defendant's Requests for Production and Interrogatories. On June 4, 2020, Defendant's counsel sent Plaintiff's counsel a letter outlining alleged deficiencies with respect to specific requests and allowed Plaintiff time to respond. Counsel for Plaintiff and Defendant conferred via telephone in an attempt to resolve the dispute without court action, as required by Federal Rule of Civil Procedure 37(a)(1). During the conference, Plaintiff's counsel provided its bases for objecting to certain requests, advised that its expert has been unreachable during the COVID-19 pandemic, and also provided guidance that possible responsive information may be held by Plaintiff's prior national counsel, which is withholding certain files in response to a fee dispute. In addition, Plaintiff's counsel On July 17, 2020, Defendant moved to compel responses to certain Requests for Production based on allegedly

insufficient responses or objections. Defendant's discovery requests seek documents that (a) are not in Plaintiff's possession, custody, or control; (b) do not exist; and to which (c) Plaintiff timely agreed to provide supplements, which Plaintiff continues to compile. For these reasons, as explained more fully below, Defendant's Motion to Compel should be denied in its entirety.

## II. LEGAL STANDARDS

### a. Documents Not In Plaintiff's Possession, Custody, Or Control

Discovery is limited to "nonprivileged matter[s] that [are] relevant to any party's claim or defense." *See* Fed. R. Civ. P. 26(b). A party is only required to produce documents in its "possession, custody, or control..." *See* Fed. R. Civ. P. 34(a). "Federal Rule of Civil Procedure 34 provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in the possession, custody, or control of the documents or other evidence." *Ledbetter v. United States*, 1996 WL 739036 (N.D. Tex. 1996) *citing* Fed. R. Civ. P. 34(a).

Federal courts have consistently held that documents are deemed to be within the "possession, custody or control" of a party for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a non-party to the action. *Monroe's Estate v. Bottle Rock Power Corp.,* No. 03-2682, 2004 WL 737463, at *10 (E.D. La. Apr. 2, 2004). The burden is on the party seeking discovery to make a showing that the other party has control over the material sought. When determining the sufficiency of control of material for purposes of Rule 34, the nature of the relationship between the party and the non-party is the key. *Id.* at *10; *see Goh v. Baldor Electric Co.,* 1999 WL 20943 at * 2 (N.D.Tex.). In addition, "[t]he fact that a party could obtain a document if it tried hard enough...does not mean that the

document is in its possession, custody, or control; in fact it means the opposite." *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) (Court held that control did not exist where a party could not order a non-party to surrender documents). "Neither the Federal Rules of Civil Procedure nor the Fifth Circuit offer clear, definitive guidance as to the appropriate definition of control." *Goh v. Baldor Elec. Co.*, No. 3:98-MC-064-T, 1999 WL 20943, at *2 (N.D. Tex. Jan. 13, 1999); *Dugas v. Mercedes-Benz USA, LLC*, No. 6:12-CV-02885, 2014 WL 3848110, at *3 (W.D. La. Aug. 5, 2014) (relying on *Goh*). In *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 821 (5th Cir. 2004), the Fifth Circuit held that "access" to documents is not equivalent and is broader than "custody, control, or possession" under Rule 34.

Here, Defendant seeks documents from Plaintiff related to the investigation techniques, methods and results of those investigations from Plaintiff's expert, IPP International UG ("IPP"), a German entity.  While IPP does provide Plaintiff with results of its investigation into the astronomical infringement of Plaintiff's copyrights online, it does not provide Plaintiff with documents responsive to Defendant's requests.  Indeed, Plaintiff has committed to supplementing its responses with those communications from IPP, which include details pertaining to Defendant's persistent infringement of Plaintiff's copyrights.  Plaintiff's counsel has advised Defendant's counsel as to the reasons for the delay in this production, namely, that IPP, which is located in Germany and has no corporate representative or office in the United States, has been unresponsive since the beginning of the COVID-19 pandemic.  Further, communications from IPP which were originally sent to Plaintiff's counsel prior to the filing of this Complaint are in the possession of Plaintiff's prior national counsel, which  has asserted a lien against such documents due to a fee dispute with Plaintiff.  Plaintiff avers that this fee dispute is settling and Plaintiff expects to be able to obtain these responsive documents and supplement its responses to Defendant.

### b. Documents That Do Not Exist

Discovery is limited to "nonprivileged matter[s] that [are] relevant to any party's claim or defense." *See* Fed. R. Civ. P. 26(b). A party or non-party "cannot produce what it does not have." *Solorzano v. Shell Chem. Co.*, No. Civ. A.99-2831, 2000 WL 1145766, at *7 (E.D. La. Aug. 14, 2000). And, so, "[c]learly, the court cannot compel [a party or non-party] to produce non-existent documents." *Beasley v. First Am. Real Estate Info. Servs., Inc.*, No. 3:04-cv-1059-B, 2005 WL 1017818, at *4 (N.D. Tex. Apr. 27, 2005). *See also Payne v. Forest River, Inc.*, No. Civ. A. 13-679-JJB-RLB, 2015 WL 1912851, at *4 (M.D. La. Apr. 22, 2015) ("The court cannot order the production of documents that no longer exist or, despite a diligent search, cannot be found in the possession, custody, or control of a party.").

"[T]he Court cannot order the Defendants to produce documentation that does not exist. Therefore, unless the Plaintiff can provide proof that the documents exist, rather than mere speculation, the Court will not entertain motions to compel the Defendants to produce documentation whose existence is nothing more than theoretical." *McElwee v. Wallantas*, No. Civ. A. L-03-CV-172, 2005 WL 2346945, at *3 (S.D. Tex. Sept. 26, 2005).

### III. <u>ARGUMENTS</u>

### A. Defendant's Requests for Production Related to IPP Seek Documents That Are Irrelevant, Overbroad, and Not In Plaintiff's Possession, Custody, Or Control

### 1. The Nature of IPP's Evidence

IPP establishes a direct TCP/IP connection with a computer that is distributing a "piece" of Plaintiff's copyrighted work. The "piece" is a packet of data. The packet of data correlates to Plaintiff's copyrighted work because it has a unique cryptographic hash value. Cryptographic hash values act as digital fingerprints. They are long binary codes. Via the algorithms governing the

hash system, hash values are capable of being calculated with the type of mathematical certainty and precision as 2 plus 2 equals 4.

      IPP servers are synchronized to both an atomic clock and GPS clock. IPP logs transactions between its servers and a person distributing a piece of a copyrighted work on a log file. Each transaction is saved in what is called a PCAP. A PCAP is an electronic recording of the transaction. It is analogous to a video recording. The software that IPP uses to create PCAPs is called TCPDump. TCPDump is one of a handful of widely recognized forensically sound Packet Analyzers. It is an open source free software program. Each PCAP covering each transaction is stored on a WORM tape drive. So too is the MySQL database log file to which the PCAP correlates. WORM stands for "write once, read many." IPP uses a WORM drive because it is impossible to modify data after it is written onto a WORM drive. In addition, it is impossible to delete any data, outside of destroying the tape drive itself. Additionally, within twenty-four hours of a PCAP file's creation, a German government-issued time stamp is placed on the WORM drive. Each month for Malibu Media, IPP logged millions of transactions globally. Over 80,000 unique individuals infringe Malibu Media's works in the U.S. each month alone. Each of these infringers connects to IPP's servers numerous if not hundreds or thousands of times. The WORM tape drives used by IPP contain three terabytes of storage. Three terabytes of storage can hold three million one megabyte photographs. IPP goes through several of these tape drives each week. IPP saves these WORM tape drives in a digital locker. Its security systems pass the certification used by credit card companies.

      PCAP files can be read by anyone with the equipment to read them. The information contained in them can also be converted to word documents. The PCAPs speak for themselves and conclusively establish that the infringing transaction occurred. IPP charges Plaintiff to produce

PCAP files. At trial, Plaintiff intends to introduce one PCAP file for each copyrighted work as well as the log files associated with the Defendant. Put another way, Plaintiff does not intend to introduce the thousands of PCAP files that evidence each infringing transaction committed by Defendant. That evidence is contained in the log file which, as previously stated, is also simultaneously created and saved in the same way that the PCAPs are created. To be clear, Plaintiff will produce to Defendant everything that it intends to introduce at trial. And, Defendant can subpoena IPP to produce any other evidence that Defendant wants from IPP. Plaintiff does not control IPP. They do not have overlapping owners. They are not in the same business. IPP is nothing more than a regularly used third party vendor to Malibu Media.

**2. The Objectionable Discovery Related to IPP's Information**

Defendant's Requests for Production related to IPP and its infringement detection techniques and methods seek documents that are not in Plaintiff's possession, custody, or control but rather in IPP's possession, custody, or control. This request requires Plaintiff to not only produce documents not in its possession, custody, or control, but to produce *thousands* of PCAP files. The Court must weigh the burden of discovery against its likely benefit. *See* Fed. R. Civ. P. 26(b)(2); *SSL Servs., LLC v. Citrix Sys., Inc.,* No. CIV.A. 2-08-CV-158-T, 2010 WL 547478, at *3 (E.D. Tex. Feb. 10, 2010). Here, Defense counsel's requests are not only overbroad, but also a highly unrealistic and unduly burdensome request. As previously explained, IPP logs millions of transactions globally each month. For each hash value, each infringer within the swarm connects to IPP's servers numerous if not hundreds or thousands of times. For each time an infringer connects and transacts with IPP's servers, a PCAP and technical report can be produced. However, a PCAP for every transaction involving one hash value could total into the thousands for the defendant *alone*. This is why Plaintiff will only introduce at trial one PCAP for each work infringed

6

upon. Further, IPP charges Plaintiff a fee to extract information from its servers. Therefore, in this one request alone, Plaintiff would have to spend several if not tens of thousands of dollars to produce this information. A "district court must limit otherwise permissible discovery if it determines that 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." *Crosby v. La. Health Serv. & Indem. Co.,* 647 F.3d 258, 264 (5th Cir.2011) (quoting Fed.R.Civ.P. 26(2)(C)(iii)).

Plaintiff has also objected to producing information from IPP on the basis that the documents requested are not in Plaintiff's possession, custody, or control. A party is only required to produce documents in its "possession, custody, or control..." *See* Fed. R. Civ. P. 34(a). Defendant somehow claims that the subject documents are in Plaintiff's control but fails to set forth any specific facts or arguments to support this claim. Specifically, Defendant has provided no evidence to support the claim that Plaintiff is in control, has a legal right to obtain, or could obtain such documents on demand. Typically, what must be shown to establish control over documents in the possession of a non-party is that there is "a relationship, either because of some affiliation, employment or statute, such that a party is able to command release of certain documents by the non-party person or entity in actual possession. *Estate of Monroe v. Bottle Rock Power Corp.,* No. 03–2682, 2004 WL 737463, at * 10 (E.D. La. April 2, 2004). *see also Shell Global Solutions (US) Inc. v. RMS Engineering, Inc.,* No. 09–cv–3778, 2011 WL 3418396 (S.D.Tex. Aug. 3, 2011) ("Among the factors used by courts to determine whether one corporation may be deemed under control of another corporation are: (a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange

of documents between the corporations in the ordinary course of business, (d) any benefit or involvement of the nonparty corporation in the transaction, and (e) involvement of the non-party corporation in the litigation."). Here, these factors weigh against a finding that Plaintiff somehow can control IPP. "The fact that a party could obtain a document if it tried hard enough...does not mean that the document is in its possession, custody, or control; in fact it means the opposite." *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) (holding that control did not exist where a party could not order a non-party to surrender documents). Plaintiff cannot demand that IPP surrender the documents requested. In fact, in order to produce such documents Plaintiff would need to compensate IPP to extract and compile much of this data. Malibu Media and IPP do not have overlapping owners and are not in the same business. They are two separate entities and their only connection to one another is the professional business relationship wherein Malibu Media compensates IPP for its global anti- piracy services. IPP is nothing more than a regularly used third party vendor to Malibu Media. Beyond this business agreement, there is no link that the two separate entities have with one another. To assert that Plaintiff has control over IPP's documents merely because of the existence of a service agreement between Plaintiff and IPP is erroneous. Accordingly, Plaintiff stands by its objections and reasserts that the documents requested are not in its possession, custody, or control.

**B. Defendant's Request for Production of Documents and Information Pertaining to Market Value of Malibu's Copyrights, Damages and Revenues.**

Defendant has also requested a multitude of information pertaining to the value of Plaintiff's works.  By way of example, Defendant's Interrogatory 4 asks:

> Separately for each of the Copyrights-in-Suit, describe the market value for the underlying work, including but not limited to any evidence of market value, sales and

> subscription revenue that is attributable to the work; requests to license the underlying work; and any licensing fees attributable to the work.

Similarly, Defendant has requested Plaintiff produce information about Plaintiff's "(i) prior attempts to enforce the asserted copyrights" and (ii) income generated from the copyrights" in addition to documents related to market value, income, revenues, distribution of the works, alleged harm or reputational loss and similar topics. Plaintiff has objected on the basis that this information is not likely to lead to discoverable evidence as Plaintiff seeks only statutory damages in its Complaint. While Defendant is correct in asserting that the Copyright Act allows statutory damages "with respect to any one work. . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 505(c)(1). Plaintiff need not prove actual damages to be entitled to an award of statutory damages, and may make an election of statutory damages "regardless of the adequacy of the evidence offered as to [its] actual damages and the amount of [D]efendant's profits." *Columbia Pictures Television, Inc., v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001), *cert. denied*, 534 U.S. 1127, 112 S.Ct. 1063 (2002). Courts around the country have routinely found that statutory damages awards in the range of $1,500 to $2,250 to be reasonable with respect to the infringement of Plaintiff's works. *See Malibu Media, LLC v. Brenneman*, 2013 U.S. Dist. LEXIS 174641, 2013 WL 6560387, at *3 (N.D. Ind. Dec. 13, 2013) (Court found damages award of $1,500.00 per infringed work will suffice to compensate Plaintiff and deter future infringement.); *Malibu Media, LLC v. Cowham*, 2014 U.S. Dist. LEXIS 74649, 2014 WL 2453027, at *2 (N.D. Ind. June 2, 2014)($1,500.00 per infringed work was found reasonable.); *Malibu Media, LLC v. Goodrich*, 2013 U.S. Dist. LEXIS 177353, 2013 WL 6670236, at *11 (D. Colo. Dec. 18,

9

2013) ($2,250.00 per infringed work was found reasonable.); *Malibu Media, LLC v. Flanagan*, No. 2:13-CV-5890, 2014 U.S. Dist. LEXIS 89224, at *10-11 (E.D. Pa. June 30, 2014) ($1,500.00 per infringement found reasonable to deter future infringements as well as compensate the Plaintiff).

During the telephone conference between counsel, Plaintiff's counsel advised that Plaintiff would supplement its responses to include revenue information for the last three years pertaining to Plaintiff's X-Art.com subscription business, which is the only lawful avenue of obtaining full streaming access to Plaintiff's catalog of movies. Plaintiff maintains its intent to provide this information, under a proper protective order, and expects to provide said information within the next seven days.

### C. Defendant's Request for Production of Documents About its Ownership of the Asserted Copyrights.

Defendant asked Plaintiff, for each Copyright-in-Suit, to state the basis of its claim of ownership. Plaintiff's response provided that its claim of ownership was based on the certificates of registration, which are made available to Defendant. Further, Plaintiff advised that no other communications or documents exist responsive to this and similar requests. Plaintiff maintains this as a proper response. Plaintiff owns certificates of registration from the Copyright Office in the copyrighted works at bar. The certificates "constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *see Malibu Media, LLC v. Knight*, 2013 U.S. Dist. LEXIS 195893, *7 (M.D. Fla. May 9, 2013). Thus, the fact that Plaintiff is the listed owner of each of the Copyrights-in-Suit in the certificates of registration, satisfies Defendant's request.

### D. Sanctions are Not Warranted

Given Plaintiff's justified objections, responses, and commitment to supplement its responses, sanctions are not warranted. Plaintiff has acted in good faith and continues to do so.

### IV . CONCLUSION

For the foregoing reasons Plaintiff respectfully requests that the Court deny Defendant's Motion to Compel in its entirety.

Dated: July 24, 2020

Respectfully submitted,

By: /s/ Paul S. Beik
PAUL S. BEIK
Texas Bar No. 24054444
S.D. Tex. ID No. 642213
BEIK LAW FIRM, PLLC
8100 Washington Ave., Suite 1000
Houston, TX 77007
T: 713-869-6975
F: 713-868-2262
E-mail: paul@beiklaw.com
**ATTORNEY FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

I hereby certify that, on July 24, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ Paul S. Beik
PAUL S. BEIK