**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

MALIBU MEDIA, LLC,

Plaintiff,

vs.

JOHN DOE,

Defendant.

CIVIL ACTION NO.  5-19-CV-00834-DAE

**APPENDIX TO DEFENDANT JOHN DOE'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

1.  Excerpts from October 20, 2020 Deposition of Collette Pelisser………Opp. App. 1-21

2.  Excerpts from December 9, 2020 Deposition of John Doe[1]…………..Opp. App. 22-37

3.  January 4, 2021 Declaration of JT Morris…………………………….…Opp. App. 38-94

    a.  Doe's First Requests for Production to Malibu Media………..Opp. App. 41-58

    b.  Doe's Objections and Responses to Malibu Media's Requests for Production……………………………………………………Opp. App. 59-76

    c.  Complaint in *Pelissier et al. v. Sargsyan, et al*………………..Opp. App. 77-89

    d.  September 27, 2019 email from Paul Beik to JT Morris……...Opp. App. 91-92

    e.  December 21, 2020 letter from Paul Beik to the Clerk……….Opp. App. 93-94

4.  Sealed excerpts from October 20, 2020 Deposition of Collette Pelisser[2]……………………………………………………………...Opp. App. 95-102

5.  Sealed excerpts from December 9, 2020 Deposition of John Doe….Opp. App. 103-111

Doe also incorporates fully into this appendix the Appendix from Doe's Partial Motion for Summary Judgment (Dkt. 59-1).

---

[1] Doe's real name is redacted from these excerpts to comply with the Stipulated Protective Order [Dkt. 10].

[2] The sealed excerpts are attached to a separate sealing motion as required under L.R. Civ. 5.2.

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION


MALIBU MEDIA, LLC,                    )

                                      )

                 Plaintiff,           )

                                      )

   vs.                                )Case No.

                                      )5-19-CV-00834-DAE

JOHN DOE,                             )

                                      )

                 Defendant.           )

_____)




VIDEOTAPED ZOOM VIDEOCONFERENCE DEPOSITION OF

30(B)(6) CORPORATE REPRESENTATIVE OF MALIBU MEDIA

COLETTE PELISSIER


Taken at 2 Bloomfield Hills Drive

Henderson, Nevada


On Tuesday, October 20, 2020

At 9:19 a.m.



Reported by:  Deborah Ann Hines, CCR #473, RPR

HUDSON COURT REPORTING & VIDEO          1-800-310-1769

```
 1    Appearances:
 2    For the Plaintiff:
 3          PAUL S. BEIK, ESQ.
            Beik Law Firm
 4          8100 Washington Avenue
            Suite 1000
 5          Houston, TX 77007
            (713)869-6975
 6          paul@beiklaw.com
            (Via Zoom Videoconference)
 7
 8    For the Defendant:
 9          RAMZI KHAZEN, ESQ.
            - and -
10          J.T. MORRIS
            J.T. Morris Law
11          1105 Nueces Street
            Suite B
12          Austin, TX 78701
            (512)717-5275
13          ramzi@jtmorrislaw.com
            jt@jtmorrislaw.com
14          (Via Zoom Videoconference)
15
      Videographer:
16
            CODY HALL
17          (Via Zoom Videoconference)
18
19
20
21
22
23
24
25
```

**New York**
212-273-9911

**Hudson Court Reporting & Video**
1-800-310-1769

**New Jersey**
732-906-2078

Opp. App. 002

| | | | |
|---|---|---|---|
| 1 | WITNESS | | PAGE |
| 2 | COLETTE PELISSIER | | |
| 3 | Examination By Mr. Khazen | | 5 |
| 4 | Examination By Mr. Beik | | 275 |
| 5 | Further Examination By Mr. Khazen | | 281 |

8          E X H I B I T S

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Defendant's | | |
| 1 | Defendant's Rule 30(b)(6) Deposition | |
| |    Notice to Plaintiff Malibu Media | 25 |
| 2 | Contract Between Malibu Media and IPP | 91 |
| 3 | Original Complaint | 133 |
| 4 | Website Analytics | 147 |
| 5 | List of Settlements | 216 |
| 6 | Defendant John Doe's First Requests | |
| |    for Production to Plaintiff | 222 |
| 7 | John Doe's First Set of Interrogatories | 222 |
| 8 | John Doe's Second Set of Interrogatories | 222 |
| 9 | Defendant John Doe's Second Request | |
| |    for Production to Plaintiff | 222 |
| 10 | Tweets | 253 |
| 11 | Un-filed Complaint | 268 |

4

1          THE VIDEOGRAPHER:  Today's date is

2   October 20th, 2020.  The time is 9:19 a.m. Pacific

3   time.  We are beginning the deposition of Colette

4   Pelissier.  Will counsel please announce for the

5   record who they represent.

6          MR. KHAZEN:  Ramzi Khazen of the J.T. Morris

7   Law Firm on behalf of the defendant, John Doe.

8          MR. MORRIS:  J.T. Morris also of J.T. Morris

9   Law, PLLC on behalf of defendant, John Doe.

10          MR. BEIK:  Paul Beik, Beik Law Firm, PLLC on

11   behalf of plaintiff, Malibu Media.

12          THE VIDEOGRAPHER:  Okay.  Ms. Hines.

13          THE REPORTER:  Due to COVID-19, will all

14   parties please stipulate to swearing in of the

15   witness remotely.

16          MR. BEIK:  Yes.

17          MR. MORRIS:  Yes.

18          THE WITNESS:  Yes.

19          MR. KHAZEN:  Yes.

20          THE WITNESS:  What if we said no?

21          ///

22          ///

23          ///

24          ///

25          ///

1    Thereupon--

2                          COLETTE PELISSIER

3    was called as a witness by the Defendant, and having

4    been first duly sworn, testified as follows:

5                          EXAMINATION

6    BY MR. KHAZEN:

7        Q.   Can you please introduce yourself for the

8    record?

9        A.   My name is Colette Pelissier, C-o-l-e-t-t-e.

10   Last name P-e-l-i-s-s-i-e-r.

11       Q.   And your address?

12       A.   I'm the owner of Malibu Media.  Malibu

13   Media, LLC and other, other companies and internet

14   companies.

15       Q.   Your address?

16       A.   My address is -- Paul, my business address?

17   Personal address?  Which business?

18            MR. BEIK:  Your business address.

19            THE WITNESS:  My business, I have two

20   different business addresses right now.  There's one

21   in California, and there would be -- I guess use the

22   business address at 2 -- where I am right now

23   actually would be a good business address.  2

24   Bloomfield Hills Drive in Henderson, Nevada and

25   89052.

1          Like if someone were to blame me for that, I

2     would say, wait a minute, no, I wasn't.  Someone else

3     was using my IP address at that time, and I would

4     name who it was, but it wasn't me who did it.  So

5     because your client had been so adamant about --

6          Q.   If a -- if a member of your family had done

7     that, you would -- and you were being accused by a

8     pornography company, you are saying that you would

9     turn in a member of your family as, as the, as the

10    person who downloaded it and give --

11          MR. BEIK:  Object to form.

12    BY MR. KHAZEN:

13          Q.   -- give their name to a, to a pornography

14    company?

15          MR. BEIK:  Object to form.

16          THE WITNESS:  You know, well, you know, if

17    another member of his family did it, then he could

18    just say another member of his family did it and

19    not -- he doesn't have to say who that was, but he

20    can let us know if another member of his family did

21    it.

22          And it's not like we're going to go -- the

23    whole thing about settling this is that we keep the

24    names private.  It's not like we're going to run out

25    and just say, oh, you're these -- this, this and that

1    or they're downloading and it's erotica.  So it's --

2    I mean, it's nothing to be embarrassed about.

3           He also downloaded 32,000 other files that

4    were not meant to be downloaded for free.  So I

5    think, you know, it's -- it's just a shame how many

6    internet things are getting downloaded for free now.

7    BY MR. KHAZEN:

8        Q.   Okay.  So just to clear this up and finalize

9    it, the reasons that you gave me, let me circle back

10   and make sure it's clear.  Other than the IP address,

11   the interests of the downloader, and that no one else

12   has come forward, do you have any other evidence that

13   you claim supports your claim that my client

14   downloaded your copyrighted works and it wasn't done

15   by someone else connected to his network?

16           MR. BEIK:  Object to form.

17           THE WITNESS:  At this point I cannot think

18   of how to answer your question.

19   BY MR. KHAZEN:

20       Q.   You need to answer my question.  I will --

21   can I have the court reporter please repeat my

22   question?

23              (The last question was read back as

24              follows:  "So just to clear this up and

25              finalize it, the reasons that you gave

1   you know, one's in Germany, one's in England.

2          And we started with them 12 years ago, like

3   when this wasn't even a thing, and now everyone is

4   getting their movies stolen, so it's just so

5   different now.  So -- so yes, they're not easy to

6   reach now, and that's why we're making our own

7   software.

8      Q.   So you communicate with them through

9   WhatsApp and through Skype; is that correct?

10     A.   Basically.

11     Q.   And when is the last time you communicated

12  with them through WhatsApp or Skype?

13     A.   Maybe two months ago.

14     Q.   And have you produced those records, those

15  communications to your attorney?

16     A.   I don't -- I don't think so.  I don't think

17  there's anything to produce.

18     Q.   I'll call for all that production, all those

19  communications with IP -- IPP.

20          And do you recall what, what you

21  communicated about with IPP last over WhatsApp?

22     A.   We were asking basically for some cases.  We

23  were actually asking them for documents that we did

24  not have.  And actually one of our guys who was

25  communicating with the experts, I forgot about that,

1  he had COVID, and he was not able to get some of the

2  documents.

3         And so another guy in India, who was

4  supposed to organize IPP's information, so this guy

5  getting COVID kind of slowed down getting the

6  information from IPP.  And so, yeah, I did forget

7  about that.  That guy, Dane, actually it was a bigger

8  deal because he was supposed to get that information

9  from IPP.

10         So we've been trying to get information from

11  them and they've not been very responsive, all

12  because of the COVID and everyone, whatever they're

13  doing.  So if we're not working with them, they're,

14  you know, they're not very quick to respond to us,

15  although, you know, we've still paid them all their

16  payments, so they should, you know, they should pay

17  us, so...

18     Q.   Did they communicate to you that it was

19  because of COVID they weren't being responsive?

20     A.   It -- well, the guy who was supposed to --

21  was dealing with them on our side, he had COVID.  So

22  they're just never really that responsive.  And so

23  then to couple that with the, with our guy on our

24  team who had COVID, they were very hard to reach.

25     Q.   What guy that was on your team got COVID?

1    A.   Yes, of course.

2    Q.   And those contracts don't assign their

3  rights to copyrights to Malibu Media, correct?

4    A.   They are -- they assign all the copyrights

5  to Malibu Media.  They assign all the use, every --

6  they keep no rights for themselves based on whatever

7  they've worked on.  If they've been on the set and

8  they've been a gaffer or they've been on camera A or

9  B or they've been, they been just someone carrying

10  their stuff around in the airport, all rights for

11  anything artistic, even behind the scenes, everything

12  is assigned to Malibu Media.

13         So even if they're not evening planning on

14  making content, but we might use the content behind

15  the scenes later, we make sure everyone signs a

16  release that no one owns anything as far as anything

17  that they've shot or on any one of our trips or on

18  anything like that.  We own all the rights to

19  everything.

20    Q.   Do you have copies of all of those

21  contracts?

22    A.   I'm sure -- I'm not sure we have it for

23  every trip, but for -- I'm sure I can find all of

24  them though, so, yes, somewhere.

25    Q.   All right.  And the -- so you're saying that

1    the independent contractors, that they assign their

2    rights, that they assign their rights to the

3    copyrights to Malibu Media?

4         A.   They never had the rights to the copyright

5    to assign it.  So does that not make sense to you?

6    So if you're just going to edit something that we've

7    already shot, just by us asking you to edit

8    something, you don't get a copyright for it.

9         Q.   Then why did you follow up with your

10   latest -- that's what at first you said, but your

11   latest answer then said that no, they do assign their

12   rights.  So which, which is it?  Do they have -- they

13   have terms of the contract with assign rights?

14        A.   Just to -- just so everyone -- so just

15   there's no -- just in case they do something else or,

16   I mean, we just don't -- we want to be covered at all

17   costs.  So but most of the time just because, like

18   say we shoot a movie and then we want to have an

19   editor edit the movies for us, because we're busy,

20   and so instead of doing that editing in-house, we

21   give the movie to an editor.

22             And I sit -- and I actually work with them

23   and say what music I want and how I want to break the

24   movie down.  And he gives us a price, and then he

25   signs a contract that says any of his work product we

1   own, you know, a hundred percent.  Doesn't -- doesn't

2   even have to talk about copyrights because he never

3   had a copyright.  It's just his work product of

4   editing the raw footage.

5       Q.   So there's nothing in the contracts that

6   specifies that there's a work made for hire

7   situation?

8       A.   They're all for work for hire.

9       Q.   I'm sorry?

10      A.   All the contracts are work for hire.

11          MR. BEIK:  Object to form.

12  BY MR. KHAZEN:

13      Q.   And have you produced those contracts to

14  your lawyer?

15      A.   I -- I don't know if we have.  Like I said,

16  I had COVID for a while and some of our other people

17  did too on the teams in Europe.  So I'm not sure

18  exactly what was produced and what was going on.  I

19  know there were quite a few things going on during

20  this trial that made it hard for us because of also

21  the moving towards our own, our own persons instead

22  of IPP, because we just don't trust them like fully

23  at this point.  And we want to make sure everything

24  is done correctly and so we wanted to check out their

25  past things.

Opp. App. 012

1       So with all of that going on and with, you

2   know, us starting to file and protect our content

3   again, I guess the last thing on my mind would be,

4   would be, you know, did we do one, this or that or

5   something.  I mean, it should be done for sure, but

6   we also -- I mean, to answer your questions, we

7   always protect our rights.  We always own the

8   copyrights.  We have not assigned the copyrights to

9   anyone.

10      Q.  And have you -- and does this -- and do your

11  contracts go back to the whole time you've owned

12  Malibu Media you've had the same form of contract?

13      A.   No, because in the beginning it was only

14  photos.  So we had photos contracts and so we used to

15  sell to Playboy and Penthouse.  They had some models

16  that were like slightly naughtier, and so we would

17  actually do like a fashion style shoots with them.

18  And then everyone was very interested in seeing

19  these, you know, girls that do a little bit harder

20  core stuff in fashion style, so that's how it started

21  out as.

22      And then -- and so we of course had

23  copyrights because those were photos, and photos are

24  infringed on all the time.  And then when he started,

25  we were one of the first SLRs and we started video

1    content.  And of course through content you copyright

2    and you make sure to register your copyright and your

3    video for your video content.  I mean, that's how

4    they -- YouTube wouldn't exist otherwise.

5        Q.   Do you have any proof that these contracts

6    exist?

7        A.   Contracts between the copyright office?

8        Q.   Contracts between you and any of your

9    independent contractors that have worked, that have

10   worked on the movie, directed the movies, done

11   editing on the movies, anything?

12       A.   Yes.

13       Q.   What proof do you have?

14       A.   We would have work for hire.  We would

15   have -- anyone who's ever worked on anything for us

16   will sign a work for hire.

17       Q.   And have you produced those contracts to

18   your lawyers?

19       A.   I think this all went really fast, and I

20   don't recall being asked to produce that, because

21   I've been extremely busy lately and I think maybe

22   they just didn't want to trouble me with that.

23            But I -- like I said, I'm happy to produce

24   what I can as far as that goes.  But we -- we do own

25   all of our -- I don't know where you're trying to go

Opp. App. 014

1    with this.  We own all of our copyrights.  No one

2    else owns any of our copyrights.

3         Q.   That's not for you to determine.  Please

4    just answer the question that I'm asking.  So do you

5    have those contracts in your possession, if they

6    exist?

7         A.   They do exist.  And they're -- the

8    problem -- I'm just trying to think if they're on an

9    email or on my -- the fax with the -- my fax where I

10   fax to the cloud or if they're in California or in

11   Henderson.  So, yeah, I need to find them.

12        Q.   Okay.  So, yes, if you have those -- if you

13   have those contracts -- your answers are just very,

14   very long.  I wish you would just answer my

15   questions.  This would move a lot faster.

16        A.   The thing is --

17        Q.   You do have contracts with your independent

18   contractors that are, with your independent

19   contractors that were available at the time of these

20   movies in Exhibit A of the complaint in your

21   possession; is that correct?

22        A.   Okay.  So some of them wouldn't require a

23   contract if we did all the work ourselves, so there

24   wouldn't be a contract.  Like when I said Truth or

25   Dare, remember I was telling you about that one?

Opp. App. 015

1    these.

2        Q.    Have you produced -- have you communicated

3    directly with IPP at all during this period?

4        A.    No.  They were actually not talking to me

5    because Lomnitzer was paying them more than I wanted

6    to pay them, so she was communicating with them.

7        Q.    And what years was that, were those?

8        A.    That was I think '17 and '18.

9        Q.    And then in 2019 did you communicate with

10   IPP directly?

11       A.    Part of -- no, we actually -- when we left

12   Lomnitzer, we left IPP.

13       Q.    So when you testified earlier that you

14   communicated with IPP over WhatsApp?

15       A.    Yeah, a couple things that we had still

16   going on with them, but we didn't -- they weren't

17   our -- providing the service anymore for us.

18       Q.    That wasn't my question.  I was asking

19   whether you were communicating, whether you

20   communicated with them and you said no.  So when is

21   the last time you communicated with IPP?

22       A.    Months and months.  I don't recall exactly.

23   I think that's what I said before, too.

24       Q.    Did you communicate directly with IPP over

25   WhatsApp at all in 2019?

Opp. App. 016

1      A.   I believe I tried to.

2      Q.   And WhatsApp, did IPP respond to your

3  communications to them?

4      A.   I believe they tried to get us to pay more

5  money to get more data from them, and since we were

6  already designing our own that nothing every

7  progressed because they wanted more from us than we

8  were willing to give.

9      Q.   And when did they send you a series of

10  communications?

11      A.   I don't -- probably -- maybe this was seven

12  months ago.

13      Q.   And were there any communications with them

14  prior to that over WhatsApp?

15      A.   I'm not sure.

16      Q.   Were there any communications with them

17  prior to that over any means directly between you and

18  IPP?

19      A.   No, I don't believe so.

20      Q.   Did you ever communicate with Computer

21  Forensics?

22      A.   Is that -- that's it I believe.  And, yes, I

23  believe I did communicate with him.

24      Q.   When is the last time you communicated with

25  Computer Forensics?

1    software works and that would be illegal.

2        Q.   Is that the only reason you don't believe

3    they're seeding your, your, the internet with your

4    copyrighted works?

5        A.   Well, we're not working with them anymore

6    and nothing has changed.  The internet is still

7    getting filled with our copyrighted works.

8        Q.   I mean, you mentioned that they're actually,

9    that they're actually making money in Europe off of

10   the, off of the proliferation of your works; is that

11   correct?

12       A.   I don't know for sure but it seems like they

13   are because I've been, I've been trying to contact

14   some attorneys that they're still working with, and

15   it's not just our movies but I believe that they are

16   trying to collect on our movies.  So I'm still

17   investigating that, and we're in the middle of

18   investigating that, so that's -- I don't know the

19   answers.

20       Q.   Did you not testify that you believed that

21   they had made $400,000 already on -- from --

22       A.   I do believe that.  It hasn't been proven,

23   but I do believe that.

24       Q.   And is that illegal for them to do?

25       A.   Yeah.  They would owe us the money but it's

1   in Europe so it's not easy to get, so...

2        Q.   So IPP operates illegally, in your opinion?

3        A.   No, I didn't say they were operating

4   illegally --

5        MR. BEIK:  Form.

6        THE WITNESS:  -- but I think that they're

7   you know, costing me money where they can.  I don't

8   know for certain.  So and they -- what they do with

9   the data is not illegal when someone buys -- when

10  someone purchases, wants to find out if their IP

11  address is -- if their movies are getting stolen by

12  which IP addresses, they can provide those services.

13       And so since they can provide those

14  services, and then if you don't want to take them up

15  on their services in Europe, I wouldn't put it past

16  them to just go ahead and just accept the money

17  themselves then.

18  BY MR. KHAZEN:

19       Q.   And it's your belief that they are

20  collecting money that is owed to you illegally in

21  Europe; is that correct?

22       A.   Yeah, I don't want to testify to that

23  because I haven't investigated it far enough, but I

24  do have one lawyer that has been telling me that and,

25  and maybe one or two others and so it's very -- I

1    That is an answer.

2              THE WITNESS:  I do not know.  I cannot know

3    that to a point where I can put it on a legal form,

4    unless I have actually taken them to court and

5    verified it.

6    BY MR. KHAZEN:

7         Q.   I didn't ask if you know for sure, so I'm

8    going to ask the question again.  This is getting to

9    the point where you're just refusing to answer my

10   questions.  So do you suspect that IPP is illegally

11   enforcing your copyrights in Europe?

12             MR. BEIK:  Objection, form.

13             THE WITNESS:  I'm not going to answer

14   whether I suspect something or not.  That's -- it's

15   not okay to do that, because if they're not, I'm not

16   going to slander them and say they are.  I'm going to

17   go to court and do it correctly.

18   BY MR. KHAZEN:

19        Q.   You're refusing to answer my question?

20        A.   No, I'm not refusing to answer your

21   question.  I'm refusing to slander someone when I

22   don't have all the information.

23        Q.   You testified earlier that you, that you

24   suspected that they stole $400,000 from you by

25   illegally enforcing your patents from Europe.  Were

1    you lying then?

2       A.   No.

3       Q.   Has your testimony changed?

4       A.   That wasn't a direct testimony, that was

5    just a little bit of color as to why we -- things

6    weren't working out between IPP and us.

7       Q.   A little bit of color?  So it wasn't

8    truthful?

9       A.   I don't know.  It's not a fact.  It's

10   something that has to be investigated.  And when

11   you're investigating something like that, you might

12   not, you know, you might not work with the person on

13   something else.

14      Q.   Where did you come up with the number

15   400,000?

16      A.   I estimated over how many months it's been

17   and how much they had been paying themselves from one

18   lawyer.

19      Q.   So wouldn't that give them incentive to seed

20   the internet with your, with your copyrights if

21   they're making money off of it?

22      A.   Well, they're not now --

23           MR. BEIK:  Form.

24           THE WITNESS:  -- for sure, so.  I mean, they

25   are -- we would never let them seed the internet.  I

**CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

MALIBU MEDIA, LLC,        )
     Plaintiff,       )
                        )
V.                     ) C.A. NO. 5:19-cv-00834-DAE
                        )
JOHN DOE,               )
     Defendant.       )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION OF JOHN DOE

DECEMBER 9, 2020

(REPORTED REMOTELY)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION of JOHN DOE, produced as a witness at
the instance of the Plaintiff, and duly sworn, was taken
in the above-styled and numbered cause on the 9th of
December, 2020, from 1:02 p.m. to 4:03 p.m., before
Wendi Broberg, CSR in and for the State of Texas,
reported by machine shorthand remotely via Zoom,
pursuant to the Federal Rules of Civil Procedure and
provisions stated on the record or attached hereto.

Opp. App. 022

CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 2

1                    A P P E A R A N C E S

2

    FOR THE PLAINTIFF MALIBU MEDIA, LLC:

3

4        MR. PAUL S. BEIK
         BEIK LAW FIRM, P.L.L.C.
5        8100 Washington Avenue
         Suite 1000
6        Houston, Texas   77007
         Ph. (713) 869-6975
7        Fax (713) 868-2262
         E-mail:  paul@beiklaw.com

8

9

    FOR THE DEFENDANT JOHN DOE:

10

11       MR. J.T. MORRIS
         JT MORRIS LAW, P.L.L.C.
12       1105 Nueces Street
         Suite B
13       Austin, Texas   78701
         Ph. (512) 717-5275
14       Fax (512) 582-2948
         E-mail:  jt@jtmorrislaw.com

15

16

    REPORTED BY:

17

         WENDI BROBERG, CSR 7091
18       Contracted by:
         Discovery Resource
19       1511 West 34th Street
         Houston, Texas   77018
20       Ph. (713) 223-3300
         Fax (713) 228-3311

21

22

23

24

25

Opp. App. 023

CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 3

1                         INDEX

2     Appearances ....................................2

3     Index ..........................................3

4     Index of Exhibits ..............................3

5     JOHN DOE

6          Examination by Mr. Beik ...................4

7     Signature of Witness ..........................86

8     Reporter's Certification ......................87

9

10                      INDEX OF EXHIBITS

11    NUMBER         DESCRIPTION         MARKED/IDENTIFIED

12    1     Plaintiff's Amended Notice of        15
            Deposition of Defendant
13
      2     Letter from Charter                  16
14          Communications to Paul Beik, Beik
            Law Firm, re response to subpoena
15          in Malibu Media v. John Doe dated
            10/23/19 with attached Attachment
16          A (No Bates)

17    3     Defendant John Doe's Answer and      23
            First Amended Counterclaims
18
      4     Declaration of Defendant (No         47
19          Bates)

20

21

22

23

24

25

Opp. App. 024

CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 4

```
 1                    (Witness sworn)

 2                    THE WITNESS:  I do.

 3                    MR. MORRIS:  Okay.  And just to put it on

 4      the record -- and this is J.T. Morris, counsel for the

 5      witness -- we're designating this under the stipulated

 6      protective order about Doe's anonymity, and also I just

 7      want to remind everybody on the record that at least for

 8      ten days after we receive the transcript the transcript

 9      is treated as confidential under the agreed protective

10      order.

11                    MR. BEIK:  Yes, agreed.

12                         JOHN DOE,

13      having been first duly sworn, testified as follows:

14                         EXAMINATION

15      BY MR. BEIK:

16          Q    My name is Paul Beik, and I represent the

17      plaintiff in this case, Malibu Media.

18                    Would you please state your name for the

19      record.

20          A    The real name?

21          Q    Yes.

22          A    Okay.  For the record, just to make clear, my

23      identity to the best of my knowledge has not been

24      disclosed to the plaintiff --

25                    THE REPORTER:  I can't understand him.
```

CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 29

1    reason for me to use the BitTorrent anymore.

2         Q    When did you first discover BitTorrent?

3         A    I cannot honestly tell you that.  I have no

4    idea.  It's been a long time, more than ten years for

5    sure.

6         Q    Okay.  And is -- is BitTorrent something that

7    you would use in the course of your work?

8         A    My current work?

9         Q    Well, whenever you first started using it.

10        A    Yes, part of my job was to install Linux

11   systems, and, I mean, I would use BitTorrent to download

12   the distributions, yes.

13        Q    Okay.  And was there a charge associated with

14   downloading it?

15        A    No, there was no charge other than the

16   bandwidth cost.

17        Q    Okay.  And was that because it was free?

18             MR. MORRIS:  Objection.  Form.

19        A    The software itself sourcing came with the

20   Linux distributions itself.

21        Q    (By Mr. Beik)  Okay.  So how -- did you ever

22   use BitTorrent for anything else other than Linux?

23        A    No.

24        Q    So tell me -- tell me how the BitTorrent works

25   in terms of if you -- if you wanted Linux how would

Opp. App. 026

CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 32

1   like you're an expert in this, so to the extent that you

2   know, what is going on when the download is taking

3   place?

4                    MR. MORRIS:  Objection.  Form.

5        A     On the BitTorrent system --

6        Q     (By Mr. Beik)  Yes.

7        A     -- or on -- okay.

8              So on BitTorrent a computer would connect

9   to other computers and ask for parts of a file.  Now, I

10  never went into the depths of BitTorrent until this

11  lawsuit, and in this time frame, I have not read the

12  source code or anything else.  So my knowledge is with a

13  caveat that I am not an expert on BitTorrent.  It is

14  what I have read between when I heard about BitTorrent

15  being part of the issue and today.

16             So there are these computers called

17  trackers.  I don't know their full involvement in the

18  whole thing but they are critical in order to have

19  computers know about each other and that would be part

20  of what is I would say more or less centralized in this

21  time point that they are directories that let you know

22  what other computers are on and willing to connect to

23  you.  Then you connect directly to these other computers

24  and ask them if the files that you want are available

25  there and if they are -- or part of the files are

Opp. App. 027

CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 46

1    deficient infringement claim."

2       Q    Now, I'm breaking it down for you.  Is it true

3    that you did not use BitTorrent during the relevant time

4    frame?

5       A    That is correct.

6       Q    What is the -- and that's the time frame

7    between 2017 and 2019, correct?

8       A    Correct.

9       Q    So you did use BitTorrent prior to 2017?

10      A    Yes, several years prior.

11      Q    It references "under penalty of perjury."  Do

12   you know what that's referring to?

13      A    I did sign the -- what was it, request for an

14   interview.  There was an interview, there was a Request

15   for Production and there was a Request for Admission.  I

16   believe this is referring to at least one of those

17   documents, probably the one about the interviews, the

18   interview questions.

19      Q    Do you remember providing an affidavit with a

20   motion?

21      A    Yes, I -- yeah.  Do you have it just to make

22   sure I understand which one that it is because now that

23   you said it I guess the affidavit is not one of the

24   three that I referred to, so it was something else, yes,

25   which was probably before the others.

Opp. App. 028

CONFIDENTIAL
ATTORNEYS' EYES ONLY

1    Q    (By Mr. Beik)  ███ ██████, did you say that you
2   worked in -- at your jobs in IT for 19 years?
3    **A    Well, consulting for 19 years.  IT -- standard**
4   **IT practices was part of it, but it was not the whole**
5   **job.**
6    Q    Okay.  But over ten years I guess is a fair
7   statement maybe?
8    **A    Yes.**
9    Q    Are you aware that you are designated an expert
10  in this case?
11   **A    I think made an expert on -- related to what**
12  **expertise?**
13   Q    No, I'm sorry.  My question is in the case,
14  this case, are you aware that you have designated an
15  expert in this case?
16   **A    Oh, that I have designated one, not that I am**
17  **an expert.  Okay.  Yes, we do have an expert designated.**
18   Q    I didn't mean to insult you.  If you're an
19  expert, that's great, but I was just -- I was talking
20  about the expert in this case.
21   **A    Right.  Yeah.  No, it was -- I lowered the**
22  **volume to try to decrease the echo, and sometimes I --**
23  **my ear is not close enough to the speaker.**
24   Q    Okay.  Did you talk to your expert in this
25  case?

CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 51

1    **A**    **No, I did not.**

2    Q    Did he ever inspect any of your hard drives?

3    **A**    **No, he has not.**

4    Q    Are you claiming damages in this case?

5    **A**    **Yes, I am.**

6    Q    What are you seeking for the jury to award you

7    in damages?

8    **A**    **The amount will be determined a little bit**

9    **later.  I have not at this point in time -- I haven't**

10    **calculated the correct amount or the appropriate amount**

11    **yet.**

12    Q    What do you mean "calculated the correct

13    amount"?

14    **A**    **There are damages, and the damages continue to**

15    **increase as you can imagine.**

16    Q    No, I can't.  That's what I'm asking you.  What

17    are your damages?

18    **A**    **Oh, you cannot imagine.  Interesting.**

19            **I mean, I don't know if you are charging**

20    **Malibu Media but legal fees are pretty severe in this**

21    **kind of situation and they continue to increase.  There**

22    **is damages that are related costs.  I have had to budget**

23    **a fairly large amount of money to defend myself against**

24    **this allegation.  That money was earmarked for**

25    **investments that I have not been able to make.  There is**

Opp. App. 030

CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 52

1    the medical costs that are associated with everything

2    that's happening to me related to this lawsuit.  So,

3    yeah, there is a significant harm being caused by you

4    and your client's actions.

5        Q    And what -- you said harm to your property.

6    What harm to your property are you alleging?

7                MR. MORRIS:  Objection.  Form.

8        A    I will have to look exactly at the sentence

9    that you are talking about.

10       Q    (By Mr. Beik)  Yeah.  If you go down on the

11   document that's up right now, you can go to the --

12   Page 51.  I keep talking like you have control of it.

13   I'm sorry.

14       A    Yeah.  No problem.

15       Q    Okay.  Paragraph 150, it says, "Defendant

16   suffered harm to his property."  I'm asking you:  What

17   is the damage your property?

18       A    I'm not a hundred percent sure right now what

19   that refers to.  There is -- I mean, right now off the

20   top of my head, the only thing I can think of is the

21   depreciation value of the address that has been

22   dedicated to keep records.  Yeah, I mean, what was this

23   file.  I'm not a hundred percent sure what that refers

24   to right now.

25       Q    Okay.  And you -- what is the physical and

CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 58

1    imagine, when the stress goes up and I'm in pain, I'm

2    not the best worker in the world.  ███████████████

███  █████████████████████████████████████████████

███  ███████████████████████████████████  ██

███  ███████████████████████████████████████████████

███  ████████████████████████████████████

7    rather than the work.  So, yes, the performance has

8    decreased as well as me having to take time off to deal

9    with this lawsuit.

10        Q    What harm are you alleging to your reputation?

11        A    To my reputation, it's going to be if my

12    identity is disclosed as well as, you know -- yeah.  If

13    one -- if and when my identity is revealed, there is

14    clearly going to be the possibility that people will no

15    longer trust me with their networks or data or hiring

16    me.  So there is a very serious effect in which I may or

17    may not be able to find work again.  So not only, you

18    know, current income, but also future income is affected

19    by this kind of situation.

20        Q    Does your employer know that you're involved in

21    a lawsuit?

22        A    Not yet, no.  Not right now.

23        Q    What did you mean by future work?

24        A    Well, if I get fired and I -- I become known

25    and people look at my name and my name is associated

CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 59

1   with this lawsuit, that future job opportunities will

2   certainly decrease, if not completely vanish.  You do

3   have other examples.  Again, when I looked at Malibu

4   Media and I looked at this kind of lawsuit -- I don't

5   remember his full name -- it was Tim something made a

6   statement that he is having a very hard time because

7   every time people look at his name what they find is the

8   lawsuits.  And let's face it, we do live in a society in

9   which sometimes an accusation is enough in the public

10  view.  They don't look at actually whether or not you --

11  you were innocent or not.  All of that is reputation.  I

12  work in high stakes data.  Data that I deal with is

13  sensitive to say the least.  I cannot afford to

14  basically be tied to this kind of lawsuit and I'm being

15  accused of things that I did not do.

16      Q    So at this point in time you don't have any

17  harm to your reputation, correct?

18              MR. MORRIS:  Objection.  Form.

19      A    It's -- I would say that it is unclear.  I do

20  not know whether my current situation is affecting me at

21  work or not.  As I said, there is a particular decrease

22  in performance.  I don't know if, for example, if

23  promotion will or will not be affected by this.  I do

24  not know the performance reviews that my managers and

25  higher-ups do.  It is completely unclear and that's why

CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 62

1    all ties together.  You're trying to separate it into

2    three very distinct categories, and I assume that they

3    all have very legal definitions and determinations based

4    on how they get categorized from a legal term.  I am not

5    a lawyer, so I don't know what to tell you.

6        Q    You mentioned attorney's fees earlier.  How

7    much attorney's fees have you -- are you seeking in this

8    case?

9        A    I don't have the amount in front of me.  I can

10   tell you that so far I have budgeted in the six figures.

11   Depending on how much longer this is going to take, it

12   is unclear whether or not I'll have to allocate more

13   money than my current -- my current budget.

14       Q    Are you alleging that IPP software doesn't

15   work?

16               MR. MORRIS:  Objection.  Form.

17       A    I'm alleging that IPP software does not

18   identify an individual, and I'm not the one alleging

19   that.  I'm just confirming it and agreeing to it.  But

20   when you look at your complaint, I believe Malibu Media

21   is alleging that as well.  So from the standpoint of

22   does it work, does it not work, the allegations are that

23   you are using the process that you knowingly and

24   willingly are filing lawsuits without knowing the

25   identity of even the person that you're alleging is

CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 63

1    doing copyright infringement, let alone whether

2    copyright infringement is happening.  I don't think that

3    that is set in law.  Again, I'm not a lawyer, but my

4    understanding is that it is not set in law that IPP is

5    certain information or productions are in that for the

6    claims that you have filed.

7         Q    (By Mr. Beik)  So you're alleging that the

8    methodology is flawed, right?

9         A    Absolutely, yes.

10        Q    Okay.  Why?

11        A    What do you mean why?

12        Q    Why is it flawed?

13        A    So you filed a lawsuit even though you do not

14   know the person.  You cannot identify the person.  You

15   only know the external IP address.  You are informed

16   repeatedly that there are open networks.  That IP

17   address can be any number of computers and any number of

18   individuals, and you know that because you guys have

19   been filing these lawsuits for over a decade or least a

20   decade, it seems.  So you know you do not know and you

21   cannot know based on the information that you have

22   provided the identity, yet, as soon as you discover my

23   name through the ISP, you file claiming that I -- I did

24   the infringement.  That's what you have claimed.  You

25   cannot make that claim.  You have no information

Opp. App. 035

CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 64

1    whatsoever that I did that, and, yet, here I am spending

2    an absurd amount of money that I have to spend to defend

3    myself.

4              Do you think that that is not flawed?

5    Q    Are you alleging that the methodology is flawed

6    because the software does not correctly identify the IP

7    address from which the movie was distributed?

8              MR. MORRIS:  Objection.  Form.

9    A    I can clearly state that at best the IPP

10   software will tell you to which external IP address they

11   connected to.  Beyond that so far you have not presented

12   anything that would indicate otherwise.

13   Q    (By Mr. Beik)  So it's your position that the

14   software does connect to the IP address, correct?

15   A    To the external IP address.  Let's be very,

16   very, very clear on this.  The IPP software makes a

17   connection to an external IP address which in this

18   lawsuit seems to have been mine.  That is the only thing

19   that I know for sure.  Behind that external IP address,

20   there are further IP addresses that the software does

21   not seem to be providing.

22   Q    Do you have any other IP addresses?

23             MR. MORRIS:  Objection.  Form.

24   A    External, internal?

25   Q    (By Mr. Beik)  External.

Opp. App. 036

CONFIDENTIAL
ATTORNEYS' EYES ONLY

Page 65

1    **A    At that residence I do not have any -- any**
2    **other external IP address.**
3    Q    What about at other residences?
4    **A    Well, I don't -- what I do have, if I'm at**
5    **work, I show up at different IP address.  Any time that**
6    **I connect to a different network, I show another IP**
7    **address.  I have e-mail services.  They are a different**
8    **IP address.  There are multitudes of IP addresses that**
9    **will be shown through -- through my life.  So do I show**
10   **up on different external IP addresses that are internet**
11   **derivable, the answer is absolutely, yes.**
12   Q    Do you pay for any of those other IP addresses
13   to use them?
14   **A    I do have servers that I pay for.  The -- the**
15   **service does include IP addresses obviously because I**
16   **have to be able to connect to servers.  Beyond that, I**
17   **do not specifically pay for specific IP addresses or**
18   **anything like that.**
19   Q    So the IP address identified in this lawsuit is
20   the only one that you pay for?
21   **A    Directly pay for in the sense of for an ISP**
22   **connection, that is correct.  As I stated, I do have**
23   **servers that I pay for, and they do come with IP**
24   **addresses.**
25   Q    So if I -- beyond the IP address, is it your

Opp. App. 037

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

MALIBU MEDIA, LLC,

      Plaintiff,

      vs.

CIVIL ACTION NO.  5-19-CV-00834-DAE

JOHN DOE,

      Defendant.

**<u>DECLARATION OF JT MORRIS</u>**

I, JT Morris, declare pursuant to 28 U.S.C. § 1746 that the following statements are true and correct based on my personal knowledge:

1. I am over the age of 18, I have never been convicted of a felony, and I am of sound mind.

2. I am lead counsel for Defendant John Doe. The sole purpose of this affidavit is to submit documentary evidence and background information in support of Doe's opposition to Plaintiff Malibu Media's Partial Motion for Summary Judgment as to Defendant's Counterclaims and Affirmative Defenses.

3. Attached as Exhibit A is a true and correct copy of Doe's requests for production to Malibu. To date, Malibu has produced only one communication from IPP, which is an email.

4. Malibu did not serve any expert disclosures in this case.

5. Malibu did not notice or otherwise ask for the deposition of Glenn Bard, who Doe disclosed as an expert.

6. Attached as Exhibit B is a true and correct copy of Doe's objections and responses to Malibu's requests for production.

7.  Attached as Exhibit C is a true and correct copy of a complaint filed in Superior Court of the State of California in the action *Pelissier, et al. v. Sargsyan, et al.* (No. 19SMCV01425, Aug. 12, 2019).

8.  Attached as Exhibit D is a September 27, 2019 from Malibu's counsel with a settlement demand.

9.  Attached as Exhibit E is a true and correct copy of a cover letter to the Clerk of Court from Malibu's counsel.


I declare under the penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on January 3, 2021

_____
JT Morris

2

Exhibit A to 1-3-2021 Declaration of JT Morris:
Doe's requests for production to Malibu

Opp. App. 040

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

MALIBU MEDIA, LLC,

Plaintiff,

vs.

JOHN DOE,

Defendant.

CIVIL ACTION NO.  5-19-CV-00834-DAE

**DEFENDANT JOHN DOE'S FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF**

Pursuant to Fed. R. Civ. R. 26 and 34 and the Local Rules of this Court, Defendant John Doe hereby serves the following requests for production to Plaintiff Malibu Media, LLC. Defendant requests Plaintiff serve its responses and produce responsive documents within thirty (30) days of service of these requests.

**INSTRUCTIONS**

1.      These requests apply to all responsive information in the possession, custody, or control of Plaintiff, its attorneys, investigators, agents, employees, or its other representatives.

2.      Where a discovery request calls for an answer that involves more than one part, each part of the answer should be clearly set out so that it is understandable.

3.      The term "document" as used herein is defined to include any and all documents in Plaintiff's possession, custody, or control. It includes documents store physically and documents and other information stored electronically, and includes material that is written, typed, printed, reproduced, filmed or recorded material, and all photographs, pictures, plans, or other

1

representations of any kind or anything pertaining, describing, referring, or relating directly or indirectly, in whole or in part, to  the subject matter of each paragraph of these Requests, and the term includes, without limitation:

• papers, emails, books, journals, ledgers, statements, memoranda, reports, invoices, work sheets, work papers, notes, transcriptions of notes, letters, correspondence, abstracts, checks, diagrams, plans, blueprints, specifications, pictures, drawings, films, photographs, graphic representations, diaries, calendars, desk calendars, pocket calendars, lists, logs, publications, advertisements, instructions, minutes, orders, purchase orders, messages, résumés, summaries, agreements, contracts, telegrams, telexes, cables, recordings, audio tapes, magnetic tapes, visual tapes, transcriptions of tapes or recordings, computer tapes or any other writings or tangible things on which any handwriting, typing, printing, photostatic, or other forms of communications or information are recorded or reproduced, as well as all notations on the foregoing;

• original and all other copies not absolutely identical; and

• all drafts and notes (whether typed, handwritten or otherwise) made or prepared in connection with such documents, whether used or not.

4.    All responsive documents that are electronically stored should be produced in reasonably useable format and should be reasonably searchable unless not possible.

5.    If any document responsive to these requests has been destroyed, you are requested to describe in detail the circumstances of and reasons for such destruction and to produce all documents that relate either the circumstances or the reasons for such destruction.

**DEFINITIONS**

1.     "Malibu," "Plaintiff," "You" and "Your" separately or collectively refers to Malibu Media, LLC (d/b/a "X-Art.com") and all past and present officers or owners (including

2

Opp. App. 042

Colette Pelissier and Brigham Feld**)**, directors, affiliates, brokers, agents (including, without limitation, IPP International UG, Computer Forensics, LLC, or any other person or entity engaged by Malibu to detect or gather evidence regarding alleged infringement), representatives, trustees, employees, servants, and all persons acting directly or indirectly under their control, including any attorney and including respective parents, subsidiaries, or affiliated companies, and other related entities, including all assets or companies that Malibu has acquired or with respect to which has succeeded to rights or obligations.

2.      "Defendant" or "Doe" means John Doe.

3.      "Films" refers to the films listed in Exhibit B to Plaintiff's Complaint.

4.      "Copyrights In Suit" refers to all alleged copyrights Plaintiff asserts in this litigation and the respective underlying works, including the alleged copyrights Plaintiff lists in Exhibit B of Plaintiff's Complaint.

5.      The word "person" or "persons" means all entities of every type and description, including, without limiting the generality of the foregoing, all natural persons, association, companies, partnerships, joint ventures, corporations, trusts, estates, and federal, state, and municipal or local governmental agencies and entities and their subdivisions, bureaus, departments, and boards.

6.      "Relating to" and "relative to" mean and include discussing, describing, referring to, reflecting, containing, analyzing, studying, reporting on, commenting on, demonstrating, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to , in whole or in part.

7.      "Concerning" and "regarding" mean and include with respect to, referring to, relating to, purporting, embodying, establishing, demonstrating, evidencing, comprising,

3

Opp. App. 043

connected with, commenting on, responding to, showing, describing, analyzing, reflecting, indicating, presenting, or constituting.

8.      "Including" means including but limited to.

9.      "Identify" or "identity" means to provide details regarding, when applicable, a person's name, affiliation, and other information sufficient to fully identify an individual; relevant dates, times, locations, speakers or attendees, and other information sufficient to identify an event, occurrence, or communications; and relevant document names, dates, authors, custodian, and other information sufficient to identify a document.

10.     No answer is to be left blank. If the answer to a discovery request or its subpart is "none," the word "none" or "unknown" must be written in the answer. If the answer to the whole of a question is not known, so state, and answer the part known. If the answer to a question or a part thereof is only partly known, provide all responsive information known and specify wherein your answer is or may not be complete due to your lack of knowledge. If exact dates, amounts, other figures or facts are not known, but you have information permitting you to make an approximate or estimated answer, make such answer and indicate that it is an approximation or estimate because more precise information is not known to you.

11.     If any information required to answer any discovery request is withheld because you claim that such information is privileged or is contained in a privileged document and/or communication, identify the privilege being asserted, the names of the participants of each alleged communication, state the basis upon which the privilege is claimed, identify each such document and/or communication, the general subject matter of such privileged communication and the portion of these requests to which each document or communication is responsive.

4

12.     These discovery requests are continuing in nature and require further and supplemental responses whenever said responses become available or otherwise known to You. These discovery requests are intended as continuing discovery requests, requiring you to answer by supplemental answer, setting forth any information within the scope of the discovery requests as may be acquired by you, your agents, attorneys, or representatives following your original answer.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1**: All documents concerning the registration of the Films with the United States Copyright Office, including but not limited to any applications and deposits submitted to the Copyright Office for the Films.

**Response**:


**REQUEST NO. 2**: All documents and communications concerning Your claim that that You are the exclusive owner in any and all rights to the Films.

**Response**:


**REQUEST NO. 3**: All communications made over the past three years that You have sent to any search engine or other internet service provider requesting removal of the Films on the basis of copyright infringement or unauthorized display, distribution, reproduction, or other use.

**Response**:


5

**REQUEST NO. 4**: All documents concerning Your identification of the IP address listed in Exhibit A of Plaintiff's Complaint as it relates to Plaintiff's allegations of infringement.

**Response**:


**REQUEST NO. 5**: All documents and communications sufficient to show any and all income You have received from selling copies of the Films over the past five (5) years.

**Response**:


**REQUEST NO. 6**: All documents and communications sufficient to show any and all income You have received from licensing the Films over the past five (5) years.

**Response**:


**REQUEST NO. 7**: All documents and communications sufficient to show any and all income You have received from subscriptions to any online service You provide or have provided over the past five (5) years.

**Response**:


**REQUEST NO. 8**: All documents and communications sufficient to show any and all statistics and other data related to the number of times paying subscribers or other authorized paid users of Your website services have viewed the Films through your online services.

**Response**:

6

Opp. App. 046

**REQUEST NO. 9**: All documents and communications sufficient to show the annual income You have received from cease-and-desist efforts, threatening lawsuits, and filing lawsuits, including settlements, related to the Films and Your other copyrighted works over the past five (5) years.

**Response**:

**REQUEST NO. 10**: For each of the Copyright-in-Suit, documents and communications sufficient to show any and all income You have received from cease-and-desist efforts, threatening lawsuits, and filing lawsuits, including settlements, related to the Copyright-in-Suit over the past three (3) years.

**Response**:

**REQUEST NO. 11**: All documents and communications related to any and all places You have shared, displayed, distributed, sold, or offered for sale the Films and Your other copyrighted works on any location, platform, media, or environment.

**Response**:

**REQUEST NO. 12**: All documents and communications relevant to any financial losses that You claim resulted from any alleged infringement or impermissible use of the Films and Your other copyrighted works.

**Response**:

7

**REQUEST NO. 13**: All documents and communications relevant to any financial losses that You claim resulted from Doe's alleged infringement of the Films.

**Response**:


**REQUEST NO. 14**: All documents and communications relevant to any reputational losses or loss of goodwill that You claim result from any alleged infringement or impermissible use of the Films, including but not limited to Doe's alleged infringement.

**Response**:


**REQUEST NO. 15**: All documents and communications relevant to Your discovery and monitoring of online uses of the Films, including but not limited to Your use of software and/or entities to monitor and discover online uses of the Films.

**Response**:


**REQUEST NO. 16**: All documents and communications relevant to any permission You have granted to any individual or organization to use the Films without monetary compensation.

**Response**:


**REQUEST NO. 17**: All communications and documents relating to Your employment of or contracting with individuals or entities to investigate, develop, implement, maintain, or consult on the security of your websites.

**Response**:

8

**REQUEST NO. 18**: All communications and documents relating to Your employment of or contracting with individuals or entities to monitor, discover, investigate, or consult on any unauthorized reproduction of hard copies or digital copies of the Films and Your other copyrighted works.

**Response**:

**REQUEST NO. 19**: All communications and documents relating to Your employment of or contracting with individuals or entities to create, develop, implement, maintain, or consult on any technological securities, safeguards, protective measures, or mechanisms to identify, prevent, discourage, cease, or curtail online infringement of the Films and Your other copyrighted works.

**Response**:

**REQUEST NO. 20**: All communications and documents relating to any efforts You have taken to identify, prevent, discourage, cease, or curtail the online unauthorized reproduction of the Films and Your other copyrighted works.

**Response**:

**REQUEST NO. 21**: All communications and documents relating to any media access control ("MAC") addresses related to the IP address 70.121.72.191.

**Response**:

9

**REQUEST NO. 22**: All communications and documents relating to Your investigation of Doe based on the IP address designated on Exhibit A of Plaintiff's Complaint, including but not limited to any investigation(s) performed by IPP International UG ("IPP") or Computer Forensics, LLC.

**Response**:

**REQUEST NO. 23:** All documents and communications related to Your allegation that Defendant willfully infringed the Copyrights-in-Suit.

**Response**:

**REQUEST NO. 24:** All communications and agreements with persons or entities having a financial interest in the Copyrights-in-Suit, Films, or this litigation.

**Response**:

**REQUEST NO. 25:** All documents sufficent to show any display or direct or indirect distribution of the Films.

**Response**:

**REQUEST NO. 26:** All documents and communications regarding any sale, offer for sale, assignment, or licensing of the Copyrights-in-Suit

**Response**:

10

**REQUEST NO. 27:** All documents and communications regarding any offer to purchase or license the Copyrights-in-Suit

**Response**:

**REQUEST NO. 28:** All communications and agreements with any third parties involved in investigating Your assertion of infringement against Doe, including but not limited to IPP and Computer Forensics, LLC.

**Response**:

**REQUEST NO. 29:** All documents regarding Your dispute with Genova Capital and Warmblood Inc.

**Response**:

**REQUEST NO. 30:** All communications with Genova Capital and Warmblood Inc. related to Your enforcement of the Copyrights-in-Suit or any other copyrights.

**Response**:

**REQUEST NO. 31:** All documents that You claim evidence infringement by Doe or are otherwise related to Doe's alleged infringement.

**Response**:

11

**REQUEST NO. 32:** All documents and communications related to IPP's alleged interactions with and investigation of IP address 70.121.72.191.

**Response**:


**REQUEST NO. 32:** All documents and communications regarding Computer Forensics, LLC's alleged interactions with and investigation of IP address 70.121.72.191.

**Response**:


**REQUEST NO. 33:** All documents and communications regarding any data or files Malibu, IPP, Computer Forensics, or any other employee, agent, or affiliate of Malibu accessed or attempted to access from any computer network, computer device, or computer system associated with IP address 70.121.72.191.

**Response**:


**REQUEST NO. 34:** All documents and communications regarding Malibu's decision to investigate of IP address 70.121.72.191 for any alleged infringement of the Copyrights-in-Suit.

**Response**:


**REQUEST NO. 35**: All documents and communications between Malibu employees, staff, or agents related to Malibu's understanding of BitTorrent.

**Response**:

12

**REQUEST NO. 36**: All documents and communications between Malibu and any third-party consultant or independent contractor related to Malibu's understanding of BitTorrent.

**Response**:


**REQUEST NO. 37**: All documents and communications between Malibu employees related to the availability or other presence of the Films or other Malibu copyrighted works on BitTorrent.

**Response**:


**REQUEST NO. 38**: All documents and communications regarding Malibu's decision to monitor and investigate BitTorrent for infringing uses of the Films or other works Malibu purports to own.

**Response**:


**REQUEST NO. 39**: All communications between Malibu and any third-party consultant or independent contractor related to the availability of the Films or other Malibu copyrighted works on BitTorrent.

**Response**:


**REQUEST NO. 40**: All documents and communications describing Malibu's understanding of access to open, public, and/or unsecured wireless networks.

**Response**:

Opp. App. 053

**REQUEST NO. 41**: All documents and communications describing Malibu's understanding of access to closed, private, and/or secured wireless networks.

**Response**:

**REQUEST NO. 42**: All affidavits or sworn statements Malibu has submitted to a court of competent jurisdiction in the past seven (7) years, and all communications related to the same.

**Response**:

**REQUEST NO. 43**: All documents and communications related to Malibu's decision to retain, hire, or contract with IPP for investigation of alleged infringements of Malibu's works.

**Response**:

**REQUEST NO. 44**: All documents and communications related to Malibu's decision to retain, hire, or contract with Computer Forensics, LLC for investigation of alleged infringements of Malibu's works.

**Response**:

**REQUEST NO. 45**: All documents and communications sufficent to identify any third-party, other than IPP or Computer Forensics, LLC, that Malibu retained, hired, or contracted with in the past seven (7) years to monitor, discover, or investigate alleged infringements of Malibu's works.

**Response**:

14

**REQUEST NO. 46**: Documents and communications sufficent to identify any amounts Malibu paid over the past five (5) years to IPP, Computer Forensics, LLC, or any other third-party that Malibu retained, hired, or contracted with to monitor, discover, or investigate alleged infringements of Malibu's works.

**Response**:

**REQUEST NO. 47**: All documents and communications related to Malibu's knowledge or awareness of the accuracy or inaccuracy of using IP address-based methods to identify alleged infringers.

**Response**:

**REQUEST NO. 48**: All documents and communications sufficent to show the corporate structure of Malibu.

**Response**:

**REQUEST NO. 49**: All documents and communications sufficent to identify the officers and employees of Malibu responsible for making decisions related to enforcement of Malibu's copyrights.

**Response**:

Opp. App. 055

**REQUEST NO. 50**: All documents and communications showing any policy, practice, or custom You have implemented and maintained related to policing and preventing infringement of Your copyrighted works online.

**Response**:


**REQUEST NO. 51**: All documents and communications identifying any policy, practice, or custom You have implemented and maintained related to enforcing the Copyrights-in-Suit or other copyrights You claim to own.

**Response**:


**REQUEST NO. 52**: All documents and communications identifying any and all times Malibu has filed a lawsuit for copyright infringement against a John Doe defendant who Malibu learned it mistakenly identified as the alleged infringer.

**Response**:


**REQUEST NO. 53:** All documents and communications referenced in any response You provide to Defendant's Interrogatories.

**Response**:


**REQUEST NO. 54:** All documents and communications that You intend to rely upon at trial to support your allegations and claims.

**Response**:

16

Dated: April 9, 2020

By:

<u>/s/ JT Morris</u>
JT Morris
Texas State Bar No. 24094444
jt@jtmorrislaw.com
Ramzi Khazen
Texas State Bar No. 24040855
ramzi@jtmorrislaw.com
JT Morris Law, PLLC
1105 Nueces Street, Suite B
Austin, Texas 78701
Tel: 512-717-5275
Fax: 512-582-2948

Attorneys for Defendant John Doe

17

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 9, 2020, a true and correct copy of the foregoing was served by email on Plaintiff's counsel:

Paul Beik
paul@beiklaw.com


   /s/  JT Morris      
JT Morris

18

Exhibit A to 1-3-2021 Declaration of JT Morris:
Doe's objections and responses to Malibu's
requests for production

Opp. App. 059

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

MALIBU MEDIA, LLC,

*Plaintiff*,

vs.

JOHN DOE,

*Defendant*.

CIVIL ACTION NO.  5-19-CV-00834-DAE

**JURY TRIAL DEMANDED**

## DEFENDANT JOHN DOE'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

Defendant John Doe ("Defendant" or "Doe"), by and through his[1] counsel, and pursuant to Fed. R. Civ. P. 26 and 34 and the Local Rules of this Court, responds and objects to Plaintiff's First Set of Requests for the Production of Documents and Things as follows:

### PRELIMINARY STATEMENT

1.      Defendant's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Defendant's right to rely on other facts or documents at trial.

2.      By making the accompanying responses and objections to Plaintiff's requests for production ("RFP"), Defendant does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Defendant makes the responses and objections herein without

---

[1] Doe uses generic male pronouns for convenience and is not intending to imply anything about Doe's gender or identity.

Opp. App. 060

in any way implying that it considers an RFP, and responses thereto, to be relevant or material to the subject matter of this action.

3.     Defendant will produce responsive documents only to the extent that such documents are in the possession, custody, or control of Defendant, as set forth in the Federal Rules of Civil Procedure. Defendant's possession, custody, or control does not include any constructive possession that may be conferred by Defendant's right or power to compel the production of documents or information from third parties.

4.     Defendant expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

## **GENERAL OBJECTIONS**

5.     Defendant objects to each instruction, definition, and RFP to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

6.     Defendant objects specifically to instruction (1) as overbroad, unduly burdensome, and seeking to impose obligations outside the scope of the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.  Instruction (5) appears to be a statement rather than an instruction, and the purpose and meaning of the statement are not clear.

7.     Defendant objects to each RFP to the extent that it calls for the disclosure of documents subject to the attorney-client privilege, attorney-work product, doctor-patient confidentiality, or other applicable privilege or protection.

8.     Defendant objects to each instruction, definition, and RFP as vague, ambiguous, overbroad and unduly burdensome, including to the extent it is harassing, seeks personal

information not relevant to this case, seeks private, personal information of persons not involve in this case, seeks information that is readily or more accessible to Plaintiff from Plaintiff's own files, from documents or information in Plaintiff's possession, custody, or control or from documents or information that Plaintiff previously produced to Defendant or in the public domain. Responding to such requests would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such requests is substantially the same or less for Plaintiff as for Defendant.

9.      Defendant objects to each RFP to the extent it seeks or requires a legal conclusion or expert testimony.

10.     Defendant objects to each instruction, definition, and RFP that calls for the production of documents and information that were produced to the Defendant by other entities and that may contain confidential, proprietary, or trade secret information, or that otherwise contain confidential, proprietary, or trade secret information of third-parties, and/or are not within Doe's possession, custody, or control.

11.     Defendant incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Defendant does not waive its right to amend its responses.

12.     Defendant objects to Plaintiff's definitions of "Cloud Based Storage System," "NAS," and "Server" as vague, ambiguous, overbroad, and misleading.

13.     Defendant objects to Plaintiff's definition of "Communication" as vague, ambiguous, and overbroad, and to the extent that it seeks information for the purposes of harassment.

14.     Defendant objects to Plaintiff's definition of "Computer Devices" as vague, ambiguous, overbroad, and misleading.

15.     Defendant objects to Plaintiff's definition of "Control" as vague, ambiguous, and overbroad, and to the extent that it seeks information for the purposes of harassment.  Defendant particularly objects to "Control" as encompassing documents and things of "any person in your house, apartment, or dwelling." Defendant will use "Control" as it is used and understood applicable rules and statutes.

16.     Defendant objects to Plaintiff's definition of "Malibu Media" as vague, overbroad, and unduly burdensome.

17.     Defendant objects to Plaintiff's definition of "Period of Recorded Infringement" as misleading and overly burdensome.

18.     Defendant objects to Plaintiff's definition of "Person" as vague, misleading and overly burdensome.

19.     Defendant objects to Plaintiff's definition of "Time Period" as misleading and likely to lead to confusion.

20.     Defendant objects to Plaintiff's definition of "Used" as vague, misleading and overly burdensome, as well as unintelligible and unrelated to any accepted definition of the term used, and likely to lead to confusion.

21.     Defendant objects to Plaintiff's definition of "Work" or "Works" as vague, misleading and overly burdensome.

22.     Defendant objects to Plaintiff's definition of "You" as vague, overbroad, and overly burdensome.

## Specific Objections and Responses

**RFP No. 1:** All documents referring, relating to or comprising records of your Internet browser's activity on each of your Computer Devices within the last two years.

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case.  Defendant further objects to this to the extent that it calls for the disclosure of information subject to the attorney-client privilege, attorney-work product, doctor-patient confidentiality, or other applicable privilege or protection.  Defendant further objects to this request as it seeks documents containing confidential and sensitive information of third-parties, and/or are not within Doe's possession, custody, or control.

**Response:** Defendant does not intend to produce his browser history(ies). Defendant is willing to meet and confer on potentially narrowing this RFP.

**RFP No. 2:** All documents referring, relating to or comprising records associated with the purchase of a Computer Device within the last four years.

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case.

**Response:** Subject to Defendant's objections, Defendant will produce relevant, non-privileged or protected documents responsive to this request that are in its possession, custody, and control, according to the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

**RFP No. 3:** All documents referring, relating to or comprising records associated with the purchase or installation of a modem or wireless router which was used in your house, apartment or dwelling during the Period of Recorded Infringement.

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case.  Defendant also objects to this request as vague and overbroad, particularly as to "associated with the purchase or installation."

**Response:** Subject to Defendant's objections, Defendant will produce relevant, non-privileged or protected documents responsive to this request that are in its possession, custody, and control, according to the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

**RFP No. 4:** All documents referring, relating to or comprising records associated with the purchase or installation of a modem or wireless router, computer, Computer Device, or video game console which was used in your house, apartment or dwelling after the Period of Recorded Infringement.

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case, including but not limited to documents outside the relevant time scope for the parties' claims and defenses.  Defendant also objects to this request as vague and overbroad, particularly as to "associated with the purchase or installation."

**Response:** Defendant does not intend to produce documents after the alleged period of infringement. Defendant is willing to meet and confer on the scope and relevance of this RFP.

**RFP No. 5:** Documents pertaining to the setup, use, and control of your modem and wireless router which was used in your house, apartment, or dwelling during the Period of Recorded Infringement. This includes user guides, hand books, access codes, passwords, account information, guest account information, warning statements, and any other document related to the use of your modem and router.

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case.   Defendant also objects to this request as vague and overbroad, particularly as to "access codes, passwords, account information, guest account information, warning statements, and any other document related to the use of your modem and router."  Defendant further objects to this request as it seeks documents containing confidential and sensitive information of third-parties, and/or are not within Doe's possession, custody, or control.

**Response:** Subject to Defendant's objections, Defendant will produce relevant, non-privileged or protected documents responsive to this request that are in its possession, custody, and control, according to the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court. Defendant will not produce passwords or account information, or any other sensitive or personal information in response to this request that is not relevant or proportional to the needs of this case.

**RFP No. 6:** Documents pertaining to the setup, use, and control of your modem and wireless router which was used in your house, apartment, or dwelling after the Period of Recorded Infringement. This includes user guides, hand books, access codes, passwords, account information, guest account information, warning statements, and any other document related to the use of your modem and router.

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case.   Defendant also objects to this request as vague and overbroad, particularly as to "access codes, passwords, account information, guest account information, warning statements, and any other document related to the use of your modem and router."  Defendant further objects to this request as it seeks documents containing confidential and sensitive information of third-parties, and/or are not within Doe's possession, custody, or control.

**Response:**  Defendant does not intend to produce documents after the alleged period of infringement. Defendant is willing to meet and confer on the scope and relevance of this RFP.

**RFP No. 7:** All documents referring, relating to or comprising records of any computer programs downloaded, uploaded, or installed on any Computer Device in your house, apartment or dwelling within the last two years.

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case, is intended to harass, and seeks to impose a

disproportional cost on Defendant. Defendant further objects to the extent this request seeks documents and information protected by attorney-client privilege, attorney work product, or any other applicable privilege.  Defendant further objects to this request as it seeks documents containing confidential and sensitive information of third-parties, and/or are not within Doe's possession, custody, or control.

**Response:** Defendant does not intend to produce all documents referring, relating to or comprising records of any computer programs downloaded, uploaded, or installed on any Computer Device in his house, apartment or dwelling within the last two years.  Defendant is willing to meet and confer in an attempt to narrow this RFP.


**RFP No. 8:** All documents referring, relating to or comprising written communications between you and your ISP regarding notices of copyright infringement.  Note: This does NOT include any promotional materials, marketing materials or brochures your ISP sent to you.

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case. Defendant further objects to the extent this request seeks documents and information protected by attorney-client privilege, attorney work product, or any other applicable privilege.

**Response:** Subject to Defendant's objections, Defendant will produce relevant, non-privileged or protected documents responsive to this request that are in its possession, custody, and control, according to the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

**RFP No. 9:** A complete copy of all of the files contained within any cloud based storage system to which you or anyone in your house, apartment or dwelling, have used between the July 26, 2017 (the first date of recorded infringement as listed in Plaintiff's Complaint [CM/ECF 1]) through present day.

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case, is intended to harass, and seeks to impose a disproportional cost on Defendant. Defendant further objects to the extent this request seeks documents and information protected by attorney-client privilege, attorney work product, or any other applicable privilege.  Defendant further objects to this request as it seeks documents containing confidential and sensitive information of third-parties, and/or are not within Doe's possession, custody, or control.

**Response:** Defendant does not intend to produce all of the files contained within any cloud based storage system to which him or anyone in his house, apartment or dwelling, has used during the specified period.  Defendant is willing to meet and confer in an attempt to narrow this RFP.


**RFP No. 10:** A complete copy of any files stored on any video game consoles which were used in your house, apartment or dwelling within the Period of Recorded Infringement.

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case, is intended to harass, and seeks to impose a disproportional cost on Defendant.  Defendant further objects to the extent this request seeks documents and information protected by attorney-client privilege, attorney work product, or any

other applicable privilege.  Defendant further objects to this request as it seeks documents containing confidential and sensitive information of third-parties, and/or are not within Doe's possession, custody, or control.

**Response:** Defendant does not intend to produce a complete copy of the files stored on any video game consoles which were used in his house, apartment or dwelling within the specified period. Defendant is willing to meet and confer on the scope and relevance of this RFP.


**RFP No. 11: A** complete copy of any files stored on any video game consoles which were used in your house, apartment or dwelling after the Period of Recorded Infringement.

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case, is intended to harass, and seeks to impose a disproportional cost on Defendant.  Defendant objects to this request as depending on assumptions for which there is no evidence. Defendant further objects to this request as it seeks documents containing confidential and sensitive information of third-parties, and/or are not within Doe's possession, custody, or control.

**Response:** Defendant does not intend to produce a complete copy of the files stored on any video game consoles which were used in his house, apartment or dwelling within the specified period. Defendant is willing to meet and confer on the scope and relevance of this RFP.


**RFP No. 12:** Any documents which indicate or support the claim that you were not at your residence or within the control of your IP address at or around the Period of Recorded Infringement.

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case. Defendant also objects to this request as vague and ambiguous, particularly as to "within control of your IP address."

**Response:** Subject to Defendant's objections, Defendant will produce relevant, non-privileged or protected documents responsive to this request that are in its possession, custody, and control, according to the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

**RFP No. 13:** Any documents which indicate or support any claim that a tenant or other individual was authorized to live at your address at any time during the Period of Recorded Infringement. This includes documents pertaining to ownership of the property, title of the home or apartment, and any existing lease, rental agreements, and sublet agreements.

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case and is intended to harass. Defendant further objects to this request as it seeks documents containing confidential and sensitive information of third-parties, and/or are not within Doe's possession, custody, or control

**Response:** Subject to Defendant's objections, Defendant will produce relevant, non-privileged or protected documents responsive to this request that are in its possession, custody, and control, according to the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

**RFP No. 14:** All documents pertaining to any electronic correspondence, issued in the last two years, from the Computer Devices to any other device able to connect to the Internet, which mentions or relates to Plaintiff or any of Plaintiff's Copyrighted Works. This includes all emails, instant messages, social network postings, chat room comments, and any and all other forms of electronic communication.

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case. Defendant further objects to the extent this request seeks documents and information protected by attorney-client privilege, attorney work product, or any other applicable privilege. Defendant further objects to this request as it seeks documents containing confidential and sensitive information of third-parties, and/or are not within Doe's possession, custody, or control

**Response:** Subject to Defendant's objections, Defendant will produce relevant, non-privileged or protected documents responsive to this request that are in its possession, custody, and control, according to the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.


**RFP No. 15:** All documents pertaining to any forensic software that you used to preserve or delete files, programs, software, or any other type of electronic data between the first date of infringement (As listed in Plaintiff's Complaint [CM/ECF 1]) to present day.

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being vague, ambiguous, overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case and is overly broad in time.

Defendant further objects to the extent this request seeks documents and information protected by attorney-client privilege, attorney work product, or any other applicable privilege.

**Response:** Subject to Defendant's objections, Defendant will produce relevant, non-privileged or protected documents responsive to this request that are in its possession, custody, and control, according to the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

**RFP No. 16:** Any documents which refer, relate to, or evidence the purchases of electronic equipment and Computer Devices at any and all electronic retail stores in the past 48 months.  This includes credit card or bank statements.

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case. Defendant further objects to the extent this request seeks documents and information protected by attorney-client privilege, attorney work product, or any other applicable privilege.  Defendant further objects to this request as it seeks documents containing confidential and sensitive information of third-parties, and/or are not within Doe's possession, custody, or control

**Response:** Defendant does not intend to produce all documents which refer, relate to, or evidence the purchases of electronic equipment and Computer Devices at any and all electronic retail stores in the past 48 months, including credit card or bank statements. Defendant is willing to meet and confer about the potential to narrow this request.

**RFP No. 17:** Any documents which refer, relate to, or demonstrate that you are not the individual

who downloaded Plaintiff's copyrighted works via BitTorrent as alleged in Plaintiff's Complaint [CM/ECF 1].

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case. Defendant further objects that this request presumes facts not in evidence and misrepresents the allegations in the Compalint.  Defendant further objects to this request as it seeks documents containing confidential and sensitive information of third-parties, and/or are not within Doe's possession, custody, or control.

**Response:** Subject to Defendant's objections, Defendant will produce relevant, non-privileged or protected documents responsive to this request that are in its possession, custody, and control, according to the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.


**RFP No. 18:** Any documents which refer, relate to, or demonstrate that another individual downloaded Plaintiff's copyrighted works via BitTorrent as alleged in Plaintiff's Complaint [CM/ECF 1].

**Objections:** Defendant incorporates each of its general objections. Defendant objects to this request as being overly broad and unduly burdensome, as it seeks documents and information not relevant or proportional to the needs of this case.  Defendant further objects that this request presumes facts not in evidence and misrepresents the allegations in the Complaint.  Defendant further objects to this request as it seeks documents containing confidential and sensitive information of third-parties, and/or are not within Doe's possession, custody, or control.

**Response:** Subject to Defendant's objections, Defendant will produce relevant, non-privileged or protected documents responsive to this request that are in its possession, custody, and control, according to the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

**RFP No. 19:** Any and all documents which you intend on using at any trial or hearing on this matter.

**Objections:** Defendant incorporates each of its general objections.

**Response:** Subject to Defendant's objections, Defendant will produce relevant, non-privileged or protected documents responsive to this request that are in its possession, custody, and control, according to the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

Dated: August 28, 2020                                  Respectfully,

By: /s/ JT Morris
JT Morris
Texas State Bar No. 24094444
jt@jtmorrislaw.com

Ramzi Khazen
Texas State Bar No. 24040855
ramzi@jtmorrislaw.com

JT Morris Law, PLLC
1105 Nueces Street, Suite B
Austin, Texas 78701
Tel: 512-717-5275
Fax: 512-582-2948

**Attorneys for Defendant John Doe**

## **CERTIFICATE OF SERVICE**

I certify that the foregoing was served on August 28, 2020 by electronic mail on Plaintiff's counsel:

/s/Ramzi Khazen

Ramzi Khazen

Exhibit A to 1-3-2021 Declaration of JT Morris:
Complaint from *Pelissier v. Sargsyan*

Electronically FILED by Superior Court of California, County of Los Angeles on 08/12/2019 05:50 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Mariscal,Deputy Clerk

Case 5:19-cv-00834-DAE    Document 62-1    Filed 01/04/21    Page 79 of 112

Assigned for all purposes to: Santa Monica Courthouse, Judicial Officer: Mark Young

1  DAVID E. ROSEN (SBN 155385)
   drosen@murphyrosen.com
2  MURPHY ROSEN LLP
   100 Wilshire Boulevard, Suite 1300
3  Santa Monica, California  90401-1142
   Telephone:  (310) 899-3300
4  Facsimile:   (310) 399-7201

5  Attorneys for Plaintiffs
   Colette Pelissier, Brigham Field and
6  Malibu Media, LLC

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9            **FOR THE COUNTY OF LOS ANGELES – WEST DISTRICT**

10

11  COLETTE PELISSIER, an individual,     ) CASE NO. _____
    BRIGHAM FIELD, an individual, and     )
12  MALIBU MEDIA, LLC, a California limited )
    liability company                     )
13                                         )
               Plaintiffs,                 ) **COMPLAINT FOR:**
14                                         )
    vs.                                    ) **1.   Rescission**
15                                         ) **2.   Conversion**
    EDGAR SARGSYAN, an individual, ART     ) **3.   Breach of Fiduciary Duty**
16  KALANTAR, an individual, HENRIK        ) **4.   Damages under Penal Code**
    MOSESI, an individual, PILLAR LAW      ) **5.   Fraud/misrepresentation**
17  GROUP, a professional law corporation, and ) **6.   Quiet title**
    Does 1 through 10, inclusive,          )
18                                         )
               Defendants.                 ) **REQUEST FOR JURY TRIAL**
    _____ )

19

20

21

22

23

24

25

26

27

28

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*PRINTED ON RECYCLED PAPER*

COMPLAINT

Plaintiffs Colette Pelissier, Brigham Field and Malibu Media, LLC ("Plaintiffs") hereby alleged as follows.

## **INTRODUCTION**

1.     This case concerns the lengths to which an attorney has gone to steal from, and defraud, a client and persons affiliated with that client, including forging a number of documents and failing to turn over funds collected on behalf of the client. The egregious conduct culminated in recording a fraudulent deed of trust against a residential lot in Malibu, knowing the owners were in the process of financing the property, and in order to hold the property hostage and extract a ransom for releasing the illegal lien.  By this action, Plaintiffs seek to recover the damages caused by this deplorable conduct, as well as an award of punitive damages sufficient to punish and deter such conduct in the future.

## **PARTIES**

2.     Plaintiff Colette Pelissier ("Pelissier") is, and at all material times has been, a resident of the State of California, County of Los Angeles.

3.     Plaintiff Brigham Field ("Field") is, and at all material times has been, a resident of the State of California, County of Los Angeles.

4.     Plaintiff Malibu Media, LLC ("Malibu Media") is a limited liability company duly organized and existing under the laws of the State of California and doing business in the County of Los Angeles.  Pelissier in the sole Manager and Member of Malibu Media.

5.     Plaintiffs are informed and believe that defendant Edgar Sargsyan ("Sargsyan") is, and at all material times has been, a resident of the State of California, County of Los Angeles.

6.     Plaintiffs are informed and believe that defendant Pillar Law Group ("PLG") is a professional law corporation duly existing under the laws of the State of California and doing business in the State of California, County of Los Angeles.

*PRINTED ON RECYCLED PAPER*

Opp. App. 079

Plaintiffs are informed and believe that Sargsyan is the Chief Executive Officer and sole director of PLG.

7.      Plaintiffs are informed and believe that defendant Henrik Mosesi ("Mosesi") is, and at all material times has been, a resident of the State of California, County of Los Angeles.  Mosesi is an attorney licensed to practice law in California and was represented by Sargsyan to be a partner at PLG.

8.      Plaintiffs are informed and believe that defendant Art Kalantar ("Kalantar") is, and at all material times has been, a resident of the State of California, County of Los Angeles.  Kalantar is an attorney licensed to practice law in California and was represented by Sargsyan to be a partner at PLG.

9.      Plaintiffs are currently unaware of the true names and capacities of the defendants sued in this complaint as DOES 1 through 10, and sue these defendants by these fictitious names.  Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.  References herein to defendants include the defendants named herein as DOES 1-10.

## **FACTS COMMON TO ALL COUNTS**

10.     Pelissier and Field are husband and wife and own real property (a vacant lot) located at 11824 Ellice St., Malibu, California 90265 ("the Property").  Plaintiffs purchased the Property in March 2014.

11.     In or around October 2015, Sargsyan approached Pelissier and Field about renting their home for a dinner party.  Sargsyan told Pelissier and Field that he was a lawyer, and was a partner at PLG, a California law firm.  In subsequent meetings and discussions, Sargsyan questioned Pelissier and Field about their businesses and real estate holdings, and solicited them to retain him and PLG to provide legal services to their various business and ventures.  At the time of these meetings and discussions, Pelissier and Field assumed that Sargsyan was, in fact, an attorney duly licensed to practice law in California.  Pelissier and Field learned much later that Sargsyan did not

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

PRINTED ON RECYCLED PAPER

Opp. App. 080

have a license to practice law at the time of these meetings and discussions, and did not obtain his license to practice law until May 2016.

12.     Among the legal work that Sargsyan solicited before he was licensed to practice law was work for Malibu Media.  Malibu Media is a media company and was engaged in substantial copyright litigation at the time.  Malibu Media had filed well over 100 cases and was seeking millions of dollars in damages.  Sargsyan convinced Malibu Media to change its counsel to him and PLG, and to pay him and PLG (a) 50% of all amounts recovered in the lawsuits and (b) all expenses incurred by PLG in connection with the lawsuits.

13.     PLG and Sargsyan represented Malibu Media in connection with the copyright litigation for approximately six months.  During that time period, PLG and Sargsyan recovered approximately $2.4 million in the copyright lawsuits.  Those funds should have been deposited into PLG's client trust account on behalf of Malibu Media for distribution to Malibu Media.  Yet PLG and Sargsyan only remitted $40,000 to Malibu Media.  Malibu Media is informed and believes that PLG inappropriately transferred the funds rightfully belonging to Malibu Media to, or for the benefit of, Sargsyan, Mosesi and Kalantar.

14.     Sargsyan also represented to Pelissier and Field that he was a real estate developer and could develop the Property within eighteen to twenty-four months. Sargsyan promised that he would pay all costs relating to the Property and other maintenance fees.  In return, Sargsyan proposed that the proceeds from the sale of the developed Property be split.  The parties entered into an agreement to this effect on or about November 16, 2015.

15.     In furtherance of this agreement for development of the Property, Pelissier and Field transferred title to the Property to California's Best Holdings, LLC (Sargsyan's company) and Colette Properties, LLC (Pelissier's company).  However, one of the conditions of this agreement was that the new title holders of the Property must pay off a second mortgage of $2 million secured against the Property no later than

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*PRINTED ON RECYCLED PAPER*

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

December 1, 2016, something Sargsyan represented he could accomplish.  If the $2 million loan was not paid off by that date, California's Best Holdings, LLC and Colette Properties, LLC would forfeit title and ownership would revert back to Pelissier and Field.  Later, California's Best Holdings, LLC's interest in the Property was transferred to Regdalin Properties, LLC ("Regdalin"), another company owned and controlled by Sargsyan.

16.     Sometime before the December 1, 2016 deadline to pay off the second mortgage, knowing that he was unable to do so, and in a fraudulent and malicious effort to avoid the automatic forfeiture, Sargsyan forged Pelissier's signature on a grant deed purporting to convey the Property from Colette Properties, LLC and Regdalin, as joint owners, to Regdalin as sole owner.  The forged deed states that the transfer was a "gift" to Regdalin.  Though the forged grant deed was purportedly signed by Sargsyan and Pelissier on July 27, 2016, the supposed notarization date on the grant deed in December 13, 2016 – almost five months after the forged signature.

17.     After forging Pelissier's signature on the grant deed and purporting to transfer title solely into the name of Regdalin, Sargsyan caused the Property to be listed for sale for $7.5 million.

18.     On August 22, 2017, after discovering the fraudulent conveyance, Pelissier and Field filed a lawsuit against Sargsyan, Regdalin and others seeking, among other things, to quiet title to the Property.  On March 27, 2018, the Court entered an Order quieting title to the Property in favor of Pelissier and Field.

19.      In connection with that quiet title action, Sargsyan perpetrated yet another fraud on Pelissier and Field.  Specifically, the parties had entered into a Settlement Agreement pursuant to which Sargsyan stipulated that title to the Property would be quieted in favor of Pelissier and Field.  In exchange, Pelissier and Field agreed that if sufficient funds were raised for the development of the Property, the parties would move forward with a profit share arrangement and would allow the funds to be secured by a deed of trust on the Property.

- 4 -
COMPLAINT

*PRINTED ON RECYCLED PAPER*

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

20.     In March 2018, Sargsyan sent one of his associates to the home of Pelissier and Field to sign the Settlement Agreement.  When Pelissier and Field signed the Agreement, they were not provided a copy but were told a copy would be sent to them.  It never was.  Later, Pelissier and Field learned that Sargsyan had replaced the first two pages of the Settlement Agreement with new and different pages, creating the illusion that Pelissier and Field and agreed to something they had not agreed to. Sargsyan then used that fake Settlement Agreement as the basis to record a deed of trust against the Property.  Sargsyan is now using that falsified deed of trust to interfere with the efforts of Pelissier and Field to refinance or develop the Property.

## FIRST CAUSE OF ACTION

(Rescission)

(By all Plaintiffs against Defendants Sargsyan and PLG)

21.     Plaintiffs reallege and incorporate by reference paragraph 1 through 19 above, as though fully set forth herein.

22.     In connection with the quiet title action, the parties had entered into a Settlement Agreement pursuant to which Sargsyan stipulated that title to the Property would be quieted in favor of Pelissier and Field in exchange for Pelissier's and Field's agreement that if sufficient funds were raised for the development of the Property, the parties would move forward with a profit share arrangement and would allow the funds to be secured by a deed of trust on the Property.  Sargsyan then replaced the first two pages of the Settlement Agreement with new and different pages, creating the illusion that Pelissier and Field and agreed to something they had not agreed to.  Sargsyan never intended to perform under the Settlement Agreement, but instead always intended to induce Pelissier and Field to sign a settlement agreement so that he could improperly re-assert an ownership interest in the Property.

23.     Based on Sargsyan's conduct in inducing Plaintiffs to sign the Settlement Agreement – whether said conduct was intentional, negligent or based on a mistake of fact – and Sargsyan's further conduct in unilaterally and without consent changing and

PRINTED ON RECYCLED PAPER

falsifying the terms of the Settlement Agreement, Plaintiffs are entitled to obtain, and hereby seek, rescission of the Settlement Agreement.

24.     Service of this pleading constitutes notice of rescission of the Settlement Agreement pursuant to California Civil Code section 1691.  Plaintiffs hereby offer to return the consideration and benefits received from the Settlement Agreement, and also demand restitution of all consideration given for the Agreement, including but not limited to, withdrawal of the deed of trust recorded against the Property.  Plaintiffs further seek to recover all damages allowable in connection with this claim for rescission, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

(Conversion)

(By Malibu Media against all Defendants)

25.     Plaintiffs reallege and incorporate by reference paragraph 1 through 19 above, as though fully set forth herein.

26.     PLG and Sargsyan represented Malibu Media in connection with more than 100 copyright lawsuits.  During that time period, PLG and Sargsyan charged Malibu Media recovered approximately $2.4 million in the copyright lawsuits.  Those funds should have been deposited into PLG's trust account for the benefit of Malibu Media and for distribution to Malibu Media.  Yet PLG and Sargsyan only remitted $40,000 to Malibu Media.  Malibu Media is informed and believes that PLG inappropriately absconded with the remainder of the funds belonging to Malibu Media and being held in trust for Malibu Media.  Malibu Media is informed and believes that these stolen funds were distributed to, or for the benefit of, Sargsyan, Mosesi and Kalantar.

27.     The funds in the Malibu Media trust account belonged to Malibu Media, and Malibu Media had the right to possess those funds.  By intentionally and substantially interfering with Malibu Media's right to possess these funds, Defendants,

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-899-7201

PRINTED ON RECYCLED PAPER

Opp. App. 084

and each of them, has wrongfully converted those funds belonging to Malibu Media and has refused to return same.

28.     Plaintiff was directly harmed by Defendants' actions in an amount to be proven at trial, which amount is in excess of $1 million.

29.     In doing the acts herein alleged, Defendants acted with recklessness, oppression, fraud, and/or malice, and Plaintiff is, therefore, also entitled to exemplary and punitive damages according to proof.

## **THIRD CAUSE OF ACTION**

(Breach of Fiduciary Duty)

(By Malibu Media against all Defendants)

30.     Plaintiffs reallege and incorporate by reference paragraph 1 through 19 above, as though fully set forth herein.

31.     As counsel for Malibu Media, Defendants, and each of them, owed fiduciary duties to Malibu Media.  These fiduciary duties included the duty to properly manage and protect the funds belonging to Malibu Media.

32.     Defendants, and each of them, breached this duty by failing and refusing to remit to Malibu Media funds recovered in litigation on behalf of Malibu Media and failing and refusing to maintain those funds in a client trust account.  Instead, some or all of those funds were used for Defendants' own purposes.

33.     As a result of this breach, Malibu Media has been damaged in an amount to be proven at trial, which amount is in excess of $1 million.

34.     In doing the acts herein alleged, Defendants acted with recklessness, oppression, fraud, and/or malice, and Plaintiff is, therefore, also entitled to exemplary and punitive damages according to proof.

///

///

///

///

*PRINTED ON RECYCLED PAPER*

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

Opp. App. 085

**FOURTH CAUSE OF ACTION**

(Damages under Penal Code §496(c))

(By Malibu Media against Sargsyan)

35.     Plaintiffs reallege and incorporate by reference paragraph 1 through 19 and 25 above, as though fully set forth herein.

36.     As set forth above, Sargsyan has wrongfully obtained possession of the proceeds of litigation belonging to Malibu Media through conduct that constitutes theft under California Penal Code §496.

37.     As a result of this conduct, Malibu Media has been damaged in an amount to be proven at trial, which amount exceeds $1 million.

38.     Pursuant to California Penal Code §496(c), Malibu Media is entitled to an award of treble damages and an award of reasonable costs and attorneys' fees incurred in bringing this action.

**FIFTH CAUSE OF ACTION**

(Intentional Misrepresentation/Fraud)

(By all Plaintiffs against Sargsyan)

39.     Plaintiffs reallege and incorporate by reference paragraph 1 through 19 above, as though fully set forth herein.

40.     As set forth above, Sargsyan represented to Plaintiffs, among other things, (a) that, at the time, he was an attorney duly licensed to practice law in California, (b) that he and his law firm would remit to Malibu Media all sums recovered in copyright litigation for Malibu Media less fees and costs; (c) that if Sargsyan and his entities did not raise sufficient funds to pay off the $2 million second mortgage on the Property, the Property would revert back to Pelissier and Field; and (d) that he and Plaintiffs had agreed to the terms of a Settlement Agreement.

41.     Plaintiffs are informed and believe that each of these representations were false when made.  Sargsyan was not a licensed attorney at the time he solicited Plaintiffs to become clients; Sargsyan did not intend to remit to Malibu Media all sums

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

- 8 -

COMPLAINT

*PRINTED ON RECYCLED PAPER*

recovered in copyright litigation for Malibu Media less fees and costs; Sargsyan did not intend to revert title to the Property back into the names of Pelissier and Field when he did not raise the money he represented he would raise; and Sargsyan never was in agreement with the settlement proposed.  Instead, Sargsyan at all times intended to defraud Pelissier and Field out of their interest in the Property and intended to misappropriate the funds belonging to Malibu Media.

42.     Plaintiffs were unaware of the falsity of the Sargsyan's representations and his fraudulent intent, and relied on the representations (and silence) by, among other things, entering into the agreement to allow Sargsyan to develop the Property, signing the Settlement Agreement and retaining PLC to represent Malibu Media in the copyright litigation.

43.     As a result of the intentional misrepresentations and fraud by Sargsyan, Plaintiffs have been damaged in an amount to be proven at trial.

44.     In doing the acts herein alleged, Sargsyan acted with recklessness, oppression, fraud, and/or malice, and Plaintiffs are, therefore, also entitled to exemplary and punitive damages according to proof.

## SIXTH CAUSE OF ACTION

(Quiet Title)

(By Pelissier and Field against Sargsyan)

45.     Plaintiffs reallege and incorporate by reference paragraph 1 through 19 above, as though fully set forth herein.

46.     Pelissier and Field are, and at all material times have been, the legal and rightful owners of the Property, legally described as Lot 5 of Track No. 4483 in the County of Ventura, State of California, as per map recorded in Book 146 Page(s) 19 through 22 inclusive of Maps, in the office of the County Recorder of said County.

47.     Sargsyan claims an interest in the Property adverse to the interest of Pelissier and Field by virtue of the deed of trust recorded against the Property by

PRINTED ON RECYCLED PAPER

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

Sargsyan on October 4, 2018 as Document No. 20181004-00113018-0 ("the Deed of Trust").

48.     For the reasons set forth above, Sargsyan's claim of interest is based on fraud and other wrongful conduct.  He has no right to any claim of title or interest in or to the Property, legal or equitable.

49.     Pelissier and Field seek a declaration that the Deed of Trust is invalid and of no force and effect, and that Sargsyan has no ownership or interest, legal or equitable in the Property.

## PRAYER FOR RELIEF

WHEREFORE, Pelissier prays for judgment as follows:

1.     For compensatory damages in an amount to be proven at trial;

2.     For treble damages pursuant to California Penal Code section 496(c);

3.     For punitive damages in an amount to be proven at trial;

4.     For an Order rescinding the Settlement Agreement;

5.     For an Order that the Deed of Trust is invalid and of no force and effect, and that Sargsyan has no ownership or interest, legal or equitable, in the Property;

6.     For an award of reasonable attorney's fees and costs; and

7.     For such other and further relief as may be just and proper.


DATED:  August 12, 2019                    MURPHY ROSEN LLP


                                           By:_____
                                                David E. Rosen
                                                Attorneys for Plaintiffs Colette
                                                Pelissier, Brigham Field and Malibu
                                                Media, LLC

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-399-7201

*PRINTED ON RECYCLED PAPER*

Opp. App. 088

## **REQUEST FOR JURY TRIAL**

Plaintiffs hereby request a trial by jury on all claims to which they are entitled to a trial by jury.


DATED:  August 12, 2019

MURPHY ROSEN LLP

By:_____
David E. Rosen
Attorneys for Plaintiffs Colette
Pelissier, Brigham Field and Malibu
Media, LLC

*PRINTED ON RECYCLED PAPER*

Opp. App. 089

MURPHY ROSEN LLP
100 WILSHIRE BOULEVARD, SUITE 1300
SANTA MONICA, CA 90401-1142
TELEPHONE 310-899-3300; FACSIMILE 310-899-7201

Exhibit A to 1-3-2021 Declaration of JT Morris:
9-27-2019 email from Malibu's counsel

Opp. App. 090

| | |
|---|---|
| **From:** | paul beiklaw.com |
| **To:** | JT Morris |
| **Subject:** | Re: 5:19-cv-00834-DAE - Malibu Media v. Doe |
| **Date:** | Friday, September 27, 2019 12:36:38 PM |

JT:

CONFIDENTIAL SETTLEMENT COMMUNICATION PURSUANT TO FRE 408

Thank you for your email.  I've noted your representation and spoken with my client about the possibility for settlement.  In this case my client has alleged infringement of 9 of its movies. Please be aware, however,  that at the time we amend the complaint to name a defendant with specificity we once again review updated data from our experts, which often reveals additional titles infringed upon after the initial data was gathered to form the basis for the initial complaint. Therefore, the number of works in suit could increase when we amend to name Defendant with specificity. At this point in the proceedings, my client can extend a settlement offer of $13,500. Without having received a response to the subpoena identifying your client,  we feel this is the best place to start. Finally, I  can agree for your client to remain anonymous through discovery so long as the Court enters a protective order relating to same.  Thus, please send me a protective order for my review.  Please note that our file number for this case is WTX40. Please be certain to include this number on the subject line of all email correspondence about this matter. I look forward to hearing from you soon, and I thank you for your cooperation.


Paul S. Beik

Beik Law Firm, PLLC

8100 Washington Avenue, Suite 1000

Houston, Texas  77007

Tel: (713) 869-6975

Fax: (713) 868-2262

paul@beiklaw.com

---

**From:** JT Morris <jt@jtmorrislaw.com>

**Sent:** Thursday, September 26, 2019 2:59 PM

**To:** paul beiklaw.com <paul@beiklaw.com>

**Subject:** 5:19-cv-00834-DAE - Malibu Media v. Doe

Hi Paul,

We've been retained to represent the Doe Defendant in 5:19-cv-00834-DAE. I assume your client

will not have an objection to an agreed order for proceeding anonymously similar to the one we just did? Also, please let me know if and when we can expect an initial settlement ask. Thank you.

Best,
JT

JT Morris
JT Morris Law, PLLC
Tel: (512) 717-5275
Fax: (512) 582-2948
jt@jtmorrislaw.com

jtmorrislaw.com

NOTICE OF CONFIDENTIALITY:

The information contained in and transmitted with this e-mail may by confidential and/or subject to the ATTORNEY-CLIENT and ATTORNEY WORK PRODUCT PRIVILEGE. It is intended only for the individual or entity designated in the e-mail. If you are not the intended recipient, please take notice that any disclosure, copying, distribution or use of the contents of this electronic transmission or any accompanying documents is prohibited. If you have received this e-mail in error, please notify the sender by reply immediately.

Exhibit E to 1-3-2021 Declaration of JT Morris:
Malibu 12-21-2020 letter to Clerk of Court

Opp. App. 093



**BEIK** | **LAW FIRM**
PLLC

8100 WASHINGTON AVENUE, SUITE 1000, HOUSTON, TEXAS 77007     PHONE: (713) 869-6975     FAX: (713) 868-2262

December 21, 2020

The Honorable District Clerk                                          **VIA U.S. MAIL**
U.S. District Clerk's Office
655 E. Cesar E. Chavez Blvd., Room G65
San Antonio, Texas 78206

Re:   *Malibu Media v. John Doe*, Civil Action No. 5:19-cv-00834-DAE (W.D. Tex.)
For:   **FILING UNDER SEAL** – Plaintiff's Motion for Partial Summary Judgment
        & Appendix

To The Honorable District Clerk:

        Enclosed for filing **UNDER SEAL** for the above-referenced civil action, please find
Plaintiff's Motion for Partial Summary Judgment and Appendix.  There are two protective orders
entered in this case and therefor please accept this filing **UNDER SEAL**.  If you have any
questions or need anything further from Plaintiff, please feel free to contact me at any time.

                                Sincerely,

                                Paul S. Beik

Enclosures
CC:   JT Morris          (via U.S. Mail)
      Ramzi Khazen       (via U.S. Mail)
      JT MORRIS LAW PLLC
      1105 Nueces Street, Suite B
      Austin, TX 78701

Opp. App. 094

Contains information subject to the Agreed Protective Order [Dkt. 46]:

Document attached to separate sealing motion as required under L.R. Civ. 5.2.

Contains information subject to the Agreed Protective Order [Dkt. 46]:

Document attached to separate sealing motion as required under L.R. Civ. 5.2.

Contains information subject to the Agreed Protective Order [Dkt. 46]:

Document attached to separate sealing motion as required under L.R. Civ. 5.2.

Contains information subject to the Agreed Protective Order [Dkt. 46]:

Document attached to separate sealing motion as required under L.R. Civ. 5.2.

Contains information subject to the Agreed Protective Order [Dkt. 46]:

Document attached to separate sealing motion as required under L.R. Civ. 5.2.

Contains information subject to the Agreed Protective Order [Dkt. 46]:

Document attached to separate sealing motion as required under L.R. Civ. 5.2.

Contains information subject to the Agreed Protective Order [Dkt. 46]:

Document attached to separate sealing motion as required under L.R. Civ. 5.2.

Contains information subject to the Agreed Protective Order [Dkt. 46]:

Document attached to separate sealing motion as required under L.R. Civ. 5.2.

Contains information subject to the Agreed Protective Order [Dkt. 46]:

Document attached to separate sealing motion as required under L.R. Civ. 5.2.

Contains information subject to the Agreed Protective Order [Dkt. 46]:

Document attached to separate sealing motion as required under L.R. Civ. 5.2.

Contains information subject to the Agreed Protective Order [Dkt. 46]:

Document attached to separate sealing motion as required under L.R. Civ. 5.2.

Contains information subject to the Agreed Protective Order [Dkt. 46]:

Document attached to separate sealing motion as required under L.R. Civ. 5.2.

Contains information subject to the Agreed Protective Order [Dkt. 46]:

Document attached to separate sealing motion as required under L.R. Civ. 5.2.

Contains information subject to the Agreed Protective Order [Dkt. 46]:

Document attached to separate sealing motion as required under L.R. Civ. 5.2.

Contains information subject to the Agreed Protective Order [Dkt. 46]:

Document attached to separate sealing motion as required under L.R. Civ. 5.2.

Contains information subject to the Agreed Protective Order [Dkt. 46]:

Document attached to separate sealing motion as required under L.R. Civ. 5.2.

Contains information subject to the Agreed Protective Order [Dkt. 46]:

Document attached to separate sealing motion as required under L.R. Civ. 5.2.