**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

MALIBU MEDIA, LLC,

Plaintiff,

vs.

JOHN DOE,

Defendant.

CIVIL ACTION NO.  5-19-CV-00834-DAE

## DEFENDANT'S MOTION FOR SANCTIONS

Defendant John Doe ("Doe") asks that the Court sanction Plaintiff Malibu Media, Inc. ("Malibu") over its conduct regarding communications with consultant IPP International ("IPP").

Malibu and the Germany-based IPP worked together to file this and countless more copyright lawsuits over at least eight years. Yet the only communication with IPP that Malibu turned over to Doe was a single email. This defies reason.

And it also defies Malibu's representation to the Court that it would turn over all its communications with IPP. Even more so given Malibu's testimony that it communicated with IPP over various electronic platforms before and during this litigation. Indeed, Malibu knows of its duty to preserve communications with IPP having filed 1000s of copyright infringement lawsuits with IPPs help. Above all, Doe has suffered prejudice to developing of his[1] counterclaims and defenses because of Malibu's misbehavior.

For these reasons, the Court should sanction Malibu under Fed. R. Civ. P. 37 and its inherent authority by (a) issuing an adverse jury instruction on Doe's abuse of process counterclaims that the jury may presume any spoliated IPP communications and evidence of the

---

[1] For readability only, this motion uses male pronouns to refer to Doe. This suggests nothing about the identity or gender of Doe.

same were unfavorable to Malibu; (b) prohibiting Malibu to introduce at trial any information IPP provided to Malibu; (c) awarding Doe his fees of $2,645.00 incurred for this motion and his fees of $5,325.00 incurred for his motion to compel, and (d) order Malibu to pay $10,000.00 in deterrence sanctions.

## I.  Background.

Malibu founded this lawsuit on information IPP provided. [Dkt. 1, ¶¶18-19; Dkt. 5, pp. 46-48]. And Malibu also asked the Court for leave to subpoena Doe's ISP based on that information. [Dkt. 5, pp. 11-12, 46-48]. In fact, Malibu included an affidavit from IPP representative Tobias Fiser with that motion for leave. [*Id.* pp. 46-48].

In turn, Doe counterclaimed for abuse of process and harmful computer access, based in part on IPP's conduct and methods in identifying the 1000s of BitTorrent users Malibu has sued. [Dkt. 14, 51]. So of course, Doe requested Malibu produce its communications with IPP, including those related to the alleged infringement evidence IPP gave to Malibu, the methods IPP used to monitor BitTorrent, and Malibu's relationship with IPP. [Dkt. 62-1 Opp. App. 41-58, Request for Production Nos. 15, 17-19, 22, 24, 28, 31, 33, 36, 39, 43, 46].[2] After Malibu refused to produce these communications, Doe moved to compel. [Dkt. 31].

Before hearing Doe's motion, the Court ordered the parties to confer and file a joint advisory telling the Court about the issues resolved and any issues still disputed. And in that joint advisory, Malibu represented several things to the Court, including that it would produce its communications with IPP. [Dkt. 42 p. 5]. Malibu also represented "that [Malibu] ha[d] no written communications with IPP that [were] not in possession of its former counsel, and any communications with IPP since the dispute with former counsel arose have been oral." *Id.* But this

---

[2] To reduce redundancy, Doe will cite to the parties' summary judgment appendices when able.

representation was misleading.

Indeed, ***on the final day of discovery***, Malibu's corporate representative revealed that she and another Malibu representative, Dane DeFelice, had been communicating with IPP over the What's App and Skype applications in the months before and during this lawsuit, including after Doe filed his counterclaims. [Ex. A, C. Pelissier Tr. 99:12-102:10; 235:2-236:12]. Malibu's representative also testified that she texted with DeFelice about IPP. [*Id.* at Tr. 103:2-25]. And even though Malibu's case with its longstanding former counsel, the Lomnitzer Firm ("Lomnitzer") settled, Malibu has produced just a single email from IPP. [Dkt. 62-1 App. Opp. App. 38 ¶ 3; *see also* Ex. A, Pelliser Tr. 240:14-16].

Several times Doe has asked Malibu for its communications with and about IPP. [*E.g.,* Ex. B, Morris Decl. Ex. 1, email chain between counsel] In fact, when  Malibu revealed during its deposition the last day of discovery that it had been communicating with IPP over What's App and Skype, Doe's counsel asked for those communications on the record. [Ex. A, Tr. 100:18-19]. Yet Malibu has not produced those communications. And what is more, it has not justified this failure. Instead, Malibu has essentially acknowledged it made no effort to preserve evidence of its What's App and Skype communications with IPP. [Dkt. 65 pp. 2-3].

Malibu also represented to the Court "that it will not claim privilege as to its communications with IPP, and will otherwise produce a privilege log for any privileged communications between Plaintiff and its counsel." [Dkt. 42 p. 6]. Then, only after discovery had closed (and after prodding from Doe's counsel), did Malibu send Doe a "Plaintiff's Privilege Log." But this document omits (a) any meaningful description of the subject matter of each document, (b) dates, which are essential to the veracity of a work product claim based on anticipation of a lawsuit, and (c) in one case, the privilege claimed. [Ex B, Morris Decl. Ex. 2].

## II. Legal standards.

Federal courts can sanction misconduct on several bases. First, Fed. R. Civ. P. 37 provides sanctions both for disobeying discovery-related orders and for spoliation of electronic evidence. Fed. R. Civ. P. 37(b), (e). To that end, Rule 37 provides many options for sanctions, including payment of expenses and fees, establishing facts as true, and issuing an adverse jury inference. *Id.* § (b)(2), (e)(2).

And where the federal rules are not "up to the task," federal courts can sanction misconduct under their inherent authority. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46, (1991) (citations omitted). This inherent authority includes sanctioning bad faith conduct, such as lying to the court. *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995); *Chambers*, 501 U.S. at 42, 46, 50-51 (affirming the district court's use of its inherent authority to sanction "misleading and lying to the court.")

## III. The Court should sanction Malibu.

### A. Doe has suffered prejudice from Malibu's misconduct.

Having misinformed Doe and the Court until the final day of discovery, Malibu avoided producing its communications related to IPP, as well as the further discovery they may have uncovered. This prejudice Doe and his ability to defend himself and prosecute his counterclaims. And Malibu's deficient privilege log only underscores this.

Indeed, Malibu's violations are significant because Malibu based its Complaint and decision to file this case and others on information it claims IPP provided. [Dkt. 1, ¶¶18-19; Dkt. 5, pp. 46-48]. In addition, Doe's abuse of process and harmful access counterclaims hinge significantly on IPP's role in Malibu suing Doe as well as others for BitTorrent infringement. [Dkt. 51 ¶¶ 102-106, 132-134, 145].

And Doe even more reason to believe IPP's role bears significantly on his abuse of process

claim. For example, Malibu testified that it does not trust IPP. [Ex. A Tr. 140:15-25]. In fact, Malibu suspects that IPP illegally siphoned Malibu's settlement proceeds. [*Id.* Tr. 246:8-247:17, 250:7-251:6]. This suggests that  IPP may profit from unfounded allegations.

In short, Malibu's communications with and about IPP are highly relevant to IPP's methods and motivations, as well as whether Malibu knew that IPP was not above-board when it used IPP's information to sue Doe. Without these communications, Doe is prejudiced is his ability to investigate these issues and develop his counterclaims and his defenses. This prejudice is even more serious given that Malibu has continued generating even more unnecessary fees and costs to Doe, as Doe has explained. [*E.g.*, Dkt. 62 pp. 4, 10].

**B.  The Court should sanction Malibu for spoliation of electronic evidence.**

Spoliation generally involves three elements: (1) the destroying party had a duty to preserve the information, (2) there was a breach of that duty, and (3) the innocent party was prejudiced. *Repass v. Rosewood Hotels & Resorts, L.L.C.,* 184 F. Supp. 3d 401, 405 (N.D. Tex. 2015) (citing *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 799 (N.D. Tex. 2011)). "A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Id.* In addition, Rule 37(e) provides various sanctions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery."

At the very least, Malibu spoliated records of its What's App and Skype communications with IPP and its internal text messages about IPP. Malibu had a duty to preserve those communications. It knows from filing 1000s of lawsuits that communications with its infringement consultant are relevant. And after Doe filed his counterclaims, Malibu had notice that its IPP-

related communications are even more relevant to this case.

Yet Malibu breached its duty to preserve those electronic communications. It has produced no chat or call logs from What's App and Skype or any other records of those communications, not to mention the actual communications. Nor has it produced any of its internal text messages about IPP. And Malibu's recent summary judgment reply suggests it did little if anything to preserve the What's App and Skype communications or evidence of the same. [Dkt. 65 pp. 2-3]. Finally, Malibu's spoliation prejudiced Doe as shown above.

This leaves only the proper sanction for Malibu's spoliation. An adverse jury inference that the spoliated communications and evidence of those communications were unfavorable to Malibu is appropriate here. The Fifth Circuit and Rule 37(e)(2) both require bad faith or bad conduct for an adverse inference based on spoliation. And that is present here, as Malibu concealing that it had these electronic communications with IPP until the last day of discovery shows. As well, an award of Doe's fees on this motion and his motion to compel is also an appropriate sanction.

**C. The Court should sanction Malibu for withholding IPP communications.**

Malibu's production of just one email with IPP effectively violated the Court's order for the parties to meaningfully confer on Doe's motion to compel. Put differently, had Malibu not represented in the joint advisory that it would produce the communications with IPP that its former counsel had, the Court almost certainly would have granted Doe's motion on those communications.

And it defies reason that Malibu has only one email with IPP to produce. Despite being located across the ocean, IPP served as Malibu's infringement consultant for at least eight years. [Dkt. 5 at p. 46, ¶ 6]. Over those eight years, IPP helped Malibu target BitTorrent users for 1000s of copyright infringement suits. [Dkt. 1 ¶¶ 6, 18-19; Dkt. 5 at p. 46, ¶ 7]. The one email Malibu

did produce shows it communicated with Malibu by email. And that Malibu included a declaration from IPP's German representative in its motion for leave to subpoena Doe's ISP also shows the parties must have communicated by email or other written means. [Dkt. 5 at pp. 46-48].

Simply put, there must be many more emails and other communications about IPP's role in this lawsuit, the methods it used to monitor BitTorrent for sharing of Malibu's films and help Malibu file 1000s of copyright lawsuits, and its relationship with Malibu. And in turn, that leaves only two explanations for Malibu's failure to produce these communications. Either it concealed them from Doe or it did not preserve them.

In any event, Malibu's failure to produce those communications demands sanctions. Doe requests fees, monetary sanctions, and excluding Malibu from relying on any information it received from IPP at trial.

### D.  The Court should sanction Malibu for its misrepresentations.

The Court has inherent authority to sanction IPP for its misrepresentations in the parties' joint advisory. *Chambers*, 501 U.S. at 42, 46, 50-51. And it should do so. Indeed, IPP's misrepresentations not only prejudiced Doe, but they also evidence a bad-faith motive to obscure the nature of IPP-related communications. To that end, both monetary sanctions and a sanction excluding Malibu from using at trial any information IPP provided at trial are appropriate.

## IV. Conclusion.

For these reasons, Doe asks that the Court sanction Malibu under Fed. R. Civ. P. 37 and its inherent authority by (a) issuing an adverse jury instruction on Doe's abuse of process counterclaims that the jury may presume the spoliated IPP communications and evidence of the same were unfavorable to Malibu; (b) prohibiting Malibu to introduce at trial any information IPP provided to Malibu; (c) awarding Doe his fees of $2,645.00 incurred for this motion and his fees

of $5,325.00 incurred for his motion to compel, and (d) order Malibu to pay $10,000.00 in deterrence sanctions.

Dated: January 14, 2021                                    Respectfully,


                                                           /s/ JT Morris
                                                           JT Morris
                                                           Texas State Bar No. 24094444
                                                           Ramzi Khazen
                                                           Texas State Bar No. 24040855
                                                           JT Morris Law, PLLC
                                                           1105 Nueces Street, Suite B
                                                           Austin, Texas 78701
                                                           ramzi@jtmorris.law.com
                                                           jt@jtmorrislaw.com
                                                           Tel: 512-717-5275
                                                           Fax: 512-582-2948

                                                           Counsel for Defendant John Doe


## L.R. Civ. 7(i) Certificate of Conference

I certify that I conferred in good faith with Plaintiff's counsel by email and telephone about this motion. Plaintiff opposes this motion.

                                                           /s/ JT Morris
                                                           JT Morris

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 14, 2021, I electronically filed the foregoing documents with the Court using CM/ECF, and served on the same day all counsel of record via the CM/ECF notification system.

/s/ JT Morris_____
JT Morris
