UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| Plaintiff, | ) Civil Action Case No.5:19-cv-00834-DAE |
| v. | ) |
| JOHN DOE, | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SANCTIONS**

Plaintiff, Malibu Media, LLC, by and through undersigned counsel, responds to Defendant's Motion for Sanctions [Dkt. 67] and states:

**I. INTRODUCTION**

Defendant makes extreme allegations of document destruction, spoliation of evidence and a failure to preserve evidence without any evidence to support his[1] allegations. Simply put, Defendant has no foundation for his motion. Plaintiff has represented on numerous occasions that it is not aware of any responsive documents outside of what has been produced. And, Defendant has presented <u>no</u> evidence to the Court that Plaintiff engaged in the spoliation of evidence. Moreover, Defendant has not identified any specific documents that Plaintiff failed to turn over and provides nothing more than a vague description of documents he *thinks* should or would have existed. In fact, Defendant hangs his hat on the assumption that "there must be many more emails and other communications about IPP's role in this lawsuit" without pointing to any evidence

---

[1] For readability, Plaintiff will refer to Defendant using the male pronoun without commenting on the actual gender of Defendant.

whatsoever or understanding the purposes for which Plaintiff's investigator, IPP International U.G. ("IPP") was retained. [Dkt. 67, p. 7].  Despite these failings, Defendant continues to claim that "relevant documents" were not preserved without any supporting evidence.  The Court should accordingly deny Plaintiff's instant motion seeking sanctions for these unfounded assertions.

Sanctions should not be used lightly. *Doe v. Am. Airlines,* 283 Fed. Appx. 289, 291 (5th Cir. 2008).  The purpose of sanctions is to make sure the parties have a fair, legal and expeditious trial. *EEOC v. General Dynamics Corp.,* 999 F.2d 113, 119 (5th Cir. 1993).  Sanctions, however, should not be used to increase the cost of litigation, needlessly increase the number of filings made with the Court, or multiply the amount of litigation that must take place in order to reach a resolution.  Here, Defendant attempts to convince the Court that sanctions are warranted despite the fact that Plaintiff undertook a meaningful, diligent examination of its electronic documents and communications to verify whether responsive documents existed.  Defendant uses of words like "misleading", "no effort to preserve evidence", "avoided", "spoliation" in hopes that using these words will relieve them of their burden of proving that Plaintiff's conduct rises to the level of bad faith, deceitful and dishonest behavior worthy of sanctions.  But Defendant cannot meet that burden.  The fact that Defendant hoped to find a "smoking gun" or, at a minimum, some evidence to support his counterclaims and defenses but did not does not mean that Plaintiff engaged in any nefarious conduct such that sanctions are warranted.  To be sure, simply because Defendant believes there should have been more communications between Plaintiff and its investigator does not make it so.

## II. LEGAL STANDARD

### A. The Court's Inherent Power to Sanction

A court may impose sanctions for litigation misconduct under its inherent power under Federal Rule of Civil Procedure 37. Fed. R. Civ. P. 37(b)(2)(A); *see also Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488–89 (5th Cir.2012). Reliance on this inherent authority is appropriate when there is a "wide range of willful conduct" implicating multiple rules. *Sarco Creek Ranch v. Greeson*, 167 F. Supp. 3d 835, 845 (S.D. Tex. 2016). The court's inherent power is based on "the court's need to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S. Ct. 2123 (1991). The court must exercise this power with "restraint and discretion." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S. Ct. 2455 (1980). This discretion, however, is limited. "[U]sually, . . a finding of bad faith or willful misconduct [is required] to support the severest of remedies under Rule 37(b). *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990). A court may assess attorney's fees only when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO* at 45-46. Mistaken answers or omissions are not, standing alone and without any additional evidence, evidence of dishonesty or bad faith. *Whiting v. Hogan*, 2013 U.S. Dist. LEXIS 35381, 27-30 (D. Ariz. Mar. 14, 2013). Such answers may, at most, demonstrate a lack of memory, which is not sufficient to justify the Court's exercise of its inherent power to sanction. *Id.*

Federal courts have consistently held that documents are deemed to be within the "possession, custody or control" of a party if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a non-party to the action. *Monroe's Estate v. Bottle Rock Power Corp.,* No. 03-

2682, 2004 WL 737463, at *10 (E.D. La. Apr. 2, 2004). The burden is on the party seeking discovery to make a showing that the other party has control over the material sought. When determining the sufficiency of control of material, the nature of the relationship between the party and the non-party is the key. *Id.* at *10; *see Goh v. Baldor Electric Co.,* 1999 WL 20943 at * 2 (N.D.Tex.). In addition, "[t]he fact that a party could obtain a document if it tried hard enough...does not mean that the document is in its possession, custody, or control; in fact it means the opposite." *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) (Court held that control did not exist where a party could not order a non-party to surrender documents). "Neither the Federal Rules of Civil Procedure nor the Fifth Circuit offer clear, definitive guidance as to the appropriate definition of control." *Goh v. Baldor Elec. Co.*, No. 3:98-MC-064-T, 1999 WL 20943, at *2 (N.D. Tex. Jan. 13, 1999); *Dugas v. Mercedes-Benz USA, LLC*, No. 6:12-CV-02885, 2014 WL 3848110, at *3 (W.D. La. Aug. 5, 2014) (relying on *Goh*). In *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 821 (5th Cir. 2004), the Fifth Circuit held that "access" to documents is not equivalent and is broader than "custody, control, or possession" under Rule 34.

Here, Defendant seeks documents from Plaintiff related to communications with Plaintiff's expert, IPP, a German entity. IPP was retained by Plaintiff, and has been retained by many other motion picture studios, to provide data evidencing copyright infringement over the BitTorrent network. While IPP does provide Plaintiff with results of its investigation into the astronomical infringement of Plaintiff's copyrights online, it does not regularly or routinely communicate with Plaintiff or its counsel outside of the provision of the data supporting the infringement, such that documents responsive to Defendant's requests do not exist. Indeed, Plaintiff had committed to supplementing its responses with any communications from IPP in the possession of Plaintiff's prior national counsel, Lomnitzer Law ("Lomnitzer"). However, upon receipt of client files from

4

Lomnitzer, it was determined that no documents in addition to what had already been provided to Defendant were present. [Ex. A. Declaration of Colette Pelissier "Pelissier Dec"]. While Plaintiff did represent that it would provide any additional communications included in the client files returned from Lomnitzer, no responsive documents were contained in those client files. Plaintiff cannot produce what does not exist. As such, the imposition of sanctions with respect to this allegation is not proper or warranted.

**B. Documents That Do Not Exist**

Discovery is limited to "nonprivileged matter[s] that [are] relevant to any party's claim or defense." *See* Fed. R. Civ. P. 26(b). A party or non-party "cannot produce what it does not have." *Solorzano v. Shell Chem. Co.*, No. Civ. A.99-2831, 2000 WL 1145766, at *7 (E.D. La. Aug. 14, 2000). And, so, "[c]learly, the court cannot compel [a party or non-party] to produce non-existent documents." *Beasley v. First Am. Real Estate Info. Servs., Inc.*, No. 3:04-cv-1059-B, 2005 WL 1017818, at *4 (N.D. Tex. Apr. 27, 2005). *See also Payne v. Forest River, Inc.*, No. Civ. A. 13-679-JJB-RLB, 2015 WL 1912851, at *4 (M.D. La. Apr. 22, 2015) ("The court cannot order the production of documents that no longer exist or, despite a diligent search, cannot be found in the possession, custody, or control of a party.").

"[T]he Court cannot order the Defendants to produce documentation that does not exist. Therefore, unless the Plaintiff can provide proof that the documents exist, rather than mere speculation, the Court will not entertain motions to compel the Defendants to produce documentation whose existence is nothing more than theoretical." *McElwee v. Wallantas*, No. Civ. A. L-03-CV-172, 2005 WL 2346945, at *3 (S.D. Tex. Sept. 26, 2005).

### III. <u>ARGUMENTS</u>

**A. Plaintiff Has Not Violated this Court's Previous Order Regarding Production of Documents.**

In the Joint Advisory to the Court [Dkt. 42] following Defendant's Motion to Compel, the parties advised the Court that they had meaningfully conferred and had significantly narrowed the disputed issued before the Court. [Dkt. 42, p. 1]. Specifically, Malibu undertook great effort, to the tune of over 40 hours of additional work, to produce analytics and statistics from its website usage, and prior copyright infringement litigation in response to the Court's Order. Notable is the fact that Malibu agreed to produce its communications with IPP "if and when it is able to contact them." [Dkt. 42, p. 6]. This filing made in August of 2020 shows that the attempts to reach IPP had been ongoing, but unsuccessful prior to this filing. Plaintiff avers that it was never able to reach IPP.

The Court's Order [Dkt. 44] related to Defendant's Motion to Compel ordered Plaintiff to produce specific information on the total number of settlements agreements Malibu had entered into with respect to the copyrights at issue in this litigation, as well as the aggregate amount of those settlements. Malibu, after undertaking the extremely burdensome and time-consuming task of compiling this information, which is not kept in the ordinary course of its business, provided this information to Defendants, which fully complied with this Court's Order.

Defendant now seeks to have the Court sanction Malibu, again, despite the fact that Malibu complied with this Court's Order, simply because Defendant does not like the fact that additional communications with IPP do not exist. Malibu cannot create responsive documents out of thin air. If they do not exist or could not be located after a good faith, diligent search, sanctions should not be imposed.

Indeed, Plaintiff has, on numerous occasions, advised Defendant that responsive communications to or from IPP on the basis that the documents requested are not in Plaintiff's possession, custody, or control. A party is only required to produce documents in its "possession, custody, or control..." *See* Fed. R. Civ. P. 34(a). Defendant somehow claims that the subject documents are in Plaintiff's control but fails to set forth any specific facts or arguments to support this claim. Specifically, Defendant has provided no evidence to support the claim that Plaintiff is in control, has a legal right to obtain, or could obtain such documents on demand.  Plaintiff and IPP are two entirely separate entities and their only connection to one another is the professional business relationship wherein Malibu compensated IPP for its global anti- piracy services. IPP is nothing more than a regularly used third party vendor to Malibu. Finally, after diligent search, Malibu could only identify instances where Ms. Pelissier, on behalf of Malibu, *attempted* to reach IPP.  Those attempts involved attempted voice calls and since Malibu failed to reach IPP, there are no communications to produce.  [Deposition of Colette Pelissier attached hereto as Exhibit B "Pelissier Depo.",  p. 235, line 24 – p. 236, line 3] ("Q: Did you communicate directly with IPP over WhatsApp at all in 2019?" "A: I believe I tried to.").

**B. All Communications with IPP Ceased Prior to the Initiation of this Suit**

Generally, the duty to preserve evidence arises when a party has notice that the evidence is relevant to litigation or should have known that the evidence may be relevant to future litigation. The duty to preserve extends to documents or tangible things by or to individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses." *Rimkus Consulting Group, Inc. v. Cammarata,* 688  F.Supp.2d  598,  612–13 (S.D.Tex.2010).  Here, in Ms. Pelissier's deposition, she specifically indicated that despite attempts to communicate with IPP, no communication occurred. [Pelissier Depo p. 236]. Indeed,

communications ceased between IPP and Malibu's prior counsel, Lomnitzer Law ("Lomnitzer") "four months from when [Malibu] left Lomnitzer." [Pelissier Depo p. 272, line 6]. Malibu and Lomnitzer ceased working together in August 2019. [Pelissier Dec. ¶ 14]. As such, all communications with IPP would have ceased by May 2019, which is two months *prior* to the initiation of the instant matter. Thus, no communications between Malibu and IPP occurred at all during the pendency of this suit; only attempts by Ms. Pelissier to reach IPP, which went unanswered. Further, as provided in her in her sworn testimony, communications with IPP generally only occurred between Lomnitzer and IPP. [Pelissier Depo pp. 234-235].

**C. Defendant Misconstrues Plaintiff's Testimony**

Defendant argues that "Malibu has essentially acknowledged it made no effort to preserve evidence of its WhatsApp and Skype communications with IPP." [Dkt. 65, pp 2-3]. This statement is incredibly misleading. WhatsApp is used not only for text messaging but also for voice and video calling. *See* WhatsApp, https://www.whatsapp.com/features/ (last visited Jan. 21, 2021). Defendant never specifically asked what method of communication Plaintiff undertook when seeking to communicate with IPP, only the applications Ms. Pelissier used. [Pelissier Depo, p. 100, line 8-9] ("Q: So you communicate with them through WhatsApp and through Skype; is that correct?"). In fact, Ms. Pelissier only sought to reach IPP using the WhatsApp and Skype voice calling functions. [Pelissier Declaration ¶ 10]. Defendant never sought to clarify what method of communication Ms. Pelissier employed when attempting to reach IPP. As such, to assume it was a method which would necessarily leave a trail of responsive documents is misplaced. Surely, this misunderstanding cannot form the basis of a claim of bad faith on the part of Malibu. To be sure, Defendant has not, and cannot point to any evidence whatsoever of Plaintiff's bad faith with respect to these responses. During her deposition, Ms. Pelissier time and again stated that she did

not regularly communicate with IPP [Pelissier Depo., p. 94, line 12-14 "The lawyers did the contract and negotiated with them.", p. 99, line 16 "They're very hard to reach.", p. 100, line 16-17 "I don't think there is anything to produce.", p. 101, line 10-11 "So we have been trying to get information from them [about various cases] and they've not been very responsive", p. 101, line 22 "they're just never really that responsive", p. 235 "Q: have you communicated with IPP at all during this period [period of Lomnitzer managing Malibu cases]?" "A: No, They weren't actually talking to me because Lomnitzer was paying them more than I wanted to pay them, so she was communicating with them."]

### D. An Adverse Inference is Not Warranted

It is well established that a party seeking the sanction of an adverse inference instruction based on spoliation of evidence must establish that: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Doe v. Northside I.S.D.*, 884 F. Supp 2d 485, 496 (W.D. Tex. 2012). Here, Defendant cannot point to (1) any specific evidence that was destroyed, (2) cannot point to any evidence that Plaintiff had a culpable state of mind with respect to any evidence, and (3) that even assuming *arguendo* that such documents existed, that they would be 'relevant' to Defendant's claims and defenses. Indeed, it is a massive reach by Defendant to simply assume evidence existed and was destroyed or not retained, that Malibu did so with a culpable state of mind, and that the phantom communications would have been helpful to Defendant's case.

## IV. CONCLUSION

While there are certainly situations warranting the imposition of sanctions, this is not one of them. Defendant has only highlighted discrepancies in Plaintiff's testimony and discovery responses with a heavy dose of conjecture, not lies or intentional misconduct. Moreover, Defendant has not provided any evidence that any of Plaintiff's conduct in this case rises to the level that justifies sanctions. There is no evidence of intentional deceit or dishonesty, and the evidence points more towards faulty memory, innocent mistakes in communication, and a general lack of responsive documents. Defendant will have ample opportunities at trial to attempt to use the inconsistencies and contradictions discussed in his motion for sanctions to impeach Plaintiff's witnesses and impugn their credibility. That is the proper and appropriate recourse in this type of situation. And, Defendant's request for sanctions does nothing more than increase the amount of litigation, the number of filings, the amount of fees, and the amount of time spent distracted from the merits of this case.

For the foregoing reasons Plaintiff respectfully requests that the Court deny Defendant's Motion for Sanctions in its entirety.

Dated: January 21, 2021

Respectfully submitted,

By: /s/ Paul S. Beik
PAUL S. BEIK
Texas Bar No. 24054444
S.D. Tex. ID No. 642213
BEIK LAW FIRM, PLLC
8100 Washington Ave., Suite 1000
Houston, TX 77007
T: 713-869-6975
F: 713-868-2262
E-mail: paul@beiklaw.com
**ATTORNEY FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 21, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

> By: /s/ Paul S. Beik
> PAUL S. BEIK