WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

MALIBU MEDIA, LLC,

Plaintiff,

vs.

JOHN DOE,

Defendant.

CIVIL ACTION NO. 5-19-CV-00834-DAE

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

Common wisdom tells us that when in a hole, it is best to stop digging. With its opposition to Doe's sanctions motions, Malibu Media, Inc. ("Malibu") opts instead to keep digging.

Indeed, Malibu's opposition reveals even more reasons for why the Court should sanction Malibu. Perhaps most glaring is that Malibu offers a declaration of Collette Pelissier that contradicts her October testimony about Malibu's communications with IPP. That Malibu's arguments against sanctions rest on a sham declaration speaks volumes.

For the reasons below and in Doe's motion, the Court should grant the requested sanctions.

**I. Malibu opposes Doe's sanctions motion with a sham declaration.**

Doe deposed Malibu's representative Collette Pelissier in October 2020. [Dkt. 69-2]. And during the deposition, Pelissier testified she "communicated" with IPP two months before her deposition. [Dkt. 69-2 Tr. 100:8-13]. She also stated she texted with a Malibu consultant about getting communications from IPP about this case. [*Id.* Tr. 102:4-103:17. Then she testified that around seven months before her deposition, that IPP sent her a series of communications. [Tr. 235:13-236:12].

And now after Doe filed a sanctions motion, Pelissier has changed her story to suggest that she last communicated by text or other writing with IPP in 2015 or 2016. [Dkt. 69-1 ¶ 8]. Yet she

ignores her testimony that IPP sent her a series of communications less than a year ago. [*See id.*; Dkt. 69-2 Tr. 236:2-12].

Putting aside the spoliation problems over texts from 2015 and 2016 with IPP, Pelissier's declaration is a classic sham declaration. And the Court should reject it.

Pelissier's single explanation is that she was not "precise" during her deposition because she did not feel well.[1] [Dkt. 69-1 ¶ 7]. But if Pelissier's testimony is so tainted because she was ill, then Malibu is relying on what it knows is tainted testimony to support its pending summary judgment motion and opposition to Doe's summary judgment motion. [*See* Dkt. 60, 66]. Malibu cannot have it both ways.

In short, the Court should reject Pelissier's declaration as much as it contradicts her deposition testimony about communications with IPP.

## II. Malibu offers no justification for the missing IPP communications from other infringement cases.

As Doe points out, the relevant communications with IPP go beyond this lawsuit to those relating to other copyright infringement lawsuits and IPP's relationship with Malibu (for example, the 2015 or 2016 text messages Pelissier mentions in her declaration). [Dkt. 67 p. 9]. This includes metadata and similar information in emails that often reveals evidence. But Malibu's opposition does not address its failure to produce those communications. By contrast, it steers the focus to IPP's communications in this case [Dkt. 69-1 ¶ 13] and its efforts to produce settlement agreements. [Dkt. 69 p. 6].

Even then, Malibu's arguments show it did not even produce all of IPP's communications

---

[1] Several times during Pelissier's deposition, Doe's attorney had to ask Pelissier if she was under the influence of anything, or had any reason she might not be able to testify fully and truthfully, to which she replied that she was fully capable of giving accurate testimony [Dkt. 69-2 Tr. 10:2-13; 61:15-62:15; 105:22-106:1; 174:1-8].

2

for this case. As Malibu acknowledges, IPP at least sent communications to Malibu providing alleged evidence of infringement and supporting affidavits. [Dkt. 69-1 ¶5]. Yet Malibu produced no email from IPP transmitting the Tobias Fiser declaration ("Fiser Declaration") Malibu used to get a subpoena for Doe's internet service provider. [*See* Dkt. 5 Ex. C]. Nor did it produce any of the infringement evidence IPP allegedly sent.

And beyond that, Malibu produced no emails from IPP sending data and affidavits for other copyright infringement cases. That includes the many cases in filed in this District around the time it filed this one.

In the end, Malibu's acknowledgement that IPP sent alleged evidence and affidavits in this and other cases confirms that it misrepresented it would produce communications with IPP. [Dkt. 42 p. 5]. And if those communications no longer exist as Malibu suggests, then Malibu spoliated them. Malibu cannot deny its duty to preserve its communications with IPP given the volume of copyright infringement cases it worked with IPP to file. In any event, Malibu's failure to produce these communications shows good cause for sanctions.

**III. Malibu likely spoliated other evidence.**

Underscoring Malibu's misbehavior is that it likely spoliated other evidence. For example, Malibu represented in the parties' joint advisory that it would produce its agreement with IPP. [Dkt. 42 p. 5]. But Malibu produced only an incomplete agreement which omits the first page and key terms, despite knowing the agreement is relevant at least to Doe's abuse of process counterclaim. Malibu's counsel confirmed that Malibu does not have a complete copy. [Ex. A, 1-25-2021 email from P. Beik to J. Morris].

This leaves one plausible conclusion—Malibu spoliated its complete agreement with IPP. Not only is this another sanctionable act, but it also supports Doe's argument that Malibu spoliated

its communications with IPP.

## IV. Malibu's opposition raises even more suspicion over its conduct.

Malibu makes even more statements in its opposition that show why sanctions are appropriate. For example:

*Malibu effectively admits it withheld infringement data.* Malibu admits IPP sent alleged evidence of infringement. [Dkt. 69-1 ¶5]. But Malibu produced no infringement evidence here. This failure simply highlights the depths of Malibu's misconduct.

*Malibu flip-flops on IPPs role.* In its opposition, Malibu paints IPP as "nothing more than a regularly used third party vendor." [Dkt. 69 p. 7]. Yet in prior pleadings, Malibu called IPP its expert. [*E.g,* Dkt. 5 Ex. A. ¶ 16; Dkt. 33 p. 3]. The Court should reject Malibu's attempt to minimize its relationship with IPP and IPP's importance to Doe's counterclaims.

*Malibu makes another misrepresentation.* Malibu represents that "all communications with IPP would have ceased by May 2019, which is two months *prior* to the initiation of the instant matter." [Dkt. 69]. But the Fiser Declaration shows either that this is a misrepresentation, or that the Fiser Declaration is a sham. In particular, the Fiser Declaration appears dated either July 2019 or July 2015:

**DECLARATION**

PURSUANT TO 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this ᴜ61 day of July, 201S.

**TOBIAS FIESER**

By: _____

[Dkt. 5, Ex C]. So if the date is July 2019, then Malibu did not stop communicating with IPP two months before this lawsuit. On the other hand, if it is July 2015, then Malibu is asserting as its

4

chief infringement evidence a declaration dated **two years** before the first alleged date of infringement. [*See* Dkt. 66].

This incongruity between the Fiser Declaration date and Malibu's statement about when it stopped talking with IPP shows more bad behavior, giving yet another reason for the Court to sanction Malibu.

## V. Conclusion.

Malibu's opposition merely adds to the reasons the Court should sanction Malibu. For the reasons stated above and in Doe's motion, Doe asks that the Court grant the motion and sanction Malibu by (a) issuing an adverse jury instruction on Doe's abuse of process counterclaims that the jury may presume the spoliated IPP communications and evidence of the same were unfavorable to Malibu; (b) prohibiting Malibu to introduce at trial any information IPP provided to Malibu; (c) awarding Doe fees of $2,645.00 incurred for this motion and fees of $5,325.00 incurred for the motion to compel, and (d) order Malibu to pay $10,000.00 in deterrence sanctions.

Dated: January 27, 2021                                         Respectfully,

/s/ JT Morris
JT Morris
Texas State Bar No. 24094444
jt@jtmorrislaw.com
Ramzi Khazen
Texas State Bar No. 24040855
ramzi@jtmorrislaw.com
JT Morris Law, PLLC
1105 Nueces Street, Suite B
Austin, Texas 78701
Tel: 512-717-5275
Fax: 512-582-2948

Counsel for Defendant John Doe

## CERTIFICATE OF SERVICE

  I hereby certify that on January 27, 2021, I electronically filed the foregoing documents with the Court using CM/ECF, and served on the same day all counsel of record via the CM/ECF notification system.

/s/ JT Morris  
JT Morris
