**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>       Plaintiff and Counterclaim Defendant,<br><br>vs.<br><br>JOHN DOE,<br><br>       Defendant,<br><br>vs.<br><br>COLETTE PELISSIER,<br><br>       Counterclaim Defendant. | CIVIL ACTION NO.  5-19-CV-00834-DAE<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT JOHN DOE'S FIRST AMENDED ANSWER AND ~~FIRST~~SECOND**
**AMENDED COUNTERCLAIMS**

Except as otherwise expressly admitted, qualified, or otherwise, Defendant John Doe ("Defendant") denies each allegation in Plaintiff Malibu Media, LLC's ("Plaintiff's") Complaint.

To the extent that any response is required to the unnumbered preamble of the Complaint: Denied.

**Introduction**

1. Paragraph 1 contains statements of law to which no response is required. To the extent a response is required, Defendant admits that Plaintiff purports to base this action on the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq*. Defendant denies the remainder of the allegations in Paragraph 1.

2. Denied.

3. Defendant admits that the United States Copyright Office's online database includes records of the registrations described in Exhibit B of the Complaint. Defendant denies the

1

remaining allegations in Paragraph 3.

## Jurisdiction and Venue

4. Defendant admits that, at this time, the Court has subject matter jurisdiction. Defendant denies that he[1] engaged in any conduct in violation of federal law and denies that it caused any damages to Plaintiff or that Plaintiff is otherwise entitled to relief.

5. Defendant does not dispute that this Court has personal jurisdiction over Defendant. Defendant denies that he engaged in any conduct in violation of Federal law and denies that he caused any damages to Plaintiff or that Plaintiff is otherwise entitled to relief. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 5 of the Complaint, and therefore denies the same.

6. Defendant admits that Plaintiff has filed over 1,000 cases. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 6 of the Complaint, and therefore denies the same.

7. Defendant admits that Defendant resides in this District and admits that venue is proper on that basis. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 7 of the Complaint, and therefore denies the same.

## Parties

8. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint, and therefore denies the same.

9. Defendant denies that he committed any alleged infringement. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations

---

[1] For purposes of readability, this answer and counterclaim uses generic male pronouns to refer to John Doe, without implying anything about John Doe's actual gender.

in Paragraph 9 of the Complaint, and therefore denies the same.

10. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint, and therefore denies the same.

**Factual Background**

11. Defendant admits that the BitTorrent network may be used as a peer-to-peer digital file sharing network. Defendant denies that Defendant infringed Plaintiff's alleged copyrights. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint, and therefore denies the same.

12. Defendant admits that BitTorrent can allow users to interact with each other. Paragraph 12 contains statements of law to which no response is required. To the extent a response is required, Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 12 of the Complaint, and therefore denies the same.

13.  Admitted.

14. Defendant admits that BitTorrent software may be used to assemble pieces of files. Defendant denies the remaining allegations of Paragraph 14.

15. Defendant admits that pieces of data may be assigned hash values in the BitTorrent protocol. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 15 of the Complaint, and therefore denies the same.

16. Defendant admits that pieces of data may be assigned hash values in the BitTorrent protocol. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 16 of the Complaint, and therefore denies the same.

17. Defendant admits that pieces of data may be assigned hash values in the BitTorrent protocol. Defendant lacks sufficient information or knowledge to form a belief as to the truth of

the remaining allegations in Paragraph 17 of the Complaint, and therefore denies the same.

18. Defendant admits that IPP established a connection to a network with an external IP address associated with an internet service account held in Defendant's name, and did so without Defendant's consent. Defendant specifically denies using the Subject IP Address to distribute or make available for distribution Plaintiff's alleged works. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 18 of the Complaint, and therefore denies the same.

19. Denied.

20. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint, and therefore denies the same.

21. Defendant denies that he made available for distribution or sharing, possessed, or controlled any digital media file or piece of it that Plaintiff alleges to have downloaded. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 21 of the Complaint, and therefore denies the same.

22. Defendant denies that he made available for distribution or sharing, possessed, or controlled any digital media file or piece of it that Plaintiff alleges to have downloaded. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 22 of the Complaint, and therefore denies the same.

23. Defendant admits that the United States Copyright Office's online database includes records of the registrations described in Exhibit B of the Complaint. Defendant denies the allegations of Paragraph 23 relating to "hit date[s]." Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 23 of the Complaint, and therefore denies the same.

24. Denied.

25. Denied.

26. Denied.

**Miscellaneous**

27. Paragraph 27 contains statements of law to which no response is required. To the extent a response is required, Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 27 of the Complaint, and therefore denies the same.

28. Defendant admits that Plaintiff has retained counsel. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 28 of the Complaint, and therefore denies the same.

**COUNT I**

**Direct Infringement**

29. Defendant realleges and reincorporates herein its responses to each of the preceding paragraphs as though fully set forth herein.

30. Defendant admits that the United States Copyright Office's online database includes records of the registrations described in Exhibit B of the Complaint. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations in Paragraph 30 of the Complaint, and therefore denies the same.

31. Denied.

32. Defendant denies possessing, distributing, or making available for distribution any of Plaintiff's alleged works, and on that basis, denies the remaining allegations of Paragraph 32.

33. Denied.

34. Denied.

## PRAYER FOR RELIEF

35. To the extent that Plaintiff's Prayer for Relief requires a response, Defendant denies that Plaintiff is entitled to any of the relief for which it prays as to any cause of action, including but not limited to the allegations and prayers for relief in Paragraphs A-G of the Complaint.

## AFFIRMATIVE DEFENSES

36. Defendant alleges the following affirmative defenses and reserves the right to assert additional affirmative defenses as it conducts its factual investigation and discovery, and as is otherwise permissible.

### FIRST AFFIRMATIVE DEFENSE
### Failure to State a Claim

37. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

38. Plaintiff's Complaint admits that neither Plaintiff nor its agents downloaded a complete copy of any of the works listed in Exhibit A from Defendant, and Defendant failed to plead that any of the alleged pieces downloaded constitute original expressions or constituent elements, or that any of this data on its own could be used to display a copyrighted work and/or a portion thereof.

### SECOND AFFIRMATIVE DEFENSE
### Misuse of Copyright

39. The goal of copyright law is to promote the useful arts and sciences by providing exclusive rights for a set time.

40. Upon information and belief, Plaintiff's goal in filing this lawsuit and others like it is not a judgment on the merits. Instead, Plaintiff uses the Federal Court system to coerce settlements.

41. Plaintiff films, photographs, and video records sexual acts, and distributes those works

6

on the internet. Upon information and belief, Plaintiff provides or has provided many of those recordings for free on pornography sharing websites, and encourages or is willfully blind to third-parties sharing and providing those same recordings on the internet. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

42. Plaintiff, despite encouraging sharing of its works, has by its own admission, sued 1000s of anonymous defendants for copyright infringement of its works.

43. Plaintiff does not enforce its alleged copyrights to protect the market for its works or to further the useful arts and sciences.

44. Rather, Plaintiff monetizes its alleged copyrights through coercive and needless litigation and by extracting settlements from that litigation disproportionate to the minimal value of Plaintiff's works.

45. On information and belief, Plaintiff also willingly or negligently fails to use methods accepted and used by the streaming media and movie industries to protect unauthorized access to, duplication of, and distribution of its content. Plaintiff does so to advance its intent to monetize its alleged copyrights through litigation instead of the commercial market. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

46. Plaintiff sues anonymous defendants intending to force them to choose between paying a settlement amount disproportionate to the value of Plaintiff's works, or risk the embarrassment to one's professional and personal reputation when their identity is made public along regarding alleged downloading and sharing of pornographic material.

47. Plaintiff filed this lawsuit to advance its coercive and improper enforcement efforts.

48. In addition, upon information and belief, either purposefully or through reckless disregard, Plaintiff's mass litigation strategy is likely to have resulted in duplicative recoveries. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

49. Through its coercive enforcement efforts, Plaintiff is trying to impermissibly expand the use of copyright for improper means.

50. As a result, Plaintiff should be enjoined from enforcing its copyrights in a coercive and improper manner, as it is doing here.

51. Equity also demands that Plaintiff not recover damages, fees, or costs in this case as a result of its copyright misuse.

**THIRD AFFIRMATIVE DEFENSE**
**Unconstitutionally Excessive Damages**

52. Plaintiff's claims are barred because they seek statutory damages that are unconstitutionally excessive and disproportionate to any actual damages that may have been sustained in violation of the Due Process Clause of the United States Constitution.

**FOURTH AFFIRMATIVE DEFENSE**
**De Minimis**

53. Plaintiff films, photographs, and video records sexual acts, and distributes those recordings on the internet.

54. Upon information and belief, Plaintiff provides or has provided many of those recordings for free on pornography sharing websites, and encourages or is willfully blind to third parties sharing those recordings on the internet.

55. Defendant has been accused in the Complaint of distributing pieces of nine different films, all of which could have been downloaded through x-art.com for a minimal amount of

money.

56. Defendant is accused of providing small portions of data corresponding to the copyrighted works to Plaintiff's investigators. Upon information and belief, these pieces would not be large enough to play on a movie player, and cannot show that Defendant stored a copy of any of the works in Exhibit A.

57. These pieces contain minimal or no elements of creativity and no constituent parts of the original work that would constitute protectable elements. Plaintiff cannot prove any actual financial loss from the alleged infringement, and any such damage would be limited to a small fee for membership on Plaintiff's website.

58. These amounts are minimal and Plaintiff should take nothing as a result.

**FIFTH AFFIRMATIVE DEFENSE**
**<u>Failure to Mitigate Damages and Laches</u>**

59. Plaintiff has hired IPP International UG ("IPP") to provide evidence of BitTorrent activity that allegedly infringes on its copyrights.

60. IPP has provided Plaintiff with information that Plaintiff has used to bring many copyright infringement actions throughout the United States. IPP allegedly identified Defendant's IP Address as allegedly infringing some time ago.

61. Plaintiff took no steps to mitigate its damages.

62. Plaintiff failed to use the takedown processes provided by the Digital Millennium Copyright Act.

63. Upon information and belief, Plaintiff has failed to engage in available copyright "Alert Systems," or any other similar systems. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

64. Plaintiff alleges that Defendant first infringed no later than July 26, 2017, but Plaintiff

waited until July 15, 2019 to file its Complaint, naming an IP address only, knowing Defendant could not be served without additional discovery.

65. Evidence relevant to Defendant's defenses has been lost or degraded. Plaintiff's failure to timely enforce any alleged copyright have cause Defendant and the public to rely on Plaintiff's inaction or ineffectiveness to its detriment.

66. Having failed to mitigate its damages, Plaintiff is entitled to no relief.

### SIXTH AFFIRMATIVE DEFENSE
### No Infringement

67. Defendant has not engaged in or contributed to any infringement of the copyrights alleged.

### SEVENTH AFFIRMATIVE DEFENSE
### Failure to Join Indispensable Parties

68. Plaintiff has failed to join indispensable parties, namely other participants in the alleged BitTorrent networks from which its consultant is alleged to have downloaded the remainder of the whole copies of the works listed on Exhibit A to the Complaint other than the piece(s) allegedly received from Defendant.

### EIGHTH AFFIRMATIVE DEFENSE
### Statutory Rights and Limitations

69. The one-satisfaction rule operates to prevent double recovery, or the overcompensation of a plaintiff for a single injury. Plaintiff is barred from seeking statutory damages, costs, and/or attorneys' fees under 17 U.S.C. § 504, including to the extent Plaintiff has already recovered for alleged infringements in prior actions or settlements. In addition, if Plaintiff has had an award adjudicated for statutory damages against other alleged participants in transferring a particular film, Plaintiff's recovery should be limited to Defendant's portion of that statutory award.

70. Plaintiff's claims and request for statutory damages should also be barred because

copyrights to its works were not properly or timely registered prior to or within three months of any alleged infringement.

71. Defendant pleads all of its rights, remedies, and defenses under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq*.

### NINTH AFFIRMATIVE DEFENSE
### <u>No Willful Infringement</u>

72.  Any alleged infringement by Defendant was innocent and not willful.

73. Without admitting any infringement or other liability, Defendant was unaware and had no reason to believe that any of his acts constituted an infringement of any copyright. Plaintiff has failed to allege facts sufficient to show any specific intent by Defendant to infringe the works listed on Exhibit A to the Complaint.

### TENTH AFFIRMATIVE DEFENSE
### <u>Acquiescence</u>

74. Plaintiff's claims are barred by the doctrine of acquiescence.

75. Plaintiff knew its films were being distributed and downloaded online via BitTorrent technology. On information and belief, Plaintiff encouraged the sharing and distribution of its films, or at the very least, did nothing to stop or deter it.

76. Plaintiff's claims are also barred to the extent that Plaintiff or its agents seeded the works or released them with improper purpose, such as to coerce settlements from the public.

### ELEVENTH AFFIRMATIVE DEFENSE
### <u>Estoppel</u>

77.  Plaintiff's claims are barred by the doctrine of estoppel. Without admitting any infringement or other liability, Defendant alleges that Plaintiff knew the facts of any alleged file-sharing related to the alleged IP address identified in Plaintiff's Complaint.

78. Yet Plaintiff acted so that others believed that Plaintiff intended the continued

availability of the copyrighted works on BitToreent. Any actions to download the work were induced by, and done in reliance on, Plaintiff's conduct.

79. This is compounded because Plaintiff, upon information and belief, allows for open distribution of its films by third parties.

**TWELFTH AFFIRMATIVE DEFENSE**
**<u>Unclean Hands</u>**

80.  Plaintiff's claims are barred by the doctrine of unclean hands.

81. Plaintiff filed this case knowing that it had not downloaded pieces of sufficient size to be properly analyzed for evidence of copyright infringement from anyone using the external IP address alleged in Plaintiff's Complaint.  Plaintiff sought permission to conduct early discovery knowing that it had not downloaded pieces of sufficient size to be properly analyzed for evidence of copyright infringement from anyone using the external IP address. But Plaintiff failed to disclose this fact to the Court in an *ex parte* motion seeking to unmask Defendant's identity.

82. Plaintiff's submission of outdated or sham affidavits in support of its motion for to discover Defendant's identity also show its unclean hands.

83. Plaintiff submitted the affidavit of Tobias Fieser, in which Mr. Fieser purports to testify about the specific IP address upon which Plaintiff sued Defendant. [Dkt. 5-1]. Yet Mr. Fieser's affidavit is dated and signed July 2015—two years before the first date of any alleged infringement. [Dkt. 1, Complaint Ex. B].

84. Plaintiff also submitted the affidavit of Patrick Paige in which he testified about Plaintiff's methods and technology for finding alleged infringers [Dkt. 5-1]. Yet the Paige affidavit was signed on August 19, 2016. The Paige affidavit is outdated and thus not credible, especially given the speed at which technology develops.

85. Plaintiff has also conveyed that it is aware its methodology fails to stand up to scrutiny

upon technical examination. For example, in *Malibu Media v. Tim McManus*, Case No. 2:17-cv-01321-WJM-MF, Plaintiff voluntarily asked the court to dismiss its claims after being served with detailed discovery requests regarding, for example, its methods and proof of its rights associated with the copyrights in suit. The court ordered Plaintiff to show cause. Plaintiff's brief to the court stated, in part, "Plaintiff's decision is a business decision based on the examination of information provided by the Defendants. Defendants are savvy IT professionals with the knowledge and capability to hide infringing activity."

86. Yet, on information and belief, Plaintiff's accusations in that case were based on effectively the same methodology employed here. Defendant's "savvy" is not relevant to whether or not the methodology had merit, especially since Defendant would not have the opportunity to retroactively "hide" its alleged infringement after Plaintiff's analysis was complete. Rather, Defendant's savvy goes only to the ability of the Defendant to show evidence that Plaintiff's methodology was flawed. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery

87. In addition, on information and belief, Plaintiff knowingly or with willful blindness allowed these files to flow onto third party sites, to create a "honeypot" to initiate litigation and extract settlements, rather than with an expectation of profit in the marketplace or for any other legitimate use of their alleged copyrights. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery

### THIRTEENTH AFFIRMATIVE DEFENSE
#### Intervening Causes

88. Without admitting that Plaintiff has sustained any injury or damages and without admitting any liability, Defendant alleges that the injuries complained of and the damages sought by Plaintiff in this Complaint and each such separate claim for relief asserted therein was the direct

13

and proximate result of certain independent actions of third parties over whom Defendant had no control. Therefore, Defendant is not liable for any of the damage that may have resulted therefrom.

### FOURTEENTH AFFIRMATIVE DEFENSE
### Fair Use

89. Plaintiff is not entitled to relief according to the doctrine of fair use.

90. Plaintiff admits that, at most, the portion (if any) of the allegedly infringed work was minimal.

91. Neither a portion of Plaintiff's works or the works as a whole had meaningful actual or potential market value, given, *inter alia*, the wide availability of free, readily available, and interchangeable alternatives, in addition to the embarrassment and various known and unknown risks associated with purchasing materials in the nature of the asserted works from entities such as Plaintiff or visiting websites such x-art.com or others maintained by Plaintiff.

### FIFTEENTH AFFIRMATIVE DEFENSE
### Lack of Capacity to Sue

92. Plaintiff lacks the capacity to sue.

93. Specifically, Plaintiff is suspended in its state of incorporation, California.

94. Under California law, a suspended corporation cannot maintain a lawsuit.

### DEFENDANT'S ~~FIRST~~SECOND AMENDED COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendant and Counterclaim Plaintiff John Doe ("Defendant"), by and through his counsel, hereby asserts the following counterclaims against Plaintiff and Counterclaim Defendant Malibu Media, LLC, (d/b/a "X-Art.com") ("Plaintiff~~").~~") and Counterclaim Defendant Collette Pelissier ("Pelssier"). Defendant alleges the following based on personal knowledge, publicly available materials, and upon

information and belief.

## PARTIES

92.95. Defendant is a John Doe Defendant[2] residing in this judicial district alleged in Plaintiff's Complaint to have infringed Plaintiff's copyrights using the IP address 70.121.72.191.

93.96. According to its Complaint, Plaintiff is a California limited liability company with a principal place of business at 30700 Russell Ranch Road, Suite 250, Westlake Village, CA 91362.

97. Pelissier is a California resident and Plaintiff's owner and operator. She can be served through counsel or at 30700 Russell Ranch Road, Suite 250, Westlake Village, CA 91362

## JURISDICTION AND VENUE

94.98. Personal jurisdiction and venue are proper within this District because, *inter alia*, Plaintiff hasand Pelissier have availed itselfthemselves of this Court's jurisdiction by bringing this action and several other actions in this District.

95.99. Venue is proper in this district under 28 U.S.C. § 1391.

96.100. The Court has subject matter jurisdiction over Defendant's counterclaims under 28 U.S.C. §§ 1331, 1338(a), 1367, 2201, and 2202.  The counterclaims are so related to the claims asserted by Plaintiff in this action that they form part of the same case or controversy under Article III of the U.S. Constitution, and arise out of common facts, transactions, and occurrences as provided under Rules 13 and 20 of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

---

[2] The parties have stipulated that Defendant's identity will not be publicly disclosed in any filings until further order of the Court. [Dkt. 10].

~~97.~~101. Plaintiff produces pornographic videos. It purports to offer to sell subscriptions to view them.

~~98.~~102. For better or worse, it is widely known that free pornographic material is available on the internet, and seldom carries with it the risk of copyright enforcement.

~~99.~~103. On information and belief, Plaintiff is aware that its content has little to no market value to the public. Yet Plaintiff knowingly acts in a manner, directly or indirectly, to encourage, facilitate, or allow for the sharing of its pornographic works, which it then complains of in its thousands of lawsuits.

~~100.~~104. On information and belief, Plaintiff also willingly or negligently fails to use methods accepted and used by the streaming media and movie industries to protect unauthorized access to, duplication of, and distribution of its content. Plaintiff does so to advance its intent to monetize its alleged copyrights through litigation instead of the commercial market.

~~101.~~105. Plaintiff, through its experts, begins collecting data on sharing of copies of its works soon after it is published.

~~102.~~106. Plaintiff hires the consulting firm IPP to act on Plaintiff's behalf and connect to networks controlled and operated by members of the public, and access their private computer data. IPP, acting as Plaintiff's agent, is instructed to connect to BitTorrent users and download one or more pieces of data that Plaintiff posits are components of copies of its copyrighted pornographic works.

~~103.~~107. Plaintiff has no known or expected prior relationship with the members of the public with whom it hires IPP to connect to and download data.

~~104.~~108. IPP does not, at Plaintiff's instruction,  identify itself or Plaintiff when seeking access or accessing this computer data from the public. Rather, on information and belief, IPP

actively seeks to avoid others learning of its identity on the BitTorrent network.

105.109. Plaintiff sues anonymous defendants using IP addresses supplied to it by IPP, on the presumption, for example, that the IP address identifies a person who supplied a piece of data that could be used to reconstruct a part of one of Plaintiff's works.

106.110. On information and belief, IPP purports to rely on 16 kilobyte pieces of data retrieved from a particular IP address, to support Plaintiff's claims of copyright infringement. None of the pieces of data, by themselves is necessarily large enough or capable of being played on a movie player or displaying a portion of Plaintiff's pornographic works. On information and belief, IPP claims to base its analysis on the composition of these 16 kilobytes of data, and Plaintiff bases its claims about the full works almost entirely from large amounts of data supplied by third parties unassociated with the targeted IP address. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

107.111. Plaintiff is aware that IP addresses can be associated with a person who pays a bill for an account, but not necessarily a person who supplies specific transmission data. *See, e.g.*, *Malibu Media LLC v. Doe*, 2016 U.S. Dist. LEXIS 14798, at *18-19 (N.D. Ill. Feb. 8, 2016). In other words, Plaintiff knows that IP addresses alone cannot identify an infringer. Neither IPP nor Plaintiff, despite knowing that multiple individuals or machines can utilize the same IP address, attempt to identify the actual individual responsible for supplying the piece of data.

108.112. Plaintiff is aware that its methodology is flawed. For example, in *Malibu Media v. Tim McManus*, Case No. 2:17-cv-01321-WJM-MF, Plaintiff voluntarily asked the court to dismiss its claims after being served with detailed discovery requests regarding, for example, its methods and proof of its rights associated with the copyrights in suit.  The court ordered Plaintiff

to show cause. Plaintiff's brief to the court stated, in part, "Plaintiff's decision is a business decision based on the examination of information provided by the Defendants. Defendants are savvy IT professionals with the knowledge and capability to hide infringing activity."

109.113. Yet Plaintiff has filed thousands of lawsuits and sought to uncover the identity of hundreds of anonymous internet users based on this method. Many defendants have settled. Often, these defendants have settled not because they were liable, but rather because they wished to avoid public embarrassment and reputational harm, and to avoid incurring attorneys' fees defending against Plaintiff's unsound infringement claims.

110.114. There is a real likelihood that Plaintiff has already reached the statutory maximum for many of the copyrights that Plaintiff claims to have been infringed, and/or that Plaintiff has already recovered damages from third parties that supplied necessary data over the BitTorrent network to allegedly reconstruct the copy of the films at issue.

111.115. Upon information and belief, Plaintiff's goal in filing lawsuits for copyright infringement of its pornographic works is not to protect any actual or potential market for its works, or seek a judgment on the merits. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery

112.116. Rather, Plaintiff monetizes its alleged copyrights by suing anonymous defendants intending to force them to choose between paying a settlement amount disproportionate to the minimal value of Plaintiff's works, or risk the embarrassment to one's professional and personal reputation when their identity is made public regarding alleged downloading and sharing of pornographic material.

113.117. Plaintiff filed this lawsuit to advance its coercive and improper enforcement efforts, as alleged in detail herein.

114.118. Not only did Plaintiff file this lawsuit on using information and methods it knew were faulty, but it has continued to litigate this case relying on no more than the same faulty evidence and methodologies.

115.119. For example, in responding to Defendant's discovery requests, Plaintiff merely pointed to its Complaint as the basis for its infringement claim.

116.120. And despite knowing that it needed expert testimony to make an infringement claim for infringement based on internet distribution, Plaintiff did not disclose any expert by the deadline. It did not even serve discovery requests on Defendant until six months after discovery opened and Defendant moved for summary judgment.

117.121. Plaintiff also chose not to serve any rebuttal to Doe's expert, whose opinion confirmed the unreliability of Doe's evidence and methods.

118.122. Plaintiff's indifference toward making its infringement claim showed and continued to show its efforts to pursue this lawsuit with no legitimate goal other than to coerce a settlement from Defendant, knowing fully at all times it had no reliable evidence to support its infringement claim.

119.123. Other conduct of Plaintiff also shows this. For example, Plaintiff asked for several extension to answer Doe's discovery request, only to serve discovery responses so deficient Doe had to file a motion to compel. And Plaintiff has failed and continues to fail to produce any documents related to liability for copyright infringement.

120.124. And despite Doe stating under penalty of perjury that he did not use BitTorrent during the relevant timeframe and that he never accessed or viewed Plaintiff's films, Plaintiff continues to assert its deficient infringement claim.

121.125. Plaintiff's extending this litigation knowing it has no basis for its claim has caused

and continues to cause Doe financial, emotional, and physical harm.

126. At all times relevant, Pelissier owned and operated Malibu, including during its campaign of copyright infringement litigation described above.

127. Pelissier oversaw and directed at all times Plaintiff's lawsuit against Doe, as well as all other copyright infringement lawsuits Malibu filed.

128. Pelissier knew before filing this lawsuit, and before filing many others, that an IP address alone cannot identify an infringer. And she knew that IPP and Malibu's general methodology for identifying defendants was flawed.

129. Still, Pelissier willfully chose to file hundreds if not thousands of copyright infringement lawsuits based on this flawed methodology, knowing fully that defendants generally would rather settle quietly rather than risk the embarrassment of being accused publicly of infringing pornographic films.

130. During this lawsuit, the State of California suspended Malibu's corporate status. California law does not permit a California entity to maintain a lawsuit while suspended.

131. Yet Plaintiff and Pelissier knowingly have continued to assert a flawed infringement claim despite lacking the legal capacity to do so.

**COUNT ONE:**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

~~122.~~132. Defendant realleges and reincorporates herein its responses to each of the preceding paragraphs as though fully set forth herein.

~~123.~~133. There is an actual and ongoing controversy between Defendant and Plaintiff regarding Defendant's alleged infringement of Plaintiff's copyrights.

~~124.~~134. Defendant did not infringe the copyrights identified in Plaintiff's Complaint.

~~125.~~135. Internet service providers assign external IP addresses to end user's routers.

These external IP addresses identify neither the user nor the computer connecting to the internet through the IP address.

~~126.~~136. On information and belief, Plaintiff has not compared the piece of information allegedly downloaded from the external IP address associated with Defendant's ISP account to the data that comprises the works listed in its Complaint.  At most, Plaintiff allegedly used indirect methods involving assembly comprised chiefly of data sourced from numerous third party sources to recreate its works. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery

~~127.~~137. A declaratory judgment that Defendant has not infringed Plaintiff's works is warranted and appropriate.

~~128.~~138. Moreover, a declaratory judgment of non-infringement will clarify going forward that Defendant is not an infringer of Plaintiff's pornographic material and clarify Defendant's rights as a purchaser or user of internet services.

**COUNT TWO:**
**ABUSE OF PROCESS**

~~129.~~139. Defendant realleges and reincorporates herein its responses to each of the preceding paragraphs as though fully set forth herein.

~~130.~~140. ~~Plaintiff~~Plaintiff, under Pelissier's knowing direction and through her participation, pleaded claims for copyright infringement despite knowing that an external IP address alone is insufficient to identify an infringer.

~~131.~~141. ~~Plaintiff~~Plaintiff, under Pelissier's knowing direction and through her participation, pleaded claims for statutory remedies despite knowing that those claims were likely unavailable. In filing its Complaint, Plaintiff sought to use and did use lawfully issued process for an ulterior or illegitimate purpose in an attempt to obtain a result not intended by law, including

21

(i) to extract money from defendant/counterclaimant by leveraging the lawsuit as a form of disparagement and humiliation; and (ii) monetary damage relative to the expense of defending this frivolous action. Due to the volume of suits, Plaintiff is not unlikely to have collected more than allowed by statute.

132.142. On information and belief, Plaintiff, under Pelissier's knowing direction, has not compared the piece of information allegedly downloaded from the external IP address associated with Defendant's ISP account to the data that comprises the works listed in its Complaint.  At most, Plaintiff used indirect methods involving assembly comprised almost entirely of data sourced from numerous third party sources to recreate its works. Plaintiff failed fully to inform the Court of the limitations of its methods during its *ex parte* requests for early discovery. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery

133.143. Plaintiff, under Pelissier's knowing direction, waited almost two years from the latest date of first alleged infringement and forewent other methods of enforcement to file its Complaint with an IP address, knowing that crucial exonerating information regarding, for example, use of the IP address, or lack thereof, may be lost.

134.144. PlaintiffPlaintiff, under Pelissier's knowing direction and through her participation, also submitted outdated or sham affidavits in support of its motion to discover Defendant's identity. Plaintiff submitted the affidavit of Tobias Fieser, in which Mr. Fieser purports to testify about the specific IP address upon which Plaintiff sued Defendant. [Dkt. 5-1]. Yet Mr. Fieser's affidavit is dated and signed July 2015—two years before the first date Plaintiff alleges that Defendant infringed Plaintiff's copyrights. [Dkt. 1, Complaint Ex. B]. This sham affidavit underscores Plaintiff's abuse of process.

22

135.145. Plaintiff, under Pelissier's knowing direction, also submitted the affidavit of Patrick Paige in which he testified about Plaintiff's methods and technology for finding alleged infringers [Dkt. 5-1]. Yet the Paige affidavit was signed on August 19, 2016. The Paige affidavit is outdated and thus not credible, especially given the speed at which technology develops.

136.146. Finally, Plaintiff has argued in at least one prior case that "savvy" IT professionals are capable of hiding proof of infringement in similar cases on an ongoing basis despite similar alleged evidence already presented. This reinforces that Plaintiff understands itsand Pelissier understand Plaintiff's methodology is flawed.

147. Finally, Plaintiff and Pelissier have continued asserting a flawed infringement claim against Doe despite knowing they lack the capacity to maintain a lawsuit because of Plaintiff's suspended corporate status.

137.148. As shown in Paragraphs 114-119131, Plaintiff's and Pelissier's conduct during this litigation has shown a continued abuse of process, misusing this lawsuit as a tool to extract a settlement payment despite making no real attempt to make its infringement claim on anything other than evidence Plaintiff knowsand Pelissier know is faulty and cannot sustain a claim of copyright infringement.

138.149. As a direct and proximate result of Plaintiff's and Pelissier's conduct, Defendant has expended a significant amount of time and money in defending against these frivolous claims, and thereby suffered physical and mental stress, harm to his professional activities, harm to his reputation, and other injuries, damages, or losses in an amount to be determined at trial.

139.150. PlaintiffDoe is also entitled to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003 because he has suffered harm resulting from Plaintiff's and Pelissier's fraud, malice, and/or gross negligence.

140.151. For example without limitation, Plaintiff, under Pelissier's knowing direction and through her participation, sued Doe on evidence and methodologies Plaintiff has long known are faulty.

141.152. Yet Plaintiff, under Pelissier's knowing direction and through her participation, has continued to assert that faulty evidence and methodologies as the basis for its infringement case, and has made no effort to make its infringement claim otherwise.

142.153. This shows Plaintiff, through the knowing decision of Pelissier, has continued to assert a claim against Doe knowing there is an extreme risk—if not a certainty—that it has no basis to sue Doe. And it has done this with indifference to Doe's rights and wellbeing, and in fact has caused and continued to cause Doe harm because of this knowing disregard. This indifference is magnified by Plaintiff's failure to rebut Doe's expert and its continued assertion of its infringement claim against Doe's denial under penalty of perjury.

143.154. Plaintiff's and Pelissier's continued assertion of a faulty infringement claim—after several courts and Defendant have pointed out to Plaintiff and Pelissier that itsPlaintiff's IP-based evidence and methodologies are flawed—also shows intent to substantially harm Doe.

**COUNT THREE:**
**HARMFUL ACCESS BY COMPUTER, TEX. CIV. PRAC. & REM. CODE § 143**

144.155. Defendant realleges and reincorporates herein its responses to each of the preceding paragraphs as though fully set forth herein.

145.156. Plaintiff's allegations and affidavits filed in this matter show that under Pelissier's knowing direction, Plaintiff, either on its own or through its agent IPP and/or another agent, knowingly accessed a computer, computer network, or computer system owned by Defendant, without the effective consent of Defendant.

146.157. In so doing, Plaintiff and Pelissier sought to obtain a benefit or defraud or harm

24

Defendant.

147.158. In accessing Defendant's network without his consent, Plaintiff and Pelissier sought to gain information to advance its pattern of abusive and improper copyright enforcement, so that it could coerce the network owner into a monetary settlement to Plaintiff's benefit. Plaintiff did so despite knowing there was a strong likelihood that the network owner was not the actual possessor or distributor of any portion of Plaintiff's pornographic works.

148.159. In accessing Defendant's network without his consent, Plaintiff, under Pelissier's knowing direction, failed to correct or prevented the discovery of a false impression of fact that it knew was likely to affect the judgment of the person from whom data was accessed.

149.160. On information and belief, IPP, as Plaintiff's agent and at Plaintiff's request, sought to mask or obscure its identity on the BitTorrent network after users and groups determined that they did not want to interact with Plaintiff or its agents, or allow them to access their data. In addition, to the extent Plaintiff, IPP, or any other of Plaintiff's agents seeded the BitTorrent network or other third party networks directly or indirectly with Plaintiff's allegedly copyrighted works, Plaintiff further created false impressions of legality, induced behavior deceptively, and prevented Defendant and others from acquiring information likely to affect their judgment. The contentions in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery

150.161. As a direct and proximate result of Plaintiff's and Pelissier's conduct, Defendant suffered harm to his property, physical and mental stress, harm to his professional activities, harm to his reputation, and other injuries, damages, or losses in an amount to be determined at trial.

**JURY DEMAND**

151.162. Defendant demands a jury on all issues triable by jury.

25

## **PRAYER FOR RELIEF**

For these reasons, Plaintiff prays for judgment against Defendant as follows:

A.      Judgment denying Plaintiff any relief against Defendant and dismissing Plaintiff's claims with prejudice;

B.      Judgment for Defendant/Counterclaim Plaintiff in all of his counterclaims;

C.      A declaratory judgment that Defendant/Counterclaim Plaintiff is not liable for infringing Plaintiff's copyright;

D.      Awarding Defendant all damages that Defendant has sustained as a consequence of Plaintiff's and Pelissier's actions as alleged;

E.      Exemplary damages;

F.      Attorneys' fees;

G.      Costs and expenses;

G.H.    Injunctive remedies, including but not limiting to any remedy under Fed. R. Civ. P. 64 and authorizing Texas law to seize Plaintiff and Pelissier's property; and

H.I.    Such other and further relief as this Court may deem just and proper.

Dated: October 1, 2020March 19, 2021                   Respectfully submitted,

                                        /s/ JT Morris
                                        JT Morris
                                        Texas State Bar No. 24094444
                                        jt@jtmorrislaw.com

Ramzi Khazen
Texas State Bar No. 24040855
ramzi@jtmorrislaw.com
JT Morris Law, PLLC
1105 Nueces Street, Suite B
Austin, Texas 78701
Tel: 512-717-5275
Fax: 512-582-2948

Attorneys for Defendant John Doe