UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| Plaintiff, | ) Civil Action Case No.5:19-cv-00834-DAE |
| v. | ) |
| JOHN DOE, | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OPPOSED MOTION TO MODIFY THE SCHEDULING ORDER AND LEAVE TO FILE FIRST AMENDED ANSWER, SECOND AMENDED COUNTERCLAIMS, AND TO JOIN A COUNTERDEFENDANT**

Plaintiff, Malibu Media, LLC, by and through undersigned counsel, responds to Defendant's Motion to Modify the Scheduling Order and Leave to File First Amended Answer, Second Amended Counterclaims, and to Join a Counterdefendant [Dkt. 79] and states:

**I. INTRODUCTION**

Defendant continues to waste this Court's time along with vexatiously multiplying the proceedings based on an allegation of change in corporate status that the Fifth Circuit has held to be a "no harm, no foul" technicality. Specifically, Defendant seeks to amend the scheduling order to allow Defendant to file a First Amended Answer, Second Amended Counterclaim and to name Plaintiff's sole owner as a counter-defendant based solely on the fact that Plaintiff inadvertently missed a California Franchise Tax Board payment, which has resulted in Plaintiff being temporarily in a suspended status by the California Secretary of State. Defendant continues to make allegations of abuse of process after the substance of those claims have already been found by this Court not to rise to the level of sanctionable conduct. *See* Dkt. 73 Order Denying Motion

for Sanctions. In essence, Defendant is using a small, technical irregularity to attempt another bite at the abuse of process apple, to multiply the proceedings unnecessarily. Defendant has had his day in court with respect to alleged abuses of process. Defendant now alleges that he[1] discovered new facts in Plaintiff's corporate representative, Ms. Pelissier's, deposition that were previously unknown. These are not newly learned facts, but simply testimony elaborating on the information available to Defendant many months prior to the pleading deadline. Such tactics should not be permitted by this Court, are not grounded in facts or law, and thus, this Court should summarily deny Defendant's Motion.

## II. LEGAL STANDARDS

In order for Defendant to amend his counterclaim under Federal Rules of Civil Procedure Rule 15 (a)(2), Defendant must meet the requirements of Federal Rules of Civil Procedure Rule 16 (b)(4). Under Rule 16 (b)(4), a judge may only modify a scheduling order if the party seeking such modification is able to make a showing of "good cause." Good cause is demonstrated through a showing of "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Cole v. Sandel Medical Industries, L.L.C.*, 413 F. App'x. 683, 689 (5th Cir. 2011). If a movant is able to demonstrate such good cause, the Court can then apply the more liberal standard of Rule 15(a) to decide whether to grant leave to amend. *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535–36 (5th Cir. 2003).

---

[1] For purposes of this Response, Plaintiff will refer to the Defendant using the male pronouns without making any statement as to Defendant's gender.

Rule 15(a) of the Federal Rules of Civil Procedure provides that for amended pleadings, courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). Relevant factors to consider in deciding whether to permit amendment include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

**III. ANALYSIS**

    A. **Explanation for Failure to Previously Amend**

Defendant previously requested and was granted leave to amend his abuse of process counterclaim to include alleged conduct occurring during the course of the instant suit. (Dkt. 47). After filing a subsequent Motion for Sanctions surrounding these same facts, which was promptly denied by this Court, Defendant now wants a second opportunity to raise these issues to bolster his counterclaim as he now sees that his claim will fail. Despite the Scheduling Order's March 2, 2020 deadline for the parties to file all motions to amend or supplement pleadings or to join additional parties, Defendant waited over a year to seek to join an additional party and to further amend his pleadings. To do so, Defendant alleges that he just recently learned of Plaintiff's suspended status with the California Secretary of State such that amending the pleadings and joining an additional party is now appropriate. However, Defendant does not include any information as to why it just now sought to verify Plaintiff's corporate status or whether the corporate status has just recently changed. Indeed, other than stating that Malibu continued to operate its business, nothing in Ms. Pelissier's deposition shed any light on Plaintiff's corporate status. To be sure, Defendant's counsel did not ask whether Malibu Media, LLC was in good standing with the California Secretary of State or any other question directed to Plaintiff's status.

Good cause is demonstrated through a showing of "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *See Cole* at 689. Here, applying the standards and guidelines set forth in *Cole,* Defendant fails to demonstrate the existence of "good cause" because Defendant's explanation does not add up as he could have easily verified Plaintiff's corporate status months ago when he sought leave to amend originally.  Further, as stated above, Defendant's sole motivation in requesting leave to amend is to bolster his clearly deficient counterclaim for abuse of process through a thinly veiled need to prevent some unsupported claim that "Malibu is preparing to transfer its intellectual property and other assets." [Dkt. 79 p. 2].  Here, Plaintiff sought Defendant's consent to extend certain deadlines in the scheduling order [Dkt. 49], and the parties agreed to extend certain other deadlines in the scheduling order in November of 2020. [Dkt. 57]. Defendant could have sought an extension of the pleading deadline as well at this time.  However, Defendant opposed Plaintiff's motion and did not raise the need to amend the pleadings when the parties conferred on their joint motion to extend the scheduling order deadlines in November.  Only, now, when Defendant has seen that his abuse of process counterclaim is not likely to succeed, does he once again seek the ability to amend his claims.

Not only does Defendant's explanation not satisfy the first good cause standard, but the second and third factors as well, namely, the importance of the amendment and the potential prejudice in allowing the amendment.  Both factors cut against Defendant's argument.  Here, Defendant has already alleged an abuse of process claim.  As such, allowing him the opportunity to bolster this claim on a technicality and also make the identical allegation against Ms. Pelissier individually, is not important and is extremely prejudicial to Plaintiff. Indeed, Plaintiff would

suffer undue prejudice if the instant motion is granted as Plaintiff would incur additional costs and time in preparing an Amended Answer and Ms. Pelissier would need to retain personal counsel and start anew in her individual defense, all after the close of discovery.

Further, the Fifth Circuit views a litigant's corporate status as a non-issue provided the entity is reinstated. *See Baisden v. I'm Ready Prods., Inc.,* 693 F.3d 491, 507 (5th Cir. 2012). Here, Plaintiff avers it is currently working with the California Franchise Tax Board to verify the reason for the suspension and to immediately remedy same. Such a technicality should not give rise to good cause especially when a party's corporate charter and corporate privileges can be retroactively reinstated provided a corporation pays whatever taxes it owes, in which case "it is as though the forfeiture never existed." *Hinkle v. Adams,* 74 S.W.3d 189, 193–94 (Tex.App.—Texarkana 2002, no pet).

Defendant also relies on the interest of justice and judicial economy to justify the Defendant's need to again amend the counterclaim. However, incumbent upon the trial court is its duty to "preserve the integrity and purpose of the pretrial order" by only allowing amendments after the pleading deadline for good cause. *Hodges v. U.S.*, 597 F.2d 1014, 1017-18 (5th Cir. 1979); *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535-36 (5th Cir. 2003). As discussed above, good cause has not and cannot been shown by Defendant. Additionally, a scheduling order is designed to control the course of the litigation through effective pretrial procedures that promote judicial efficiency. *See Hodges* at 1017-18. Therefore, a party's request to modify the scheduling order after the pleading deadline must comply with Federal Rules of Civil Procedure Rule 16 (b)(4) and the current case law that interprets the meaning of "good cause." Defendant has failed to set forth an argument that rises to the level of "good cause" that meets the requirements of Federal Rules of Civil Procedure Rule 16 (b)(4) and applicable case

law. And, judicial efficiency will be significantly delayed if a wholly new party is added this late in the litigation.

Since Defendant has not demonstrated "good cause" to meet the requirements of Rule 16 (b), Plaintiff need not address the applicability of Rule 15 (a).

### B. California Revenue and Taxation Code Section 23301

The purpose of California Revenue and Taxation Code Section 23301 is to encourage the payment of taxes by corporations. *Peacock Hill Association v. Peacock Lagoon Construction Co.*, 105 Cal. Rptr. 29, 8 Cal. 3d 369, 371 (1972). For this reason, a suspended corporation can revive itself, i.e., return to its prior corporate status, by simply paying its back taxes and filing the appropriate paperwork. Further, once a corporation has been revived, its tax delinquencies, upon correction, are viewed as mere irregularities. *Id.* Moreover, if the corporation's status only comes to light during litigation, the normal practice is for the trial court to permit a short continuance to enable the suspended corporation to effect reinstatement (by paying back taxes, interest and penalties) to defend itself in court. *See*, e.g., *Schwartz v. Magyar House, Inc.* (1959) 168 Cal.App.2d 182, 190 [335 P.2d 487]. In each of the above cited cases it was held that the purpose of Section 23301 of the Revenue and Taxation Code is to put pressure on the delinquent corporation to pay its taxes, and that purpose is satisfied by a rule which views a corporation's tax delinquencies, after correction, as mere irregularities. Mere irregularities, which upon correction will allow Plaintiff to return to its prior corporate status, cannot be considered "good cause".

The final "good cause" factor as set forth in *Cole*, "the availability of a continuance", also cuts against Defendant's argument. *See S&W Enters.*, 315 F.3d 533, 536 (5th Cir. 2003). Indeed, California courts have clearly stated that if the entity's status only comes to light, as it has here, during the litigation, the preferred practice is for the trial court to permit a short continuance to

enable to suspended entity to effect its reinstatement. Plaintiff respectfully requests that this honorable Court follow the stated purpose of the Section 22301, and allow Plaintiff a short continuance to cure this unintentional deficiency.

## IV. CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff requests this Court deny Defendant's Opposed Motion to Modify the Scheduling Order and Leave to File First Amended Answer, Second Amended Counterclaims, and to Join a Counterdefendant [Dkt. 79] because the Defendant has failed to show "good cause" that would justify an amendment after the pleadings deadline and the basis for making the instant motion is a mere technicality that can easily and quickly be rectified.

Dated: March 26, 2021

Respectfully submitted,

By: /s/ Paul S. Beik
PAUL S. BEIK
Texas Bar No. 24054444
S.D. Tex. ID No. 642213
BEIK LAW FIRM, PLLC
8100 Washington Ave., Suite 1000
Houston, TX 77007
T: 713-869-6975
F: 713-868-2262
E-mail: paul@beiklaw.com
**ATTORNEY FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I hereby certify that, on March 26, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ Paul S. Beik
PAUL S. BEIK