```
                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF TEXAS
                       SAN ANTONIO DIVISION

MALIBU MEDIA, LLC,              :
Plaintiff,                      :
                                :
vs.                             : No. SA:19-CV-00834-DAE
                                : San Antonio, Texas
JOHN DOE,                       : May 4, 2021
Defendant.                      :
***********************************************************

              TRANSCRIPT OF MOTION HEARING
         BEFORE THE HONORABLE RICHARD B. FARRER
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:
FOR THE PLAINTIFF:
  Paul Stephen Beik, Esquire
  Beik Law Firm, P.L.L.C.
  8100 Washington Avenue, Suite 1000
  Houston, Texas   77007
  (713)869-6975; paul@beiklaw.com


FOR THE DEFENDANT:
  J.T. Morris, Esquire
  J.T. Morris Law PLLC
  1105 Nueces Street
  Austin, Texas   78701
  (512)717-5275; jt@jtmorrislaw.com




COURT RECORDER:   FTR Gold

TRANSCRIBER:
Angela M. Hailey, CSR, CRR, RPR, RMR
Official Court Reporter, U.S.D.C.
655 East Cesar E. Chavez Blvd., Third Floor
San Antonio, Texas   78206
Phone(210)244-5048;angela_hailey@txwd.uscourts.gov

Proceedings reported by electronic sound recording, transcript
produced by computer-aided transcription.
```

1    *(May 4, 2021, 2:31 p.m., Hearing via videoconference.)*

2                            \* \* \*

3              THE COURT:  Looks like we've got everybody, so why

4    don't we go ahead and go on the record, Amy, and I'll call the

5    case.  We can take up this motion that's been referred by Judge

6    Ezra.  So next up before the Court set for a hearing this

7    afternoon via Zoom is case number SA:19-CV-00834-DAE, Malibu

8    Media, LLC versus Doe.  I'll just leave it at that, the way the

9    case is styled.  Counsel, would you please introduce yourselves

10   for the record?

11             MR. MORRIS:  J.T. Morris for the movant and defendant,

12   John Doe.

13             MR. BEIK:  Paul Beik on behalf of non-movant, Malibu

14   Media, LLC.

15             THE COURT:  All right.  Good afternoon, gentlemen.

16   Good to see you again.  We're here, Mr. Morris, on defendant's

17   motion basically to modify the scheduling order in asking for

18   leave to file an amended answer to add some counterclaims and

19   join counter defendants.  So why don't I just check in with you

20   and I'll obviously give you each a few minutes here to outline

21   your arguments, but why don't we start with you.  I've, as

22   usual, read the papers and I'm familiar with the case.  You can

23   just touch on the highlights if you want or anything in

24   particular you'd like to stress, but with that I'll open it up

25   and I'll just sort of interrupt like I usually do with

1  questions.
2           MR. MORRIS:  Thank you, Your Honor.  So we're here
3  because in early March we discovered that Malibu's corporate
4  status is suspended in California.  The state of its
5  incorporation under California law a corporation cannot
6  maintain or defend a lawsuit while it's suspended.  So we filed
7  just a notice with the Court alerting the Court and Malibu to
8  that.  Right after we discovered that, Malibu didn't fix its
9  suspended status, so we filed a motion to do briefings, one, to
10 protect John Doe's ability to get relief on his counterclaims
11 and his request for attorneys fees under the Copyright Act;
12 two, is to preserve his right to have the jury hear about
13 Malibu maintaining its infringement claim while it's under
14 suspended status; and three, to ensure an efficient outcome, so
15 we're not back here in case Malibu goes defunct suing Ms.
16 Pelissier for abuse of process and those other counterclaims.
17 And I checked this afternoon, Your Honor, Malibu is still
18 suspended.  They haven't fixed it yet.  So that's really why
19 we're here today.
20          In Malibu's brief, they act like this isn't a big
21 deal, it's a mere technicality.  That's not true.  What they're
22 asking for is critical to a just resolution, it's one of those
23 good cause factors.  So first again Doe has to have an
24 opportunity to preserve his right to talk about this suspended
25 status as part of his abuse of process counterclaim at trial.

1  His abuse of process counterclaim initially was based on Malibu
2  suing him on evidence and using investigative methods it knows
3  is flawed.
4          Now, back in early October we asked the Court to amend
5  that abuse of process counterclaim to include Malibu's
6  essentially apathy towards developing this claim discovery
7  which Judge Ezra granted.  But now in March since we learned
8  this new information that Malibu is litigating this case while
9  suspended, Doe believes he should have a chance to present that
10 to the jury of his abuse of process counterclaim.
11         THE COURT:  So when did the deadline under the
12 scheduling order lapse for this request?  Because we're outside
13 the scheduling order deadline, right?  And I think everybody
14 agrees we're sort of under Rule 16 and then Rule 15.  If not,
15 speak up.  That's the framework I'm operating under.  So just
16 to confirm that we're under 16, just remind me when the
17 deadline in the scheduling order lapsed for amending?
18         MR. MORRIS:  Your Honor, I would have to go back and
19 check the scheduling order.  I do know -- I believe it was
20 either April or May of 2020.  We then asked for leave to amend
21 to include the -- that Malibu wasn't taking its case seriously
22 as part of the abuse of process claims and had exemplary
23 damages for support granted, so it would have shifted the
24 amend -- that deadline to early October and now so we're asking
25 for it again.

1      THE COURT:  And at that point in time, you were kind
2  of let's say, you know, turning your sights, so to speak, onto
3  plaintiff, right?  And sort of, for lack of a better word or
4  phrase, fighting back looking to assert some claims in your own
5  right and so at that point in time, weren't you under some
6  obligation to sort of investigate and assert these matters
7  then?  I mean, I know you were saying you only discovered in
8  March that this corporate certificate had lapsed, but did you
9  inquire back then?
10     MR. MORRIS:  I want to step back to one thing you
11 said, Your Honor, I just want to clarify the record.  We didn't
12 assert the counterclaim in October.  We asserted that in our
13 initial responsive pleading.
14     THE COURT:  Okay.  Thank you.
15     MR. MORRIS:  So that was back in I believe either
16 February or March.  And then Malibu moved to dismiss it, which
17 Judge Ezra denied.  So that abuse of process counterclaim has
18 been in since Doe answered the --
19     THE COURT:  Mr. Morris, does that timeline help you?
20 If you'd had this counterclaim on the books for going way back
21 and only now sort of belatedly in March you've discovered this
22 pretty easy thing to discover by looking on the Internet,
23 right, and I get it that you have new concern about perhaps
24 being able to recover affirmatively from, you know, on some
25 judgment you might obtain, but isn't that the kind of thing

1   that somebody asserting claims would do at the time that they
2   assert them or even later on when they add some more factual
3   detail to them several months later?
4           MR. MORRIS:  It certainly is and I represent to the
5   Court we certainly checked that when we initially filed the
6   counterclaim in April.  We didn't check it in October.  And
7   shortly after, Ms. Pelissier in her deposition affirmed that
8   Malibu Media is still operating.  I do regularly and every six
9   to eight months check the corporate statuses of opposing
10  counsel and my own clients in cases I'm litigating and we
11  happened to discover this during that check in early March of
12  this year.  So to answer your question, I don't think we had
13  any reason to doubt Malibu being -- having legal capacity and
14  not being suspended before March and certainly not around the
15  time we asked to amend the first time because Ms. Pelissier
16  said they were operating.
17          THE COURT:  And I think I recall from reading in the
18  papers that you all felt like the -- there's some uncertainty
19  about when this certificate or whatever it is lapsed, but you
20  all felt at least from your perspective, Mr. Morris felt that
21  it happened sometime after you spoke with Ms. Pelissier, I
22  believe.  Is that right?  So it's sometime after October, but
23  before March?
24          MR. MORRIS:  That's correct, Your Honor.  The problem
25  is when you go on the Secretary of State's website it doesn't

1  tell you when the suspension happened.  Malibu hasn't told us
2  when that's happened.  I know Malibu suggested in their brief
3  that, well, we should have asked to amend back in October, but
4  I don't think that's an admission they want to make that
5  they've been operating in their suspended status since then,
6  because it only deepens the concerns about abuse of process and
7  the need to add those allegations in at this point, Your Honor.
8  So I think the timeline is favorable to us here or at least
9  supports a good cause to amend.  There was just no reason we
10 needed to or suspected that Malibu was operating in anything
11 other than in good standing in California until we discovered
12 this in early March.
13         THE COURT:  But that's the only reason that you're
14 seeking to take the step now is to sort of take what you
15 perceive as reasonable steps to preserve your ability to
16 recover on a remedy you might obtain in a judgment.  Right?
17 That's it.  So if they were still in good standing or cured
18 their standing, then there wouldn't be any need to pursue the
19 current motion?
20         MR. MORRIS:  Had we not discovered this, then we would
21 not be here today, I don't think, but let me address the cure
22 issue.  Even if Malibu cures it, I state the fact that we've
23 been almost two months without them curing this suspension that
24 they color as a mere technicality speaks volumes about why
25 these amendments are necessary.  Even if they cure it, Doe

1  should still be able to present evidence of this to the jury on
2  his abuse of process claim so we add these allegations in.
3  It's more evidence that Malibu is misusing this litigation to
4  essentially extract harm on Doe.  And as far as adding
5  Ms. Pelissier, yes, it is there to ensure that Doe has complete
6  relief, but again we're almost two months out now since we
7  filed notice of the suspended status.  Malibu is still
8  suspended.  That raises a huge red flag for Doe.  He should
9  have the right to protect his ability not only to recover
10 damages, but to recover his attorneys fees.  That's why we've
11 also asked the Court for leave to amend to include a claim for
12 injunctive relief so Doe can go and seek relief under Rule 64
13 against a prejudgement bond or other relief that will allow him
14 to essentially secure his right to recover attorneys fees if
15 and when he wins on the infringement claim.
16         THE COURT:  Okay.  Well, let's check in with Mr. Beik
17 and see what he has to say.  I'll check back in with you,
18 Mr. Morris, just to give you a chance to respond as well.
19 Mr. Beik, what's your response?
20         MR. BEIK:  Thank you, Your Honor.  Essentially this is
21 an unfortunate issue that does happen and it happens and the
22 issue has been raised, it's been brought in many cases in
23 various states throughout the country.  Obviously when a
24 technicality, which is exactly what it is, a corporate
25 franchise tax paper, the one piece of paper that gets

1    submitted, but in this case it's not one piece of paper it's an
2    actual franchise tax return which is the reason for the delay
3    is it was unknown to Malibu that this had not been filed by the
4    CPA and so that's the reason.  It has absolutely nothing to do
5    with an abuse of process claim.  This is a corporate
6    technicality which the law recognizes as such.  As cited in our
7    brief, both the Fifth Circuit and California both essentially
8    treat it as a no-harm-no-foul issue.  I can't make the
9    connection to an abuse of process allegation.  In light of
10   being a corporate technicality, the Fifth Circuit has
11   acknowledged once it's cured it's as if it never happened, the
12   corporation or LLC or the entity is reinstated and it's as if
13   it didn't happen, so I don't see the relevance in that regard.
14   I think it would be -- sorry, yes.
15            THE COURT:  Do you know what the status is of this
16   return?  Has it been submitted?  Are you waiting for it to be
17   processed?  Is it still being prepared?  Do you have any
18   information on that that you can share with us?
19            MR. BEIK:  Yes, Your Honor, I spoke with the corporate
20   attorney yesterday who informed me that since -- there is an
21   issue with California obviously with the issues with COVID and
22   everything else, but they had a long time trying to get in
23   touch to find out what the problem was.  Malibu didn't know
24   what the problem was.  There was a number of things they were
25   speculating that it could be, but they just weren't aware

1  because they were under the impression that the CPA had done
2  what was needed to be done and there wasn't any money owed or
3  any of these things.  But the current status is that the CPA
4  has inquired, has figured out what the problem is, but again
5  it's not an issue that you just snap your fingers, because it
6  does involve a tax return, so it has to be processed and done
7  accurately and that's what they're in the process of doing.
8           And just to make the Court aware as well, this issue
9  in a completely unrelated case on a different affair that's
10 going on in California, this issue was raised about the same
11 time that Mr. Morris raised it and essentially the judge had a
12 hearing on that case, I believe it was last week, and followed
13 the -- I was told by the corporate lawyer yesterday that the
14 judge followed the standard that was set forth on a brief under
15 the Taxation Code, Section 22301.  When this issue comes up in
16 litigation it's customary to permit a short continuance to
17 enable the issue to be fixed, essentially the technicality to
18 be fixed and then it's just like the Fifth Circuit said, it
19 goes back to as if it didn't happen.  And so again, it's an
20 administrative housekeeping issue, not minimizing the fact
21 that -- I'm not trying to say that -- of course, we don't want
22 these things to happen, this isn't supposed to happen.  That's
23 one of the reasons that there is a systemic status is because
24 the Tax Boards and the Secretaries of States and so forth in
25 states want companies to file these.

1              In Texas we have our public information report that
2    you file every year.  You have penalties if you don't file it,
3    but the penalty is essentially submit the paper and then it's
4    over.  So that's the current status, Your Honor.
5              THE COURT:  Do you know how long it's going to take to
6    get this wrapped up?
7              MR. BEIK:  Your Honor, I don't know the answer to
8    that.  I asked that question of the corporate lawyer yesterday
9    and he told me that the judge in California gave 45 days and
10   essentially if we've done everything that we can do, if the CPA
11   has done everything that they can do and it's still not
12   completed by the end of that period, then go back and detail
13   for the judge what they've done to make sure that they're
14   actively doing everything they can do in order to get it taken
15   care of as fast as possible.
16             THE COURT:  Okay.  And we've got a couple of
17   dispositive motions I think pending.  Let me remind myself.
18   Yeah, from December and that's it.  Any other outstanding
19   deadlines?  You all are just waiting for a date, is that right?
20             MR. BEIK:  Yes, Your Honor, dispositive motions, cross
21   motions for summary judgment have been fully briefed and I
22   believe they've been pending for over three months, almost four
23   months now, so we would expect a ruling any day now, I would
24   think.  And now I believe the Court will then, depending on I
25   guess the outcome of those motions and so forth, will then I

1   guess give us a trial date and schedule as appropriate.
2           THE COURT:  Okay.  And is that a jury trial?
3           MR. BEIK:  Yes, Your Honor.
4           THE COURT:  Okay.  And does the pendency of this
5   corporate status or whatever we're calling it, does that in any
6   way affect the pending summary judgment arguments or briefing
7   or is it -- I guess your position pretty consistently has been
8   this is kind of a technicality, is that an accurate summary of
9   your position with respect to whether -- in other words, it
10  wouldn't be any issues Judge Ezra ruling at any time if this
11  issue is still pending or dangling out there?
12          MR. BEIK:  Yes, Your Honor, that's my position.
13  Essentially even if you got a judgment against a LLC that went
14  defunct or was essentially dead even after the judgment, the
15  remedy would be to, of course, go after the principals to the
16  extent they could, but there's actually a whole bunch of law on
17  the fact that if the entity was in place at the time that any
18  of the alleged allegations took place, then you can't even
19  necessarily go after that.  But in any event, the answer to
20  your question is no, from plaintiff's perspective the pending
21  status would not affect the Court's ruling on a summary
22  judgment motion in any way.
23          THE COURT:  Okay.  Anything else you want to
24  highlight?
25          MR. BEIK:  I'm sorry, Your Honor, was that directed to

1  me?
2          THE COURT: Yes, it was. Sorry. Anything else you
3  want to make sure you stress or emphasize or highlight?
4          MR. BEIK: Yes, Your Honor. Again just going back to
5  the good cause factors from Cole, just the explanation for the
6  failure to timely move, again it's one of those -- I appreciate
7  the fact that counsel and his client routinely would check, but
8  again the deadline to amend, I believe you asked for the date
9  earlier, it was March 2nd, 2020 is what I have written down.
10 And then that's a really long time.
11         Also in terms of the factor in terms of the importance
12 of the amendment, I think I've already made myself clear in the
13 sense that it's completely unrelated to the abuse of process
14 claim, but even if it was, this isn't to add a claim, this is
15 basically just to for the second time add additional
16 allegations and so that's essentially the importance is
17 minimal, but obviously the prejudice would be so high for my
18 client because Ms. Pelissier would have to get an additional
19 lawyer, there would be all kinds of issues that would go into
20 that. And again this is something that in a post judgment
21 situation if nothing was cured, I could see how there would be
22 arguments for that, but in this instance where the Fifth
23 Circuit is so clear that this just clearly goes back to where
24 it is, I can't see how you can show good cause in support of
25 amendment a year and a half, over a year after the initial

1   deadline had passed.
2           THE COURT:  Okay.  And do you have any information
3   about when this good standing or registration or whatever it is
4   might have lapsed?  Do you know what the timing is just as a
5   result of your conversations with the accounting folks?
6           MR. BEIK:  The accounting folks have informed me that
7   everything was done properly in 2018, so apparently this would
8   be -- the failure to do something would have taken place likely
9   in 2019, so it wouldn't have been until 2020 where there's
10  suspended status.  Again I'm not a California lawyer -- I'm not
11  a corporate lawyer, I can't represent on what the correct
12  language is for this, but at least in Texas there's a
13  difference between forfeited and suspended.  So my
14  understanding from that would be that this is actually not even
15  the point where something has been forfeited, but again I can't
16  represent to that because I don't practice law in California.
17  But the best answer I have is that this apparently stems from a
18  2019 filing that had not been completed and so likely the
19  timeline for that would have been sometime in 2020.
20          THE COURT:  Okay.  And you found out about this as a
21  result of the notice that was filed on the docket or did you
22  all know about it beforehand?
23          MR. BEIK:  Yes, we found out about it from the notice
24  on the docket, Your Honor.
25          THE COURT:  Okay.  All right.  Anything else?  From

1  you, Mr. Beik?
2      MR. BEIK:  I believe that's everything for now, Your
3  Honor.
4      THE COURT:  Let's check back in with Mr. Morris, give
5  him a chance to respond.  So yeah, so anything in response to
6  all of that, sir?
7      MR. MORRIS:  Yes, Judge Farrer, let me start first
8  with, look, doesn't matter what I think or Mr. Beik thinks
9  about how this relates to abuse of process, it's a question for
10 the jury.  If this was the first instance of Malibu showing
11 apathy in this case, maybe it wouldn't be a big deal, but we
12 have Malibu, as we said in our summary judgment motion,
13 prosecuting this case on no evidence, we have them missing the
14 answer deadline to Doe's abuse of process counterclaim the
15 first time around.  We had it come in at the last minute asking
16 to extend discovery by three months, which Your Honor denied.
17 And now we have it continuing to prosecute a case when it's
18 been legally unable to under California law for months.  That's
19 a question for the jury and Doe should have the right to
20 present that to the jury at trial.  That's why we're asking to
21 include the allegations in the abuse of process counterclaim so
22 we're not at pretrial arguing about whether or not this
23 evidence is going to come in.  We make it very clear, make a
24 very efficient ruling here so Doe can do that.  It's not a
25 no-harm-no-foul issue for those same reasons.  There is serious

1  prejudice to Doe going on in this case.  Doe wanted to come
2  here today and tell the judge about it himself, but obviously
3  he didn't because he's still trying to maintain his anonymity.
4  I have a statement from him about the prejudice he's suffering
5  if Your Honor would like to read it, I know it's a little
6  unorthodox, but I'm happy to share it with the Court, but it is
7  very prejudicial to him.  And we have now again this pattern of
8  Malibu being at best apathetic throughout this case.  Again
9  that's a serious red flag.  He should be able to amend now on
10 something he had no reason to discover until March and was
11 diligent in doing it.  Again, we regularly check for these kind
12 of things.  It didn't show up until March, so at that point
13 when that new evidence comes in, there's good cause to amend,
14 particularly again given the importance of these allegations to
15 his abuse of process counterclaim, given the importance of
16 injunctive relief necessary to Rule 64 to secure his right to
17 recover fees and damages.  And again, Ms. Pelissier is one and
18 the same as Malibu.  There's very little prejudice to her here.
19 She's been deposed, every decision she makes is that of Malibu
20 and vice versa.  This isn't a situation where you have multiple
21 corporate officers, it's a single member LLC, she's one and the
22 same, so adding her at this point, the prejudice to her is very
23 minimal particularly compared to the prejudice against Doe if
24 he's not able to, one, preserve his right to present this
25 suspended status evidence to the jury and, two, preserve his

1   right to recover should Malibu go defunct.  And I would agree
2   with Mr. Beik, I do not think it affects the pending summary
3   judgment motions.  Those have been briefed, all the evidence in
4   there is everything, you know, we need.  Malibu has moved for
5   summary judgment against the abuse of process counterclaim.  We
6   feel the evidence we have there is certainly enough to defeat
7   that and show a material issue of fact, but again it's
8   preserving Doe's right to present this evidence to the jury and
9   do so in an efficient way so we're not arguing about it at
10  pretrial whether or not Malibu's suspended status is proper
11  before the jury on this abuse of process counterclaim.
12          THE COURT:  Okay.  And at this point, Mr. Morris you
13  all obviously you don't have a date because the dispositive
14  motions are still pending and typically that wouldn't come
15  until after that.  Okay.
16          Well, here is what I think we're going to do, I'm
17  going to deny the motion at this time.  I think we're in a bit
18  of an awkward posture, maybe this is because of COVID where
19  we're sort of done and ready to put the cake in the oven here,
20  but because of COVID we've got a little bit of time to wait for
21  an oven to free up and so we're kind of in a holding pattern
22  here which means that there might be some time where the case
23  isn't going to further develop in terms of baking, getting to
24  being done, but all the preparations are done.  You know, I
25  don't want to encourage further activity in the case that may

1  not be necessary.  At the same time I think there could be
2  information developed over the short term that might inform
3  some of the arguments that have been made here and I think we
4  have the -- maybe it's just a happenstance or an odd
5  circumstance, but we probably have the time to figure it out,
6  so if there's been 45 days given in California, you know, I
7  think 45 or 60 days is probably a pretty appropriate time to
8  sort of take a look at these matters and see if there's been
9  any development.  Over that time, there could be rulings on the
10 dispositive motions that might inform these issues.  There also
11 could be progress made in California with respect to
12 submissions to them or updates, you know, along those lines.
13 And so I'll deny the motion at this time Mr. Morris, but it's
14 certainly without prejudice to reurging after an appropriate
15 amount of time has expired if there are developments or lack
16 thereof in the next 45 or 60 days that might inform a
17 resubmission.  Let's just kind of see what happens and what
18 develops over time given that we have a little bit of time now.
19 Okay?  That's what we'll do.
20         I'll issue a brief written order that summarizes it.
21 Again the short and sweet summary is that it's denied without
22 prejudice effectively and sort of my rough guideline is not to
23 reurge the motion for another 60 days or so, but you know,
24 that's just my rough guidance that I won't consider anybody in
25 violation of a court order if they do otherwise, but if within

1  60 days there's been a cure, then, you know, a cure to the
2  underlying issue, then that may allow you all to resolve
3  whatever remaining dispute there is, that may allow you all to
4  resolve it by conferring or just maybe not reurging the motion.
5  I think the relief requested is significantly undermined if
6  this issue is resolved with the California franchise tax folks,
7  but you know, I'm leaving open that space and possibility in
8  recognition of some of your arguments, Mr. Morris, that maybe
9  it won't be resolved.  Okay.  So let's just take a look at it
10 then and I'll be available if Judge Ezra -- if more boils up in
11 the case, I'll be available if Judge Ezra wants to send it my
12 way to assist you all.  And if not, I'm very confident he'll be
13 able to assist you in getting you all to the finish line.  And
14 like I said, perhaps there will even be a ruling on dispositive
15 motions between now and then and that may obviate the need to
16 take up these issues further or it may bring them into sharper
17 focus.  Okay?  That's what we'll do.  Again I'll issue a brief
18 written order just to sum it up.  That's all I have.  Thank you
19 so much for your thoughtful arguments.  Appreciate having y'all
20 in court.
21          MR. BEIK:  Thank you, Your Honor.
22          THE COURT:  We'll be in recess.
23     *(3:00 p.m.)*
24                            *   *   *
25

1                    * * * * *

2            I certify that the foregoing is a correct transcript

3    from the electronic sound recording of the proceedings in the

4    above-entitled matter.

5            I further certify that the transcript fees and format

6    comply with those prescribed by the Court and the Judicial

7    Conference of the United States.

10   Date:  June 22, 2021

12    /s/ Angela M. Hailey
     _____
13   United States Court Reporter
     655 East Cesar E. Chavez Blvd., Third Floor
14   San Antonio, Texas  78206
     (210)244-5048