UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN DOE,<br><br>Defendant. | CIVIL ACTION NO.  5-19-CV-00834-DAE |

**JOHN DOE'S MOTION FOR A PRELIMINARY INJUNCTION TO FREEZE ASSETS**

Defendant John Doe moves under Fed. R. Civ. P. 65 for a preliminary injunction barring Malibu from transferring or encumbering certain funds and assert to protect Doe's likely award of attorney's fees and costs, including (a) any subscription fees from x-art.com; (b) any copyright settlement proceeds; (c) the rights to any copyrights, including the copyrights-in-suit, and (d) the rights to any revenue-generating domain, including x-art.com.

The Court should grant this preliminary injunction for these reasons:

1. Doe has already shown a likelihood of succeeding on the copyright claims Malibu insists on pushing despite having no supporting evidence. And so he is also likely to succeed on a petition for an award attorney's fees and costs under the Copyright Act.

2. Absent injunctive relief, Doe will suffer irreparable harm. He has incurred over $80,000.00 dollars in attorney's fees and costs defending himself. And the evidence shows Malibu and its single member, Colette Pelissier, have a history of obscuring assets and ignoring judgments.

3. The balance of the equities favors an injunction, which will serve the public interest by ensuring that innocent copyright infringement defendants can recover attorney's fees for defending baseless infringement claims. And by contrast, Malibu will not suffer any harm from merely

having to retain certain funds and assets.

I. **The evidence shows Malibu and Pelissier are likely to hide away assets and ignore any money judgment.**

This case turns largely on Malibu suing Doe on what it knew was flawed evidence, as Doe shows in his summary judgment briefing. [Dkt. 59 pp. 2-3, 4-6; Dkt. 62 pp. 7-8].

*Malibu is a pass-through entity for Pelissier's personal enrichment.*

All along, Pelissier has been responsible for Malibu's endless filing of copyright infringement lawsuits. [Dkt. 66-1 p. 11 Tr. 11:2-9 and p. 109. Tr. 27:17-22; Dkt. 5 Ex A, Decl. of Pelissier ¶¶ 3, 12-13, 20-24]. Pelissier created Malibu and runs it. [Dkt. 66-1 p. 11 Tr. 11:2-9 and p. 109. Tr. 27:17-22]. And she directs Malibu's copyright litigation efforts. [Dkt. 5 Ex A, Decl. of Pelissier ¶¶ 3, 12-13, 20-24].

So too does Pelissier treat Malibu as a pass-through entity. In fact, she admitted it in a declaration from a breach of contract lawsuit:

> companies, Malibu Media and Colette Productions are pass-through or "disregarded entities" who do not file their own tax returns. There are therefore no corporate tax

[Ex. A, J. Morris Decl., at 167 (Ex. N)] (highlighting in original).

And even though Malibu does business as "X-art.com" and offers its pornographic films over which it claims copyright on www.x-art.com [Dkt. 1 ¶ 8; Dkt. 5, Ex. A (C. Pelisser Decl.) ¶¶ 3-9], current payments for subscriptions to the x-art.com do not go to Malibu. By contrast, the subscription page for x-art.com shows that current payments go to Brigham Field, Pelissier's husband, through payment processor CCBill. [Morris Decl. Ex. J.] And a prior version of the page suggests payments even went to Zo Digital LLC, one of Pelissier's many other LLCs, through a different payment processor, Epoch. [*Id.*, Ex. O at 269, 272-73.] This all questions Pelissier's deposition testimony insisting that "everything is going to be funneled into Malibu Media…" [Ex.

B, Dep. of C. Pelissier Tr. 14:2-3].

### *Pelissier has many more LLCs she uses to conceal and mingle funds.*

Funneling Malibu subscription revenue to Zo Digital is only the start. Pelissier is the sole member or manager for at least seven other California and Nevada LLCs. [Morris Decl. Exs. A-I.] And there is Pelissier's testimony and other credible evidence from California cases showing that Pelissier not only mingles LLC funds with personal funds, but also transfers money to and from LLC accounts for personal expenses. [Morris Decl. 44-46 (Ex. K at ¶¶ 11-17); 150-152 (Ex. N at ¶¶ 3-10)].

### *Pelissier has a history of ignoring judgments and other obligations.*

A California judge recently held Pelissier in contempt after she repeatedly disregarded her obligations in post-judgment discovery—even after the judge ordered her to produce financial information and sanctioned her over $18,000. [Morris Decl. Ex. L.] And the evidence also suggests Pelissier and her husband have satisfied no judgment on their own:

> 8. I represent clients in other litigation with Colette Pelissier in which monetary sanctions and/or attorney fees have been awarded against her, Brigham Field, and their counsel of record, Murphy Rosen LLP. Of the numerous awards against them in favor of my clients, only those awards that were ordered to be paid jointly and severally by Murphy Rosen LLP have been satisfied, to date.

[*Id.* 269 ¶ 8]. These track Malibu's former counsel suing it for unpaid fees. [*Id.* Ex. P]. And of course, Malibu failed to produce several key documents here, including communications with its infringement consultant. [*See* Dkt. 61, 76].

### *Malibu and Pelissier have several significant judgment debts.*

Pelissier has a significant judgment against her in California, and Malibu has (at least) two fees award judgments against it from other copyright infringement lawsuits. [Morris Decl. 31, 147-48, 314-16, 319]. In addition, Collette's husband filed for bankruptcy in 2020. *See In re Brigham*

*G. Field,* Case No. 9:20-bk-10622-DS (C.D. Cal. Br.).

## II. Legal standard for an injunction.

A plaintiff seeking an injunction must show four things: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

## III. A Rule 65 injunction is appropriate because attorney's fees are equitable relief.

Even though "an injunction is not permissible to secure post-judgment legal relief in the form of damages," the law "*does* allow [a] district court to exercise its equitable powers in ordering a preliminary injunction to secure an equitable remedy." *Fed. Sav. & Loan Ins. Corp. v. Dixon,* 835 F.2d 554, 560 (5th Cir. 1987) (emphasis in original); *see also Echavarria v. Am. Valet Parking Mgmt.*, No. 14-80770-CIV, 2015 U.S. Dist. LEXIS 187381, at *3-4 (S.D. Fla. June 16, 2015) ("The Court has the authority to freeze a defendant's assets in anticipation of a possible future award of attorneys' fees.") (citations omitted). These equitable remedies include attorney fee and cost awards like those under the Copyright Act and other federal intellectual property laws. *E.g.*, *CBS Broad. Inc. v. PrimeTime 24 J.V.*, CASE NO. 96-3650-CIV-NESBITT, 1999 U.S. Dist. LEXIS 6515, at *5-7 (S.D. Fla. Feb. 18, 1999) (explaining why Copyright Act fee awards are an equitable remedy); *AIA Am., Inc. v. AVID Radiopharmaceuticals*, 866 F.3d 1369, 1373 (Fed. Cir. 2017) (holding a fee award under federal patent law is an equitable remedy); *Schroeder v. Lotito*, 747 F.2d 801, 802 (1st Cir. 1984) (holding a fee award under the Lanham Act is an equitable remedy); *see generally Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 164 (1939) (Allowance of "counsel fees and other expenses entailed by the litigation not included in the ordinary taxable

costs recognized by statute . . . in appropriate situations is part of the historic equity jurisdiction of the federal courts.")

And so a court may enter an injunction freezing one party's assets to secure the other party's right to a fee award under the Copyright Act. *CBS Inc. v. PrimeTime 24 Joint Venture*, CASE NO. 96-3650, 1999 U.S. Dist. LEXIS 651 (S.D. Fla., Feb. 19, 1999), vacated and remanded on other grounds by *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217 (11th Cir. 2001). Above all, an asset freeze injunction is particularly apt when the evidence shows that the fee debtor is likely to transfer or encumber assets that would otherwise pay the fee award. *Id.* at *11-12

### IV. Doe is likely to succeed on the merits.

Doe proves in his summary judgment motion that Malibu has no evidence to create a fact question over non-infringement. [Dkt. 59 4-7, 8-10]. Simply put, Malibu has nothing showing Doe downloaded or even accessed any of Malibu's films over BitTorrent. *Id.* And so Doe is likely to prevail on both Malibu's copyright infringement claim and his non-infringement declaratory judgment counterclaim.

That is why Doe is also likely to win an award for prevailing party attorney's fees and full costs under 17 U.S.C. § 505. Though Malibu may argue fees and awards under § 505 are not automatic, an award of attorney's fees in copyright cases "is the rule rather than the exception and should be awarded routinely." *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 380 (5th Cir. 2004). Even more, the applicable *Fogerty* factors favor a significant attorney's fees and costs award to Doe. *Fogerty v. Fantasy*, 510 U.S. 517, 534 n. 19 (1994).

These factors include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* As Doe has shown, Malibu sued Doe on

evidence Malibu knew was flawed. [Dkt. 59 pp. 2-3, 4-6; Dkt. 62 pp. 7-8]. And then it made no effort to develop its evidence or claims through fact or expert discovery—even though Malibu knew it needed expert testimony to prove BitTorrent copyright infringement. [*E.g.*, Dkt. 62 3-4, 9]. Nor did it turn over key discovery about IPP, the consultant Malibu used to generate the evidence on which Malibu sues Doe defendants.

These faults with Malibu's evidence and litigation conduct reveal a frivolous lawsuit lacking any objective reasonableness. So too does Malibu's failure to cooperate in discovery while making no effort to develop its claims show why a fee award fits the deterrence factor. Thus, a fee award is justified here. *E.g.*, *Malibu Media, LLC v. Mullins*, No. 18-cv-06447, 2021 U.S. Dist. LEXIS 6560, at *14-16 (N.D. Ill. Jan. 13, 2021)(awarding defendant §505 attorney's fees against Malibu, having "significant reservations about the frivolous and reasonable nature of Malibu's infringement claim.").

What is more, Doe gave Malibu an opportunity for a walkaway settlement soon after Malibu sued Doe. [Morris Decl. Ex. S.] And Doe warned Malibu that he would seek fees and costs should Malibu not accept. *Id*. But Malibu chose to press its infringement claim to Doe's financial burden. That is why compensation factor also favors a fee award.

In the end, Doe is likely to succeed on the merits and his request for fees and costs. This is one reason to grant Doe's requested injunction.

**V.    Doe will suffer irreparable harm without the requested injunction.**

To date, Doe has paid $67,465.00 in attorney's fees. [Morris Decl. ¶25]. That is sizable by any measure, let alone for an individual. [Ex. C, Decl. of John Doe.] And it does not account for the $13,143.28 more in taxable and non-taxable transcript and expert fees Doe has incurred. [Morris Decl. ¶ 26.]

In short, Doe has a right to seek a significant fee award. But the evidence shows Malibu both (a) will not obey any fee award judgment and (b) will disperse and move revenue and assets that would otherwise go toward paying the fee award. Consider the following:

1. Pelissier has testified that Malibu is merely a "pass-through" asset; [Morris Decl. at 167 (Ex. N)];

2. Subscription payments for x-art.com—the website hosting Malibu's adult films—appears to go directly to Pelissier's husband Brigham Field or another Pelissier LLC, Zo Digital [*Id.* Ex. J; Ex. O at 269, 272-73];

3. Pelissier has let Malibu and her other LLCs go into suspended status [*Id.* Exs A-I];

4. Yet Pelissier takes funds from these LLCs to cover her personal expenses [*Id.* 44-46 (Ex. K at ¶¶ 11-17); 150-152 (Ex. N at ¶¶ 3-10)].

5. Pelissier has a history of flouting court orders and rules, spurring one judge to hold her in contempt [*Id.* Ex. L];

6. Malibu and Pelissier have several other judgments against them [*Id.* 31, 147-48, 314-16, 319]; and

7. Field recently filed for bankruptcy. *See In re Brigham G. Field,* Case No. 9:20-bk-10622-DS (C.D. Cal. Br.).

All in all, this evidence reveals a sizeable and imminent risk that Malibu will not pay any fee award to Doe, that Pelissier will conceal or move Malibu's assets, or both. *See CBS Inc.,* 1999 U.S. Dist. LEXIS 651 at *11-12 (finding asset freeze necessary where the fee debtor had a "practice of quickly distributing profits to its four partners."); *Echavarria,* 2015 U.S. Dist. LEXIS 187381, at *4 (granting asset freeze injunction where likely fee debtor had flouted prior court orders). Malibu skirting any fee and cost award owed to Doe would cause Doe irreparable harm to

his finances and his health. [Doe Decl. ¶¶ 7-9.]

Lastly, there is no other adequate remedy for Doe to secure a fee award. Prejudgment attachment or similar relief is unavailable under Rule 64 because to Doe's knowledge, Malibu has no assets in Texas. Fed. R. Civ. P. 64 (limiting its remedies to "that, available under the law of the state where the court is located.") And given the large personal judgments facing Pelissier, there is a real risk that she will raid Malibu's assets to either satisfy that judgment or conceal assets in another LLC—as the evidence reveals she has done before.

## VI. The public interest and balance of equities favor the injunction.

An asset freeze will promote the public interest and the Copyright Act's purposes by ensuring copyright defendants like Doe recover from having to defend against unjustified infringement claims. So too will it deter other copyright holders who believe they can file baseless infringement claims only to cut and run when an adverse fee award is imminent.

And finally, the balance of the equities shows an injunction is needed. As Doe shows, he will suffer irreparable harm without the Court enjoining Malibu from casting off its assets. On the other hand, Malibu will suffer no prejudice from the injunction. It simply requires Malibu to retain assets for the pendency of this case.

## VII. The only bond requirement should be for Malibu.

Although Rule 65 generally requires a movant to post a bond, the Court should not require Doe to do so here. Again, the injunction requires Malibu to simply retain certain assets. There are no potential damages from that.

If anything, the only bond requirement should be for Malibu. Indeed, in affirming a preliminary injunction asset freeze against equitable remedies, the Fifth Circuit instructed the trial court to give the enjoined party "the opportunity to post a bond acceptable to the district court

for that amount, and if they do this, their assets should be released. Otherwise the freeze should remain intact." *Dixon*, 835 F.2d at 565. The Court can give Malibu that same opportunity here.

**VIII. Conclusion.**

Doe has shown that the injunction factors favor an asset freeze. Thus, he asks the Court to enjoin Malibu, and its officers, agents, attorney, servants, and employees from transferring, encumbering, or expending the following for the pendency of this case:

(a) subscription fees from x-art.com processed through CC Bill, Epoch, or PayPal, including any fees paid with cryptocurrency;

(b) any settlement proceeds from copyright cases Malibu files or has filed;

(c) the rights to any of Malibu's copyrights, including the copyrights-in-suit; and

(d) the rights to any revenue-generating domain, including x-art.com.

The Court should also (e) order Malibu to provide regular accountings to prove its compliance with the injunction and (f) give Malibu the option of posting a bond of no less than $90,000.00 to lift the asset freeze.

Dated: July 6, 2021                                           Respectfully submitted,

/s/ JT Morris
JT Morris
Texas State Bar No. 24094444
Ramzi Khazen
Texas State Bar No. 24040855
JT Morris Law, PLLC
1105 Nueces Street, Suite B
Austin, Texas 78701
jt@jtmorrislaw.com
ramzi@jtmorrislaw.com
Tel: 512-717-5275
Fax: 512-582-2948

Counsel for Defendant John Doe

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2021, I electronically filed the foregoing documents with the Court using CM/ECF, and served on the same day all counsel of record by the CM/ECF notification system.

/s/ JT Morris

JT Morris