UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No.5:19-cv-00834-DAE |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE, INFRINGER USING IP | ) | |
| ADDRESS 70.121.72.191, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PRELIMINARY
INJUNCTION TO FREEZE ASSETS**

Plaintiff, Malibu Media, LLC ("Plaintiff"), by and through undersigned counsel hereby

submits its Response to Defendant's Motion for a Preliminary Injunction to Freeze Assets [Dkt.

86].

The Supreme Court held that federal courts lack authority even to issue a preliminary

injunction freezing assets in an action for money damages. *See Grupo Mexicano de Desarrollo*

*S.A. v. Alliance Bond Fund, Inc*., 527 U.S. 308, 333 (1999). However, federal law authorizes the

prejudgment freezing of a party's assets only if the relief requested "was traditionally exercised by

courts of equity." *De Beers Consolidated Mines v. United States,* 325 U.S. 212, 219 (1945).   In

other words, the underlying claim must be of "equity."  Defendant cites no Fifth Circuit or binding

authority to support a preliminary injunction to freeze assets pre-judgment based on a post-

judgment claim for attorney's fees under the Copyright Act.  Plaintiff found no such holding either.

Therefore, Plaintiff respectfully submits that basis of the actual *claim* must be in equity, rather than

the post-judgment request for the Court to award attorney's fees under the Copyright Act.   By

contrast, a plaintiff that seeks an accounting of lost profits under the Lanham Act, has been held

to be subject to the principles of equity. *See* 15 U.S.C. § 1117(a). The Fifth Circuit has recognized that an accounting under the Lanham Act is an equitable remedy. *See Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 584-85 (5th Cir. 1980) (holding that an accounting remedies unjust enrichment). Plaintiff found no such Fifth Circuit or binding precedent holding that a post-judgment claim for attorney's fees under the Copyright Act is a claim of equity that supports a preliminary injunction to freeze assets.  If so, a preliminary injunction to freeze assets would be available for litigants to move for in *every* copyright infringement case, because the Copyright Act provides the Court the authority to award attorney's fees to the prevailing party. *See* 17 U.S.C. § 505.  Plaintiff respectfully objects to Defendant's relief requested on the basis that a claim for attorney's fees alone under the Copyright Act is not a claim in equity and therefore cannot alone be the basis for a motion for preliminary injunction to freeze assets pre-judgment. The Court may deny the motion on that basis alone. The motion also fails because Defendant cannot establish the elements for a preliminary injunction under Rule 65.

## I.      Legal Standard

To obtain a preliminary injunction, a party must show that (1) a substantial likelihood of prevailing on the merits, (2) irreparable injury if the injunction is not granted, (3) the threatened injury outweighs the threatened harm to the non-moving party, and (4) granting the injunction will not disserve the public interest. *See Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (cited in *Mississippi Power & Light v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985).  Here, Defendant has not and cannot establish a substantial likelihood of prevailing on the merits of the alleged copyright infringement claim or Defendant's counterclaims. *See* Dkt. 66 & 66-1.

Plaintiff, using experienced investigators employing reliable technology, identified the IP address of Defendant John Doe[1] ("Defendant") to be engaged in the habitual online infringement of nine (9) of Plaintiff's copyrighted works over a period of almost two years.  Plaintiff owns these works, which were previously registered with the U.S. Copyright Office.  There is no dispute that Plaintiff is within its rights to seek redress for the blatant and widespread infringement of its works and may seek statutory damages made available by statute.  Sufficient evidence existed for Plaintiff to file the instant action.  Indeed, Plaintiff's investigation revealed that Defendant's IP Address ceased all infringing activities of both Plaintiff's works as well as thousands of third party works *just after* Defendant became aware of this suit.  There is no evidence to suggest Plaintiff did anything to fabricate its claims, concoct evidence, or relied on what Defendant describes as "faulty methods." Rather, Plaintiff relied on proven technology and detection methods that have been scrutinized by courts around the country and found to be reliable to support its claims.  In response, Defendant claims that because a minority of courts around the country have found that an IP Address *alone* cannot identify an online copyright infringer, Plaintiff somehow relied on faulty methods and thus no genuine issue of material facts exists.  In fact, there is a very real dispute as to whether Defendant, an experienced technology professional with previous experience downloading content from BitTorrent, and who has admitted to operating an open wi-fi network for "research purposes" engaged in the infringement of Plaintiff's copyrights.

As outlined in Plaintiff's Response to Defendant's Motion for Partial Summary Judgment, there are numerous material fact issues such that Defendant has not and cannot establish a substantial likelihood of prevailing on the merits in this case.

---

[1] For readability, the male pronoun will be used in reference to Defendant without making any comment on Defendant's actual gender.

## II.    The Facts

### a.  Disputed Facts

As evidenced in the parties' cross motions for summary judgment, it is clear there are numerous, material facts in dispute such that Defendant cannot show a substantial likelihood of prevailing on the merits.  Specifically:

1.  While Plaintiff has filed suit against many defendants alleging similar claims to those at issue here, such suits are only against the most egregious of infringers and not simply a means to a quick settlement.

2.  While Plaintiff initially only knew the IP Address used to commit the infringement, this Court like many others around the country, found that "good cause" existed to grant Plaintiff's motion for leave to conduct early discovery. *See* Court's Order of August 12, 2019 in Dkt. No. 7. Indeed, this is the only way any similarly situated plaintiff could uncover the true identity of an online infringer.

3.  Plaintiff is keenly aware the several outlier courts in other jurisdictions have held that an IP Address, alone, may not show infringement; however, Plaintiff does not rely on an IP Address, *alone*, as Defendant repeatedly states.

4.  Defendant's claim that since some courts have held that an IP Address alone may not show online infringement, Plaintiff has likely sued innocent persons is speculation at best.  In fact, once in receipt of the subscriber information corresponding to the IP Address returned in the applicable Internet Service Provider ("ISP") subpoena response, Plaintiff undertakes a significant, comprehensive investigation into the subscriber to determine whether he or possibly a family member or other third party is the actual infringer.

5. Defendant claims not to have used BitTorrent during the relevant period of infringement; however, his expert did not confirm this.  As such, this fact remains in dispute.

6. The mere fact that Plaintiff no longer works with the investigator tasked with identifying and capturing the infringement in this matter does not mean Plaintiff distrusts the results of its investigation and that the evidence of infringement is faulty.

**b.  Undisputed Facts**

1. Defendant's ISP identified him as the subscriber assigned IP Address 70.121.72.191. Defendant has not contested that this IP Address was assigned to him for the time period of recorded infringement.

2. Defendant possesses no other external IP Addresses.

3. Defendant has previously used and is familiar with the functionality of BitTorrent.

4. Defendant and his spouse are the only adults living in their residence.

5. Defendant operated an open wi-fi network in addition to several password protected wi-fi networks.

6. All of the nine films infringed by Defendant fit into the same sub-genre of adult content, namely, group sex scenes and threesomes.

7. Defendant's expert did not inspect Defendant's hard drives to verify whether Plaintiff's content was present. Importantly, Defendant did not produce his hard drives in response to a discovery request for the same.

8. Defendant's expert report does not address whether Defendant committed the infringement or visited any torrent sites looking for Plaintiff's content, only his opinion that an IP Address, alone, cannot identify an infringer.

9. Plaintiff's investigator detected and captured one or more pieces of its copyrighted films being downloaded from Defendant's IP Address.

## III.   Argument

To prove copyright infringement, a plaintiff must establish (1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity. *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007).   Defendant did not contest Plaintiff's ownership of valid copyrights in his motion for summary judgment.  The second prong, factual copying, can be proven by direct or circumstantial evidence.  *Id.*  Circumstantial evidence may support an inference of copying if the defendant had access to the copyrighted work and there is "probative similarity" between the copyrighted work and the allegedly infringing work.  *Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 576 (5th Cir. 2003) (citing  *Engineering Dynamics, Inc. v. Structural Software, Inc.,* 26 F.3d 1335, 1340 (5th Cir.1994) (*citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)).

Admittedly, Plaintiff was hamstrung in building out the direct evidence in this case due to the COVID-19 pandemic and the unexpected disappearance of its investigator, IPP International ("IPP") once the business relationship between the parties ended.  Plaintiff's business decision to move away from IPP was not based on any distrust of the methods or processes IPP undertook to identify infringers of its content, but rather on the fact that IPP's services are extremely expensive and Plaintiff has developed its own, in-house, infringement detection software.

Once IPP's services were no longer required by Plaintiff for the initiation of new copyright infringement suits, IPP became unreachable.  This prevented Plaintiff from fully developing the evidence of infringement by Defendant.  However, there is significant circumstantial evidence supporting its infringement claim against Defendant.  Specifically, Defendant is a computer expert and admitted user of BitTorrent.  As such, Defendant would have known how and where to access Plaintiff's copyrighted works on various torrent websites.  In addition, the titles downloaded by Defendant's IP Address over the course of almost two years all match the same sub-genre of adult content. The fact that the same type of content was downloaded by the same IP Address over this span of time negates any claim that some passerby or rogue actor sitting outside in a car could have randomly committed the infringement due to Defendant's open wi-fi.  Finally, Defendant and his spouse are the only adults residing in their home.  And, it is incredibly unlikely Defendant's spouse committed the infringement.  The culmination of this evidence suggests that Defendant and not someone else, committed the infringements at issue in this matter.

In addition to having access to Plaintiff's works online, the second question that must be resolved is whether "substantial similarity" exists between the copyrighted films and the pieces downloaded by Defendant.   Plaintiff's investigator, who Defendant elected not to depose, documented that a device using IP Address 70.121.72.191, Defendant's IP Address, distributed to IPP's servers multiple pieces of Malibu Media's copyrighted works.  In addition, Mr. Fieser declared that a full copy of the digital file identified by the Hash associated with one of the infringed movies was downloaded by IPP's software, and Mr. Fieser confirmed the file was a digital movie file.  Mr. Fieser thereafter viewed the digital movie file and determined it was substantially similar to the corresponding Malibu Media copyrighted movie. Yet, Defendant's expert opined that the pieces of information exchanged are too limited to show infringement.

Clearly, there exists a genuine dispute of material fact as to whether the pieces downloaded by Defendant, when viewed together, constitutes copyright infringement.

With substantial similarity also shown, Plaintiff has met the standard of showing copyright infringement by the Defendant such that a jury could find in its favor.   Here, clearly, the dispute as to Defendant's infringement is genuine.  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986) ("whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.") The question here is whether a jury could reasonably find *either* that the Plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not. *Id.*

And, the question of Defendant's infringement is material, indeed the lynchpin, of this action. *See Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) ("A fact issue is 'material' if its resolution could affect the outcome of the action."). With material fact issues present, Defendant cannot reach the high burden of showing a substantial likelihood of success on the merits. Accordingly, Defendant has not and cannot establish a substantial likelihood of success on the merits of Plaintiff's claims for copyright infringement.

Defendant also cannot show irreparable injury if the injunction is not granted.  Importantly, Defendant has not (and cannot) establish that he is the prevailing party and therefore he is not entitled to a request for attorney's fees or costs at this juncture in the case.  There is no basis for a request for attorney's fees under the Copyright Act until a party is determined to be the prevailing party. Defendant has no right to seek an attorney fee award at this point in the case because he is

not the prevailing party.  Defendant cannot establish that he is the prevailing party and therefore has no claim for attorney's fees.  Accordingly, Defendant has no injury.

Even if Defendant had been determined to be the prevailing party, which he has not and cannot, he cannot show an "irreparable" injury if the injunction does not issue.  An award of attorney's fees, should Defendant prevail at trial, is an award in the form of money.  A claim for money alone by definition is not "irreparable" injury because it is certain and can be accurately measured and satisfied.   Indeed, Defendant's motion specifically calculated the exact amount claimed in attorney's fees to date.  However, in this case, there is no certainly that the Defendant will be the prevailing party at trial.   In other words, there may never be an injury at all, let alone an "irreparable" one.  At bottom, any alleged "injury" to Defendant is pure speculation at this point in the case (it is noted that cross-motions for summary judgment are still pending before the Court). Finally, any claim for attorney's fees that the Court may award is and will be an amount certain and is in no way "irreparable" -- it can be satisfied by an amount certain in money.  Accordingly, Defendant has not shown and cannot show "irreparable" injury if the injunction is not granted.

Defendant's motion spends a significant amount of time engaging in a character assassination Mrs. Pelissier in support of its meritless claim of "irreparable" injury.   This improper attack through conjecture and speculation is not only irrelevant but also an inappropriate attempt to sway the Court's opinion negatively.  Regardless, it does nothing to establish a likelihood of success on the merits of this case or to establish an "irreparable" injury where there is none.

Granting the injunction will disserve the public interest.  The public has an interest in a Court system where legitimate copyright infringement claims can be brought and litigated without the fear of a pre-judgment freeze of the party's assets or the increased litigation costs of defending one in every copyright case. The grant of an injunction in this case would encourage litigants in

copyright cases to take the same approach.  It could become common practice to see motions for preliminary injunction in copyright cases (which now is unusual) and deter a significant purpose of the Copyright Act – enforcement of copyrights and eliminating copyright infringement.  The public interest is best served by addressing potential attorney fee awards, as is standard practice, after the infringement is litigated, a prevailing party is determined, and a judgment is entered and not before.  The public interest is best served by denying the injunction.

## IV. CONCLUSION

For the foregoing reasons, Defendant has not and cannot establish (1) a substantial likelihood of prevailing on the merits, (2) irreparable injury if the injunction is not granted, (3) the threatened injury outweighs the threatened harm to the non-moving party, and (4) granting the injunction will not disserve the public interest. Defendant's motion should be denied. Plaintiff respectfully requests that the Court deny Defendant's motion for preliminary injunction to freeze assets.

Dated: July 20, 2021                                   Respectfully submitted,

By: /s/ Paul S. Beik
PAUL S. BEIK
Texas Bar No. 24054444
BEIK LAW FIRM, PLLC
8100 Washington Ave., Suite 1000
Houston, TX 77007
T: 713-869-6975
F: 713-868-2262
E-mail: paul@beiklaw.com
**ATTORNEY FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 20, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ Paul S. Beik
PAUL S. BEIK