UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN DOE,<br><br>Defendant. | CIVIL ACTION NO.  5-19-CV-00834-DAE |

**DEFENDANT JOHN DOE'S MOTION FOR PARTIAL RECONSIDERATION OF
ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [DKT. 97]**

Defendant John Doe moves under Fed. R. Civ. P. 54(b) for partial reconsideration of the Court's order on the parties' cross-motions for summary judgment [Dkt. 97] ("Order").[1] Doe urges the Court to reconsider three issues:

1. Doe objected under Rule 56(c)(2) to Malibu using Tobias Fieser's declaration as summary judgment evidence. [Dkt. 68 at 2]. But the Order did not rule on Doe's objection. So Doe asks the Court to revise the Order to include a ruling on Doe's objection. And because the Fieser declaration is no more than inadmissible undisclosed and unreliable expert testimony, Doe urges the Court to sustain the objection.

2. Without Fieser's testimony, Malibu has no evidence creating a genuine fact dispute over copying and substantial similarity. And so Doe also urges the Court to revise the Order to grant Doe summary judgment on copyright infringement if it sustains Doe's Rule 56(c)(2) objection.

3. Finally, Doe asks the Court to revise the Order to deny Malibu summary judgment on Doe's abuse of process counterclaim. Although the Court's order denying Malibu's motion to

---

[1] Because the Order is sealed, Doe has avoided reference to any part of the Order potentially including information the parties have designated as confidential under the protective order.

dismiss that counterclaim is not binding, it made a correct rule of law that Doe used as the roadmap for evidence to carry his summary judgment burden. And Doe provided this evidence, meeting the condition that abuse of process take the form of coercion to obtain a collateral advantage.

I. **Standards for reconsidering interlocutory orders.**

Rule 54(b) allows a court to revise an interlocutory order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). And while there is no bright line standard in the Fifth Circuit for Rule 54(b) reconsideration, the Fifth Circuit has "explained that when a district court rules on an interlocutory order, it is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010) (cleaned up). In short, a district court has broad discretion to grant a Rule 54(b) motion for reconsideration, although courts often look to the Rule 59(e) guideposts when evaluating a motion to reconsider an interlocutory order. *E.g.*, *Enerquest Oil & Gas, LLC v. Plains Expl. & Prod. Co.*, No. SA-12-CV-542-DAE, 2014 U.S. Dist. LEXIS 57037, at *9 (W.D. Tex. Apr. 24, 2014) (citations omitted). These guideposts include (1) an intervening change in controlling law; (2) new evidence not previously available; or (3) the need to correct a clear or manifest error of law or fact to prevent manifest injustice. *Id.* at *10 (citing *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002)).

II. **To avoid error and manifest injustice, Doe asks the Court to rule on and sustain Doe's Rule 56(c)(2) objection to the Fieser declaration.**

Barring Malibu from using the Fieser declaration to carry its summary judgment burden on infringement will avoid error and manifest injustice. That is why Doe objected to its use in his[2]

---

[2] Doe uses the male pronoun for readability, with no suggestion about Doe's gender or identity.

summary judgment reply brief. [*See* Dkt. 68 at 2]. Doe's chief complaint about the Fieser declaration is that it is expert testimony under FRE 702, but Malibu neither disclosed Fieser as a testifying expert nor offered evidence showing Fieser's testimony is qualified or reliable. *Id.* And so Fieser's testimony is inadmissible in any form. Thus, Doe asks that the Court rule on and sustain his objection to Malibu using Fieser's declaration on summary judgment.

### A. Malibu could not use evidence inadmissible as to its substance on summary judgment.

True enough, the Fifth Circuit clarified that summary judgment evidence does not have to be in an admissible form. *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 354-55 (5th Cir. 2017) (citations omitted). In effect, this means a party can introduce non-affidavit evidence if it satisfies other evidentiary rules. *Id.*

But the Fifth Circuit also affirmed that "***the substance or content*** of the evidence submitted to support or dispute a fact on summary judgment must be admissible." *Id.* (citing 11 MOORE'S FEDERAL PRACTICE - CIVIL ¶ 56.91 (2017)) (emphasis added). And so "to avoid the use of materials that lack authenticity or violate other evidentiary rules, [Rule 56] allows a party to object 'that the material cited to support or dispute a fact cannot be presented in a form that would be admissible as evidence.'" *Id.* (quoting Fed. R. Civ. P. 56(c)(2)). To beat a Rule 56 objection, the offering party must show that the material is admissible or the admissible form it will take at trial. *See id.*

To this end, a party cannot use expert testimony on summary judgment that is inadmissible in substance or content. *See, e.g.*, *Malibu Media, LLC v. Doe*, No. 13 C 6312, 2016 U.S. Dist. LEXIS 14798 at *35-36 (N.D. Ill. Feb. 8, 2016) (striking declarations from Fieser and another witness as summary judgment evidence after Malibu did not disclose them as testifying experts); *see also Snapt Inc. v. Ellipse Communs. Inc.,* 430 F. App'x 346, 352-53 (5th Cir. 2011) (affirming district court striking declaration with expert testimony about computer hacking that relied on

hearsay and failed to show expert qualifications); *Green v. Harris County*, No. H-16-893, 2019 U.S. Dist. LEXIS 108180, at *20 (S.D. Tex. June 26, 2019) (excluding expert reports offered as summary judgment evidence that failed to detail methodology or expert qualifications).

**B. Fieser's declaration stands on FRE 702 expert testimony.**

The Federal Rules of Evidence distinguish between "lay" opinion testimony under FRE 701 and "expert" testimony under FRE 702. This distinction avoids "the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701(c), advisory committee's note to 2000 Amendments. Thus, FRE 702 describes expert testimony as that requiring "scientific, technical, or other specialized knowledge" beyond the average layperson's grasp and provides safeguards to ensure expert testimony is reliable. Fed. R. Civ. P. 702.

With that in mind, Fieser's declaration leans on conclusions and other testimony that requires scientific or technical knowledge. For instance, Fieser testifies about:

1. "IPP's forensic software" used to investigate and identify IP addresses and distribution over BitTorrent [Dkt. 66-1 P-Resp_Renew_MSJ091 ¶ 6];

2. "[E]ffectuating, analyzing, reviewing and attesting to" IPPs investigation results for the accused IP address. [*Id.* ¶ 7];

3. How IPP's forensic servers linked to a device using the accused IP address and pieces of film distributed to those servers. [*Id.* at —MSJ092 ¶ 9];

4. That IPPs software uses "Cryptographic Hash Values." [*Id.* ¶ 10].

5. IPPs software downloading a digital file corresponding to a hash value, and Fieser's conclusion that the file was "substantially similar" to one of Malibu's films. [*Id.* ¶ 11].

6. Fieser concludes that "IP spoofing" was "impossible" here. [*Id.* ¶ 13].

4

In sum, what Fieser testifies about is not within the average layperson's grasp. Fieser does not testify about well-known computer topics, like using Microsoft Word or posting content on Facebook. Rather, he testifies about IPP's forensic software, using it for a BitTorrent investigation, and interpreting the investigation results. That is textbook FRE 702 testimony.

Indeed, courts routinely hold testimony about computer and network forensic investigations and the capabilities and function of specialized software is expert testimony subject to FRE 702 safeguards. *E.g.*, *United States v. Ganier,* 468 F.3d 920, 926 (6th Cir. 2006) (holding that testimony about computer forensic software fell within FRE 702, being "more akin to specialized medical tests run by physicians."); *United States v. Yu*, 411 F. App'x 559, 566-67 (4th Cir. 2010) (rejecting party's "effort to recast [the witness] as a lay witness" where the witness's testimony covered computer forensics); *Loughlin v. Amerisave Mortg. Corp.,* No. 1:14-CV-3497-LMM-LTW, 2018 U.S. Dist. LEXIS 236644, at *64-65 (N.D. Ga. Feb. 7, 2018) (citing several decisions for the principle that knowledge and familiarity with specialized software is beyond that of the average layperson). So too should this Court hold that Fieser's testimony about IPPs forensic software and his analysis and conclusions based on using that software fall within FRE 702.

**C.  The Court should sustain Doe's objection to the Fieser Declaration because Malibu never disclosed Fieser as a testifying expert.**

One reason Fieser's expert testimony would be inadmissible at trial is because Malibu never disclosed Fieser as a testifying expert under Rule 26(a)(2). "In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Malibu needed to serve Fieser's expert report by the Court's July 1, 2020 expert disclosure deadline, Fieser being "retained or specially employed to provide expert testimony." Fed. R. Civ. P. 26(a)(2)(A); *see* Dkt. 66-1 P-Resp_Renew_MSJ091 ¶ 6; Dkt. 30. And

even if Fieser did not have to provide a report, Malibu still needed to formally disclose Fieser as a testifying expert by that same deadline under Rule 26(a)(2)(C).

Because Malibu made no Rule 26(a)(2) disclosure for Fieser, it cannot use him "to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). But Malibu's failure was neither. For starters, the Magistrate Judge rejected Malibu's excuses for its failure to timely disclose an expert when he denied Malibu's motion to extend expert deadlines by 60 days. [11-16-20 Text Order denying Dkt. 49]. And Malibu's knowledge that it needed expert testimony to prove infringement highlights why it has no justification for failing to disclose Fieser or any other expert witness. [Dkt. 59-1 App. 250-51 Pelissier Tr. 65:2-66:22; *see also* Dkt. 29, 4-20-20 Joint Mtn. to extend expert deadlines].[3]

What is more, Malibu's failure is anything but harmless. "Without proper disclosures, a party may miss its opportunity to disqualify the expert, retain rebuttal experts, or hold depositions for an expert not required to provide a report."[4] *Malibu Media LLC v. Doe*, 2016 U.S. Dist. LEXIS 14798 at *33 (striking Fieser's declaration from summary judgment evidence after Malibu failed to disclose him under Rule 26(a)(2)). Even more, if Fieser had to provide a report, he would have needed to provide the data for his conclusions—something Malibu insists it lacks possession, custody, or control over. Fed. R. Civ. P. 26(a)(2)(B)(ii-iii). Without this, Doe is highly prejudiced if Fieser can testify on summary judgment or at trial. Malibu's failure to disclose Fieser under Rule 26(a)(2) is one reason the Court should sustain Malibu's Rule 56(c)(2) objection.

   **D. The Court should sustain Doe's objection to the Fieser Declaration because Malibu made no attempt to qualify him as a reliable expert.**

---

[3] For these same reasons, the factors of Malibu's explanation and whether a continuance can cure prejudice to Doe show why Malibu's failure to disclose Fieser was neither substantially justified nor harmless. *See Geiserman v. MacDonald*, 893 F.2d 787, 790-91 (5th Cir. 1990).

[4] The burden of securing the deposition of a Germany-based fact witness dwarfs merely exercising the right to depose a retained expert witness. This difference underscores the harm factor here.

"While there is no specific process by which a court must assess an expert's qualifications, some evaluation is needed before a witness can testify as an expert." *Hous. Aquarium, Inc. v. OSHRC*, 965 F.3d 433, 439 (5th Cir. 2020) (cleaned up). But Malibu provided no evidence that Fieser is qualified to give expert testimony—not even a CV. Nor did it provide evidence showing Fieser's methods were reliable. For instance, Fieser attached no logs or data (or even the complaint exhibits) to his declaration. Nor did he identify or explain the forensic software he used to generate data.

Even at the summary judgment stage, a party offering expert testimony must provide some evidence about qualifications and reliability. *See, e.g.*, *Jimenez v. Deutsche Bank Nat'l Tr. Co.*, No. SA-11-CA-1110-DAE*,* 2013 U.S. Dist. LEXIS 193206, at \*28 (W.D. Tex. Mar. 21, 2013). And without this, Fieser's declaration embodies the "risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701(c), advisory committee's note to 2000 Amendments. This is another reason the Court should rule on and sustain Doe's objection to the Fieser Declaration.

### III. To avoid error and manifest injustice, Doe asks the Court to revise the Order to grant Doe summary judgment on copyright infringement.

To "determine whether an instance of copying is legally actionable, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'" *Peel & Co. v. Rug Mkt.*, 238 F.3d 391, 395 (5th Cir. 2001). But without Fieser's declaration, Malibu has no evidence to show a genuine fact dispute on copying and substantial similarity. In fact, Fieser's declaration is the ***only*** evidence Malibu points to on substantial similarity. [Dkt. 66 at 6-7]. So too is Fieser's declaration the only Malibu evidence cited in the Order as creating a fact dispute over substantial similarity. [Dkt. 97 at 39]

Malibu has not produced one of the films it alleges Doe copied. Nor has Malibu produced any evidence of what it alleges Doe copies, including any "pieces" of BitTorrent copies corresponding to its films. [See Dkt. 59-1 App. 8 ¶ 33; App.18-28; App. 73-76]. In short, there is nothing that would let the jury make the needed side-by-side comparison. [Dkt. 59 9-10].

To that end, if the Court sustains Doe's objection to Malibu using the Fieser declaration as summary judgment evidence, Doe urges the Court to also revise the Order to grant Doe summary judgment on copyright infringement. Not only is this the just outcome, but it will also avoid saddling a jury with a claim for which Malibu has no evidence on an essential element.

### IV. To avoid error and manifest injustice, Doe asks the Court to revise the Order to deny Malibu summary judgment on Doe's abuse of process counterclaim.

In denying Malibu's Rule 12(b)(6) motion to dismiss Doe's abuse of process counterclaim, the Court held "that Defendant's claim is plausible given that there is some dispute as to whether an IP address can positively identify infringers and whether Plaintiff is using this lawsuit to extort a settlement payment." [Dkt. 28 at 6]. So moving forward, Doe treated this as a roadmap for developing his abuse of process claim (or put differently, as the law of the case). And to this end, Doe offered summary judgment evidence showing a genuine dispute over (1) the flaws in Malibu's IP address-based methods to identify infringers, including using IP addresses [*E.g.*, Dkt. 59-1 App. 8 ¶ 33247-48 Tr. 51:19-52-3 (2) Malibu's use of that flawed evidence and suspect declaration to get an order for leave to subpoena the ISP associated with the accused IP address [*E.g.*, Dkt. 59-1 App. 55-75];  and (3) Malibu's coercive settlement tactics just after the Court granted the subpoena order [Dkt. 62-1 Opp. App. 91]; *see generally* Dkt. 62 2-5.

But the Order seems at odds with the Court's prior finding that these disputes support a plausible—and now a triable—abuse of process claim. For instance, the Order concludes that "Defendant cannot hold Plaintiff liable for abuse of process for merely litigating the case," without

8

discussion of Malibu's knowing use of flawed evidence to sue Doe and subpoena his ISP. [Dkt. 97 10-12]. And the Order concludes this despite also acknowledging Doe's evidence showing a fact dispute over Malibu's coercive settlement tactics. *Id.* at 11.

That is why Doe urges the Court to reconsider its ruling on Doe's abuse of process claim. Of course, Doe acknowledges that the Court's motion to dismiss order was not binding, as the Court may revise any interlocutory order up to final judgment. At the same time, Doe had no reason to believe the Court would deviate from its ruling for one simple reason—the Court's denial of Malibu's motion to dismiss Doe's abuse of process claim applied the correct rule of law. That is, fact disputes over Malibu's use of flawed evidence to get a subpoena and its extortive use of subpoena power can sustain an abuse of process claim.

And this rule tracks the principle behind abuse of process:

> The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

*Blackstock v. Tatum*, 396 S.W.2d 463, 468 (Tex. Civ. App.—Houston [1st] 1965). In short, the evidence shows at a least genuine dispute about whether Malibu used flawed evidence to get a subpoena to hold over Doe's head and threaten him to add even more pornographic movie titles to the complaint if he did not settle. That is using process to coerce someone to pay money, fitting *Blackstock's* test. What is more, that evidence shows overt acts other than those incidental to the lawsuit. *C.f. Rodriguez v. Carroll,* 510 F. Supp. 547, 553 (S.D. Tex. 1981).

In sum, Doe asks the Court to revise the Order to abide by the correct rule of law in the Court's motion to dismiss order. And even if the Court sticks to the rule of "Defendant cannot hold Plaintiff liable for abuse of process for merely litigating the case," Doe urges the Court to

reconsider his evidence on abuse of process showing that Malibu did anything but "merely litigate the case." Instead, the evidence shows Malibu abused process by getting a subpoena to rope Doe into the case, then knowingly not developing its claim. [*See* Dkt. 62 3-5, citing evidence]. Indeed, Malibu did not even secure the pieces of digital media files from IPP on which it alleges Doe copied and distributed—something that should be standard practice for a party who has filed thousands of copyright lawsuits. [*See* Dkt. 1 ¶¶ 6, 13-14, 18-21]. And most of all, this evidence still meets *Blackstock's* "coercive purpose" test.

In any event, Doe asks that the Court revise the Order to deny Malibu summary judgment on Doe's abuse of process claim.

**V. Conclusion.**

For these reasons, Doe asks the Court to reconsider and revise the Order as follows:

1. Rule on and sustain Doe's objection to Malibu's use of the Fieser Declaration;

2. Revise the Order to reflect that Malibu cannot show a factual dispute over copying and substantial similarity, entitling Doe to summary judgment on Malibu's copyright infringement claim and Doe's non-infringement counterclaim;

3. Revise the Order to incorporate the Court's ruling on Malibu's motion to dismiss that a factual dispute over use of flawed IP address evidence and extortive settlement tactics sustains an abuse of process claim, and because Doe's summary judgment evidence shows those disputes, that Malibu's summary judgment motion on Doe's abuse of process claim must be denied.

Dated: July 30, 2021                                                         Respectfully submitted,

/s/ JT Morris
JT Morris
Texas State Bar No. 24094444
jt@jtmorrislaw.com
Ramzi Khazen

                                      Texas State Bar No. 24040855  
                                      ramzi@jtmorrislaw.com  
                                      JT Morris Law, PLLC  
                                      1105 Nueces Street, Suite B  
                                      Austin, Texas 78701  
                                      Tel: 512-717-5275  
                                      Fax: 512-582-2948

                                      Counsel for Defendant John Doe

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2021, I electronically filed these documents with the Court using CM/ECF, and served on the same day all counsel of record by the CM/ECF notification system.

/s/ JT Morris

JT Morris